CDF LABOR LAW LLP
   Dan M. Forman, State Bar No. 155811
   dforman@cdflaborlaw.com
   Amy S. Williams, State Bar No. 228853
   awilliams@cdflaborlaw.com
707 Wilshire Boulevard, Suite 5150
Los Angeles, CA 90017
Telephone:  (213) 612-6300

Attorneys for Plaintiff
PERRIN BERNARD SUPOWITZ, LLC, a
California LLC dba INDIVIDUAL
FOODSERVICE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, a California LLC dba INDIVIDUAL FOODSERVICE,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PABLO MORALES, an individual; LEGACY WHOLESALE GROUP, LLC, an Arizona Limited Liability Corporation; SAVINO MORALES, an individual; and SERGIO ESCAMILLA, an individual; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No. 2:22-cv-02120-MRW<br><br>Judge: Michael R. Wilner<br>Dept:  Roybal Federal Building, Courtroom 550<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR:**<br><br>**(1)    TEMPORARY RESTRAINING ORDER and SCHEDULING HEARING ON PRELIMINARY INJUNCTION;**<br>**(2)    PRESERVATION OF EVIDENCE; AND**<br>**(3)    EXPEDITED DISCOVERY**<br><br>Filed concurrently with:<br>1) Notice of Ex Parte Application;<br>2) Declaration of Dan M. Forman;<br>3) Declaration of Nigel Kershaw; and<br>4) Proposed Order<br><br>Date:    April 13, 2022<br>Time:   9:30 a.m.<br>Ctrm:   550 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 6

II. STATEMENT OF FACTS .................................................................................. 7

    A. IFS Took Reasonable Steps to Protect Trade Secrets .......................... 10

    B. Defendants Worked Together to Misappropriate IFS' Confidential, Proprietary, and Trade Secret Documents and Information ........................................................................................... 11

III. COURT SHOULD PROTECT IFS FROM IRREPARABLE HARM ............................................................................................................. 14

    A. *Ex Parte* Relief is Proper Under these Circumstance ......................... 14

    B. Court Should Order TRO On *Ex Parte* Basis Under Rule 65 ......................................................................................................... 14

        1. IFS will be irreparably harmed absent a TRO ........................... 15

        2. Balance of hardships tip strongly in favor of IFS and the Public Interest ...................................................................... 17

        3. IFS is likely to succeed on the merits of its trade secrets misappropriation claim under the DTSA...................... 18

        4. IFS is likely to succeed on the merits of its trade secrets misappropriation claim under the CUTSA .................. 20

        5. IFS is likely to succeed on its breach of contract and inducement of breach of contract claim ................................. 20

        6. IFS is likely to succeed on its breach of breach of duty of loyalty and inducement of breach of duty of loyalty ........................................................................................ 21

    C. IFS is Entitled to an *Ex Parte* Order to Preserve Evidence Under Fed. R. Civ. P. 65 and the Court's Inherent Authority ............................................................................................... 21

    D. Good Cause Justifies Expedited Discovery ......................................... 23

        1. Temporary restraining order is pending ..................................... 26

        2. The breadth of the discovery request is proper........................... 26

        3. IFS has compelling reasons for expedited discovery ................ 27

        4. Defendants will not be unduly burdened by limited expedited discovery .................................................................. 28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1954300.1

# TABLE OF CONTENTS (cont.)

**Page**

     5.    The typical discovery timeline is not appropriate considering the impending harm to IFS ...................................28

IV.    CONCLUSION ...........................................................................29

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1954300.1

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## <u>Cases</u>

4

*Am. Trucking Ass'ns Inc. v. City of Los Angeles*
   559 F.3d 1046 (9th Cir. 2009)............................................................. 14

5

*Apple Inc. v. Samsung Electronics Co.*
   No. 11-CV-01846-LBK, 2011 WL 1938154 (N.D. Cal. May 18,
   2011)....................................................................................... 24

6

7

*Artec Grp., Inc. v. Klimov*
   2016 WL 4474614 (N.D. Cal., Aug. 25, 2016)................................... 22

8

9

*Bank of Am., N.A. v. Lee*, No. CV 08– 5546 CAS (JWJX)
   2008 WL 4351348 (C.D. Cal. Sept. 22, 2008)................................. 17

10

*Campbell Soup Co. v. ConAgra, Inc.*
   977 F.2d 86 (3rd Cir. 1992)............................................................ 16

11

12

*Crosby v. Petromed, Inc.*
   2009 WL 2432322 (E.D. Wash., Aug. 6, 2009)................................ 14

13

*Fortinet Inc. v. FireEye Inc.*
   2014 WL 4955087 (N.D. Cal., Sept. 30, 2014)................................ 20

14

15

*FPI Dev., Inc., v. Nakashima*
   231 Cal. App. 3d 367 (1991) ......................................................... 20

16

*Gallagher Benefit Servs., Inc. v. De La Torre*
   283 F. Appx 543 (9th Cir. 2008) ................................................... 15

17

18

*Gallagher Benefits Servs., Inc. v. De La Torre*
   No. C 07-5495 VRW, 2007 WL 4106821 (N.D. Cal. Nov. 16,
   2007)....................................................................................... 15

19

20

*Glover v. BIC Corp.*
   6 F. 3d 1318 (9th Cir. 1993)........................................................... 22

21

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck*
   *Drivers Local No. 70 of Alameda County*
   415 U.S. 423 (1974) ...................................................................... 14

22

23

*Henry Schein vv. Cook*
   191 F.Supp.3d 1072 (N.D. Cal. 2016) ...................................... 17, 22

24

*Oculus Innovative Scis., Inc. v. Nofil Corp.*
   2007 WL 4044867 (N.D. Cal., Nov. 15, 2007)................................ 20

25

26

*Pac. Aerospace & Elec., Inc. v. Taylor*
   295 F.Supp.2d 1188 (E.D. Wash. 2003) ......................................... 16

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1954300.1

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3

*Posdata Co. Ltd. v. Kim*
  2007 WL 1848661 (N.D. Cal., June 27, 2007) ...................................... 27

4

*Pueblo of Laguna v. United States*
  60 Fed. Cl. 133 (2004) .......................................................................... 22

5

6

*Pyro Spectaculars North, Inc. v. Souza*
  861 F. Supp. 2d 1079 (E.D. Cal. 2012) ........................................... 27, 28

7

*Regents of Univ. of Cal. v. Am. Broad. Cos.*
  747 F.2d 511 (9th Cir. 1984) ................................................................ 17

