**LESOWITZ GEBELIN LLP**
Scott M. Lesowitz (SBN 261759)
    scott@lawbylg.com
Steven T. Gebelin (SBN 261507)
    steven@lawbylg.com
8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211
Telephone: (310) 341-3072; Facsimile: (310) 341-3070

**JOHNSON & RAWI PC**
Jeffery W. Johnson (SBN 133467)
    jjohnson@johnsonrawi.com
99 South Lake Avenue, Suite 208, Pasadena, California 91101
Telephone: (626) 585-5663; Facsimile: (626) 239-3630

*Attorneys for Defendants* Pablo Morales, Savino Morales, Sergio Escamilla, and Legacy Wholesale Group, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, dba INDIVIDUAL FOODSERVICE,<br><br>Plaintiff,<br><br>v.<br><br>PABLO MORALES, LEGACY WHOLESALE GROUP, LLC, SAVINO MORALES, SERGIO ESCAMILLA, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:22-cv-02120 ODW(JEMx)<br>[Assigned to the<br>*Honorable Otis D. Wright, II*]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR: (1) TEMPORARY RESTRAINING ORDER and SCHEDULING HEARING ON PRELIMINARY INJUNCTION; (2) PRESERVATION OF EVIDENCE; AND (3) EXPEDITED DISCOVERY** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………2
OPPOSITION MEMORANDUM:
I. INTRODUCTION.................................................................................3
II. PLAINTIFF'S REQUESTED RELIEF IS CONTRADICTORY .................5
III. STATEMENT OF FACTS......................................................................6
    A. Savino and Pablo's Employment at IFS..........................6
    B. Savino, Pablo, and Escamilla Start Legacy.....................7
    C. IFS Terminates Pablo and Savino ...................................8
    D. Savino and Pablo Acted Diligently to Return their IFS Devices …………………………………………………...…….9
    E. Mischaracterizations about Documents and Anonymous Witnesses.................................................9
IV. ARGUMENT: THE COURT SHOULD DENY THE APPLICATION FOR A TRO; DEFENDANTS DID NOT AND WILL NOT MISAPPROPRIATE TRADE SECRETS................................10
    A. IFS's Only Supposed Evidence of Misappropriation is Inadmissible ................................................................12
    B. Defendants Do Not Possess or Have Access to IFS's Trade Secrets .......................................................................13
    C. IFS Did not Take Reasonable Steps to Maintain the Secrecy of the Alleged Trade Secrets ....................................14
    D. IFS's Customer List and Pricing Information Lack Value 15
        1. IFS's Customer List.......................................................15
        2. Pricing Information .......................................................16
        3. IFS Does not Provide Sufficient Evidence of Value 16
V. ARGUMENT: THE COURT SHOULD DENY THE REQUESTS FOR EARLY DISCOVERY.....................................................16
VI. CONCLUSION ..................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Abba Rubber Co. v. Seaquist*, 235 Cal.App.3d 1, 19 (1991) .................................. 15

*American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1325 (1986) ...................................................................... 13

*Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564, 575 (2009) ..................... 11

*Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 945 (2008) ............................... 11

*Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1458-59 (2002) ...................... 11

**OPPOSITION TO APPLICATION FOR A TRO AND OTHER RELIEF**

## I. INTRODUCTION

In its Application for a Temporary Restraining Order, Plaintiff Perrin Bernard Supowitz, LLC, dba Individual Foodservice ("IFS") raises meritless arguments that Defendants misappropriated trade secrets in an improper attempt to stop two former salesmen from competing against IFS. The Court should deny the Application. The Court should not stop two salesmen from earning their livelihood based on weak, conclusory, and incorrect allegations of trade secret misappropriation by their large former employer.

IFS resells a large variety of items that any restaurant or food distributor would need, such as cooking oils, coffee, cereals, napkins, cookware, kitchen equipment, janitorial equipment, utensils, aprons, and first aid items. IFS is suing two salesmen who worked on commissions that IFS recently fired, Defendants Pablo Morales ("Pablo") and Savino Morales ("Savino"), along with their business partner, Attorney Sergio Escamilla ("Escamilla"), and the company they created, Legacy Wholesale Group, LLC ("Legacy"). Savino and Pablo were not executives or managers of IFS. They were not working for IFS under an employment contract.

Savino and Pablo have returned their IFS work computers, cellphones, and devices to IFS. They do not possess IFS trade secrets. There is no possible imminent harm that required IFS to file an application for a TRO.