8

9

*Renaud v. Gillick*
  2007 WL 98465 (W.D. Wash., Jan. 8, 2007) ....................................... 28

10

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
  208 F.R.D. 273 (N.D. Cal. 2002) ......................................................... 23

11

12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
  240 F.3d 832 (9th Cir. 2001) .......................................................... 14, 16

13

*Sun Distributing Co. v. Corbett*
  2018 WL 4951966 (S.D. Cal. Oct. 12, 2018) ....................................... 19

14

*W. Directories, Inc. v. Golden Guide Directories, Inc.*
  2009 WL 1625945 (N.D. Cal., June 8, 2009) ....................................... 15

15

16

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008) .......................................................................... 14, 15

17

*Wyndham Resort Dev. Corp. v. Bingham*
  2010 WL 2720920 (E.D. Cal. July 8, 2010) ......................................... 17

18

19

**Statutes**

18 U.S.C. § 1839(3) ........................................................................... 18

20

21

18 U.S.C. § 1839(5)(A) ....................................................................... 19

22

18 U.S.C. § 1839(6)(A) ....................................................................... 19

23

Cal. Civ. Code § 3426.1(a) .................................................................. 20

24

Cal. Civ. Code § 3426.1(d) .................................................................. 20

25

Fed. R. Civ. P. 26(d)(1) ...................................................................... 23

26

Fed. R. Civ. P. 65(b)(1) ...................................................................... 14

27

Fed. R. Civ. P. 65(b)(A) ...................................................................... 15

28

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1954300.1

# I. **INTRODUCTION**

Plaintiff PERRIN BERNARD SUPOWITZ, LLC, a California LLC dba INDIVIDUAL FOODSERVICE ("IFS" or "Plaintiff") seeks, on an *ex parte* basis, an order or orders (1) to stop irreparable harm to IFS caused by Defendants PABLO MORALES ("Pablo"); LEGACY WHOLESALE GROUP, LLC ("Legacy); SAVINO MORALES ("Savino"); SERGIO ESCAMILLA ("Escamilla"); HUGO MESA; and JESUS TRUJILLO (collectively "Defendants") misappropriation and use of IFS' confidential, proprietary and trade secret information and other wrongful and deceitful actions; (2) to preserve evidence of Defendants' wrongdoing and (3) to expedite certain discovery to allow IFS to bring a motion for preliminary injunction.

Pablo and Savino, while employed by IFS, collaborated with Escamilla to use IFS' highly valuable confidential, proprietary and trade secret information, to develop and build Legacy and hire IFS' employees. IFS relied on Pablo and Savino's express agreements to maintain IFS' confidential, proprietary and trade secret information in confidence and not engage in activities that create a conflict of interest in violation of their duty of loyalty to IFS.

When IFS confronted with Savino with proof of his duplicity, Savino admitted that he gave IFS' confidential customer contact information, purchase histories, product availability information, pricing information, and other trade secrets to Legacy.  (Declaration of N. Kershaw ("Kershaw Decl.") ¶ 15, Ex. 12.)  Moreover, Savino admitted to diverting IFS's sales and customer to Legacy!  *Id.*

In March 2021, Escamilla, Pablo and Savino colluded to create an entity called Legacy, introduced it as a prospective client to IFS, and then used Legacy as an instrument to undermine IFS' client and vendor relationships and steal its top employees.  Pablo and Savino recruited key employees to join their surreptitious efforts and provide additional confidential, proprietary and trade secret information to compete against IFS. Defendants contacted IFS' employees, customers, clients and suppliers to attempt to have move their relationships from IFS to Legacy.  In a few

1  months, despite Legacy's lack of experience, infrastructure and market capital,

2  Legacy hired the spine of IFS' sales team to lure away significant clients

3  representing millions of dollars in revenue.  Worse, Pablo and Savino not only

4  continued to take paychecks from IFS but they convinced IFS' employees to remain

5  employed at IFS so that the employees would continue to receive two paychecks,

6  continue to access IFS' confidential and trade secret information as their new

7  enterprise expanded.  Savino, Pablo and the other IFS' employees were working for

8  Legacy on IFS' time and dime.  Emblematic of the malice of Pablo and Savino's

9  enterprise is demonstrated by their decision to use fake names when communicating

10  from Legacy to mask their conflict of interest.  And, after IFS terminated Savino and

11  Pablo's employment, for well over a week, they refuse to return IFS' laptops and cell

12  phone replete with confidential, proprietary and trade secret information.

13  Defendants illegally use and possess IFS' confidential, proprietary and trade

14  secret information to move IFS' clients, take advantage of IFS' vendor relationships

15  and pricing and cherry pick IFS' top employees.

16  IFS requires the Court's assistance to stop the illegal activity and for the

17  immediate return of its financial records, customer contacts and any other

18  confidential, proprietary and trade secret information that is wrongfully in the

19  possession of Defendants, for preservation of evidence and expediting discovery.

20  Unless the Court orders the return of IFS' stolen property, the preservation of

21  evidence and expedited discovery, the already irreparable harm will compound.

## II.  STATEMENT OF FACTS

23  IFS distributes, imports and sells a variety of food, paper, plastic, packaging,

24  janitorial, and smallwares ("Goods") to wholesale and retail business that IFS

25  purchases from vendors and suppliers located in the United States and other

26  countries and IFS distributes those Goods to its customers throughout the United

27  States. (Compl., ¶ 2.)

28  IFS, over the course of many years and at great expense, developed,

7

1  maintained and safeguarded the contact and pricing information of IFS' clients,

2  customer purchase histories, IFS' clients' confidences, vendors, suppliers, product

3  availability, product quality, prospective clients, IFS' financial information, IFS'

4  confidential personnel information, cash flow and other analyses, among other

5  things, to protect its investments and trade secret information.  The confidential

6  nature of its trade secret information provides significant value to IFS by maintaining

7  it in confidence.  Such information would be of great commercial value to its

8  competitors.  (Kershaw Decl. ¶¶ 3 & 4.)

9        IFS, over the course of many years, has undertaken reasonable efforts to

10  protect IFS's confidential and trade secret information, including, among other things

11  requiring, as a condition of employment that its employees enter into confidentiality

12  agreements and agree to protect IFS' confidences and disclose any potential or actual

13  conflict of interest that they might encounter.  (Kershaw Decl. ¶¶ 4, 6-9, Ex. 1-7.)