It is unclear exactly what trade secrets IFS asserts Defendants misappropriated, but it appears the following are at issue: (a) the names and contact information of IFS customers, (b) the prices that vendors charged IFS for products, and (c) the prices that IFS charged its customers for products. However, none of this information constitutes a trade secret. Also, even if any of it did, Defendants did not misappropriate any of it, and they do not currently have access to any of it.

As for customer lists, Pablo and Savino did not have access to IFS's entire customer list. They only had access to information about the customers they

serviced. Additionally, IFS's customer list is not possibly a trade secret. California law only potentially protects customer lists if the plaintiff services a niche market within an industry and it is difficult to determine which businesses are potentially interested in the products or services offered. This is not such a case. Here, IFS resold a large assortment of items that any restaurant or food distributor would need.

As for prices vendors charged IFS, Defendants never had access to that information. Additionally, prices of products change rapidly, and such information quickly becomes stale. Furthermore, it is no secret who IFS's vendors are. IFS listed its vendors and specific products available for sale on its webpage. Also, IFS does not claim that it entered into any confidentiality agreements with its vendors.

As for the prices IFS charged its customers, Defendants only had access to information about how much their customers were being charged. Also, prices change frequently; pricing information quickly becomes stale. Defendants' long-time practice is to simply ask customers and potential customers how much they currently pay for products in order to see if they can offer a lower price. Also, IFS does not claim that it entered into any confidentiality agreements with its customers.

Additionally, IFS's own actions after terminating Savino and Pablo show that they do not sufficiently treat as secret any of the information at issue in the Application. The earnings statements that IFS provided Savino and Pablo are the only documents that Defendants currently have access to that contain IFS pricing information. When IFS terminated Savino and Pablo and demanded a return of all confidential information, IFS provided new earnings statements to Savino and Pablo. These earnings statements listed IFS customers that Savino and Pablo serviced that recently purchased items and listed items that those customers purchased and the prices the customers paid. IFS did not mark the document as confidential or say they were to be treated confidentially or as a trade secret.

Finally, IFS's supposed evidence of trade secret misappropriation consists of supposed representations contained in a March 29, 2022, "agreement" that IFS

recently coerced Savino to sign without letting him consult with an attorney and that Savino quickly revoked. These statements are clearly inadmissible, and it is highly improper that IFS is attempting to use them. The agreement states, "The negotiations and terms of this Agreement are to remain confidential as mediation privileged under Evidence Code section 1119, except as may be necessary to enforce the Agreement." Doc. no. 13-12, p. 4, Par. 3.2. (The agreement called for IFS not to sue Savino and governs his future employment; IFS is clearly not attempting to enforce it.)

      IFS, likely knowing that its evidence of trade secret misappropriation is flimsy, attempts to confuse the issues by presenting evidence that Defendants took business opportunities from IFS while Savino and Pablo were still working for IFS. Savino and Pablo took care not to compete with IFS or take opportunities from IFS, as laid out in their declarations. However, it is irrelevant. IFS does not even argue that a court may prohibit a defendant from doing business with a customer in the future in response to a violation of the duty of loyalty that did not also involve misappropriation of a trade secret. Whether IFS may eventually obtain monetary damages for violations of the duty of loyalty is a wholly separate question from whether preliminary injunctive relief is appropriate.

## II. PLAINTIFF'S REQUESTED RELIEF IS CONTRADICTORY

      Initially, before presenting the Statement of Facts or additional arguments, Defendants note that the Court should deny IFS's Application in full, if for no other reason, because IFS's requested relief is inherently contradictory.

      IFS's "Ex Parte Application for a Temporary Restraining Order," requests an order that Defendants be "precluded from possessing" and "required to return…without maintaining copies…IFS' confidential, proprietary and trade secret information." Doc. 10, p. 4 of 8, (1)(a) & (1)(c). IFS also requests that Defendants be precluded from possessing "any information derived from these sources." Doc. 10, p. 4 of 8, (1)(a).

*IFS v. Morales, et al.*  
USDC, Case No. 2:22-cv-02120 ODW(JEMx)  
5  
**Opposition to *Ex Parte* Application for TRO, etc.**

In complete contradiction to the above requests, IFS's "Ex Parte Application for a Preservation of Evidence Order" requests the Court to issue an order that Defendants must "preserve all copies of IFS' confidential, proprietary and trade secret information… as well as all copies of documents and information derived from these sources…" Doc. no. 10., p. 5 of 8, (1)(a).