14        Pablo and Savino have been employed by IFS for many years.  (Kershaw

15  Decl. ¶¶ 6 & 8.)  As a condition of employment, Pablo agreed to the terms of IFS'

16  Employee Handbook including its Code of Ethics, Reporting Irregularities, Conflict

17  of Interest, reporting Potential Conflicts of Interest, Confidentiality Agreement,

18  Employee Proprietary Information and Non-Disclosure Addendum, and Removal of

19  Items and Property, most recently on January 6, 2020 as well as having executed a

20  stand-alone Confidentiality and Non-Disclosure Agreement on April 1, 2004

21  (collectively "Pablo's Employment Agreement"). (*Id.,* ¶¶ 6 & 7, Exs. 2 & 3.)

22        As a condition of employment, Savino agreed to the terms of IFS' Employee

23  Handbook including its Code of Ethics, Reporting Irregularities, Conflict of Interest,

24  reporting Potential Conflicts of Interest, Confidentiality Agreement, Employee

25  Proprietary Information and Non-Disclosure Addendum, and Removal of Items and

26  Property, each of which applied to him as an employee of IFS, as well as having

27  executed a stand-alone Confidentiality and Non-Disclosure Agreement, most

28  recently on December 10, 2019 as well as stand along confidentiality agreements

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1  (collectively "Savino's Employment Agreement"). (*Id.,* ¶¶ 8 & 9, Exs. 4-7.)

2      Pablo and Savino also agreed that should they desire to work in a competing

3  business or encountered any potential conflict of interest, while employed by IFS,

4  that they would alert IFS to the potential employment or conflict and seek IFS'

5  permission before proceeding.  (*See id.*, ¶ 4, Ex. 1, pp. 12-16.)  For many years,

6  Pablo and Savino worked for IFS and obtained relationships with IFS' clients as a

7  result of IFS' confidential and trade secret information, including contact

8  information, introductions, usage of IFS' confidential internal information, and other

9  information gathered at great expense to IFS over a long period of time. They learned

10  IFS' confidential pricing, sales volume, product selection, contact information and

11  other information that leads to sales of goods and that is not publicly available.  (*Id.* ¶

12  10.)

13      However, in March 2021, after years of loyalty, Savino and Pablo met

14  Escamilla and created a scheme to create a new entity, Legacy, an entity that they

15  owned and controlled to secretly take opportunities from IFS and divert IFS'

16  customers to Legacy, all while remaining employed on IFS' time and dime. (*Id.*,

17  ¶¶ 11, 15, 18, Exs. 12 & 13.)

18      When IFS learned of some of these issues. IFS investigated and learned of

19  numerous issues caused by Pablo and Savino.  (*See* Complaint.)  During the

20  investigation, Savino entered into an agreement and admitted to wrongdoing

21  including giving Legacy IFS' confidential vendor and customer contact information,

22  purchase histories, other information and diverting IFS' customers to Legacy.  *Id.* ¶

23  15, Ex. 12.)

24      IFS reminded Savino of his confidentiality obligations to IFS, however, he

25  directly threatened that planned to take IFS' customers from IFS to Legacy. (*Id.*, ¶

26  16.)  On March 31, 2022, after IFS terminated Savino's employment, counsel to IFS

27  demanded that Pablo and Savino return IFS' property, including computers and

28  phones immediately.  (Forman Decl., ¶ 2, Ex. 1.)  For one week following the

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

termination of Savino and Pablo's employment, they refused to return IFS' laptops, phone and storage device containing IFS' confidential and trade secret information. (*Id.*, ¶ 17; Forman Decl. ¶¶ 4 & 7.)  However, the refused to provide all of IFS' confidential and trade secret information that they had taken from IFS for Legacy. Forman Decl. ¶¶ 2 & 10.)

## A.   **IFS Took Reasonable Steps to Protect Trade Secrets.**

IFS sought to protect the disclosure of its confidential and trade information. (Kershaw Decl. ¶¶ 3 & 4, Exs. 1-7.) Pablo and Savino, agreed to:

a.   Only use IFS' confidential and proprietary information and trade secrets for legitimate business purposes of IFS;

b.   Safeguard IFS' confidential information, including "designs, pricing, costs, contracts, business plans, sales data, accounting information, strategic developments, ideas, know-how, research, products, services, customer lists, finances, processes, data, techniques, improvements, inventions (whether patentable or not), works of authorship, business and product development plans, the salaries and terms of compensation of other employees, customers, and other information concerning Individual FoodService's actual or anticipated business";

c.   Protect "All business-related information, including without limitation, documents, notes, files, records, oral information, computer files or similar materials (except in the ordinary course of performing duties on behalf of Individual FoodService) may not be removed from Individual FoodService's premises without permission from Individual FoodService. Additionally, the contents of Individual FoodService's records or information otherwise obtained in regard to business may not be disclosed to anyone, except where required for a business purpose. Employees must not disclose any confidential information, purposefully or inadvertently through casual conversation, to any unauthorized person inside or outside the company. Employees who are unsure about the confidential nature of specific information must ask their supervisor for clarification."

d.      Comply with IFS' policies with regard to computer system data created and stored for IFS and its customers; and

e.      Return all of IFS' confidential information in their possession when their employment with the IFS ceased; and

f.      Disclose and obtain approval for engaging in business activities during the term of their employment that competed with IFS business.

(*See id.,* Ex. 1, pp. 14-18, 82.)

IFS has, at great expense, developed, maintained and safeguarded the contact and pricing information of IFS' clients, customer purchase histories, IFS' clients' confidences, vendors, suppliers, product availability, product quality, prospective clients, IFS' financial information, IFS' confidential personnel information, cash flow and other analyses, among other things, to protect its investments and trade secret information.  (*Id.,* ¶¶ 3 & 4.)  IFS's confidential and trade secret information is of great value to IFS and must be safeguarded as it would be commercially valuable to its competitors, if revealed. (*Id.*)

**B.      Defendants Worked Together to Misappropriate IFS' Confidential, Proprietary, and Trade Secret Documents and Information.**

In or about August, 2021, Pablo introduced Legacy as a customer to IFS.  He shepherded it through the intake and credit check process and never revealed his ownership, control or equity interest in Legacy. (*Id.,* ¶ 11, Ex. 8.)