Defendants cannot comply with an order requiring them BOTH (a) to return and dispose of all documents containing IFS's trade secrets, AND (b) to preserve all copies of documents containing IFS's trade secrets.

### III.  STATEMENT OF FACTS

#### A.  Savino and Pablo's Employment at IFS

IFS sells a wide-variety of food-service related products to customers that virtually any restaurant, market, or food seller would need to purchase, such as bulk food and beverage products (rice, grains, cereals, flour, coffee, soft drinks, oil, sugar, spices, and so on), food packaging, plates, soap dispensers, cookware, gloves, aprons, utensils, forks, bags, napkins, test strips, ladders, safety and first aid equipment, lids, carts, platters, freezers, janitorial products, etc. Savino Decl. ¶ 5. It is no secret which vendors IFS uses; it listed them on its website along with the exact products IFS sells. Savino Decl. ¶ 10.

IFS hired brothers Pablo Morales and Savino Morales as salesmen in 1995 and 1997, respectively. Savino Decl. ¶ 3; Pablo Decl. ¶ 3. During their tenure at IFS, Pablo and Savino worked on commissions and developed and serviced their own customers. Savino Decl. ¶ 3; Pablo Decl. ¶ 3. Entering 2022, neither Pablo nor Savino worked under a written employment agreement. Savino Decl. ¶ 11; Pablo Decl. ¶ 11; Escamilla Decl. ¶ 4.

Pablo and Savino's process for finding customers for IFS did not involve any type of insider information. As is common in the industry, Pablo and Savino would simply use publicly available sources to identify and contact restaurants and food distributors. They would ask these potential customers about their current vendors,

*IFS v. Morales, et al.*  
USDC, Case No. 2:22-cv-02120 ODW(JEMx)  
6  
**Opposition to *Ex Parte* Application for TRO, etc.**

what difficulties they had with the vendors, and what prices they paid for items, and see if they could offer better terms. Savino Decl. ¶ 7; Pablo Decl. ¶ 7. It was commonplace for clients to use multiple vendors across their various needs. Id.

Pablo and Savino only had access to information from IFS about their own clients. And even for their clients, IFS did not provide them with the prices IFS paid to obtain the products IFS resold to the clients, instead using an opaque profit formula that considered without adequate foundation supposed office and other internal costs. Savino Decl. ¶ 8; Pablo Decl. ¶ 8.

Especially recently due to COVID-19 related supply disruptions, the prices for the items that IFS sold changed often. Savino Decl. ¶ 9; Pablo Decl. ¶ 9. Even if Savino and Pablo knew IFS's prior pricing information, that information would likely be outdated. Id.

While working for IFS, Pablo and Savino developed and serviced IFS customers in Southern and Central California. Savino Decl. ¶ 12; Pablo Decl. ¶ 12.

**B.  Savino, Pablo, and Escamilla Start Legacy**

In late 2020, Pablo and Savino wanted to expand their book of clients into Arizona. Savino Decl. ¶ 12; Pablo Decl. ¶ 12. First, Pablo and Savino went to IFS management and told IFS management that they wished to expand their business into Arizona. Id. However, IFS told Pablo and Savino that IFS was not interested in expanding their presence in Arizona. Id.

Since IFS was not interested in servicing customers in Arizona, and since Savino and Pablo were commission-based salesmen with no employment contracts, they decided to start a business reselling food industry-related items that would target the Arizona market. Savino and Pablo started Defendant Legacy Wholesale Group, LLC, an Arizona limited liability company, with their friend and attorney who had relocated to the Phoenix, AZ, area, Defendant Sergio Escamilla. Savino Decl. ¶ 13; Pablo Decl. ¶ 13. Escamilla, an attorney licensed in California and Arizona, determined that because Savino and Pablo did not have employment

contracts in place, worked on commissions, and IFS did not require set work hours, and because Legacy would not compete against IFS, that Savino and Pablo were free to "moonlight" for Legacy. Escamilla Decl. ¶ 11.