He omitted any reference to his stake, control or relationship with Legacy. (*Id.*)  In fact, Pablo pretended that if IFS did not expedite its credit check on Legacy that IFS would lose Legacy as a customer.  (*Id.*)

IFS discovered emails on its system that indicate that Pablo and Savino are owners of Legacy.  (*Id.,* ¶¶ 20 & 21, Exs. 15 & 16.)  Emails from Legacy's CPA with links to its Quickbooks accounts, and references to Legacy's CASHSHEET for cash transactions in Los Angeles were recently discovered at IFS.  (*Id.*)  In addition, IFS

discovered that each of Pablo, Savino directed other IFS' employees that it recruited to work for Legacy to send IFS' confidential and trade secret information to their personal email accounts and to forward that information to Pablo and Savino for IFS. (*Id*., Ex. 13[1] ("E1 Decl").)   Pablo and Savino told IFS' employees that they owned Legacy.  (*Id.*)

Pablo and Savino emailed IFS' confidential and trade secret customer contact information, pricing information and more to non-IFS email addresses in violation of their agreements with IFS.  (*Id.,* ¶¶ 12-14, Ex. 9-11.)

Moreover, Legacy's business model or plan included engaging key employees as part of its plan to steal IFS' clients, vendors and prospects and to do so while they continued to be employed and paid by IFS.  In other words, these employees were being paid by IFS while building Legacy's business. (E1 Decl., ¶¶ 5 & 7.)  In addition, Defendants induced the IFS employees being recruited to Legacy to provide Legacy with internal IFS confidential and trade secret information and causing IFS employees to provide Legacy with IFS' confidential, trade secret and proprietary information.  (*Id*., ¶ 9 & Ex. 1).  Savino transported E1 to Legacy in the middle of an IFS workweek and when IFS provided E1 with a sales lead, Savino told E1 to use the IFS lead for his first Legacy sale.  (*Id*., ¶ 5.)  And, Legacy knowingly caused E1 to use his IFS cell phone and cell phone number for Legacy sales.  (*Id*., ¶ 6.)

And, when confronted with IFS' findings, Savino admitted that he:

> participated in an effort to help build and/or aid a competitor known as Legacy Wholesale Group ("Legacy").  Among other things, [Savino] and other employees involved in the effort:

---

[1] Exhibit 13 is the declaration of one of IFS' employees who asked that his name be withheld from open court proceedings and is referred to in the Complaint as E1.  IFS will share his name with counsel to Defendants under an appropriate protective order and with the Court in a confidential manner.

MEMORANDUM OF POINTS AND AUTHORITIES ISO IFS' EX PARTE APPLICATION

        **(i)**    *Provided Legacy with certain IFS vendor and customer confidential contact information, purchase histories, and product availability information, pricing information, sales histories, credit worthiness and preferences, purchase volume, margin and profit information*; and

        **(ii)**    *diverted sales and customers from IFS to Legacy*.

(*Id.,* Ex. 12.)

E1 disclosed that Pablo and Savino cautioned him to adopt a pseudonym to undertake Legacy business and that Pablo operated Legacy under the false name Paollo Ruiz and Savino operated for Legacy under the fake name Sam Ruiz.  (E1 Decl., ¶ 6.)  As a result, IFS was able to locate additional evidence that Pablo and Savino were hiding their relationship with Legacy from IFS by using pseudonyms. (*Id.,* ¶ 19, Ex. 14.)

Defendants are covering up and destroying the evidence.  In conjunction with termination, IFS directed Pablo and Savino to return all of IFS' property, including laptops, cell phones, aircard and other of IFS' property.  (*Id.,* ¶ 17.)  On March 31, 2022, counsel to IFS demanded that Pablo and Savino return IFS's property. (Forman Decl., ¶ 2, Ex. 1.)  On April 4, 2022, counsel to IFS talked to counsel to Pablo and Savino.  Counsel to Pablo and Savino, Mr. Johnson, confirmed that Pablo and Savino possessed IFS' laptops and cell phone equipment but had not turned the equipment over to Mr. Johnson.  Mr. Johnson stated that he would discuss the situation with them and follow up with IFS' counsel about the return of IFS' property.  Following Mr. Forman's April 6, 2022 notice that IFS intended to seek ex parte injunctive relief, a preservation order and expedited discovery, Mr. Johnson's office confirmed that it would cause the devices to be delivered.  (Forman Decl., ¶¶ 6 & 7.) Each passing day risks additional irreparable harm should other IFS equipment be destroyed, stolen, and as IFS' trade secrets and other information are used by Defendants without any check.

MEMORANDUM OF POINTS AND AUTHORITIES ISO IFS' EX PARTE APPLICATION

### III.  **COURT SHOULD PROTECT IFS FROM IRREPARABLE HARM**

**A.**     ***Ex Parte* Relief is Proper Under these Circumstance.**

Rule 65 of the Federal Rules of the Civil Procedure permits *ex parte* injunctive relief where the moving party sets forth facts that show an immediate and irreparable injury and why notice should not be required. Fed. R. Civ. P. 65(b)(1); see *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974) ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances….")  It is well established that *ex parte* relief is appropriate under circumstances such as the instant case, where duly-noticed relief would render the requested relief *ineffective.  Crosby v. Petromed, Inc.*, 2009 WL 2432322, at *2 (E.D. Wash., Aug. 6, 2009) (granting *ex parte* TRO as "notice to Defendants of this TRO request could result in further injury or damage to Plaintiffs….")

The standard for a TRO and preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc*., 555 U.S. 7, 21 (2008)).

**B.**     **Court Should Order TRO On *Ex Parte* Basis Under Rule 65.**

IFS requests a TRO requiring that Defendants Pablo, Legacy, Savino, and Escamilla, their representatives, agents, employees and any other person acting in concert with Defendants or at Defendants' direction are precluded from possessing IFS' confidential, proprietary and trade secret information, personal property of IFS that Defendants have no interest in and schedule a Preliminary Injunction hearing and briefing.

This court may issue a temporary restraining order ("TRO") and preliminary injunction to prevent "immediate and irreparable injury, loss, or damage [ ] to the movant…" Fed. R. Civ. P. 65(b)(A).  The movant must establish (1) that it will be irreparably harmed absent temporary injunctive relief and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make it fair ground for litigation and balancing of hardships tipping decidedly in its favor. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  IFS is likely to succeed on the merits of the trade secrets claim under the DTSA, the California Uniform Trade Secrets Act ("CUTSA"), breach of contract, breach of the duty of loyalty and inducing IFS' other employees to breach their duty of loyalty, all warranting the requested TRO.

### 1.      IFS will be irreparably harmed absent a TRO.

If Defendants are not prohibited from continuing to exploit IFS' misappropriated confidential, proprietary and trade secret information, or using or disclosing any confidential, proprietary and trade secret information, then there is a significant risk that they will continue to use IFS' confidential, proprietary and trade secret information in a manner that will further perpetrate irreparable harm to IFS' relationships with its clients and employees.