Defendants were careful not to take any clients or business opportunities from IFS. Savino Decl. ¶ 14; Pablo Decl. ¶ 15. They serviced newly developed customers in the separate Arizona market. Id. IFS benefited because Legacy purchased items from IFS at a profit to IFS and then resold the items to customers in Arizona that IFS had already said it was not interested in servicing directly. Savino Decl. ¶ 14; Pablo Decl. ¶¶ 14-15. IFS management told Pablo that Legacy was a good customer. Pablo Decl. ¶ 14. Legacy also at times sold items to IFS customers in California that IFS either could not provide at all or could not provide at the price the customer demanded. Savino Decl. ¶ 14; Pablo Decl. ¶ 15. This was an infrequent occurrence. Out of Savino and Pablo's hundreds of clients at IFS, only seventeen of them purchased items from Legacy. Id. In fact, Savino and Pablo's IFS business and IFS accounts grew after Legacy began operating. Savino Decl. ¶ 15; Pablo Decl. ¶ 16.

### C. IFS Terminates Pablo and Savino

On March 29, 2022, IFS confronted Savino about his work with Legacy. IFS told Savino he had to sign the agreement or would face criminal prosecution, expensive civil litigation, the depositions of his entire family, and that IFS would stop him from working in the industry at all. Savino Decl. ¶ 18. IFS told Savino he could not review the document with his attorney because it was "confidential." Id. Savino felt he had no choice and signed it. Id. However, on the same day, Savino notified IFS that he had been coerced to sign the document and that he revoked his signature. Savino Decl. ¶ 18 & Exh. 1. The document Savino signed states that the terms of the document are to remain "confidential as mediation privileged" except under circumstances inapplicable here. Doc. no. 13-12, p. 4, Par. 3.2.

*IFS v. Morales, et al.*
USDC, Case No. 2:22-cv-02120 ODW(JEMx)
8
**Opposition to *Ex Parte* Application for TRO, etc.**

On March 31, 2022, IFS terminated Pablo and Savino, who worked remotely. Savino and Pablo did not copy or transfer files from any of their IFS computers, phones, or other devices. Savino Decl. ¶ 23; Pablo Decl. ¶ 22.

IFS emailed Savino and Pablo a letter on the morning of March 31, 2022, that stated that their "employment with Individual Foodservice Company is terminated, effective immediately" and demanded the immediate return of all of IFS's "confidential information." Savino Decl. ¶ 20 & Exh. B; Pablo Decl. ¶ 19 & Exh. C.

That very same email attachment IFS sent to Savino and Pablo demanding the return of all confidential information also contained Savino and Pablo's most recent earnings statements. Their two earnings statements list IFS sales to the customers that they serviced during the most recent period for determination of their pay. Savino Decl. ¶ 20 & Exh. B; Pablo Decl. ¶ 19 & Exh. C. The documents list items IFS sold to each customer during the covered period and what the customer paid. Id.

### D. Savino and Pablo Acted Diligently to Return their IFS Devices

As stated, after their termination, Savino and Pablo did not copy or transfer files from any of their IFS computers, phones, or other devices. Savino Decl. ¶ 23; Pablo Decl. ¶ 22.

Despite IFS's contentions, Pablo and Savino acted diligently to return their IFS computers, laptops, devices, and other property. They hired an attorney who quickly reached out to IFS's counsel and asked for details about returning IFS's items. Johnson Decl. ¶¶ 4-11 & Exhs. D-F; Savino Decl. ¶ 21; Pablo Decl. ¶ 21. Defendants returned all items IFS requested by April 7, 2022. Johnson Decl. ¶ 10 & Exh. H. These items would have been returned sooner if IFS's counsel had acted more promptly in providing the information for return of the items. Johnson Decl. ¶¶ 4-11 & Exhs. D-F.

### E. Mischaracterizations about Documents and Anonymous Witnesses

IFS makes certain mischaracterizations of evidence related to documents and anonymous witnesses that we note here (this is not a complete list).

IFS makes an issue that Savino emailed a customer list to an outside email address in February 2022. However, Savino merely emailed his own customer list to his wife so that she could print it for him for a meeting Savino had with his new IFS assistant. Savino Decl. ¶ 24.

Other examples we point out do not even pertain to trade secret law (the only basis claimed for the sought for TRO). For example, "E1," in his anonymous declaration, does not state that Defendants instructed him to take business from IFS or to use IFS trade secrets. The closest E1 comes to this is to state that Carlos Catering was an IFS client, and Savino and Pablo approved of E1 having Carlos Catering do business with Legacy. However, when E1 told them about Carlos Catering, Savino and Pablo did not know that Carlos Catering was an IFS customer. Savino Decl. ¶ 25(b); Pablo Decl. ¶ 23. (That all said, even if there was inappropriate competition with Carlos Catering, there would be no trade secret misappropriation involved. Furthermore, Legacy does not and will not do business in the future with Carlos Catering. Savino Decl. ¶ 25(b).)