"In general, the imminent use of a trade secret constitutes irreparable harm." *Gallagher Benefits Servs., Inc. v. De La Torre*, No. C 07-5495 VRW, 2007 WL 4106821, at *5 (N.D. Cal. Nov. 16, 2007), *order aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. Appx 543, 546 (9th Cir. 2008) ("[T]he goodwill and customers that Gallagher would lose absent equitable relief supports [the lower court's] finding of irreparable injury.") A plaintiff will suffer irreparable harm if its proprietary information is misappropriated. *W. Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945, at *6 (N.D. Cal., June 8, 2009) ("And it is probable that Plaintiff will suffer irreparable harm if Defendants make misrepresentations concerning its business practices or otherwise

MEMORANDUM OF POINTS AND AUTHORITIES ISO IFS' EX PARTE APPLICATION

1  interfere with its relationships with its advertisers.")

2      "[A]n intention to make imminent or continued use of a trade secret or to
3  disclose it to a competitor will almost always certainly show irreparable harm." *Pac.*
4  *Aerospace & Elec., Inc. v. Taylor*, 295 F.Supp.2d 1188, 1198 (E.D. Wash. 2003)
5  (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92–93 (3rd Cir. 1992)).
6  "Evidence of threatened loss of prospective customers or goodwill certainly supports
7  a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales v. John D.*
8  *Brush & Co.*, 240 F.3d 832, 841(9th Cir. 2001).

9      The threat to IFS is immediate and irreparable.  Defendant Savino's own
10  statement confirmed that he gave Legacy IFS' "vendor and customer confidential
11  contact information, purchase histories, product availability information, pricing
12  information, sales histories, credit worthiness and preferences, purchase volume,
13  margin and profit information."  In addition, Savino represented to IFS that he
14  "***diverted*** sales and customers from IFS to Legacy."  (Kershaw Decl., Ex. 12
15  (emphasis added).)  E1 testified that Defendants induced him to breach his duty of
16  loyalty to IFS by giving an IFS lead to Legacy, working during IFS' business hours
17  for Legacy and to use a fake name while working for Legacy.  (E1 Decl., ¶ 5&7.)

18      Pablo and Savino emailed IFS' confidential and trade secret information
19  outside of IFS.  (*Id.,* ¶¶ 12-14, Exs. 9-11.)

20      And, Pablo and Savino took IFS' laptops and phones and refused to return
21  them putting the integrity of those sources of IFS' confidential and trade secret
22  property at risk.  (*Id.,* ¶ 17, Forman Decl., ¶¶ 2, 6 & 7.)

23      If Defendants are not stopped, they will continue to use IFS' confidential,
24  proprietary and trade secret information to steal customers, undermine vendor
25  relationships and take key employees from IFS, unfairly depriving IFS of its long
26  developed relationships and goodwill by diverting IFS' clients to Legacy.  (Forman
27  Decl., ¶ 10.)  Further, they are depriving IFS of its personal property and trade
28  secrets. Thus, IFS has and will be irreparably harmed absent an order of this Court.

1        **2.     Balance of hardships tip strongly in favor of IFS and the Public**
2              **Interest.**

3        The balance of hardships in this case likewise compels the issuance of the
4    requested relief. IFS will suffer further irreparable harm if Defendants are allowed to
5    continue accessing, using, disclosing, or making available confidential, proprietary
6    and trade secret information; violating their agreements with IFS; or any other
7    actions to injure IFS. By contrast, Defendants will suffer no hardship if relief is
8    granted as they are only prevented from using information to which they have no
9    legitimate claim.

10       The absence of hardship to Defendants weighed against the certainty of
11   irreparable harm to IFS, tips the balance of hardships heavily in favor of IFS and a
12   TRO. *Wyndham Resort Dev. Corp. v. Bingham*, 2010 WL 2720920, at *6-7 (E.D.
13   Cal. July 8, 2010) (court agreed balance of hardships weighed in favor of plaintiff
14   where defendants had no legitimate interest in the unauthorized disclosure of a
15   party's proprietary business information); *Regents of Univ. of Cal. v. Am. Broad.*
16   *Cos.*, 747 F.2d 511, 515 (9th Cir. 1984) (balance of the hardships favored the
17   plaintiff where the defendants would suffer no appreciable hardship).

18       "The public interest is served when [a] defendant is asked to do no more than
19   abide by trade laws and the obligations of contractual agreements signed with [his]
20   employer. Public interest is also served by enabling the protection of trade secrets."
21   *Henry Schein vv. Cook*, 191 F.Supp.3d 1072, 1078 (N.D. Cal. 2016) (citing *Bank of*
22   *Am., N.A. v. Lee*, No. CV 08– 5546 CAS (JWJX), 2008 WL 4351348, at *7 (C.D.
23   Cal. Sept. 22, 2008).) Accordingly, the public interest is served by ordering
24   Defendant to abide by trade laws and protect Plaintiff's trade secrets.

25       There is no hardship to Defendants from stopping the use of IFS' trade secrets
26   for Legacy, the balance tips in IFS's and the public's favor to impose the requested
27   TRO.

28

CDF Labor Law LLP

1954300.1

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

3. **IFS is likely to succeed on the merits of its trade secrets misappropriation claim under the DTSA.**

Congress enacted the DTSA to provide a "single, national standard for trade secret misappropriation with clear rules and predictability for everyone involved." *See H.R. Rep.* 114-529, Defend Trade Secrets Act of 2016 (Apr. 26, 2016). The DTSA defines "trade secret" broadly to include:

> *all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas* ... whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information....

18 U.S.C. § 1839(3) (emphasis added). Specifically, the DTSA covers "all forms and types of financial, business ... information" if (1) the owner has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to the public.

The information at issue here is trade secrets under the DTSA. Defendants are using IFS' trade secret information, including the names, contact information, pricing of IFS' customers and suppliers, and IFS's own employees to expand and develop Legacy's developing business.

Pablo and Savino agreed (1) not to use IFS' confidential and proprietary business information for his/her own benefit; (2) not to divulge or disclose confidential and proprietary business information to anyone outside of IFS; and (3) if faced with a conflict or potential conflict to seek IFS' permission to move forward.

1   (Kershaw Decl., ¶¶ 4-9. Exs. 1-7.)  IFS derives significant economic value from its

2   trade secret information.  (Compl., ¶¶ 45 & 55 ; *see* Kershaw Decl., ¶¶ 3&4.)