As another example, E1's anonymous declaration is unclear who raised the possibility of him working with Legacy. In fact, E1 asked Savino and Pablo if he could work for Legacy. Savino Decl. ¶ 25(a).

Also, E1 does not list the strict instructions that Savino and Pablo provided him about not taking business from IFS and to only work with Legacy on his spare time. Savino Decl. ¶ 25. In fact, Savino and Pablo told E1 to keep his Legacy work separate from IFS. Id.

### IV. ARGUMENT: THE COURT SHOULD DENY THE APPLICATION FOR A TRO; DEFENDANTS DID NOT AND WILL NOT MISAPPROPRIATE TRADE SECRETS

IFS is attempting to use flimsy and ill-defined allegations of trade secret misappropriation to have the Court bar its former employees from competing against it. The Court should reject this attempt to contravene California's public

*IFS v. Morales, et al.*  
USDC, Case No. 2:22-cv-02120 ODW(JEMx)  
10  
**Opposition to *Ex Parte* Application for TRO, etc.**

policy favoring free competition and not bar Defendants from pursuing their livelihoods.

California has a "settled public policy in favor of open competition;" California law generally bars restrictions on people from competing against their former employers. *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 945 (2008). Unlike other jurisdictions, California law rejects the "doctrine of inevitable disclosure" under which "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1458-59 (2002). "[T]he doctrine of inevitable disclosure creates a de facto covenant not to compete and runs counter to the strong public policy in California favoring employee mobility." *Id.* at 1462 (internal citations omitted).

The Court should only grant a TRO enjoining salespeople from engaging in their livelihood and competing against their former employer in a clear case of egregious trade secret misappropriation. This is not such a case. IFS's evidence of misappropriation is scant and insufficient. Furthermore, IFS is a large company that has provided no concrete evidence as to why it would be permanently and irreparably damaged if a TRO is not issued. In contrast, if the Court grants a TRO, the Court would be preventing Savino and Pablo, two small businessmen, from making a living and engaging in their trade. The balance of potential harms greatly favors denying the application for a TRO. (It is also galling that IFS argues no bond is necessary for the issuance of a TRO.)

In, *Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564, 575 (2009), the Court of Appeal cautioned against the use of trade secret law to prohibit people from competing against their former employers. *Dowell* even doubted whether post-*Edwards* trade secret law could ever justify barring an employee from competing against his or her former employer (a position it noted is not universal). *Id.* at 577. In *Dowell*, the court held that, even if trade secret law could theoretically be used to

prohibit competition against a former employer, the agreement at issue was invalid when it prohibited the former employee from using "the names of customers, customer preferences, needs, requirements, purchasing histories or other customer-specific information" learned during employment was invalid. *Id*. at 578 The court noted that, "Given such an inclusive and broad list of confidential information, it seems nearly impossible that employees like Dowell and Chapman, who worked directly with customers, would not have possession of such information." Id. This is the type of information IFS is trying to bar Defendants from using.

### A. **IFS's Only Supposed Evidence of Misappropriation is Inadmissible**

Initially, IFS's primary "evidence" that Defendants' misappropriated trade secrets is a March 29, 2022, settlement agreement document it pressured Defendant Savino Morales to sign by threatening criminal action against him and by telling him he could not have an attorney review it and that Savino quickly acted to revoke.

Regardless of whether there was undue duress, it is highly inappropriate that IFS is using the language of the March 29, 2022, document as evidence of misappropriation. Defendants object to the admissibility of any statements contained in the document.

The supposed March 29, 2022, agreement states, "The negotiations and terms of this Agreement are to remain confidential as mediation privileged under Evidence Code section 1119, except as may be necessary to enforce the Agreement." Doc. no. 13-12, p. 4, Par. 3.2. (IFS is not attempting to enforce that agreement; that agreement states that IFS will not sue Savino and governs the conditions of his continued employment.)

Notably, IFS did not bring the agreement's explicit bar on the admissibility of the text of the agreement to the Court's attention in its Application. Also, IFS did not attempt to argue why the contents of the agreement should be admissible.