3          Defendants also misappropriated these trade secrets through improper means.

4   The DTSA defines "misappropriation" as the "acquisition of a trade secret of another

5   by a person who knows or has reason to know that the trade secret was acquired by

6   improper means." 18 U.S.C. § 1839(5)(A).  The term "improper" includes "theft,

7   bribery, ***misrepresentation***, ***breach or inducement of a breach of a duty*** to maintain

8   secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A)

9   (emphasis added).  Even one email is sufficient to demonstrate misappropriation of a

10  trade secret. *Sun Distributing Co. v. Corbett*, 2018 WL 4951966 (S.D. Cal. Oct. 12,

11  2018).

12         Pablo and Savino surreptitiously took IFS' trade secrets by sending them to

13  their personal email accounts outside IFS. Pablo brought Legacy to IFS as a potential

14  client, omitted critical information about his relationship to Legacy, but claimed that

15  if IFS did not rush the credit process IFS might lose Legacy as a customer to a

16  competitor.  In addition, Pablo and Savino used fake names to do business for

17  Legacy so their relationship with Legacy would remain hidden and they recruited

18  IFS' employees, coerced them to provide additional IFS' trade secret and

19  confidential information, instructed them not to disclose their plans and to use a

20  pseudonym to camouflage their work with Legacy from IFS. (Kershaw Decl., ¶¶ 12-

21  14, Exs. 9-11; E1 Decl., ¶¶ 5-9, Ex. 1.)   Indeed, Savino admitted to misappropriation

22  of IFS' confidential information and diversion of IFS' customers, (Kershaw Decl.,

23  Ex. 12.)

24         Pablo and Savino's notorious actions breach their contracts to maintain

25  confidential information confidential, to report conflicts and potential conflicts of

26  interest, the duty of loyalty owed to IFS, are "improper" establishing

27  misappropriation of trade secrets under the DTSA.

28

CDF Labor Law LLP

1954300.1

1    **4.    IFS is likely to succeed on the merits of its trade secrets**
2    **misappropriation claim under the CUTSA.**

3    The DTSA analysis is equally applicable under CUTSA, "Trade secret means

4    information, including a formula, pattern, compilation, program, device, method,

5    technique, or process, that: (1) derives independent economic value, actual or

6    potential, from not being generally known to the public or to other persons who can

7    obtain economic value from its disclosure or use; and (2) is the subject of efforts that

8    are reasonable under the circumstances to maintain its secrecy." *See* Cal. Civ. Code §

9    3426.1(d); see also *Fortinet Inc. v. FireEye Inc.*, 2014 WL 4955087, at *7 (N.D.

10   Cal., Sept. 30, 2014) (finding non-public proprietary competitive knowledge and

11   intelligence could be trade secrets).  IFS confidential information meets both

12   requirements. And, as California law defines "improper means" as "theft, bribery,

13   misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

14   espionage through electronic or other means"). Cal. Civ. Code § 3426.1(a).  Defendants'

15   acts described above are improper.  Indeed, Savino admitted to misappropriation and

16   diversion of IFS' customers, (Kershaw Decl., Ex. 12), and it cannot be seriously in

17   dispute.

18   **5.    IFS is likely to succeed on its breach of contract and inducement of**
19   **breach of contract claim.**

20   Given the substantial evidence described herein, IFS will also succeed on its

21   breach of contract claim against Pablo and Savino.  To prove a breach of contract

22   claim, IFS must show the existence of a contract, its terms establishing the

23   obligations at issue, the breach of those obligations, and resulting damages.  *See FPI*

24   *Dev., Inc., v. Nakashima*, 231 Cal. App. 3d 367, 383 (1991). Express confidentiality

25   provisions, such as that agreed to by Pablo and Savino, are valid and enforceable in

26   California, and a breach of such agreement may be pursued as a breach of contract

27   claim. *See, e.g., Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 4044867, at

28   *3 (N.D. Cal., Nov. 15, 2007).

20

1954300.1

1  Under agreement with IFS, Pablo and Savino (a) agreed to return all of IFS
2  property to IFS at termination, (b) maintain the confidentiality of IFS confidences
3  and trade secrets; and (c) when faced with a potential conflict of interest to get
4  clearance from upper management.  (Kershaw Decl., ¶¶ 4-9, Exs. 1-7.)  Pablo and
5  Savino breached their contractual obligations, refuse to return IFS confidential,
6  proprietary and trade secret information, and used the ill-gotten information for their
7  own benefit, and the benefit of Legacy.  Moreover, they caused employees, like E1
8  to breach his contractual obligations to IFS.

9        **6.**    **IFS is likely to succeed on its breach of breach of duty of loyalty and**
10      **inducement of breach of duty of loyalty.**

11  California employees owe a duty of loyalty to their employers.  Cal. Lab. Code
12  section 2860 & 2863.   Everything that such employees acquire by virtue of their
13  employment, except the compensation that was due to them, belongs to their
14  employer, whether acquired lawfully or unlawfully, or during or after the expiration
15  of the term of their employment.  In addition, employees must give preference to
16  their employer before transacting any business similar to that of their employer for
17  their own account.

18  Pablo and Savino surreptitiously and deceitfully started Legacy, a competing
19  business without IFS' consent, they never offered any of the opportunities presented
20  to Legacy to IFS.  To the contrary, on IFS' time and dime, they sought to employ
21  IFS' employees and build Legacy's business. Savino admitted to taking IFS'
22  confidential information for Legacy and to diverting IFS' clients to Legacy.

23  Moreover, E1's testimony is clear that Pablo and Savino induced him to
24  provide them with IFS' confidential trade secret information, and use IFS' prospect
25  leads for Legacy's business.  Thus, IFS will succeed on these claims, too.

26  **C.**   **IFS is Entitled to an *Ex Parte* Order to Preserve Evidence Under Fed. R.**
27     **Civ. P. 65 and the Court's Inherent Authority.**
28  This court has the inherent authority to make appropriate evidentiary rulings

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

CDF Labor Law LLP

1954300.1

1  and issue orders to prevent the destruction or spoliation of relevant evidence. *See*

2  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  "Federal courts have the

3  implied or inherent power to issue preservation orders as part of their general

4  authority 'to manage their own affairs so as to achieve the orderly and expeditious

5  disposition of cases.'"  *Artec Grp., Inc. v. Klimov*, 2016 WL 4474614, at *1 (N.D.

6  Cal., Aug. 25, 2016) (*quoting Pueblo of Laguna v. United States*, 60 Fed. Cl. 133,

7  135 (2004)).  "[C]ourts have held that they have the inherent power to order that

8  evidence be preserved and have, for good cause, required that specific procedures be

9  adopted to ensure such preservation."  *Pueblo of Laguna v. United States*, 60 Fed. Cl.