Separately, even when an employee signs an agreement that something constitutes a trade secret, this does not mean that a court will find that it legally

constitutes an enforceable trade secret. *American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1325 (1986) ("An agreement between employer and employee defining a trade secret may not be decisive in determining whether the court will so regard it.").

### B. **Defendants Do Not Possess or Have Access to IFS's Trade Secrets**

It is unclear exactly what trade secrets IFS asserts Defendants have in their possession. It appears that IFS argues Defendants have access to IFS's customer list, the information IFS charges customers for products, and the prices vendors charges IFS. However, Defendants do not possess this information. (And even if they did, none of this information constitutes a trade secret.)

Defendants did not have IFS's entire customer list. Savino and Pablo only had access to internal information about their own clients and did not have access to any internal list of all of IFS's customers. Savino Decl. ¶ 2; Pablo Decl. ¶ 2.

Savino and Pablo did not have access to the costs IFS paid to vendors for products. Savino Decl. ¶¶ 2 & 8; Pablo Decl. ¶¶ 2 & 8.

Even looking at IFS's papers in isolation, IFS does not present prima facie evidence to meet their burden of proving that Defendants possess the alleged trade secret information. The Kershaw Declaration only references Savino's use of a list of Savino's customers at IFS, not the entire customer list. The pricing information cited in his declaration and his exhibits do not contain pricing information on IFS's customers generally and does not contain information showing IFS's true costs or profits.

The anonymous declaration of E1 does not claim that Defendants used, provided him, or solicited from him IFS's customer list or sensitive pricing information. He only references a list of janitorial suppliers and a list of manufacturers. E1 Decl. ¶¶ 8 & 9. (While a list of janitorial suppliers would clearly not be a trade secret, neither Savino or Pablo saw this list. Savino Decl. ¶ 25(d); Pablo Decl. ¶ 23.)

### C. IFS Did not Take Reasonable Steps to Maintain the Secrecy of the Alleged Trade Secrets

It is axiomatic that a plaintiff must take reasonable steps to maintain the secrecy of information for it to constitute a trade secret. None of IFS's alleged trade secrets constitute a trade secret due to, among other reasons, the lack of reasonable efforts to maintain secrecy.

In the same email that IFS notified Savino and Pablo that they were terminated, IFS sent Savino and Pablo their most recent earnings statements. IFS did not state that the earnings statement are confidential or secret. The earnings statements list IFS certain customers that Savino and Pablo serviced that recently purchased items, lists the items that those customers purchased, and lists the price that IFS charged the customers for those items. Savino Decl. ¶¶ 20-21 & Exh. B; Pablo Decl. ¶¶ 19-20 & Exh. C. IFS cannot now credibly claim that this information is secret.

Notably, Pablo and Savino's earnings statements are the only documents that they maintain that have pricing information on them. Savino Decl. ¶ 2; Pablo Decl. ¶ 2. (We also note that IFS did not articulate any of the supposed trade secrets in its April 6, 2022, meet and confer letter threatening to bring an application for a TRO. Johnson Decl. ¶ 12.)

Also, IFS listed its vendors and the specific products it has available for sale on its website. Savino Decl. ¶ 10.

Looking at IFS's evidence in isolation, it is insufficient to carry its burden that it took reasonable steps to maintain the secrecy of the information at issue. IFS's evidence shows nothing more than that it had a practice of making employees sign confidentiality agreements. IFS does not state that it made its customers agree to confidentiality terms or that it made its vendors agree to confidentiality terms. The Kershaw Declaration provides empty, conclusory statements that IFS took

reasonable steps to maintain the secrecy of the information. He fails to show his work as would be required to prevail on an Application for a TRO.

### D. IFS's Customer List and Pricing Information Lack Value

IFS's customer list and pricing information could not be protectible trade secrets under any scenario, if for nothing else, due to their lack of value from not being generally known.

#### 1. IFS's Customer List

IFS resold a large assortment of items that any restaurant or food distributor would need. Savino Decl. ¶ 5; Pablo Decl. ¶ 5. Virtually any company in the food services industry is a potential customer of either IFS or Legacy. Additionally, many of IFS's customers purchase products from multiple sources, not just IFS. Savino Decl. ¶ 7; Pablo Decl. ¶ 7.