10  133, 135 (2004).  *Schein v. Cook* ordered an injunction and preservation of

11  documents in a similar case where a salesperson took confidential, proprietary and

12  trade secret documents and information with the goal of diverting customers.  *Schein,*

13  191 F.Supp.3d at 1074-75, 1078-79.

14          Pablo and Savino deceitful behavior regarding their plans to compete against

15  IFS confirms the serious risk that Defendants will destroy evidence that is critical to

16  IFS ability to try its case. Savino admitted to taking the information to divert IFS'

17  customers to Legacy.  Likewise, they refuse to return IFS' laptops and phone.  As

18  such, it is extremely likely that Defendants will hide or destroy evidence to cover up

19  their wrongdoing.  Therefore, a preservation order is necessary pursuant to Rule 65,

20  and this Court's inherent power.  Accordingly, IFS specifically requests that this

21  Court, issue an order requiring Defendants Pablo, Legacy, Savino, and Escamilla,

22  their representatives, agents, employees and any other person acting in concert with

23  Defendants or at Defendants' direction must:

24          (a)     preserve all copies of IFS' confidential, proprietary and trade

25  secret information, including but not limited to, customer and prospective customer

26  contact information, vendor information, all proposals, business plans and business

27  models prepared to solicit investment or the establishment of any business, including

28  the business that became Legacy, plans to employ persons for Legacy, as well as all

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1 copies of documents and information derived from these sources;

2          (b)     preserve any communication(s) related to the use of IFS'

3 confidential, proprietary and trade secret information;

4          (c)     preserve any communications with prospective or actual

5 investors, lenders, applications for credit, applications for any licensing, bond,

6 insurance or workers' compensation insurance for the creation of the business to

7 compete against IFS, or Legacy;

8          (d)     preserve each electronic device (computer, laptop, tablet, phone,

9 data storage device, email accounts, and all associated passwords collectively

10 "Devices") taken from IFS, and/or used for the formation of Legacy and/or the

11 business of Legacy,

12          (e)     preserve any communications with IFS' clients or former clients:

13 and

14          (f)     preserve any communications from Pablo, Savino, Escamilla or

15 any other representative of Legacy to recruit or attempt to recruit IFS' employees to

16 work for Legacy.

17 **D.     Good Cause Justifies Expedited Discovery.**

18          "A party may not seek discovery from any source before the parties have

19 conferred as required by Rule 26(f)," unless otherwise authorized by the Rules,

20 stipulation of the parties, or court order.  Fed. R. Civ. P. 26(d)(1).  A court may grant

21 a request for early discovery prior to Rule 26(f) conference where the requesting

22 party demonstrates good cause.  *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208

23 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for

24 expedited discovery, in consideration of the administrative of justice, outweighs the

25 prejudice to the responding party." *Id.*

26          Expedited discovery is necessary to determine the extent to which Defendants

27 have disclosed and used IFS' confidential, proprietary and trade secret information

28 and harmed IFS' business relationships with its clients and suppliers with their

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

disruptive and deceitful practices. Justice requires expedited discovery so that IFS is able to determine *as swiftly as possible* the extent to which Defendants disclosed and continue to misappropriate IFS' trade secrets and confidential information.  This discovery is important for IFS' ability to remediate and mitigate against the harm that Defendants' wrongdoing has already caused.  The information gained from this expedited discovery request is crucial to supporting a subsequent motion for preliminary injunction.  Moreover, there is no prejudice to Defendants as IFS' request is narrowly constructed.

Courts commonly consider several factors to determine whether good cause exists for expedited discovery: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [party opposing expedited discovery,] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Apple Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LBK, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011).  All factors tip sharply in favor of granting IFS' request for expedited discovery as IFS focuses on a narrow band of initial discovery.

Expedited discovery is likely to provide critical facts regarding the scope of Defendants' taking, use and disclosures of IFS' confidential, proprietary and trade secret information. And, it is the best path to enable IFS to quickly determine what steps may be necessary to mitigate the damage Defendants have already caused. Accordingly, IFS seeks an order stating that:

(1)    Each Defendant shall produce, by delivery to Plaintiff's counsel, any and all documents and communications that are in its possession, custody or control and that originated at IFS within 7 days of this Order, or such other date to which IFS' counsel agrees;

(2)    Each Defendant shall produce, by delivery to Plaintiff's counsel,  any and all documents and communications reflecting efforts to seek investments or

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

1  partners to develop an entity to compete with IFS or for the entity that became

2  Legacy, including any business plans, financial models, prospective customer lists,

3  prospective vendor lists, prospective employee lists, and applications for any

4  licensing, credit, bond, insurance or workers' compensation insurance, records within

5  7 days of this Order, or such other date to which IFS' counsel agrees;

6      (3)    Each Defendant shall produce, by delivery to Plaintiff's counsel, any

7  documents and communications reflecting Defendants' communications and

8  negotiations relating to the business that became Legacy, including its Cash

9  Spreadsheet, Quickbooks OnLine Plus, customer accounts and corporate records,

10  including records of ownership of any equity of Legacy within 7 days of this Order,

11  or such other date to which IFS' counsel agrees;

12      (4)    Each Defendant shall produce, by delivery to Plaintiff's counsel, any

13  documents and communications reflecting Defendants' communications to IFS'

14  employees about prospective employment at Legacy, within 7 days of this Order, or

15  such other date to which IFS' counsel agrees;

16      (5)    Each Defendant shall produce, by delivery to Plaintiff's counsel, all

17  employment, consulting or independent contractor agreements between Legacy and

18  any of IFS' employees or former employees within 7 days of this Order, or such

19  other date to which IFS' counsel agrees;

20      (6)    Each Defendant shall produce, by delivery to Plaintiff's counsel, all

21  documents and communications reflecting any negotiations between Legacy and any

22  of IFS' employees or former employees within 7 days of this Order, or such other

23  date to which IFS' counsel agrees;

24      (7)    Each Defendant shall produce, by delivery to Plaintiff's counsel, all

25  ownership information about Legacy, including any offers of equity or profit sharing

26  made to any of IFS' employees or former employees within 7 days of this Order, or

27  such other date to which IFS' counsel agrees;

28      (8)    Each Defendant shall produce, by delivery to Plaintiff's counsel, any

CDF Labor Law LLP

1954300.1

1  documents that Pablo and Savino provided to Legacy's investors, backers,

2  prospective investors, or lenders, including identifying, prospective clients, business

3  relationships, prospective employees, contact information, projected sales, suppliers,

4  profitability and expenses, within 7 days of this Order, or such other date to which