California law only potentially protects customer lists in the narrow circumstance where the plaintiff services a niche market within an industry and it is difficult and expensive to determine who the potential customers are within the larger industry; also, California law is unlikely to find that a customer list is a trade secret where customers use multiple vendors. *Abba Rubber Co. v. Seaquist*, 235 Cal.App.3d 1, 19 (1991) ("By itself, knowledge of the identities of the businesses which buy from a particular provider of goods or services is of no particular value to that provider's competitors. However, that information is valuable to those competitors if it indicates to them a fact which they previously did not know: that those businesses use the goods or services which the competitors sell."); *American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1326 (1986) ("While the information sought to be protected here, that is lists of customers who operate manufacturing concerns and who need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business. The compilation process in this case is neither sophisticated nor difficult nor particularly

*IFS v. Morales, et al.*  
USDC, Case No. 2:22-cv-02120 ODW(JEMx)  
15  
**Opposition to *Ex Parte* Application for TRO, etc.**

time consuming. The evidence presented shows that the shipping business is very competitive and that manufacturers will often deal with more than one company at a time. There is no evidence that all of appellant's competition comes from respondents' new employer.").

### 2. Pricing Information

The prices of the products IFS offer for sale change rapidly. Pricing information quickly becomes stale. Pablo Decl. ¶ 9; Savino Decl. ¶ 9.

Additionally, it is unclear why IFS has a trade secret interest in what other vendors charge it. Similarly, even if Defendants knew what prices vendors charged IFS for products (they did not and do not know), that does not mean that the vendors would charge Defendants those prices; pricing would be based on many factors.

Defendants did not use the limited pricing information they now possess to service their existing clients or solicit new clients. Savino Decl. ¶ 21; Pablo Decl. ¶ 20. Savino and Pablo's long-time practice is to simply ask customers and potential customers which companies they purchase which products from and how much they currently pay for those items. Savino Decl. ¶ 7; Pablo Decl. ¶ 7.

### 3. IFS Does not Provide Sufficient Evidence of Value

IFS's evidence that their customer list or pricing information constitute valuable trade secrets is insufficient to carry their burden of proof even in isolation.

IFS cites Paragraphs 3 and 4 of the Kershaw Declaration for the value of their customer list and pricing information. Those paragraphs are conclusory. Mr. Kershaw does not provide specific information to establish that the customer list or pricing information are valuable. He simply states that they are. He does not explain how IFS developed its customer list or how much money IFS spent to develop it.

## V. ARGUMENT: THE COURT SHOULD DENY THE REQUESTS FOR EARLY DISCOVERY

IFS's request for early discovery is overbroad and improper; the Court should deny it in full.

IFS requests that the Court order Defendants to produce, within merely seven days, an extremely broad list of documents. IFS's invocation that it needs these documents within seven days to prevent trade secret misappropriation lacks merit.

As argued above, the evidence shows that Defendants did not even have access to IFS's trade secrets. Furthermore, IFS's moving papers demonstrate that IFS had access to all of Pablo and Savino's work emails and already searched their emails thoroughly. Furthermore, Pablo and Savino have now turned into IFS their work computers and work cellphones.

The text of the requests themselves shows that Defendants are simply seeking a burdensome and early fishing expedition. Defendants cannot credibly claim that to prevent imminent trade secret misappropriation it must immediately have documents such as all communications "that originated at IFS" (regardless of the subject matter), all applications for insurance, all Legacy corporate records, and all documents Legacy provided to lenders.

Furthermore, many requests are clearly overly broad and would violate Defendants' privacy rights. For example, IFS is seeking that within seven days, Defendants deliver to Plaintiff's counsel all "Devices utilized in conjunction with the formation of Legacy and/or the business of Legacy…to allow IFS' counsel to image and inspect the Devices…" Request No. 9. IFS should not have an unlimited right to copy the entire contents of Defendants' devices. Many of the documents and information would be privileged, confidential, private, and wholly irrelevant to this case.

Finally, IFS throws in an inappropriate request to depose Pablo, Savino, and Escamilla within 30 days without prejudice to IFS deposing each of them again. This is an inappropriate and uncalled for request to expand IFS's discovery rights in this case.

## VI. CONCLUSION

The Court should deny all of Plaintiff's requested relief. Plaintiff's evidence of trade secret misappropriation is woefully inadequate. The requested expedited discovery is unnecessary, burdensome, and infringes on privacy rights.

Respectfully submitted.

Dated: April 12, 2022
/s/ *Scott Lesowitz*
Attorney and Partner
For Lesowitz Gebelin LLP
Counsel for Defendants