5  IFS' counsel agrees;

6  (9)    Each Defendant shall produce, by delivery to Plaintiff's counsel, each of

7  the Devices utilized in conjunction with the formation of Legacy and/or the business

8  of Legacy within 7 days of this Order, or such other date to which IFS' counsel

9  agrees, to allow IFS' counsel to image and inspect the Devices; and

10  (10)   Pablo, Savino and Escamilla shall each appear for deposition at CDF

11  Labor Law's Los Angeles offices for a deposition of no more than a three hour

12  duration within 30 days of the date of this Order or such other date to which counsel

13  agree, without prejudice to Plaintiff taking a full seven hour deposition of each of

14  Pablo, Savino and Escamilla later in the case.

15  **1.    Temporary restraining order is pending.**

16  The first factor of granting expedited discovery is a pending preliminary

17  injunction.  While a hearing on the preliminary injunction hearing has not been set,

18  such relief has been requested in IFS' Complaint.  Furthermore, this *ex parte*

19  application requests a temporary restraining order which is a form of injunction

20  under Federal Rule of Civil Procedure 65.  Expedited Discovery in this case will help

21  IFS determine, among other things, "those acting in concert or participating" with

22  Defendants and the extent of harm to IFS so that those matters, and related issues,

23  can be properly addressed in the preliminary injunction hearing.

24  **2.    The breadth of the discovery request is proper.**

25  Second, the breadth of discovery requests is proper because IFS seeks narrow

26  expedited discovery limited to (1) the production of documents taken from IFS,

27  documents related Defendants' efforts to transfer clients and employees, (2)

28  inspection of electronic devices, and (3) narrowly-tailored depositions of the three

26

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

individual defendants.  IFS seeks information necessary to mitigate unlawful harm to IFS by Defendants' misappropriation of trade secrets and for further support for its anticipated Preliminary Injunction request.

In *Pyro Spectaculars North, Inc. v. Souza*, expedited discovery was properly focused on any confidential and proprietary information allegedly misappropriated and whether the plaintiff stood to suffer irreparable harm as a result of defendants' alleged misconduct." 861 F.Supp.2d, 1079, 1096-97 (E.D. Cal. 2012).  Courts have concluded that expedited discovery is warranted in trade secret misappropriation cases in order to determine the full extent of a defendant's unlawful conduct prior to a preliminary injunction hearing. *See Posdata Co. Ltd. v. Kim*, 2007 WL 1848661, at *9 (N.D. Cal., June 27, 2007) (court granted expedited discovery in the form of a narrowly-tailored document request and interrogatory in a trade secret misappropriation case when Plaintiff requested to "further uncover Defendants' unlawful conduct prior to the preliminary injunction hearing."); *Pyro Spectaculars*, 861 F.Supp.2d at 1096-97 (court found that expedited discovery that consisted of (1) forensic examinations of computers and other electronic storage media and (2) depositions and document requests were sufficiently narrow.)

### 3.   IFS has compelling reasons for expedited discovery.

The third factor also tips in favor of IFS because the purpose for requesting the expedited discovery is closely tied to breadth of the discovery sought. IFS seeks discovery focused solely on the scope of Defendants' taking and disclosure of IFS' confidential, proprietary and trade secret information to help avoid further irreparable harm.  Specifically, IFS seeks to learn the "who," "what," "when," and "how" regarding Defendants' use and dissemination of IFS' confidential, proprietary and trade secret information to Defendants.  The information IFS seeks is necessary to assessing the scope of the disclosure and accordingly, how to remediate and to mitigate the harm it continues to suffer.  Defendants secretive and malicious actions risk permanently destroying the goodwill between IFS and its customers, its vendors,

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION

CDF Labor Law LLP

1954300.1

1  create confusion amongst IFS' clients and employees for Legacy's wrongful gain.

2  The damage to IFS is irreparable.

3      **4.    Defendants will not be unduly burdened by limited expedited**

4          **discovery.**

5      Fourth, Defendants will not be unduly burdened by limited expedited

6  discovery. IFS requests are narrowly drawn and reasonably seek information related

7  to Defendants' misappropriation of IFS confidential, proprietary and trade secret

8  information. In any event, Defendants will have to produce this basic information in

9  this litigation. *See Renaud v. Gillick*, 2007 WL 98465, at *2 (W.D. Wash., Jan. 8,

10 2007) (finding no prejudice to defendants where the requested documents already

11 existed and would surface during the normal course of discovery.)  Producing the

12 requested information on an expedited basis will not meaningfully impact either

13 Defendants' burdens or obligations. *See Pyro Spectaculars*, 861 F.Supp.2d at 1096-

14 97 (finding no prejudice to defendant where plaintiff requested 1) forensic

15 examination of computers and other electronic storage media and 2) sufficiently-

16 narrow depositions and document requests).

17     **5.    The typical discovery timeline is not appropriate considering the**

18         **impending harm to IFS.**

19     Finally, the fifth factor also tips strongly in favor of IFS. Under the current

20 timeline, the initial case management conference has not been set.  As discussed

21 above, the theft of confidential, proprietary and trade secret information from IFS to

22 Defendants is time sensitive, and IFS desires to avoid further harm or any harm to

23 any of its clients or employees.  If discovery is conducted on the normal schedule,

24 additional irreparable harm is sure to occur, as IFS will have no way to manage and

25 mitigate the transfers or loss of goodwill that already occurred.

26     Thus, it is imperative that IFS quickly expose the extent to which Defendants

27 disclosed its confidential proprietary and trade secret information and have

28 communicated with IFS.

1

## IV. <u>CONCLUSION</u>

2   Without *ex parte* relief or an expedited hearing in this case, Defendants will

3  continue to use IFS' confidential, proprietary and trade secrets information, hire

4  away other key employees, take its goodwill, divert its business to Legacy, and

5  endanger IFS business relationships and therefore, IFS respectfully requests that this

6  Court grant the instant application for a TRO, set a schedule for hearing and briefing

7  Preliminary Injunction, order Preservation of Evidence, and Expedited Discovery.

8

9  Dated:  April 7, 2022                    CDF LABOR LAW LLP
                                            Amy S. Williams
10

11                                          By: _____ */s/ Dan M. Forman*_____
12                                                      Dan M. Forman
                                            Attorneys for Plaintiff
13                                          PERRIN BERNARD SUPOWITZ, LLC, a
                                            California LLC dba INDIVIDUAL FOODSERVICE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CDF Labor Law LLP

1954300.1

MEMORANDUM OF POINTS AND
AUTHORITIES ISO IFS' EX PARTE
APPLICATION