1

CDF LABOR LAW LLP
    Dan M. Forman, State Bar No. 155811

2

    dforman@cdflaborlaw.com
    Amy S. Williams, State Bar No. 228853

3

    awilliams@cdflaborlaw.com
707 Wilshire Boulevard, Suite 5150

4

Los Angeles, CA 90017
Telephone:  (213) 612-6300

5

6

Attorneys for Plaintiff/Counter-Defendant
PERRIN BERNARD SUPOWITZ, LLC, a

7

California LLC dba INDIVIDUAL
FOODSERVICE

8

LESOWITZ GEBELIN
    Steven T. Gebelin, State Bar No. 261507

9

    steven@lawbylg.com
    Scott M. Lesowitz, State Bar No. 261579

10

    scott@lawbylg.com
8383 Wilshire Boulevard, Suite 800

11

Beverly Hills, CA 90211

12

JOHNSON & RAWI, PCP
    Jeffery W. Johnson, State Bar No. 133467

13

    jjohnson@johnsonrawi.com
    David A. Rawi, State Bar No. 269559

14

    drawi@johnsonrawi.com
    Cyrus J.. Johnson, State Bar No. 334953

15

    cjohnson@johnsonrawi.com
99 South Lake Avenue, Suite 208

16

Pasadena, CA 91101

17

Attorneys for Defendants
PABLO MORALES, LEGACY WHOLESALE

18

GROUP, LLC, SAVINO MORALES, AND
SERGIO ESCAMILLA

19

20

# UNITED STATES DISTRICT COURT

21

## CENTRAL DISTRICT OF CALIFORNIA

22

23

PERRIN BERNARD SUPOWITZ, LLC,
a California LLC dba INDIVIDUAL

24

FOODSERVICE,

25

               Plaintiff,

26

      v.

27

PABLO MORALES, an individual;
LEGACY WHOLESALE GROUP, LLC,

28

an Arizona Limited Liability Corporation;
SAVINO MORALES. an individual; and

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:22-cv-02120-ODW-JEM

Mag. Judge: John E. McDermott
Ctrm:  640

**JOINT STIPULATION RE
DISCOVERY DISPUTE RE FIRST
SET OF REQUESTS FOR
INSPECTION AND PRODUCTION
OF DOCUMENTS AND OTHER
THINGS TO DEFENDANT**

| | | |
|---|---|---|
| 1 | SERGIO ESCAMILLA, an individual; and DOES 1 through 20, inclusive, | ) **LEGACY WHOLESALE GROUP, LLC** |
| 2 | | ) |
| | Defendants. | ) Date:    November 8, 2022 |
| 3 | | ) Time:    10:00 a.m. |
| | | ) Ctrm:    640 |
| 4 | LEGACY WHOLESALE GROUP, LLC, | ) |
| | | ) Discovery Cut-Off:    December 19, |
| 5 | Counter-Plaintiff, | ) 2022 |
| | v. | ) Pretrial Conference:    March 27, 2023 |
| 6 | | ) Trial Date:    April 18, 2023 |
| 7 | PERRIN BERNARD SUPOWITZ, LLC, a California LLC dba INDIVIDUAL | ) |
| | FOODSERVICE, | ) |
| 8 | | ) |
| | Counter-Defendant. | ) |
| 9 | | ) |

2

2056838.2

# I. <u>SUMMARY OF MEET AND CONFER EFFORTS</u>

Pursuant to L.R. 37-1 Counsel to Plaintiff/Counter-Defendant Perrin Bernard Supowitz, LLC dba Individual FoodService ("Plaintiff" or "IFS") and Defendant/Counter-Complainant Legacy Wholesale Group, LLC ("Legacy") attest that they have attempted to meet and confer via email and telephonically in a good-faith effort. Plaintiff asserts that the parties have concluded meet and confer efforts and reached an impasse which requires this Court's order concerning regarding Legacy's responses and the production of documents in response to IFS' First Set of Request for Production.

## 1.   <u>Plaintiff's Summary</u>

On July 1, 2022 Plaintiff sent a detailed meet and confer letter to Defendant in an attempt to resolve the numerous deficiencies in Defendant's discovery objections, responses and production.  Defendant responded 10 days later on July 11, 2022 and refused to withdraw any objection, supplement any response or production, or identify any document that Defendant produced as opposed to Legacy.

On July 15, 2022 Plaintiff's counsel requested a conference pursuant to C.D. Local Rule 37-1.  Steven T. Gebelin, counsel for Defendant, and Amy S. Williams, counsel for Plaintiff, met and conferred telephonically on July 25, 2022 and again on July 26, 2022.  Plaintiff continued its meet and confer efforts in emails dated August 11, August 17, August 19, August 23, August 26 and telephonically on September 9, 2022.  Counsel to Legacy failed to provide any further responses and Legacy continues to refuse to withdraw any objection, further supplement any response, or identify documents that Legacy Defendant produced as opposed to documents by other defendants and the parties reached an impasse.

## 2.    <u>Defendant's Summary</u>

Plaintiff issued the Requests for Production of Documents ("Requests") at issue in this motion on May 13, 2022.  Declaration of Steven T. Gebelin ("Gebelin Decl.") ¶ 2.  Defendants timely provided their respective responses on June 13, 2022,

JOINT STIP RE DISCOVERY DISPUTE RE FIRST SET OF RFPD TO DEF LEGACY WHOLESALE GROUP, LLC

2056838.2

1  and have produced nearly 3,000 pages of documents since then, including native files

2  produced with a single page desigation.  *Id.*

3          On July 1, 2022 Plaintiff sent an unspecific and unhelpful "meet and confer

4  letter" to Defendants Pablo Morales' ("Pablo"), Savino Morales' ("Savino"), Sergio

5  Escamilla's ("Sergio") and Legacy Wholesale Group, LLC ("Legacy") (collectively

6  "Defendants") that failed to comply with the local rules and generally broached

7  topics of discovery in generalities rather than provide meaningful analysis of any

8  specific request for production.  Gebelin Decl. at ¶ 3, Ex. 1.  As pointed out in

9  Defendants' response sent 5 business days later, Plaintiff's initial meet and confer

10  letter also failed to appreciably discuss the major objection underlying many of

11  Defendants' responses- the vast overbreadth of and lack of apparent relevance for

12  such overbreadth of the discovery items at issue and failed to meaningfully discuss

13  narrowing of clearly overbroad requests.  Gebelin Decl. ¶ 4, Ex. 2. Defendant's

14  response attempted to discuss the factual issues in dispute in the case and noted that a

15  proportionality analysis should account for the economic stakes in the case as

16  Legacy's profits on sales to identified common customers during the Morales

17  defendants' employment by Plaintiff was less than the 2021 salary paid by Plaintiff

18  to either of the defendants Morales.  *Id.*  Further, Defendants pointed out that

19  Plaintiff had yet to identify its trade secrets, which is a prerequisite for requiring a

20  defendant to provide discovery responses relating to trade secret claims.  *Id.* citing

21  *Masimo Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2022 WL 1599841, at *2

22  (C.D. Cal. Apr. 28, 2022) ("Under California Code of Civil Procedure Section

23  2019.210, a trade secret plaintiff must "identify the trade secret[s]" it intends to

24  pursue "before commencing discovery." This requirement "promotes well-

25  investigated claims and dissuades the filing of meritless trade secret complaints,"

26  "prevents plaintiffs from using the discovery process as a means to obtain the

27  defendant's trade secrets," "assists the court in framing the appropriate scope of

28  discovery and in determining whether plaintiff's discovery requests fall within that

2

1  scope," and "enables defendants to form complete and well-reasoned defenses,
2  ensuring that they need not wait until the eve of trial to effectively defend against
3  charges of trade secret misappropriation.").

4  Following the initial exchange of letters, counsel for Plaintiff (Ms. Williams)
5  and Defendants (Mr. Gebelin) met and conferred telephonically on July 25 and 26 to
6  attempt to discuss the breadth of issues included in Plaintiff's letter.  Gebelin Decl.
7  ¶ 5.  However, during that meet and confer counsel for Plaintiff repeatedly refused to
8  engage in any discussion of the relevance of information sought in its seemingly
9  overbroad requests that Defendants had resisted, with Plaintiff's counsel repeatedly
10 stating "I'm not going to explain our theories of the case, and I'm not going to
11 explain why we're entitled to the information" and that Defendant would see its
12 further authority or explanations regarding relevance in its motion papers.  *Id*. ¶ 6.
13 As a result, although the parties were able to reach some small agreements on certain
14 requests, most attempts by Defendants to meaningfully narrow the requests or reach
15 further agreement on many issues were stifled.  *Id*.  Moreover, during the call
16 counsel only discussed a small number of separate requests before Plaintiff's counsel
17 concluded that the parties were at an impasse.  *Id*. at ¶ 7.  Despite Plaintiff's assertion
18 of an impasse, Defendants produced additional documents into August 2022.
19 Williams Decl. ¶ 3.

20 Plaintiff subsequently sent a separate "meet and confer" effort via an email
21 sent on August 11, 2022 relating to a handful of discovery items it claimed to need
22 from Legacy in order to respond to Defendants' then pending motion for summary
23 judgment, proposing limitations to those requests.  Gebelin Decl. Ex. 3.

## II.  SUMMARY OF ISSUES IN DISPUTE

25 IFS seeks an order or orders compelling complete and adequate responses to
26 its First Set of Requests for Production dated May 13, 2022, including

27 **1.**    Striking Legacy's General Objections from each response;

28 **2.**    Striking Legacy's boilerplate objections from Response Nos. 3, 5, 8, 9,

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

10, 14, 16, 19, 21-23, 25-36, 38, 39 and 41-43;

**3.** Striking Legacy's "privacy" objections from Response Nos. 8, 19, 41, 42, and 43;

**4.** Compelling Compliant Responses to Request Nos. 3, 5, 8, 9, 10, 14, 16, 19, 21-23, 25-36, 38, 39 and 41-43; and

**5.** Compelling full and complete production of documents to Request Nos. 3, 5, 8, 9, 10, 14, 16, 19, 21-23, 25-36, 38, 39, and 31-43, including inspections and/or forensic imaging.

### III.  IFS' INTRODUCTION

IFS is a distribution business that purchases goods from manufacturers and large suppliers and sells those goods to restaurants, convenience stores, grocery stores, schools, hospitals and other businesses that use and resell food, beverages, storage containers, disposable utensils, food preparation equipment, cleaning and janitorial supplies.

Defendants Pablo Morales ("Pablo") and Savino Morales ("Savino") worked for IFS as outside salesman for more than 20 years.  In March 2021 Pablo and Savino, along with their friend and attorney, Defendant Sergio Escamilla ("Sergio"), created fake names and used IFS' trade secret and confidential information to form a competing business, Defendant Legacy Wholesale Group, LLC ("Legacy").  In August 2021, Pablo fraudulently induced IFS to authorize the sale of goods to Legacy without disclosing his or Savino's ownership of Legacy, and caused IFS to sell goods to Legacy at prices that were lower than what Legacy should have been charged and with knowledge that Legacy intended to sell the goods to IFS' customers and others using IFS' pricing information.  Defendants used IFS' trade secret and confidential information to identify customers and vendors, purchase goods from IFS' vendors leveraging confidential pricing negotiated by IFS, give credit to customers based on IFS' credit information, and sold goods to IFS' customers at prices that were at or lower than IFS' confidential pricing -- all while

4

2056838.2

1    Pablo and Savino still worked for IFS.  Further, Defendants encouraged other of IFS'
2    accomplished salespersons to breach their agreements with IFS to hire those
3    employees to secretly work for Legacy under pseudonyms and use IFS' confidential
4    information and trade secrets to sell products for Legacy to IFS' customers.

5            Within approximately six months, Defendants diverted sales from at least 17
6    IFS customers[1] in the amount of ████████.  Savino and Pablo testified that each
7    IFS customer that they converted to a Legacy customer arose from a meeting or
8    phone call that had been scheduled in their role as an IFS salesperson with the use of
9    IFS's devices to discuss the customer purchasing from IFS.  IFS ultimately
10   discovered Defendants' scheme and terminated Pablo and Savino's employment on
11   March 31, 2022.

12           IFS sued the Defendants for claims arising from trade secret theft, breach of
13   contact, breach of duty of loyalty, fraud and related claims.  (Declaration of Amy S.
14   Williams ("Williams Decl.") ¶ 6, Ex. A.)  Legacy filed a Counterclaim asserting
15   unfair business practices and unfair competition that "IFS has used 'loss-leaders' to
16   try and take customers away from Legacy" and that "IFS' acts have diverted trade
17   from Legacy in an anticompetitive and unfair manner, and are continuing to so divert
18   trade from plaintiff, resulting in a loss of Legacy's business, income, customers, and
19   goodwill,…."  (Williams Decl. ¶ 7, Ex. B at ¶¶ 2, 14.)

20           IFS seeks basic information to support its case against the Defendants and to
21   uncover the coverup of Defendants' use of IFS' trade secrets and confidential
22   information.  IFS seeks documents that will demonstrate that Legacy mislead other
23   vendors and that will test testimony provided by Legacy's owners from depositions.
24   Indeed, requiring the production of documents is the best way to pierce the cover up
25   that Legacy created by secreting Pablo and Savino's ownership, due to the volume of
26   _____

27   [1] During the course of discovery IFS has identified at least three additional IFS
     customers from whom Defendants diverted IFS' business to Legacy.
28

                                                              JOINT STIP RE DISCOVERY DISPUTE RE
                                                              FIRST SET OF RFPD TO DEF LEGACY
                                                              WHOLESALE GROUP, LLC

2056838.2

1  work and communications with non-employee spouses, and because Defendants
2  made material misrepresentations under oath to the court and in discovery responses
3  as to what they call 17 "joint customers".  However, discovery to date has revealed
4  that the Defendants took at least 15% more customers from IFS while working for
5  IFS and they refuse to produce any evidence of their communications with those or
6  other of IFS's clients.

## IV.  LEGACY'S INTRODUCTION

8      On March 31, 2022 Plaintiff filed this suit against its former employees Savino
9  and Pablo Morales and their Arizona based company Legacy Wholesale Group, LLC
10 and its other owner, attorney Sergio Escamilla, an attorney and longtime friend of the
11 Morales brothers, bringing claims founded in large part on the alleged
12 misappropriation of Plaintiff's trade secrets by the former employees.  [Dkt. No. 1].
13 On April 13, 2022 the Court denied Plaintiff's *ex parte* application for a temporary
14 restraining order seeking to bar Defendants from using IFS' purported trade secrets.
15 [Dkt. No. 22].  On April 25, 2022, Plaintiff then filed its motion for a motion for
16 preliminary injunction seeking similar relief.  [Dkt. Nos. 28-34][2].

17     Despite twice seeking an order for a preliminary injunction prohibiting
18 Defendants from using its purported trade secrets, making initial disclosures in May
19 2022, and even serving a supplemental response to Defendant Sergio Escamilla's
20 Interrogatory expressly asking for Plaintiff to identify its specific trade secrets at
21 issue in this case, Plaintiff still refuses to specifically identify its trade secrets, and
22 instead has claimed generic categories of potentially "confidential" information.

23 _____

24 [2] Defendants filed their opposition to Plaintiff's motion for preliminary injunction
   and their supporting papers on May 3, 2022.  [Dkt. Nos. 38-42.]  Although briefing
25 was completed on the motion on May 9, 2022 [Dkt. Nos. 43-47], the Court vacated
   the hearing on the motion and took the matter under submission in June 2022.  [Dkt.
26 No. 77].  The Court subsequently denied the motion as moot upon its granting of
   Plaintiff's subsequently filed motion for leave to amend its pleadings.  [Dkt. No. 98.]
27 Plaintiff filed its amended complaint on August 29, 2022.  [Dkt. No. 99.]  Plaintiff
   has not yet filed another motion for preliminary injunction.  Gebelin Decl. ¶ 10.

28

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1   Gebelin Decl. ¶ 12, Ex. 6 at Supplemental Response to Interrogatory No. 1.

2   Moreover, Plaintiff admitted that it maintained its alleged trade secret information in

3   its own password protected computer system using two factor authentication. *Id*. at

4   Ex. 6, Supplemental Response to Interrogatory No. 2.

5          Furthermore, despite Defendants' access to Plaintiff's alleged trade secrets

6   occurring through Plaintiff's password protected systems, Plaintiff's expert lost the

7   company issued computers and smartphones through which Defendants Pablo and

8   Savino Morales accessed Plaintiff's systems that would have been expected to have

9   the logs that would demonstrate of their purported misappropriation to outside

10  sources or lack thereof.  *See* Dkt. Nos. 23, 27.  Defendants have also provided the

11  Court with documents indicating their ability to document instances in which

12  defendants Savino or Pablo Morales may have sent information (including its

13  purported trade secret information) outside of IFS' systems. *See, e.g.* Dkt. Nos. 13-9

14  (email from P. Morales IFS email forwarding content to personal email); 13-10

15  (email from S. Morales IFS email forwarding content to outside email account).

16         Plaintiff's motions herein are premature.  Plaintiff's (1) unsupported

17  arguments based on various factual assertions and inflammatory allegations generally

18  lacking evidentiary support; (2) incomplete legal analysis or arguments; and (3) its

19  insufficient meet and confer efforts all should lead this Court to deny relief.

20         To date, Defendants have produced nearly three thousand pages of responsive

21  documents targeted at the core factual issues in the case.  Gebelin Decl. ¶ 2.  All

22  three individual defendants had their full depositions taken by Plaintiff after it ended

23  meet and confer efforts related to this motion, and Plaintiff has even deposed one of

24  the defendants' wives.  Gebelin Decl. ¶ 13.  No further meet and confer efforts on the

25  discovery issues raised in this motion were raised by Plaintiff following the

26  defendants' depositions. *Id*.

27         Plaintiff also seeks to compel wildly overbroad requests regarding financial

28  documentation and information about its competitor Legacy without explaining the

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  connection to any of its claims. Plaintiff has provided no justification for its

2  assertion that it is entitled to such an expansive scope of information relating to

3  Legacy's financials. Its claims against Legacy arise from alleged misappropriation

4  of trade secrets, not the entirety of Legacy's business. But where "the plaintiff and

5  the defendant were business competitors, disclosure of the defendant's financial

6  records to the plaintiff, even with a protective order, could cause the defendant great

7  harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

8  1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

9  491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

10 concerning [trade secret counter-defendant's] financial statements, cash flow

11 statements, and tax returns").

12     Finally, Plaintiff seeks to compel premature and disproportionately invasive

13 forensic imaging of various devices that Defendants have used to conduct Legacy

14 business despite no showing of need or even specificity of the files it seeks to

15 compel. There is no need for such an order and Plaintiff's arguments are woefully

16 inadequate.

17               **V. ISSUES FOR RESOLUTION**

18 **1.    IFS Seeks Order Striking General Objections**

19     Legacy incorporated "General Objections" in each response to every request:

20 Responding Party objects to the extent that the Requests seek information protected

21 by the attorney-client privilege, work-product doctrine, personal privacy rights and

22 protections, confidentiality, sensitive business information and trade secrets, or other

23 individual protections from disclosure. Responding Party further objects to the extent

24 the Requests seek information beyond the scope of discovery, including beyond the

25 scope as limited by Federal Rule of Civil Procedure 26(b)(1), which limits discovery

26 to information and materials proportional to the needs of the case, considering the

27 importance of the issues at stake in the action, the amount in controversy, the parties'

28 relative access to relevant information, the parties' resources, the importance of the

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  discovery in resolving the issues, and whether the burden or expense of the proposed
2  discovery outweighs its likely benefit. Privileged and work product documents will
3  not be produced in response to Propounding Party's Requests and any inadvertent
4  disclosure of privileged material shall not be deemed a waiver of that privilege.
5  Responding Party objects to the extent any of the Requests seek premature disclosure
6  of expert materials in violation of F.R.C.P. 26(a)(2). Subject to the foregoing General
7  Objections and the following specific objections, Responding Party provides the
8  following responses:

9                          **Plaintiff's Position**

10       Defendant's "general objections" by reference are improper and should be
11  stricken.  A response "must either state that inspection and related activities will be
12  permitted as requested or state with specificity the grounds for objecting to the
13  request, including the reasons." FRCP 34(b)(2)(B).  *Franco v. Does 1-10*, 2021 WL
14  4896331, at *1 (C.D. Cal. Sept. 23, 2021).  All General Objections should be
15  stricken.

16                          **Defendant's Response**

17       During the meet and confer process, Plaintiff identified only a limited subset
18  of the Requests for Production at issue.  As noted in Defendants' meet and confer
19  correspondence, Defendants "have not relied solely upon such 'General Objections'
20  in limiting our agreement to produce documents or as a sole basis for a refusal to
21  produce any documents.  Gebelin Decl. Ex. 2.  During the telephonic meet and
22  confer Defendants confirmed that apart from where specifically indicated (*i.e.* by
23  repetition as a specific objection or as clear from the limited agreement to produce
24  documents in an individual response to a request (such as agreeing to produce "non
25  privileged documents") in specific responses to Requests for Production, the
26  "General Objections" were not being relied upon to withhold documents responsive
27  to any of the Requests, and that they would address the objections to specific
28  Requests.  Gebelin Decl. ¶ 5.  To the extent a Request is not specifically addressed in

1 | this motion, Defendant respectfully requests that the "General Objections" be
2 | maintained to preserve objections for future use as appropriate and necessary in light
3 | of meet and confer efforts to address disputes, particularly those for attorney-client,
4 | work product, and/or personal and third-party privacy privileges.

5 | **2.    IFS Seeks Order Striking Boilerplate Objections**

6 | Legacy objected that "Responding Party objects that this request is overbroad
7 | and seeks documents/information that are neither relevant nor proportional to the
8 | needs of the case" to each Request.

9 | **Plaintiff's Position**

10 | "A recitation that the discovery request is 'overly broad,
11 | burdensome, oppressive and irrelevant' is not adequate to voice a successful
12 | objection." *Fosselman v. Caropreso*, 2011 WL 999549, at *4 (N.D. Cal. Mar. 18,
13 | 2011) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). The party
14 | objecting to a request for production must show specifically that the request is not
15 | relevant, overly broad, burdensome, or oppressive.  *Fosselman*, 2011 WL 999549, at
16 | *4 (citing *Josephs*, 677 F.2d at 992).  The Advisory Committee Notes explain that
17 | "[r]estoring the proportionality calculation to Rule 26(b)(1)...does not place on the
18 | party seeking discovery the burden of addressing all proportionality
19 | considerations. Nor is the change intended to permit the opposing party to refuse
20 | discovery simply by making a boilerplate objection that it is not proportional." FRCP
21 | 26 advisory committee notes (2015 amendments).

22 | **Defendant's Position**

23 | Plaintiff inappropriately seeks to lump appropriate objections to the improper
24 | scope of its requests together as "boilerplate" rather than individually addressing
25 | each of its objectionable requests that go beyond the bounds of discovery appropriate
26 | for this case, and that collectively as requested could require Defendant to produce
27 | any and all documents in its possession.  *See, e.g.* Request Nos. 14 ("All of YOUR
28 | purchase agreements"), 25 ("All DOCUMENTS reflecting YOUR customer margin

10

2056838.2

1   information."), 26 ("All DOCUMENTS reflecting YOUR profitability per

2   customer"), 27 ("All of YOUR vendor agreements."), 28 (All of YOUR customer

3   agreements"), 41 ("All of YOUR hard drives on desktop computers, laptop

4   computers, notebook computers, personal digital assistant computers, servers, and

5   other electronic media."), 42 ("YOUR Backup tapes containing email and other

6   electronic data"), 43 ("All of YOUR disks, CDs, DVDs and other removable

7   media").

8          Rule 26(b)(1) provides that parties "may obtain discovery regarding any non-

9   privileged matter that is relevant to any party's claim or defense and proportional to

10  the needs of the case, considering the importance of the issues at stake in the action,

11  the amount in controversy, the parties' relative access to relevant information, the

12  parties' resources, the importance of the discovery in resolving the issues, and

13  whether the burden or expense of the proposed discovery outweighs its likely

14  benefit." *Fernandez v. Fisher*, No. CV1906036SBJEMX, 2020 WL 7050570, at *2

15  (C.D. Cal. Oct. 8, 2020) (denying motion to compel inspection of property as not

16  proportional to needs of case).  In replacing the prior "good cause" analysis for any

17  matter "relevant to the subject matter involved in the action", the 2015 amendments

18  to Rule 26 were made to reduce the costs of discovery, and parties and the court must

19  now consider the proportionality factors when serving and responding to discovery.

20  Adv. Comm. Notes to 2015 Amendments to FRCP 26; s*ee also* Rutter Group Prac.

21  Guide Fed. Civ. Pro. Before Trial Ch. 11(III)-B Scope of Discovery.  As such,

22  Plaintiff's argument concerning broad discovery rights over relevance objections

23  based on pre-2015 amendment relevance tests are inapposite.

24          "The party seeking to compel discovery has the burden of establishing that its

25  request satisfies the relevancy requirements of Rule 26(b)(1)... In turn, the party

26  opposing discovery has the burden of showing that discovery should not be

27  allowed...." *WPIX, Inc. v. Broad. Music, Inc.*, No. CV 11-4052-SJO JEMX, 2011

28  WL 9753912, at *2 (C.D. Cal. July 5, 2011) (citations omitted).  Moreover, "[i]f the

                                        11

                                        JOINT STIP RE DISCOVERY DISPUTE RE
                                        FIRST SET OF RFPD TO DEF LEGACY
                                        WHOLESALE GROUP, LLC

1  sought-after documents are not relevant nor calculated to lead to the discovery of
2  admissible evidence, then *any burden whatsoever* imposed upon [the answering
3  party] would be by definition 'undue.' " *Id.*

4        Here, Plaintiff's meet and confer efforts failed by and large to even attempt to
5  parse the relevance of its broad Requests that would be required to meaningfully
6  evaluate their potential benefit to the case against any burden in producing the sought
7  after documents.  Gebelin Decl. ¶ 6 (Defendants' counsel repeatedly responded to
8  attempts to discuss relevance by stating "I'm not going to explain our theories of the
9  case, and I'm not going to explain why we're entitled to the information.")

10        Particularly in light of Plaintiff's failure to specifically identify its trade secrets
11  at issue in this case (or to do so at all prior to Plaintiff's aborted meet and confer
12  efforts), discovery based on those claims should not be compelled.  *See Masimo*
13  *Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2022 WL 1599841, at *2 (C.D.
14  Cal. Apr. 28, 2022) ("Under California Code of Civil Procedure Section 2019.210, a
15  trade secret plaintiff must "identify the trade secret[s]" it intends to pursue "before
16  commencing discovery." This requirement "promotes well-investigated claims and
17  dissuades the filing of meritless trade secret complaints," "prevents plaintiffs from
18  using the discovery process as a means to obtain the defendant's trade secrets,"
19  "assists the court in framing the appropriate scope of discovery and in determining
20  whether plaintiff's discovery requests fall within that scope," and "enables
21  defendants to form complete and well-reasoned defenses, ensuring that they need not
22  wait until the eve of trial to effectively defend against charges of trade secret
23  misappropriation.").

24        During the meet and confer process Defendants attempted to discuss the
25  relevance of Plaintiff's very broad Requests, but was repeatedly told that Plaintiff
26  would not "explain why we're entitled to the information."  Gebelin Decl. ¶ 5.
27  Where objected to, Plaintiff must explain the information it seeks through each
28  request and why it is discoverable.  Its blunt and absolute failure to engage in any

1  meaningful meet and confer about the relevance of its discovery should not be
2  countenanced.

3  **3.    IFS Seeks Order Compelling Complete Responses and Prompt**
4  **Production/Inspection**

5  **REQUEST FOR PRODUCTION NO. 3:**

6      All of YOUR credit applications.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

8      Responding Party restates the general objections. Responding Party objects
9  that this request is overbroad and seeks documents/information that are neither
10  relevant nor proportional to the needs of the case.

11      **Plaintiff's Position**

12      *See General Objections*.

13      *See Boilerplate Objections*.

14      Legacy's credit applications reflect information that Legacy provided to its
15  creditors in an effort to seek credit and other benefits.  As Legacy was a start up
16  business with no experience in the distribution business any assertions about the
17  scope of its expected business, needs for credit are important to a fact finders
18  determination as to whether Legacy used IFS' trade secret and confidential
19  information to seek credit from third parties.  In addition, given the testimony, thus
20  far, such information will test deposition testimony about the source of projected
21  spending with those vendors, sources of income, expected revenues, client and
22  prospective client names, and numbers of employees all of which are proportional
23  and discoverable.  Legacy should be compelled to provide a full compliant response
24  and produce all responsive documents promptly.

25      **Defendant's Response**

26      Defendant also incorporates its responses to Plaintiff's arguments regarding
27  "General Objections" and "Boilerplate Objections."

28      During the meet and confer, Defendant agreed to produce its credit

13

2056838.2

1   applications (*i.e.* with vendors) from prior to March 31, 2022, as it had already done

2   so. *E.g.* LEGACY 97-102 (██████), 103-104 (███████), 105-106 (████████), 107-

3   109 (█████), 110-111 (████████).  These documents were available for and/or used

4   by Plaintiff in its depositions of the individual defendants.  A time limitation to prior

5   to March 31, 2022 satisfies Plaintiff's asserted interest in information from Legacy's

6   "start-up" phase when it argues Legacy could have "used IFS' [alleged] trade secret

7   and confidential information to seek credit from third parties." As such, Defendant

8   agrees to amend its response as follows:

9       "Responding Party restates the general objections.  Subject to and without

10  waiving such objections, Responding Party will produce its credit applications with

11  vendors from prior to March 31, 2022."

12  **REQUEST FOR PRODUCTION NO. 5:**

13      All of YOUR applications for insurance.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

15      Responding Party restates the general objections. Responding Party objects

16  that this request is overbroad and seeks documents/information that are neither

17  relevant nor proportional to the needs of the case.

18      Subject to the foregoing specific and the general objections: Responding Party

19  has produced copies of its potentially applicable insurance policies.

20      **Plaintiff's Position**

21      *See General Objections*.

22      *See Boilerplate Objections*.

23      Legacy's applications for insurance will reflect information provided,

24  potentially under oath when seeking insurance coverage.  Typically, insurance

25  companies require information that includes representations regarding projected

26  revenue and spending, numbers of employees, locations of operations, among other

27  information, all of which are all of which are proportional and discoverable.  As

28  Legacy was a start up business with no experience in the distribution business any

14

2056838.2

assertions about the scope of its expected business, given the testimony, thus far, insurance company applications will test deposition testimony about the source of expected revenues, client and prospective client names, and numbers of employees, as well.  Moreover, Legacy has not provided its Workers Compensation policy or application and therefore its assertion that it "produced copies of its potentially applicable insurance policies" is not accurate.  Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

Defendant also incorporates its responses to Plaintiff's arguments regarding "General Objections" and "Boilerplate Objections."

Defendant provided a copy of its insurance policy with State Farm as part of its initial disclosures in May 2022.  That said, Defendant will agree to produce its insurance applications from prior to March 31, 2022.  A time limitation to prior to March 31, 2022 satisfies Plaintiff's asserted interest in information from Legacy's "start-up" phase when it argues Legacy would have made "assertions about the scope of its expected business… the source of expected revenues, client and prospective client names, and numbers of employees." As such, Defendant agrees to amend its response as follows:

"Responding Party restates the general objections.  Subject to and without waiving such objections, Responding Party will produce its insurance applications from prior to March 31, 2022."

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS YOU provided to any accountant or accounting firm in connection with LEGACY or the enterprise in formation that became LEGACY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case. Responding Party further objects

15

2056838.2

1 | on the basis of personal financial privacy of third parties.

2 | **Plaintiff's Position**

3 | *See General Objections.*

4 | *See Boilerplate Objections.*

5 |     All documents related to the formation of Legacy, its business projections,

6 | numbers of employees, names of prospective customers, vendors, employees relate

7 | to Defendants' use of IFS' trade secrets to form Legacy and are proportional to the

8 | case. Certainly, information that IFS provided to its accountants and accounting firm

9 | is within the scope of Legacy's custody, control and possession and it evaded

10 | providing a complete response or responsive documents.  Moreover, Legacy's

11 | objection of "personal financial privacy of third parties" is baseless because IFS

12 | seeks materials that Legacy gave to its accountants, third party privacy is not

13 | implicated.  Further, there is the Protective Order in this case.  Dkt #37.  Legacy had

14 | the option to produce responsive materials designated as confidential or AEO to

15 | protect purported privacy interests.  IFS is entitled to the documents sought which

16 | are pertinent to its claims, to determine the full scope of IFS' customers that Legacy

17 | poached, relate to damages, and are proportional and discoverable. Legacy should be

18 | compelled to provide a full compliant response and produce all responsive

19 | documents promptly.

20 | **Defendant's Response**

21 |     Defendant also incorporates its responses to Plaintiff's arguments regarding

22 | "General Objections" and "Boilerplate Objections."

23 |     Plaintiff fails to recognize the breadth of its request, the limited benefit of

24 | providing "All Documents" provided to Legacy's accountant in light of the issues in

25 | the case and the scope of documents already produced, and makes no attempt to

26 | grapple with the privileges at issue, or the potential harm to Legacy from providing

27 | the panoply of its privileged communications with its accountant to a competitor.

28 | Instead, Plaintiff broadly asserts that it is entitled to receive all documents relating to

16

2056838.2

1  Legacy's business without any logical connection between that category and its
2  claims.

3      As an initial matter, information provided to Legacy's accountant is expected
4  to address private financial information relating to Legacy's owners and its
5  employees, such as individuals' payroll information.  Legacy's accountant is legally
6  obligated to maintain confidentiality over the information it was provided as a result
7  of the accountant/client privilege.  Ariz. Rev. Stat. Ann. § 32-749.  Plaintiff has
8  provided no justification for invading these individual's financial privacy.

9      Plaintiff has provided no justification for its assertion that it is entitled to such
10  an expansive scope of information relating to Legacy's financials.  Its claims against
11  Legacy arise from alleged misappropriation of trade secrets, not the entirety of
12  Legacy's business.  But where "the plaintiff and the defendant were business
13  competitors, disclosure of the defendant's financial records to the plaintiff, even with
14  a protective order, could cause the defendant great harm."  *See ReBath LLC v. HD*
15  *Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13,
16  2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying
17  motion to compel discovery of "documents concerning [trade secret counter-
18  defendant's] financial statements, cash flow statements, and tax returns").

19      To the extent that any communications with Legacy's accountant mention IFS,
20  Legacy has already agreed to produce them, and has done so.  *E.g.* LEGACY 00354-
21  356, 00400-404, 01027-1028.  Legacy has also agreed to produce communications
22  regarding IFS' purported trade secrets that Plaintiff identifies, which should cover
23  any further communications relating to their alleged use.  *See* response re: Request
24  No. 31, below.

25      Plaintiff has failed to explain what further information it legitimately seeks
26  through this request to allow Legacy to narrow this Request to relevant documents.
27  Even with a protective order in place, there is a great potential for harm if Plaintiff
28  were to receive all of Legacy's financial information (particularly in light of the

17

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1 | pending counter-claim for unfair competition).

2 | **REQUEST FOR PRODUCTION NO. 9:**

3 | All drafts, mark-ups, redlined and final versions of YOUR articles of
4 | organization.

5 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

6 | Responding Party restates the general objections. Responding Party objects
7 | that this request is overbroad and seeks documents/information that are neither
8 | relevant nor proportional to the needs of the case.

9 | Subject to the foregoing specific and the general objections: Responding Party
10 | will produce its operative articles of organization.

11 | **Plaintiff's Position**

12 | *See General Objections.*

13 | *See Boilerplate Objections.*

14 | Legacy has not produced drafts, mark-ups and redlined versions of its articles
15 | of organization, as requested.  Plaintiff is entitled to all such documents as such
16 | materials are likely to reveal plans to use IFS' trade secret information in the
17 | formation of Legacy and can be used to test deposition testimony given in this case.
18 | Legacy should be compelled to provide a full compliant response and produce all
19 | responsive documents promptly.

20 | **Defendant's Response**

21 | Defendant also incorporates its responses to Plaintiff's arguments regarding
22 | "General Objections" and "Boilerplate Objections."

23 | Legacy produced its operative (and original) one page Articles of
24 | Organization, filed March 17, 2021.  See LEGACY 00073.  As the Articles of
25 | Organization are publicly filed documents indicating the address and organizers of
26 | the Limited Liability Company, there is no reason for anyone to expect that drafts,
27 | markups, or redlined versions would disclose any "plans to use IFS' [alleged] trade
28 | secret information."  Those documents would instead disclose attorney client

18

2056838.2

communications between Legacy's founder(s) and counsel that aided in preparation of the incorporating documents.  Legacy's limitation of the document category to the publicly filed articles of incorporation reflects a balancing of providing the core of the requested information against the costs of searching for and logging the likely privileged communications embodied in the remainder of the request.  If the Court were to compel further production of draft documents, Legacy would assert its right to withhold attorney client privileged communications.

**REQUEST FOR PRODUCTION NO. 10:**

All drafts, mark-ups, redlined and final versions of YOUR operating agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case.

Subject to the foregoing specific and the general objections: Responding Party will produce its current operating agreement.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

Legacy produced its First Amended and Second Amended Operating Agreement but has not produced other versions of the Operating Agreement, drafts, mark-ups or redlines.  Plaintiff is entitled to all such documents.   The fact that Legacy produced the First Amended and Second Amended Operating Agreement compels disclosure of all prior versions, subsequent versions, drafts, mark-ups and redlines.  Plaintiff is entitled to all such documents as such materials are likely to reveal plans to use IFS' trade secret information in the formation and development of Legacy and can be used to test deposition testimony given in this case. Legacy should be compelled to provide a full compliant response and produce all responsive

1  documents promptly.

2       **Defendant's Response**

3       Defendant also incorporates its responses to Plaintiff's arguments regarding

4  "General Objections" and "Boilerplate Objections."

5       Plaintiff's argument that Legacy's production of the First and Second

6  Amended Operating Agreements compels production of prior drafts, mark-ups, and

7  the like.  The amended agreements are already produced, and their recitals detail

8  their respective changes to the operating agreements from Legacy's incorporation.

9  Drafts, redlines, and the like are certain to reflect or comprise attorney-client

10 communications with the attorney used by Legacy and/or its principal(s) in setting up

11 the corporate form.  Plaintiff provides no reason to produce those documents, nor to

12 explain why the effort of collecting such documents and reviewing them for privilege

13 would be of any benefit to the claims at issue.

14 **REQUEST FOR PRODUCTION NO. 14:**

15      All of YOUR purchase agreements.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

17      Responding Party restates the general objections. Responding Party objects

18 that this request is overbroad and seeks documents/information that are neither

19 relevant nor proportional to the needs of the case. Responding Party further objects

20 that the Request is vague and ambiguous in scope based on the phrase "purchase

21 agreements."

22      Subject to the foregoing specific and the general objections: Responding Party

23 has no master purchasing agreements and therefore has such responsive documents

24 within its possession, custody, or control.

25      **Plaintiff's Position**

26      *See General Objections.*

27      *See Boilerplate Objections.*

28      There is nothing vague or ambiguous regarding the phrase "purchase

20

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

agreements". The party objecting to discovery as vague or ambiguous has the burden

to show such vagueness or ambiguity by demonstrating that "more tools beyond

mere reason and common sense are necessary to attribute ordinary definitions to

terms and phrases." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal.

2010), *order clarified*,  2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *accord Milinazzo

v. State Farm Ins. Co.,* 247 F.R.D. 691, 695 (S.D.Fla.2007) ("party properly

objecting to an objection on the grounds of vagueness must explain the particular

ways in which a request is vague").  The fact that Legacy responds that it has no

"master purchase agreements" concedes no ambiguity.

Further, Legacy's response that it "has no master purchasing agreements and

therefore has no such responsive documents within its possession, custody or

control" is improper.  Plaintiff did not ask for "master" purchasing agreements; it

asked for all purchasing agreements.   Defendants used IFS' trade secret and

confidential information to identify customers and vendors, purchase goods from

IFS' vendors leveraging confidential pricing negotiated by IFS, give credit to

customers based on IFS' credit information, and sold goods to IFS' customers at

prices that were at or lower than IFS' confidential pricing -- all while Pablo and

Savino still worked for IFS.  Plaintiff is entitled to all purchase agreements with

Legacy's vendors and customers.  Legacy should be compelled to provide a full

compliant response and produce all responsive documents promptly.

### **Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant

also incorporates its arguments and authority in response.

Defendant notes that Plaintiff makes no attempt to describe the relevance of

the potentially broad Request to the claims at issue.

While Plaintiff previously called Defendants' vague and ambiguous objection

pointing out its phrasing "purchase agreements" improper (grouped among other

vague and ambiguous objections), it has not otherwise engaged with this request in a

21

2056838.2

1   meaningful way, which should prevent this Court from issuing any order on the

2   Request.  *See* Gebelin Decl. Ex. 1 (Legacy Request No. 14 identified by number

3   among dozens of other "Inability to Comply" responses on page 5).  *Thomas v. Cate*,

4   715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) is inapposite, as that decision

5   concerned a fairly clear contention interrogatory, rather than a potentially

6   ridiculously expansive Request for Documents.

7        Moreover, the Request as phrased is either vague and ambiguous or terribly

8   overbroad, such that Defendant is unable to determine which documents (and more

9   importantly what information) Plaintiff actually intends to uncover through the

10  Request.  On its face the Request could be interpreted as seeking **all** documents

11  reflecting any agreed upon purchases by Legacy by its vendors (whether or not

12  related to IFS in any way).  Plaintiff's argument further shows the ambiguity of the

13  phrase as Plaintiff apparently intended the request to *also* cover **all** documents

14  reflecting any agreed upon purchases *from* Legacy by any of its customers (again,

15  whether or not related to IFS in any way).  Legacy's response attempted to narrow

16  the potentially overbroad request from coving all of Legacy's purchases (which

17  would be beyond the scope of discovery) to "master agreements"- the types of

18  ongoing specially negotiated agreements that might be expected to document some

19  use of Plaintiff's alleged trade secrets concerning its vendors.

20       Again, to the extent that Plaintiff's request is attempting to find information

21  about IFS or use of its alleged trade secrets, Legacy's response to Request No. 31,

22  below should cover such communications.  If Plaintiff just wanted all of Legacy's

23  buying and selling information (the vast majority of its financial information), the

24  request is overbroad and not targeted to the claims at issue.  Such widespread

25  financial disclosure to a competitor would be dangerous.

26  **REQUEST FOR PRODUCTION NO. 16:**

27       All DOCUMENTS identifying ownership in LEGACY.

28

22

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

**CONFIDENTIAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case.

Subject to and without waiving the forgoing objections, Responding Party's ownership interests are as follows:

███████████████████████████████████████████████████████

███████████████████████████████ (Williams Decl., ¶ 16, Ex. K.)

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

IFS is entitled to all documents regarding the ownership, reflecting ownership interest and/or equity including how that interest was determined.  Such documents are likely to show the use and/or value of IFS' confidential and trade secret information, especially, if ownership percentages and/or owners changed over time. Plaintiff is entitled to all such documents as such materials are likely to reveal plans to use IFS' trade secret information in the formation and development of Legacy and can be used to test deposition testimony given in this case. Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

As worded, this Request could be read to encompass any and all documents or communications relating to the ownership of Legacy and its business (as the individual defendants have an ownership interest an interest in Legacy's ongoing business), which would be an absurd result.

In addition to identifying the "ownership interests" in Legacy in this response,

2056838.2

1 Defendants' compliance with the individual defendants' respective agreements to
2 "produce documents sufficient to state his ownership or equity interest in LEGACY"
3 Defendants have produced documents showing the equity ownership interests in
4 Legacy and the capital contributions that formed the basis for such interests, such as
5 LEGACY00056-00071 (Legacy's Second Amended Operating Agreement)
6 LEGACY002833-002848 (Legacy's First Amended Operating Agreement) and
7 Defendants' responses to Interrogatories. Gebelin Decl. ¶ 15. Moreover, as
8 discussed above, the Defendants have also produced communications amongst the
9 individual defendants relating to the formation of Legacy.

10 Beyond those documents already produced, Plaintiff makes absolutely no
11 attempt to identify the relevance of additional documents or communications, or
12 even to specify what information it seeks from further documents on this topic so
13 that Defendants can try to understand the relevance. Instead, it asserts a blanket right
14 to all documents and communications "regarding" Defendant's ownership interest,
15 which is not true without at least some justification and explanation; moreover
16 Plaintiff would not be entitled to privileged communications relating to any
17 individual defendant's ownership interest in Legacy (e.g. between an individual
18 defendant and his wife or his attorney).

19 **REQUEST FOR PRODUCTION NO. 19:**

20 All of YOUR loan documents.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

22 Responding Party restates the general objections. Responding Party objects
23 that this request is overbroad and seeks documents/information that are neither
24 relevant nor proportional to the needs of the case. Responding Party further objects
25 that the Request is vague and ambiguous in scope based on the phrase "loan
26 documents." Responding Party further objects on the basis of third-party financial
27 privacy.

28 Subject to and without waiving the forgoing objections, Responding Party's

24

1  only loan is a vehicle loan, and there is no relevance to this case of any such

2  documents relating to that loan.

3       **Plaintiff's Position**

4       *See General Objections.*

5       *See Boilerplate Objections.*

6       Legacy's objection of "third-party financial privacy" is baseless given the

7  Protective Order in this case.  Dkt #37.  IFS is entitled to see all representations that

8  Legacy, a start-up, made in support of any loan with respect to any revenue, assets,

9  projected review, clients, prospective clients, employees, locations of operations and

10 other information.   Any representations provided to a lender will test deposition

11 testimony about the source of expected revenues, client and prospective client names,

12 and numbers of employees, use of IFS' trade secrets and confidential information, as

13 well.  Legacy should be compelled to provide a full compliant response and produce

14 all responsive documents promptly.

15      **Defendant's Response**

16      As Plaintiff has incorporated by reference its arguments above and Defendant

17 also incorporates its arguments and authority in response.

18      Plaintiff did not identify this Request by number in its meet and confer

19 correspondence, and only made passing reference to the "vague and ambiguous"

20 objection based on the phrase "loan documents."  Gebelin Decl. Ex. 1.  Given the

21 potential breadth of "loan documents", it is unclear whether Plaintiff seeks

22 documents such as monthly statements, application documents, payment receipts, or

23 other documents relating to Legacy's vehicle loan.  As such, it has not meaningfully

24 met and conferred on this Request, and no order should issue.

25      Moreover, Plaintiff makes no argument that Legacy's vehicle loan (for its

26 delivery truck) is relevant to the contested issues in the case, or that unspecified

27 documents relating to that loan (such as monthly statements) would provide

28 information about the use of "IFS' [alleged] trade secrets and confidential

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1  information" or "client and prospective client names." It instead repeats its stock

2  assertion of possibly relevant information without any thought of how the vehicle

3  loan would actually have that.

4  **REQUEST FOR PRODUCTION NO. 21:**

5      All of YOUR financial statements, including but not limited to pro formas,

6  profit and loss statements, banking statements, balance sheets, cash collections

7  statements, income statements, cash flow statements, accounts receivable reports,

8  accounts payable reports, aging reports.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

10      Responding Party restates the general objections. Responding Party objects

11  that this request is overbroad and seeks documents/information that are neither

12  relevant nor proportional to the needs of the case.

13      Subject to and without waiving the forgoing objections, Responding Party will

14  produce documents sufficient to identify its total sales and profit margins through

15  March 31, 2022, and its sales volumes and amounts for its customers shared with IFS

16  through March 31, 2022.

17      **Plaintiff's Position**

18      *See General Objections.*

19      *See Boilerplate Objections.*

20      ***Information and Documents Post-March 31, 2022***:  Defendant is not

21  permitted to establish an artificial cut-off of its choosing for the production of

22  responsive documents.  Indeed, a party has a duty to produce responsive documents

23  as litigation continues.  *See* FRCP 26(e).  Defendant's refusal to produce any

24  information or documents after the termination of Pablo and Savino's employment

25  with IFS is baseless.

26      In response to the foregoing, Legacy produce a one-page spreadsheet that

27  identified certain IFS customers from whom Legacy diverted sales, the total

28  "quantity" sold, total revenue, total profit and profit margin through March 31, 2021.

26

2056838.2

1   However, the one-page summary does not satisfy Defendants' need to produce

2   financial statements, including but not limited to pro formas, profit and loss

3   statements, banking statements, balance sheets, cash collections statements, income

4   statements, cash flow statements, accounts receivable reports, accounts payable

5   reports, aging report that will allow IFS to test Legacy's summary that was created

6   for litigation. Moreover, such documents relate to damages at issue in this case.

7          Defendants used IFS' trade secret and confidential information to form

8   Legacy, to identify customers and vendors, purchase goods from IFS' vendors

9   leveraging confidential pricing negotiated by IFS, give credit to customers based on

10  IFS' credit information, and sold goods to IFS' customers at prices that were at or

11  lower than IFS' confidential pricing.  Prior to March 31, 2022 Defendants admittedly

12  diverted sales from at least 17 IFS customers, usurped other business opportunities,

13  and continue to use IFS trade secrets do so.  Furthermore, Pablo and Savino

14  represented to the Court that "Legacy would sell products to IFS customers when IFS

15  did not sell the type of item or IFS would not meet the customer's price demand…"

16  The requested documents are necessary discovery into Plaintiff's claims and

17  Defendants' purported defenses and are proportional to the needs of the case.

18  Legacy should be compelled to provide a full compliant response and produce all

19  responsive documents promptly.

20         **Defendant's Response**

21         As Plaintiff has incorporated by reference its arguments above and Defendant

22  also incorporates its arguments and authority in response.

23         ***Information and Documents Post-March 31, 2022:***

24         Prior to March 31, 2022, Defendant Legacy was a customer of IFS,

25  Defendants Savino Morales and Pablo Morales were employees of IFS, and there

26  was no litigation between Plaintiff and Defendants.  Plaintiff filed the instant suit on

27  March 31, 2022, and as of that date Legacy was no longer a customer and the

28  Morales defendants were no longer its employees.

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1    In providing responses agreeing to produce documents, Defendants frequently
2    used the filing date of Plaintiff's complaint as a cutoff to attempt to delineate the
3    period in which documents concerning this litigation (of which the majority were
4    and/or would be subject to the attorney client and/or work product privileges) would
5    not be present.  After that date, the overwhelming majority of Defendants'
6    documents referencing IFS concerned ongoing litigation issues relating to this case
7    or the Morales's anticipated employment claims against IFS, and would be expected
8    to provide limited probative value concerning the facts underlying Plaintiff's claims
9    in dispute.

10    To the extent that Plaintiff argues post March 31, 2022 documents would be
11    relevant if they comprise its "documents and spreadsheets containing trade secret and
12    confidential information", Defendant would be willing to search for such documents
13    as identified by Plaintiff.

14    However, in searching for and producing documents, Defendants did not
15    necessarily limit their search or production to documents following that date, and
16    instead actually produced responsive hundreds of pages of non-privileged documents
17    dated after March 31, 2022.  Gebelin Decl. ¶ 14.  Such documents include emails that
18    referred to IFS, such as LEGACY01955 (email from S. Escamilla dated April 7,
19    2022 to Pablo and Savino), LEGACY01994 (email from IFS to S. Escamilla dated
20    April 13, 2022), LEGACY 02164-02166 (email from Savino to Pablo, S. Escamilla,
21    and D. Tablado).  *Id*.

22    **Request Specific Argument**: Plaintiff has provided no justification for its
23    assertion that it is entitled to such an expansive scope of information relating to
24    Legacy's financials, nor did it do so in its meet and confer efforts.  See, e.g. Gebelin
25    Decl. Ex. 1 at pages 5, 8 (identifying Request No. 21 as one of dozens for which
26    Defendants did not agree to produce "all" documents or limited their response in
27    time).

28    Plaintiff's claims against Legacy arise from alleged misappropriation of trade

28

2056838.2

1   secrets, not the entirety of Legacy's business that would be encompassed by this

2   wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and

3   the defendant were business competitors, disclosure of the defendant's financial

4   records to the plaintiff, even with a protective order, could cause the defendant great

5   harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

6   1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

7   491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

8   concerning [trade secret counter-defendant's] financial statements, cash flow

9   statements, and tax returns").

10      As Plaintiff's response admits, Defendant did produce a spreadsheet showing

11  its total sales and profit margins through March 31, 2022, as well as the volume of

12  sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

13  efforts any additional "shared customers" during that period, and has failed to

14  produce any documents concerning sales it purportedly lost to Legacy.  If there is

15  additional information required to evaluate its claims, Plaintiff should make the

16  effort to identify it rather than demand every document relating to a competitor's

17  financials.

18      To the extent that this request is targeted towards the use of Plaintiff's alleged

19  trade secrets, Defendant's agreement to produce communications referring to it or its

20  trade secrets as set forth in connection with Request No. 31 below should suffice.

21  **REQUEST FOR PRODUCTION NO. 22:**

22      All DOCUMENTS reflecting cash payments to YOU.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

24      Responding Party restates the general objections. Responding Party objects

25  that this request is overbroad and seeks documents/information that are neither

26  relevant nor proportional to the needs of the case.

27

28

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

Documents and deposition testimony confirm the existence of "cash spreadsheet" that Legacy maintained. *See* Williams Decl., Ex. F, 220:5-221:13, 236:17-25.  In addition, deposition testimony confirmed that certain of IFS' customers that Legacy sold products to paid IFS in cash. *See* Williams Decl., Ex. F, 186:10-16.  IFS is entitled to review Legacy's records of cash payments that Pablo and Savino collected to analyze the likely diversion of cash payments destined for IFS to Legacy.  Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

Plaintiff has not meaningfully engaged with this request in its meet and confer efforts, and still fails to do so in this argument, which should prevent this Court from issuing any order on the Request.  *See* Gebelin Decl. Ex. 1 (Legacy Request No. 22 identified by number among dozens of other "only objection" responses in footnote 1).

Plaintiff's claims against Legacy arise from alleged misappropriation of trade secrets, not the entirety of Legacy's business that would be encompassed by this wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and the defendant were business competitors, disclosure of the defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents concerning [trade secret counter-defendant's] financial statements, cash flow

30

2056838.2

1   statements, and tax returns").

2       While defendants have admitted to the use of a spreadsheet for tracking
3   Legacy's collection of cash payments from its customers (including some shared
4   customers) and Legacy's making of cash payments to Plaintiff (*see* Williams Decl.,
5   Ex. F, 186:10-16), Plaintiff fails to connect that document (or any document within
6   the scope of this Request) to its claims in any way.  Plaintiff already has information
7   showing the total sales by Legacy to shared customers.  *See* Request No. 21, above.

8       To the extent that this request is targeted towards the use of Plaintiff's alleged
9   trade secrets, Defendant's agreement to produce communications referring to it or its
10  trade secrets as set forth in connection with Request No. 31 below should suffice.

11  **REQUEST FOR PRODUCTION NO. 23:**

12      All of YOUR sales reports, including but not limited to sales pipeline reports,
13  booked sales reports, closed sales reports, sales commissions reports, margin reports,
14  profit reports, cost reports, cash sheets, compilations reflecting individual sales,
15  compilations reflecting team sales, and compilations reflecting company-wide sales.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

17      Responding Party restates the general objections. Responding Party objects
18  that this request is overbroad and seeks documents/information that are neither
19  relevant nor proportional to the needs of the case.

20      Subject to and without waiving the forgoing objections, based on its
21  understandings of the terms, Responding Party does not have any sales pipeline
22  reports, booked sales reports, closed sales reports, compilations reflecting individual
23  sales, and/or compilations reflecting team sales. Responding Party will produce
24  documents sufficient to identify its total sales and profit margins through March 31,
25  2022, and its sales volumes and amounts for its customers shared with IFS through
26  March 31, 2022.

27

28

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

*See Information and Documents Post-March 31, 2022.*

Further, in response to the foregoing, Legacy claims that it does not have pipeline reports, booked sales reports, closed sales reports, compilations reflecting individual sales, and/or compilations reflecting team sales. Legacy, however, fails to address Plaintiff's request for sales commissions reports, margin reports, profit reports, cost reports, cash sheets, and compilations reflecting company-wide sales. And, deposition testimony confirms the existence of such information on Legacy's computer system.

Instead, Legacy produced a one-page spreadsheet that identified IFS customers from whom Legacy diverted sales, the total "quantity" sold, total revenue, total profit and profit margin through March 31, 2022. It does not satisfy Defendants' obligation to produce responsive documents. Defendants used IFS' trade secret and confidential information to form Legacy, to identify customers and vendors, purchase goods from IFS' vendors leveraging confidential pricing negotiated by IFS, give credit to customers based on IFS' credit information, and sold goods to IFS' customers at prices that were at or lower than IFS' confidential pricing. Prior to March 31, 2022, Defendants admittedly diverted sales from at least 17 IFS customers, usurped other business opportunities, and continue to use IFS trade secrets do so. Furthermore, Pablo and Savino represented to the Court that "Legacy would sell products to IFS customers when IFS did not sell the type of item or IFS would not meet the customer's price demand…" The requested documents are necessary discovery into Plaintiff's claims and Defendants' purported defenses and are proportional to the needs of the case. Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

32

2056838.2

1    As Plaintiff has incorporated by reference its arguments above and Defendant

2    also incorporates its arguments and authority in response.

3    Plaintiff has provided no justification for its assertion that it is entitled to such

4    an expansive scope of documents and information relating to Legacy's financials,

5    nor did it do so in its meet and confer efforts.  See, e.g. Gebelin Decl. Ex. 1 at pages

6    5, 8 (identifying Legacy Request No. 23 as one of dozens for which Defendants did

7    not agree to produce "all" documents or limited their response in time).

8    Plaintiff's claims against Legacy arise from alleged misappropriation of trade

9    secrets, not the entirety of Legacy's business that would be encompassed by this

10    wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and

11    the defendant were business competitors, disclosure of the defendant's financial

12    records to the plaintiff, even with a protective order, could cause the defendant great

13    harm."  *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

14    1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

15    491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

16    concerning [trade secret counter-defendant's] financial statements, cash flow

17    statements, and tax returns").

18    As Plaintiff's response admits, Defendant did produce a spreadsheet showing

19    its total sales and profit margins through March 31, 2022, as well as the volume of

20    sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

21    efforts any additional "shared customers" during that period, and has failed to

22    produce any documents concerning sales it purportedly lost to Legacy.  If there is

23    additional information required to evaluate its claims, Plaintiff should make the

24    effort to identify that information rather than demand such a broad scope of

25    documents concerning a competitor's financials.

26    To the extent that this request is targeted towards the use of Plaintiff's alleged

27    trade secrets, Defendant's agreement to produce communications referring to it or its

28    trade secrets as set forth in connection with Request No. 31 below should suffice.

33

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS reflecting YOUR customer margin information.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case. Responding Party further objects that the Request is vague and ambiguous in scope based on the phrase "reflecting YOUR customer margin information."

Subject to and without waiving the forgoing objections, Responding Party will produce documents sufficient to identify its total sales and profit margins through March 31, 2022, and its sales volumes and amounts for its customers shared with IFS through March 31, 2022.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

*See Information and Documents Post-March 31, 2022.*

There is nothing vague or ambiguous regarding the phrase "reflecting YOUR customer margin information". The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010), *order clarified*, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *accord Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D.Fla.2007) ("party properly objecting to an objection on the grounds of vagueness must explain the particular ways in which a request is vague").

Legacy produced a one-page spreadsheet that identified the IFS customers from whom Legacy diverted sales, the total "quantity" told, total revenue, total profit and profit margin through March 31, 2022. It does not satisfy Defendants' burden.

34

JOINT STIP RE DISCOVERY DISPUTE RE FIRST SET OF RFPD TO DEF LEGACY WHOLESALE GROUP, LLC

2056838.2

Defendants used IFS' trade secret and confidential information to form Legacy, to identify customers and vendors, purchase goods from IFS' vendors leveraging confidential pricing negotiated by IFS, give credit to customers based on IFS' credit information, and sold goods to IFS' customers at prices that were at or lower than IFS' confidential pricing.  Prior to March 31, 2022 Defendants admittedly diverted sales from at least 17 IFS customers, usurped other business opportunities, and continue to use IFS trade secrets do so.  Furthermore, Pablo and Savino represented to the Court that "Legacy would sell products to IFS customers when IFS did not sell the type of item or IFS would not meet the customer's price demand…"  In addition, this information is needed to test deposition testimony about the manner in which Legacy's salespersons, including salespersons that Legacy induced to work for Legacy and hide the employment from IFS, were allowed to sell Legacy's products to IFS' customers.  Moreover, such information relates to damages in this case.  The requested documents are necessary discovery into Plaintiff's claims and Defendants' purported defenses and are proportional to the needs of the case. Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

Plaintiff has provided no justification for its assertion that it is entitled to such an expansive scope of documents and information relating to Legacy's profitability, nor did it do so in its meet and confer efforts.  *See, e.g.* Gebelin Decl. Ex. 1 at pages 5, 8 (identifying Legacy Request No. 25 as one of dozens for which Defendants did not agree to produce "all" documents or limited their response in time).  Concerning the potential vagueness of the phrase "reflecting YOUR customer margin information", the Request could theoretically encompass all documents showing Defendant's true costs, overhead operating expenses, sales prices, collection costs,

2056838.2

1  losses, and any other information pertaining to business of the sales of goods, *i.e.* all

2  of the documents relating to its financials.  That is obviously overbroad for this case.

3       Plaintiff's claims against Legacy arise from alleged misappropriation of trade

4  secrets, not the entirety of Legacy's business that would be encompassed by this

5  wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and

6  the defendant were business competitors, disclosure of the defendant's financial

7  records to the plaintiff, even with a protective order, could cause the defendant great

8  harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

9  1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

10  491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

11  concerning [trade secret counter-defendant's] financial statements, cash flow

12  statements, and tax returns").

13       As Plaintiff's response admits, Defendant did produce a spreadsheet showing

14  its total sales and profit margins through March 31, 2022, as well as the volume of

15  sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

16  efforts any additional "shared customers" during that period, and has failed to

17  produce any documents concerning sales it purportedly lost to Legacy.  If there is

18  additional information required to evaluate its claims, Plaintiff should make the

19  effort to identify that information rather than demand such a broad scope of

20  documents concerning a competitor's financials.

21       To the extent that this request is targeted towards the use of Plaintiff's alleged

22  trade secrets, Defendant's agreement to produce communications referring to it or its

23  trade secrets as set forth in connection with Request No. 31 below should suffice.

24  **REQUEST FOR PRODUCTION NO. 26:**

25       All DOCUMENTS reflecting YOUR profitability per customer.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

27       Responding Party restates the general objections. Responding Party objects

28  that this request is overbroad and seeks documents/information that are neither

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

relevant nor proportional to the needs of the case Responding Party further objects that the Request is vague and ambiguous in scope based on the phrase "reflecting YOUR profitability per customer."

Subject to and without waiving the forgoing objections, Responding Party will produce documents sufficient to identify its total sales and profit margins through March 31, 2022, and its sales volumes and amounts for its customers shared with IFS through March 31, 2022.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

*See Information and Documents Post-March 31, 2022.*

There is nothing vague or ambiguous regarding the phrase "reflecting YOUR profitability per customer". The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010), *order clarified*, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *accord Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D.Fla.2007) ("party properly objecting to an objection on the grounds of vagueness must explain the particular ways in which a request is vague").

Legacy produced a one-page spreadsheet that identified the IFS customers from whom Legacy diverted sales, the total "quantity" told, total revenue, total profit and profit margin through March 31, 2022. It does not satisfy Defendants' burden. Defendants used IFS' trade secret and confidential information to form Legacy, to identify customers and vendors, purchase goods from IFS' vendors leveraging confidential pricing negotiated by IFS, give credit to customers based on IFS' credit information, and sold goods to IFS' customers at prices that were at or lower than IFS' confidential pricing. Prior to March 31, 2022 Defendants admittedly diverted

2056838.2

sales from at least 17 IFS customers, usurped other business opportunities, and continue to use IFS trade secrets do so.  Furthermore, Pablo and Savino represented to the Court that "Legacy would sell products to IFS customers when IFS did not sell the type of item or IFS would not meet the customer's price demand…"  In addition, this information is needed to test deposition testimony about the manner in which Legacy's salespersons, including salespersons that Legacy induced to work for Legacy and hide the employment from IFS, were allowed to sell Legacy's products to IFS' customers.  Moreover, such information relates to damages in this case.  The requested documents are necessary discovery into Plaintiff's claims and Defendants' purported defenses and are proportional to the needs of the case. Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

## Defendant's Response

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

Plaintiff has provided no justification for its assertion that it is entitled to such an expansive scope of documents and information relating to Legacy's profitability, nor did it do so in its meet and confer efforts.  *See, e.g.* Gebelin Decl. Ex. 1 at pages 5, 8 (identifying Legacy Request No. 26 as one of dozens for which Defendants did not agree to produce "all" documents or limited their response in time).  Concerning the potential vagueness of the phrase "reflecting YOUR profitability per customer", the Request could theoretically encompass all documents showing Defendant's true costs, overhead operating expenses, sales prices, collection costs, losses, and any other information pertaining to business of the sales of goods, *i.e.* all of the documents relating to its financials.  That is obviously overbroad for this case.

Plaintiff's claims against Legacy arise from alleged misappropriation of trade secrets, not the entirety of Legacy's business that would be encompassed by this wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and

38

1  the defendant were business competitors, disclosure of the defendant's financial

2  records to the plaintiff, even with a protective order, could cause the defendant great

3  harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

4  1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

5  491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

6  concerning [trade secret counter-defendant's] financial statements, cash flow

7  statements, and tax returns").

8      As Plaintiff's response admits, Defendant did produce a spreadsheet showing

9  its total sales and profit margins through March 31, 2022, as well as the volume of

10 sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

11 efforts any additional "shared customers" during that period, and has failed to

12 produce any documents concerning sales it purportedly lost to Legacy.  If there is

13 additional information required to evaluate its claims, Plaintiff should make the

14 effort to identify that information rather than demand such a broad scope of

15 documents concerning a competitor's financials.

16     To the extent that this request is targeted towards the use of Plaintiff's alleged

17 trade secrets, Defendant's agreement to produce communications referring to it or its

18 trade secrets as set forth in connection with Request No. 31 below should suffice.

19 **REQUEST FOR PRODUCTION NO. 27:**

20     All of YOUR vendor agreements.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

22     Responding Party restates the general objections. Responding Party objects

23 that this request is overbroad and seeks documents/information that are neither

24 relevant nor proportional to the needs of the case. Responding Party further objects

25 that the Request is vague and ambiguous in scope based on the phrase "vendor

26 agreements."

27     Subject to and without waiving the forgoing objections, Responding Party has

28 no exclusivity or confidentiality agreements with any vendors.

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

Defendant's objection that the term "vendor agreements" is vague and ambiguous is likewise improper and should be stricken. The party objecting to discovery as vague or ambiguous has the burden to show

such vagueness or ambiguity by demonstrating that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010), *order clarified*, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *accord Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 695 (S.D.Fla.2007) ("party properly objecting to an objection on the grounds of vagueness must explain the particular ways in which a request is vague"). Defendant fails to meet this burden.

Fed. Rule Civ. Proc. 34 provides: (b) for each item or category, the response must either state that inspection and related activities will be permitted *as requested* or state with specificity the grounds for objecting to the request, including the reasons; and (c) an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Defendant's responses fail to comply with the FRCP. The request seeks "All of YOUR vendor agreements." Defendant responded that it "has no exclusivity or confidentiality agreements with any vendors." Plaintiff did not request exclusivity or confidentiality agreements. It requested all vendor agreements. The response is evasive. Defendant should be ordered to provide a legally compliant response and produce all responsive documents which are necessary discovery into Plaintiff's claims and Defendants' purported defenses and are proportional to the needs of the case. Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

40

**Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

Again, Plaintiff has provided no justification for its assertion that it is entitled to such an expansive scope of documents and information relating to Legacy's financials, nor did it do so in its meet and confer efforts.  *See, e.g.* Gebelin Decl. Ex. 1 at page 5 (identifying Legacy Request No. 27 as one of dozens for which Defendants did not agree to produce "all" documents).  Concerning the potential vagueness of the phrase "vendor agreements", the Request could theoretically encompass all documents showing Defendant's agreed upon purchases from any and all vendors, whether or not related to IFS.  That is obviously overbroad for this case, and Legacy's attempt to narrow the request to exclusivity and confidentiality agreements represents a genuine attempt to narrow the scope to "agreements" that would be expected to have the kind of information relating to IFS' trade secret and similar claims.  *See also* Response regarding Request No. 14 above, confirming no negotiated agreements with vendors.

Plaintiff's claims against Legacy arise from alleged misappropriation of trade secrets, not the entirety of Legacy's business that would be encompassed by this wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and the defendant were business competitors, disclosure of the defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm."  *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents concerning [trade secret counter-defendant's] financial statements, cash flow statements, and tax returns").

As Plaintiff's response admits, Defendant did produce a spreadsheet showing its total sales and profit margins through March 31, 2022, as well as the volume of

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1   sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

2   efforts any "shared vendors" or trade secrets actually possessed by any of the

3   individual defendants during that period relating to such vendors.  If there is

4   additional information required to evaluate its claims, Plaintiff should make the

5   effort to identify that information rather than demand such a broad scope of

6   documents concerning a competitor's financials.

7         To the extent that this request is targeted towards the use of Plaintiff's alleged

8   trade secrets, Defendant's agreement to produce communications referring to it or its

9   trade secrets as set forth in connection with Request No. 31 below should suffice.

10  **REQUEST FOR PRODUCTION NO. 28:**

11        All of YOUR customer agreements.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

13        Responding Party restates the general objections. Responding Party objects

14  that this request is overbroad and seeks documents/information that are neither

15  relevant nor proportional to the needs of the case. Responding Party further objects

16  that the Request is vague and ambiguous in scope based on the phrase "customer

17  agreements."

18        Subject to and without waiving the forgoing objections, Responding Party has

19  no exclusivity or confidentiality agreements with any customers. Furthermore,

20  Responding Party has no documents comprising written agreements with customers

21  known to be shared customers with IFS.

22        **Plaintiff's Position**

23        *See General Objections.*

24        *See Boilerplate Objections.*

25        Defendant's objection that the term "customer agreements" is vague and

26  ambiguous is likewise improper.  The party objecting to discovery

27  as vague or ambiguous has the burden to show such vagueness or ambiguity by

28  demonstrating that "more tools beyond mere reason and common sense are necessary

42

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1  to attribute ordinary definitions to terms and phrases." *Thomas v. Cate*, 715 F. Supp.

2  2d 1012, 1030 (E.D. Cal. 2010), *order clarified*,  2010 WL 797019 (E.D. Cal. Mar.

3  5, 2010); *accord Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 695

4  (S.D.Fla.2007) ("party properly objecting to an objection on the grounds

5  of vagueness must explain the particular ways in which a request is vague").

6  Defendant fails to meet this burden.

7       The request seeks "All of YOUR customer agreements."  Defendant

8  responded that it "has no exclusivity or confidentiality agreements with any

9  customers… and has no documents comprising written agreements with customers

10  known to be shared customers with IFS."  The response is evasive and must be

11  supplemented.

12       Fed. Rule Civ. Proc. 34 provides: (b) for each item or category, the response

13  must either state that inspection and related activities will be permitted *as requested*

14  or state with specificity the grounds for objecting to the request, including the

15  reasons; and (c) an objection must state whether any responsive materials are being

16  withheld on the basis of that objection. An objection to part of a request must specify

17  the part and permit inspection of the rest.

18       Defendant's responses fail to comply with the FRCP.  Defendant should be

19  ordered to provide a legally compliant response and produce all responsive

20  documents which are necessary discovery into Plaintiff's claims and Defendants'

21  purported defenses and are proportional to the needs of the case. Legacy should be

22  compelled to provide a full compliant response and produce all responsive

23  documents promptly.

24       **Defendant's Response**

25       As Plaintiff has incorporated by reference its arguments above and Defendant

26  also incorporates its arguments and authority in response.

27       Again, Plaintiff has provided no justification for its assertion that it is entitled

28  to such an expansive scope of documents and information relating to Legacy's

2056838.2

1  financials, nor did it do so in its meet and confer efforts.  *See, e.g.* Gebelin Decl. Ex.

2  1 at pages 5, 8 (identifying Legacy Request No. 28 as one of dozens for which

3  Defendants stated an inability to comply and did not agree to produce "all"

4  documents).  Concerning the potential vagueness of the phrase "customer

5  agreements", the Request could theoretically encompass all documents showing

6  Defendant's agreed upon sales to any and all customers, whether or not related to

7  IFS.  That is obviously overbroad for this case, and Legacy's attempt to narrow the

8  request to exclusivity and confidentiality agreements represents a genuine attempt to

9  narrow the scope to "agreements" that would be expected to have the kind of

10  information relating to IFS' trade secret and similar claims.  Plaintiff made no

11  response to that limitation in its meet and confer.

12      Plaintiff's claims against Legacy arise from alleged misappropriation of trade

13  secrets, not the entirety of Legacy's business that would be encompassed by this

14  wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff and

15  the defendant were business competitors, disclosure of the defendant's financial

16  records to the plaintiff, even with a protective order, could cause the defendant great

17  harm."  *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

18  1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

19  491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

20  concerning [trade secret counter-defendant's] financial statements, cash flow

21  statements, and tax returns").

22      As Plaintiff's response admits, Defendant did produce a spreadsheet showing

23  its total sales and profit margins through March 31, 2022, as well as the volume of

24  sales to shared customers with IFS.  Plaintiff has not identified in its meet and confer

25  efforts any additional "shared customers."  If there is additional information required

26  to evaluate its claims, Plaintiff should make the effort to identify that information

27  rather than demand such a broad scope of documents concerning a competitor's

28  financials.

JOINT STIP RE DISCOVERY DISPUTE RE FIRST SET OF RFPD TO DEF LEGACY WHOLESALE GROUP, LLC

2056838.2

To the extent that this request is targeted towards the use of Plaintiff's alleged trade secrets, Defendant's agreement to produce communications referring to it or its trade secrets as set forth in connection with Request No. 31 below should suffice.

**REQUEST FOR PRODUCTION NO. 29:**

All COMMUNICATIONS with any customer or prospective customer that refers to or mentions IFS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case.

Subject to and without waiving the forgoing objections, Responding Party will produce its COMMUNICATIONS on or prior to March 31, 2022, with any customer or prospective customer that mentions IFS.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

*See Information and Documents Post-March 31, 2022.*

FRCP 34 provides: (b) for each item or category, the response must either state that inspection and related activities will be permitted *as requested* or state with specificity the grounds for objecting to the request, including the reasons; and (c) an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Defendant's response is evasive and fails to comply with the FRCP. Defendant must state that it will produce *all* responsive documents to the requested category.  It cannot unilaterally limit the scope of the request.  Accordingly, Defendant should be compelled to serve a further response and produce all responsive documents. Legacy should be compelled to provide a full compliant

45

2056838.2

1   response and produce all responsive documents promptly.

2   **Defendant's Response**

3   Plaintiff wholly incorporated its arguments concerning "General Objections"

4   and "Boilerplate Objections", and Defendant likewise incorporates its arguments

5   concerning the same.  Plaintiff also incorporated its arguments from Request 21,

6   above concerning "*Information and Documents Post-March 31, 2022,'* and

7   Defendant likewise incorporates its response above.

8   During the meet and confer process Defendants attempted to discuss the

9   relevance of Plaintiff's very broad Requests, but was repeatedly told that Plaintiff

10  would not "explain why we're entitled to the information."  Gebelin Decl. ¶ 5.

11  Concerning instances such as this Request where Defendant's response limited its

12  affirmative production to documents that "mention IFS" as a way to identify those

13  that "referred to IFS", Plaintiff agreed to continue to meet and confer concerning

14  keywords for searched that could be conducted to identify such documents, but did

15  not do so.  *See* Gebelin Decl. ¶ 5-6.

16  Plaintiff once again fails to explain why Defendant should be forced to endure

17  the expense or effort to attempt to identify and produce all of the documents

18  requested beyond the scope of what Defendant agreed to produce in an attempt to

19  reduce the burden and focus the request towards potentially relevant documents.

20  There is no explanation whatsoever of the relevance or importance of the documents

21  excluded from the Request (if any would exists) or why Defendant's searches should

22  use other ways to look for responsive documents other than searching through each

23  and every one of it's documents.

24  Here, Defendant agreed to provide and did provide "non-privileged

25  DOCUMENTS dated prior to March 31, 2022, that mentions [*sic*] IFS," but

26  Defendant has already produced non-privileged documents that mention IFS and are

27  dated after March 31, 2022.  Gebelin Decl. ¶ 14.  As the date of documents advanced

28  further from March 31, 2022, those documents mentioning IFS in connection with

46

2056838.2

1  ongoing litigation increased.  *Id*.

2      While Defendant maintains that ongoing searches of its files and documents to

3  uncover new documents that "mention IFS" are likely to be unduly burdensome as

4  later and later documents will be mostly, if not completely, comprised of documents

5  concerning the ongoing conduct of the litigation and largely (again if not entirely)

6  protected under the attorney client and/or work product privileged, Defendant will

7  agree to supplement its response to remove the limitation of "dated prior to March

8  31, 2022" as follows:

9      "Subject to and without waiving the forgoing objections, Responding Party

10  will produce non-privileged DOCUMENTS that mentions IFS dated prior to March

11  31, 2022 and non-privileged DOCUMENTS that mention IFS in connection with its

12  specifically identified trade secret or confidential information."

13  **REQUEST FOR PRODUCTION NO. 30:**

14      All COMMUNICATIONS with any vendor and/or prospective vendor that

15  refers to or mentions IFS.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

17      Responding Party restates the general objections. Responding Party objects

18  that this request is overbroad and seeks documents/information that are neither

19  relevant nor proportional to the needs of the case.

20      Subject to and without waiving the forgoing objections, Responding Party will

21  produce its COMMUNICATIONS on or prior to March 31, 2022, with any vendor

22  and/or prospective vendor that mentions IFS.

23      **Plaintiff's Position**

24      *See General Objections*.

25      *See Boilerplate Objections.*

26      *See Information and Documents Post-March 31, 2022.*

27      Defendant's evasive response fails to comply with the FRCP's requirements.

28  Defendant must state that it will produce *all* responsive documents to the requested

47

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1   category.  It cannot unilaterally limit the scope of the request.  Accordingly,

2   Defendant should be compelled to serve a further response and produce all

3   responsive documents.

4        **Defendant's Response**

5        Plaintiff wholly incorporated its arguments concerning "General Objections"

6   and "Boilerplate Objections", and Defendant likewise incorporates its arguments

7   concerning the same.  Plaintiff also incorporated its arguments from Request 21,

8   above concerning "*Information and Documents Post-March 31, 2022,'* and

9   Defendant likewise incorporates its response above.

10        During the meet and confer process Defendants attempted to discuss the

11  relevance of Plaintiff's very broad Requests, but was repeatedly told that Plaintiff

12  would not "explain why we're entitled to the information."  Gebelin Decl. ¶ 5.

13  Concerning instances such as this Request where Defendant's response limited its

14  affirmative production to documents that "mention IFS" as a way to identify those

15  that "referred to IFS", Plaintiff agreed to continue to meet and confer concerning

16  keywords for searched that could be conducted to identify such documents, but did

17  not do so.  *See* Gebelin Decl. ¶ 5-6.

18        Plaintiff once again fails to explain why Defendant should be forced to endure

19  the expense or effort to attempt to identify and produce all of the documents

20  requested beyond the scope of what Defendant agreed to produce in an attempt to

21  reduce the burden and focus the request towards potentially relevant documents.

22  There is no explanation whatsoever of the relevance or importance of the documents

23  excluded from the Request (if any would exists) or why Defendant's searches should

24  use other ways to look for responsive documents other than searching through each

25  and every one of it's documents.

26        Here, Defendant agreed to provide and did provide "non-privileged

27  DOCUMENTS dated prior to March 31, 2022, that mentions [*sic*] IFS," but

28  Defendant has already produced non-privileged documents that mention IFS and are

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  dated after March 31, 2022.  Gebelin Decl. ¶ 14.  As the date of documents advanced

2  further from March 31, 2022, those documents mentioning IFS in connection with

3  ongoing litigation increased.  *Id.*

4      While Defendant maintains that ongoing searches of its files and documents to

5  uncover new documents that "mention IFS" are likely to be unduly burdensome as

6  later and later documents will be mostly, if not completely, comprised of documents

7  concerning the ongoing conduct of the litigation and largely (again if not entirely)

8  protected under the attorney client and/or work product privileged, Defendant will

9  agree to supplement its response to remove the limitation of "dated prior to March

10  31, 2022" as follows:

11      "Subject to and without waiving the forgoing objections, Responding Party

12  will produce non-privileged DOCUMENTS that mentions IFS dated prior to March

13  31, 2022 and non-privileged DOCUMENTS that mention IFS in connection with its

14  specifically identified trade secret or confidential information."

15  **REQUEST FOR PRODUCTION NO. 31:**

16      All DOCUMENTS that refer to or mention IFS.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

18      Responding Party restates the general objections. Responding Party objects

19  that this request is overbroad and seeks documents/information that are neither

20  relevant nor proportional to the needs of the case.

21      Subject to and without waiving the forgoing objections, Responding Party will

22  produce its non-privileged DOCUMENTS dated prior to March 31, 2022, that

23  mentions IFS, excluding invoices or purchase orders between Legacy and IFS which

24  are already in the custody of Plaintiff.

25      **Plaintiff's Position**

26      *See General Objections.*

27      *See Boilerplate Objections.*

28      *See Information and Documents Post-March 31, 2022.*

1    Defendant's response fails to comply with the FRCP.  Defendant must state

2  that it will produce *all* responsive documents to the requested category.  It cannot

3  unilaterally limit the scope of the request (i.e., limiting the scope to prior to March

4  31, 2022 and only those that "mention" IFS, especially given Defendants use of

5  codes, code names and other deceptive practices).  Accordingly, Defendant should be

6  compelled to serve a further response and produce all responsive documents.

7    **Defendant's Response**

8    Plaintiff wholly incorporated its arguments concerning "General Objections"

9  and "Boilerplate Objections", and Defendant likewise incorporates its arguments

10  concerning the same.  Plaintiff also incorporated its arguments from Request 21,

11  above concerning "*Information and Documents Post-March 31, 2022,*" and

12  Defendant likewise incorporates its response above.

13    During the meet and confer process Defendants attempted to discuss the

14  relevance of Plaintiff's very broad Requests, but was repeatedly told that Plaintiff

15  would not "explain why we're entitled to the information."  Gebelin Decl. ¶ 5.

16  Concerning instances such as this Request where Defendant's response limited its

17  affirmative production to documents that "mention IFS" as a way to identify those

18  that "referred to IFS", Plaintiff agreed to continue to meet and confer concerning

19  keywords for searched that could be conducted to identify such documents, but did

20  not do so.  *See* Gebelin Decl. ¶ 5-6.

21    Plaintiff once again fails to explain why Defendant should be forced to endure

22  the expense or effort to attempt to identify and produce all of the documents

23  requested beyond the scope of what Defendant agreed to produce in an attempt to

24  reduce the burden and focus the request towards potentially relevant documents.

25  There is no explanation whatsoever of the relevance or importance of the documents

26  excluded from the Request (if any would exists) or why Defendant's searches should

27  use other ways to look for responsive documents other than searching through each

28  and every one of it's documents.

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1   Here, Defendant agreed to provide and did provide "non-privileged

2   DOCUMENTS dated prior to March 31, 2022, that mentions [*sic*] IFS," but

3   Defendant has already produced non-privileged documents that mention IFS and are

4   dated after March 31, 2022.  Gebelin Decl. ¶ 14.  As the date of documents advanced

5   further from March 31, 2022, those documents mentioning IFS in connection with

6   ongoing litigation increased.  *Id.*

7   While Defendant maintains that ongoing searches of its files and documents to

8   uncover new documents that "mention IFS" are likely to be unduly burdensome as

9   later and later documents will be mostly, if not completely, comprised of documents

10  concerning the ongoing conduct of the litigation and largely (again if not entirely)

11  protected under the attorney client and/or work product privileged, Defendant will

12  agree to supplement its response to remove the limitation of "dated prior to March

13  31, 2022" as follows:

14  "Subject to and without waiving the forgoing objections, Responding Party

15  will produce non-privileged DOCUMENTS that mentions IFS dated prior to March

16  31, 2022 and non-privileged DOCUMENTS that mention IFS in connection with its

17  specifically identified trade secret or confidential information."

18  **REQUEST FOR PRODUCTION NO. 32:**

19  All DOCUMENTS with information about IFS' customers and/or suppliers,

20  including but not limited to customer or supplier point of contact, cell phone number,

21  email address, customer or supplier preferences, terms of doing business, order

22  history, sales, products, pricings, and credit information.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

24  Responding Party restates the general objections. Responding Party objects

25  that this request is overbroad and seeks documents/information that are neither

26  relevant nor proportional to the needs of the case. Responding Party further objects

27  that the Request is vague and ambiguous in scope based on the phrase

28  "DOCUMENTS with information about IFS' customers and/or suppliers," as IFS

51

1  knows the identity of its own customers and/or suppliers, and Legacy does not know

2  all of IFS' customers and/or suppliers to be able to identify them as such.

3      Subject to and without waiving the forgoing objections, Responding Party will

4  produce any non-privileged documents within its possession, custody, or control

5  which list and identify customers and/or vendors as "IFS' customers" and/or "IFS'

6  vendors".

7      **Plaintiff's Position**

8      *See General Objections.*

9      *See Boilerplate Objections.*

10     Defendant's objection that the phrase "DOCUMENTS with information about

11 IFS' customers and/or suppliers" is vague and ambiguous is likewise improper.  The

12 party objecting to discovery as vague or ambiguous has the burden to show

13 such vagueness or ambiguity by demonstrating that "more tools beyond mere reason

14 and common sense are necessary to attribute ordinary definitions to terms and

15 phrases."  *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010), *order

16 clarified*,  2010 WL 797019 (E.D. Cal. Mar. 5, 2010); *accord Milinazzo v. State

17 Farm Ins. Co.,* 247 F.R.D. 691, 695 (S.D.Fla.2007) ("party properly objecting to an

18 objection on the grounds of vagueness must explain the particular ways in which a

19 request is vague").  Defendant fails to meet this burden.  Accordingly, all objections

20 must be withdrawn.

21     Defendant's response that it "will produce any non-privileged documents

22 within its possession, custody or control which list and identify customers and/or

23 vendors as 'IFS' customers" and/or "IFS' vendors" is improper. FRCP 34 provides:

24 (b) for each item or category, the response must either state that inspection and

25 related activities will be permitted *as requested* or state with specificity the grounds

26 for objecting to the request, including the reasons; and (c) an objection must state

27 whether any responsive materials are being withheld on the basis of that objection.

28 An objection to part of a request must specify the part and permit inspection of the

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1   rest.

2          Defendant's evasive response fails to comply with the FRCP.  Defendant must

3   state that it will produce *all* responsive documents to the requested category.  It

4   cannot unilaterally limit the scope of the request especially given Defendants use of

5   codes, code names and other deceptive practices.  Accordingly, Defendant should be

6   compelled to serve a further response and produce all responsive documents.

7          **Defendant's Response**

8          As Plaintiff has incorporated by reference its arguments above and Defendant

9   also incorporates its arguments and authority in response.

10          Again, Plaintiff has provided no justification for its assertion that it is entitled

11   to such an expansive scope of documents and information relating to Legacy's

12   financials, nor did it do so in its meet and confer efforts.  *See, e.g.* Gebelin Decl. Ex.

13   1 at page 5 (identifying Legacy Request No. 32 solely as one of dozens for which

14   Defendants stated an inability to comply and did not agree to produce "all"

15   documents).  Concerning the potential vagueness of the phrase "DOCUMENTS with

16   information about IFS' customers and/or suppliers", the Response correctly noted

17   that Plaintiff knows the identity of its customers and that Legacy does not know the

18   full extent (although Defendants would know the identity of the Morales' former

19   customers at IFS).  Moreover, the Request could theoretically encompass all

20   documents showing communications with any of Plaintiff's customers so long as the

21   mode of communication was noted (*e.g.* as an email address).  That scope is both

22   incredibly broad and impossible for Defendant to confirm compliance with, and its

23   attempt to narrow the request reflects a good faith attempt to target the request at the

24   major issues in the case, i.e. IFS' purported trade secret information.  Plaintiff made

25   no response to that limitation in its meet and confer.

26          Plaintiff's claims against Legacy arise from alleged misappropriation of trade

27   secrets, not the entirety of Legacy's business that would be encompassed by this

28   wide ranging attempt to peek into Legacy's financials and customer relationships.

53

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1  But where "the plaintiff and the defendant were business competitors, disclosure of
2  the defendant's financial records to the plaintiff, even with a protective order, could
3  cause the defendant great harm."  *See ReBath LLC v. HD Sols. LLC*, No. CV-19-
4  04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc.
5  v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying motion to compel
6  discovery of "documents concerning [trade secret counter-defendant's] financial
7  statements, cash flow statements, and tax returns").

8      To the extent that this request is targeted towards the use of Plaintiff's alleged
9  trade secrets, Defendant's agreement to produce communications referring to it or its
10 trade secrets as set forth in connection with Request No. 31 below should suffice.

11 **REQUEST FOR PRODUCTION NO. 33:**

12      All COMMUNICATIONS between LEGACY and P&R Paper Supply Inc.
13 from March 1, 2021 to September 1, 2021.

14 **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

15      Responding Party restates the general objections. Responding Party objects
16 that this request is overbroad and seeks documents/information that are neither
17 relevant nor proportional to the needs of the case.

18      **Plaintiff's Position**

19      *See General Objections.*

20      *See Boilerplate Objections.*

21      Discovery revealed that Legacy and/or its owners represented that P&R Paper
22 Supply Inc. ("PNR") provided credit to it and/or represented that PNR offered
23 products at a price lower than IFS' pricing.  *See* Williams Decl., Ex. G, 287:4-14,
24 290:4-24.  As Defendant's objections lack merit, Legacy should be compelled to
25 provide a full compliant response and produce all responsive documents promptly.

26      **Defendant's Response**

27      As Plaintiff has incorporated by reference its arguments above and Defendant
28 also incorporates its arguments and authority in response.

54

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

For the first time in these papers, Plaintiff raises the issue of this vendor providing better pricing to Legacy than it obtained from Plaintiff as a basis for requesting communications of its competitor with a potential vendor. *C.f.* Gebelin Decl. Ex. 1 at page 5, footnote 1 (identifying Legacy Request No. 33 solely as one of dozens for which Defendants "provided objections only"). For that reason alone, no order should issue.

Moreover, the cited deposition testimony only establishes that IFS was told that the vendor would provide credit to Legacy. *See* Williams Decl., Ex. G, 287:4-14 (P. Morales "made up" number of credit Legacy would get with PNR or R3 in order to get IFS to provide credit), 290:4-24 (P. Morales told IFS to match credit from PNR, but PNR had actually provided "zero" credit). Contrary to Plaintiff's argument, the testimony does not establish that the vendor provided better pricing than IFS.

Again, Plaintiff's claims against Legacy arise from alleged misappropriation of trade secrets, not the entirety of Legacy's business that would be encompassed by this wide ranging attempt to peek into Legacy's financials. But where "the plaintiff and the defendant were business competitors, disclosure of the defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents concerning [trade secret counter-defendant's] financial statements, cash flow statements, and tax returns"). Plaintiff's efforts have failed to show that Defendant's communications with other potential suppliers are relevant to its claims.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUINCATIONS between LEGACY R3 Reliable Redistribution Resource from March 1, 2021 to September 1, 2021.

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

Discovery revealed that Legacy and/or its owners represented that R3 Reliable Redistribution Resource ("R3") provided credit to it and/or represented that R3 offered products at a price lower than IFS' pricing. *See* Williams Decl., Ex. G, 287:4-14, 290:4-24. As Defendant's objections lack merit, Legacy should be compelled to provide a full compliant response and produce all responsive documents promptly.

**Defendant's Response**

As Plaintiff has incorporated by reference its arguments above and Defendant also incorporates its arguments and authority in response.

For the first time in these papers, Plaintiff raises the issue of this vendor providing better pricing to Legacy than it obtained from Plaintiff as a basis for requesting communications of its competitor with a potential vendor. *C.f.* Gebelin Decl. Ex. 1 at page 5, footnote 1 (identifying Legacy Request No. 34 solely as one of dozens for which Defendants "provided objections only"). For that reason alone, no order should issue.

Moreover, the cited deposition testimony only establishes that IFS was told that the vendor would provide credit to Legacy. *See* Williams Decl., Ex. G, 287:4-14 (P. Morales "made up" number of credit Legacy would get with PNR or R3 in order to get IFS to provide credit), 290:4-24 (P. Morales told IFS to match credit from PNR, but PNR had actually provided "zero" credit). Contrary to Plaintiff's argument, the testimony does not establish that the vendor provided better pricing than IFS.

JOINT STIP RE DISCOVERY DISPUTE RE FIRST SET OF RFPD TO DEF LEGACY WHOLESALE GROUP, LLC

2056838.2

1    Again, Plaintiff's claims against Legacy arise from alleged misappropriation

2    of trade secrets, not the entirety of Legacy's business that would be encompassed by

3    this wide ranging attempt to peek into Legacy's financials.  But where "the plaintiff

4    and the defendant were business competitors, disclosure of the defendant's financial

5    records to the plaintiff, even with a protective order, could cause the defendant great

6    harm."  *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL

7    1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D.

8    491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents

9    concerning [trade secret counter-defendant's] financial statements, cash flow

10   statements, and tax returns").  Plaintiff's efforts have failed to show that Defendant's

11   communications with other potential suppliers are relevant to its claims.

12   **REQUEST FOR PRODUCTION NO. 35:**

13   All COMMUNICATIONS with any customer or vendor regarding this

14   LITIGATION.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

16   Responding Party restates the general objections. Responding Party objects

17   that this request is overbroad and seeks documents/information that are neither

18   relevant nor proportional to the needs of the case.

19   Subject to and without waiving the forgoing objections, Responding Party has

20   issued no formal communication(s) with Customers regarding the litigation.

21   **Plaintiff's Position**

22   *See General Objections*.

23   *See Boilerplate Objections.*

24   Defendant's response that it "issued no formal communication(s) with

25   Customers regarding this litigation" is improper.  The request seeks "All

26   COMMUNICATIONS with any customer or vendor regarding this LITIGATION."

27   Thus, all communications, not just "formal communications" must be produced.

28   FRCP 34 provides: (b) for each item or category, the response must either state that

57                    JOINT STIP RE DISCOVERY DISPUTE RE
                      FIRST SET OF RFPD TO DEF LEGACY
                      WHOLESALE GROUP, LLC

1  inspection and related activities will be permitted *as requested* or state with

2  specificity the grounds for objecting to the request, including the reasons; and (c) an

3  objection must state whether any responsive materials are being withheld on the

4  basis of that objection. An objection to part of a request must specify the part and

5  permit inspection of the rest.

6      Defendant's response fails to comply with the FRCP.  Defendant must state

7  that it will produce *all* responsive documents to the requested category.  It cannot

8  unilaterally limit the scope of the request.  Accordingly, Defendant should be

9  compelled to serve a further response and produce all responsive documents.

10     **Defendant's Response**

11     As Plaintiff has incorporated by reference its arguments above and Defendant

12  also incorporates its arguments and authority in response.

13     Plaintiff made no substantive argument concerning this Request in its meet

14  and confer efforts.  See Gebelin Decl. Ex. 1 at page 5 (mentioning Legacy No. 35

15  solely as one among several dozen responses to which Defendants did not agree to

16  produce "all" documents as requested), page 7 (stating that Legacy must produce

17  "all" communications and not limit to "formal communications" without argument or

18  explanation).

19     Legacy has a counter claim asserted alleging that Plaintiff is unfairly

20  competing with its business by illegally offering below cost goods to customers in

21  order to cause harm to Legacy's business.  To the extent that Defendant's

22  communications to any "customers or vendors" concern the litigation but are not

23  encompassed within the scope of Defendant's production under Request No. 31 (*i.e.*

24  "non-privileged DOCUMENTS that mentions IFS dated prior to March 31, 2022 and

25  non-privileged DOCUMENTS that mention IFS in connection with its specifically

26  identified trade secret or confidential information."), it is unclear what additional

27  relevant information would be gained and it does not appear that the benefit of such

28  information would exceed the potential costs to Defendants to identify and produce

58

1 the documents information and potentially give Plaintiff a roadmap to its current

2 customers and vendors.

3 **REQUEST FOR PRODUCTION NO. 36:**

4      All COMMUNICATIONS with Steve Arroyo dated January 1, 2020 to the

5 present.

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

7      Responding Party restates the general objections. Responding Party objects

8 that this request is overbroad and seeks documents/information that are neither

9 relevant nor proportional to the needs of the case.

10      Subject to and without waiving the forgoing objections, Responding Party will

11 produce its communications with Steve Arroyo regarding IFS.

12      **Plaintiff's Position**

13      *See General Objections.*

14      *See Boilerplate Objections.*

15      Defendant's response that it will "produce its communications with Steve

16 Arroyo regarding IFS" is improper.  The request seeks "All COMMUNICATIONS

17 with Steve Arroyo dated January 1, 2020 to the present."  The request was not

18 limited to communications "regarding IFS" and indeed, Mr. Arroyo provided a

19 declaration to Defendants, however, no communications related to the declaration

20 were produced and Mr. Arroyo is not a party to the case and no attorney-client

21 privilege can exist (or was specifically asserted).  Moreover, no privilege log was

22 ever provided. Defendant's evasive response must be supplemented.  FRCP 34

23 provides: (b) for each item or category, the response must either state that inspection

24 and related activities will be permitted *as requested* or state with specificity the

25 grounds for objecting to the request, including the reasons; and (c) an objection must

26 state whether any responsive materials are being withheld on the basis of that

27 objection. An objection to part of a request must specify the part and permit

28 inspection of the rest.

59

2056838.2

1    Defendant's response fails to comply with the FRCP.  Defendant must state

2    that it will produce *all* responsive documents to the requested category.  It cannot

3    unilaterally limit the scope of the request.  Accordingly, Defendant should be

4    compelled to serve a further response and produce all responsive documents.

5    **Defendant's Response**

6    As Plaintiff has incorporated by reference its arguments above and Defendant

7    also incorporates its arguments and authority in response.

8    Plaintiff subsequently propounded Request NO. 61 to Legacy, seeking "All

9    DOCUMENTS reflecting COMMUNICATIONS between LEGACY and Steve

10   Arroyo since January 1, 2021."  Defendant responded on July 26, 2022 (*i.e.* shortly

11   following the live meet and confer efforts on this motion) that subject to certain

12   objections "Responding Party has no such responsive documents within its

13   possession, custody, or control, as it is believed that no such documents have been

14   created, apart from privileged / work-product protected communications solely

15   between Legacy's outside counsel and Mr. Arroyo."

16   As such, Defendant will agree to amend its response as follows:

17   "Responding Party objects that this request is overbroad and seeks

18   documents/information that are neither relevant nor proportional to the needs of the

19   case.   Responding Party further objects on the basis of third-party privacy.

20   Responding Party further objects to the extent that the Request may be interpreted by

21   Requesting Party to seek attorney-client privileged or work product protected

22   documents concerning this litigation; Responding Party does not understand the

23   request to include such documents and responds accordingly.

24   Subject to the foregoing specific and the general objections: Responding Party

25   has no such responsive documents within its possession, custody, or control, as it is

26   believed that no such documents have been created, apart from privileged / work-

27   product protected communications solely between Legacy's outside counsel and Mr.

28   Arroyo."

60

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

**REQUEST FOR PRODUCTION NO. 38:**

All COMMUNICATIONS with any current or former LEGACY employee, member, partner, or consultant that mention or refer to IFS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Responding Party restates the general objections. Responding Party objects that this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case.

Subject to and without waiving the forgoing objections, Responding Party will produce its non-privileged COMMUNICATIONS on or prior to March 31, 2022, with any with any current or former LEGACY employee that mentions IFS.

**Plaintiff's Position**

*See General Objections.*

*See Boilerplate Objections.*

*See Information and Documents Post-March 31, 2022.*

Defendant's response that it will produce its "non-privileged communications on or prior to March 31, 2022, with any current or former LEGACY employee that mentions IFS" is improper.  Defendant failed to provide a privilege log.  FRCP 34 provides: (b) for each item or category, the response must either state that inspection and related activities will be permitted *as requested* or state with specificity the grounds for objecting to the request, including the reasons; and (c) an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Defendant's evasive response fails to comply with the FRCP.  In addition to IFS' trade secret claims, it asserts that Legacy induced IFS' employees to breach their contracts with IFS and induced IFS's employees to breach their duty of loyalty to IFS, hence all communications between Legacy and its employees, former employees, members, partners or consultants mentioning or referring to IFS is

61

2056838.2

1  proportional to the needs of the case. Defendant must state that it will produce *all*
2  responsive documents to the requested category, especially in light of the evidence
3  that Legacy, its owners and employees used code names to hide Legacy's ownership
4  from IFS.  Legacy cannot unilaterally limit the scope of the request (both in time and
5  scope).  Accordingly, Defendant should be compelled to serve a further response and
6  produce all responsive documents.

7         **Defendant's Response**

8         Plaintiff wholly incorporated its arguments concerning "General Objections"
9  and "Boilerplate Objections", and Defendant likewise incorporates its arguments
10 concerning the same.  Plaintiff also incorporated its arguments from Request 21,
11 above concerning "*Information and Documents Post-March 31, 2022,*" and
12 Defendant likewise incorporates its response above.

13        As noted above, Defendant has already agreed to produce a significant swath
14 of documents in response to that request (*i.e.* "non-privileged DOCUMENTS that
15 mentions IFS dated prior to March 31, 2022 and non-privileged DOCUMENTS that
16 mention IFS in connection with its specifically identified trade secret or confidential
17 information.").

18        Unsurprisingly, as it was not developed through the meet and confer process,
19 Plaintiff's argument does not provide any reason for Defendant to understand what
20 further documents or relevant information it seeks through this Request that are not
21 already addressed in the dispute concerning Request No. 31, above.  Moreover, to the
22 extent Plaintiff complains about the limitation to documents that "mention IFS"
23 rather than "refer to IFS", Plaintiff's counsel agreed to continue to meet and confer
24 about further search terms to be used in searching for such documents, and it did not
25 do so before filing this motion.  Again, post Plaintiff's filing of this case, the
26 expected majority of Legacy's communications with its employees, etc. regarding
27 Plaintiff will be concerning this litigation and likely are attorney client or work
28 product privileged, such that a new search for those documents after the filing date

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1   would be expected to have few, if any non-privileged documents appear.

2   **REQUEST FOR PRODUCTION NO. 39:**

3       All COMMUNICATIONS with any current or former IFS employee that

4   mention or refer to IFS.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

6       Responding Party restates the general objections. Responding Party objects

7   that this request is overbroad and seeks documents/information that are neither

8   relevant nor proportional to the needs of the case.

9       Subject to and without waiving the forgoing objections, Responding Party will

10  produce its Subject to and without waiving the forgoing objections, Responding

11  party will produce its non-privileged DOCUMENTS dated prior to March 31, 2022,

12  that mentions IFS, excluding invoices or purchase orders between Legacy and IFS

13  which are already in the custody of Plaintiff.

14      **Plaintiff's Position**

15      *See General Objections.*

16      *See Boilerplate Objections.*

17      *See Information and Documents Post-March 31, 2022.*

18      Defendant's response that it will produce its "non-privileged DOCUMENTS

19  dated prior to March 31, 2022, that mentions IFS, excluding invoices or purchase

20  orders between Legacy and IFS …" is improper.   FRCP 34 provides: (b) for each

21  item or category, the response must either state that inspection and related activities

22  will be permitted *as requested* or state with specificity the grounds for objecting to

23  the request, including the reasons; and (c) an objection must state whether any

24  responsive materials are being withheld on the basis of that objection. An objection

25  to part of a request must specify the part and permit inspection of the rest.

26      In addition to IFS' trade secret claims, it asserts that Legacy induced IFS'

27  employees to breach their contracts with IFS and induced IFS's employees to breach

28  their duty of loyalty to IFS, hence all communications between Legacy and its

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

employees, former employees, members, partners or consultants mentioning or
referring to IFS is proportional to the needs of the case. Defendant's evasive
response fails to comply with the FRCP.  Defendant must state that it will produce
*all* responsive documents to the requested category.  It cannot unilaterally limit the
scope of the request (both in time and scope).  Accordingly, Defendant should be
compelled to serve a further response and produce all responsive documents.

**Defendant's Response**

Plaintiff wholly incorporated its arguments concerning "General Objections"
and "Boilerplate Objections", and Defendant likewise incorporates its arguments
concerning the same.  Plaintiff also incorporated its arguments from Request 21,
above concerning "*Information and Documents Post-March 31, 2022,'* and
Defendant likewise incorporates its response above.

As noted above, Defendant has already agreed to produce a significant swath
of documents in response to that request (*i.e.* "non-privileged DOCUMENTS that
mentions IFS dated prior to March 31, 2022 and non-privileged DOCUMENTS that
mention IFS in connection with its specifically identified trade secret or confidential
information.").

Unsurprisingly, as it was not developed through the meet and confer process,
Plaintiff's argument does not provide any reason for Defendant to understand what
further documents or relevant information it seeks through this Request that are not
already addressed in the dispute concerning Request No. 31, above.  Moreover, to the
extent Plaintiff complains about the limitation to documents that "mention IFS"
rather than "refer to IFS", Plaintiff's counsel agreed to continue to meet and confer
about further search terms to be used in searching for such documents, and it did not
do so before filing this motion.  Again, post Plaintiff's filing of this case, the
expected majority of Legacy's communications with its employees, etc. regarding
Plaintiff will be concerning this litigation and likely are attorney client or work
product privileged, such that a new search for those documents after the filing date

64

2056838.2

1  would be expected to have few, if any non-privileged documents appear.

2  **REQUEST FOR PRODUCTION NO. 41:**

3      All of YOUR hard drives on desktop computers, laptop computers, notebook

4  computers, personal digital assistant computers, servers, and other electronic media.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

6      Responding Party restates the general objections. Responding Party objects

7  that this request is overbroad and seeks documents/information that are neither

8  relevant nor proportional to the needs of the case, and unreasonably intrudes on

9  documents and information that are privileged and/or private and well beyond any

10  connection to the present case. Moreover, as Responding Party is producing relevant

11  documents, have not improperly withheld or destroyed evidence, it would be

12  inappropriate for the Court to compel the imaging of the devices. *See, e.g. A.M.*

13  *Castle & Co. v. Byrne*, 123 F.Supp.3d 895 (S.D. Tex. 2015); Advisory Committee

14  Notes to the 2006 amendment of FRCP 34(a); *Han v. Futurewei Techs., Inc.*, No.

15  2011 WL 4344301, at *6 (S.D. Cal. Sept. 15, 2011).

16      **Plaintiff's Position**

17      *See General Objections.*

18      *See Boilerplate Objections.*

19      Defendant's objection based on privacy is without merit because to the extent

20  the request seeks any private information, the stipulated protective order in place

21  alleviates any privacy protection concerns.

22      Moreover, Defendant's reliance on *Han v. Futureweu Techs., Inc.*, 2011 WL

23  4344301, at *5 (S.D.Cal. Sept.15, 2011), is misplaced. The *Han* court indicated that

24  it would not "presently" grant the requested forensic inspection because the

25  defendant seeking the forensic inspection did not have a counterclaim pending

26  against the plaintiff, and the defendant had not yet served discovery requests seeking

27  the relevant information. *Han*, 2011 WL 4344301, at *4 (noting that the information

28  sought would "not be relevant to the claims and defenses in this case until and unless

65

2056838.2

1  the district judge grant's [defendant's] motion for leave to amend pleadings to assert

2  a counterclaim against [plaintiff].").  Here, the Complaint alleges claims for violation

3  of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets

4  Act, breach of contract, tortious inducement to breach contract, breach of duty of

5  loyalty, conversion, tortious inducement to breach duty of loyalty, tortious

6  interference with business relations/contract and unfair competition.  "[T]he

7  allegations in a complaint generally dictate what evidence is discoverable."  *Coleman*

8  *v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).  Thus, in cases involving

9  both trade secrets and electronic devices, courts routinely grant "permission to obtain

10  mirror images of the computer equipment which may contain electronic data related

11  to the alleged violation."  *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,

12  2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) citing *Balboa Threadworks, Inc. v.*

13  *Stucky,* 2006 WL 763668, at *3 (D.Kan. Mar.24, 2006).  This case is a trade secret

14  case involving electronic devices and data and where discovery revealed that

15  Defendant Legacy directed its owners and employees to operate under false names

16  and intentionally deceived IFS.  *See* Williams Decl., Ex. G, 146:4-6, 147:17-19.

17  Accordingly, the requested inspection is proportional and appropriate.  As such,

18  Defendant should be compelled to withdraw all objections, provide a full compliant

19  response and produce all responsive information, devices and media in accordance

20  with the protocol proposed by Ms. Williams on May 16,2022.  *See* Williams Decl.,

21  Ex. I.

22      **Defendant's Response**

23      Plaintiff wholly incorporated its arguments concerning "General Objections"

24  and "Boilerplate Objections", and Defendant likewise incorporates its arguments

25  concerning the same.

26      Plaintiff's efforts to secure court ordered forensic imaging of Defendant's

27  electronic devices is woefully premature and wildly overbroad.  Plaintiff seeks to

28  image and conduct a search that would collect all of the files and data from of all of

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  Defendant's computers, cell phones, storage devices, or any other electronic media

2  used in connection with his conduct of Legacy business.  Necessarily, this would

3  entail collecting information and documents that are not at all relevant to the claims

4  at issue in the case (as not all files on any device would contain solely documents

5  responsive to Plaintiff's other discovery requests) nor proportional to the needs of the

6  case, and unreasonably intrudes on documents and information that are privileged

7  and/or private and well beyond any connection to the present case.

8          At the outset, "Federal Rule of Civil Procedure 26(b)(1) limits discovery to

9  matters that are (1) 'relevant to any party's claim or defense' and (2) 'proportional to

10  the needs of the case[.]'," and a  party's request to inspect computers "mobile

11  devices or for complete forensic images" ordinarily will "call for information that is

12  not relevant and is disproportional to the needs of the case." *Henson v. Turn, Inc.*,

13  No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018)

14  (denying request to allow opposing party to forensically copy mobile devices whose

15  operation was the central issue in the case).  Requests for "complete forensic images"

16  threaten "to sweep in documents and information that are not relevant to the issues in

17  this case," which may include a party's "private text messages, emails, contact lists,

18  and photographs," "numerous emails that are not relevant to this action," and

19  "numerous irrelevant documents as well." *Id*.  And "privacy interests can be a

20  consideration in evaluating proportionality, particularly in the context of a request to

21  inspect personal electronic devices." *Id*. (citing numerous cases denying request to

22  forensically image devices in light of privacy and confidentiality interests).

23          Indeed, while "forensic imaging is not uncommon in the course of civil

24  discovery… courts have been cautious in requiring the mirror imaging of computers

25  where the request is extremely broad in nature and the connection between the

26  computers and the claims in the lawsuit are unduly vague or unsubstantiated in

27  nature." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (granting

28  mandamus and reversing order for forensic imaging of various hard drives and

JOINT STIP RE DISCOVERY DISPUTE RE
                                         FIRST SET OF RFPD TO DEF LEGACY
                                         WHOLESALE GROUP, LLC

1  devices despite finding by district court "that defendants had failed to comply with
2  various discovery orders and had not properly preserved relevant ESI throughout the
3  course of this litigation."). "Although the risk of improperly exposing [confidential
4  or private personal] information, standing alone, might not preclude the employment
5  of forensic imaging in all cases, the forensic imaging must be premised on an interest
6  significant enough to override that risk." *Id.* at 460.

7       Plaintiff apparently ignores the citation in Defendant's objection to *A.M.*
8  *Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 908 (S.D. Tex. 2015), a decision in
9  which the District Court confirmed that a "party may not inspect the physical hard
10 drives of a computer merely because the party wants to search for additional
11 documents responsive to the party's document requests," and denied forensic
12 imaging where the opposing party had " responded adequately to discovery requests"
13 and used specialists to perform searches for terms requested by the moving party.  *Id*.
14 As the opposing defendants had complied with previous discovery orders, the
15 moving plaintiff failed to "meet the high burden of proof to be entitled to conduct its
16 own forensic examination of Defendants' electronic devices." *Id*. at 906.

17      Instead, Plaintiff attempts to distinguish *Han v. Futurewei Techs., Inc.*, 2011
18 WL 4344301, at *5 (S.D.Cal. Sept.15, 2011) by misrepresenting that ruling as
19 turning on the lack of a pending counter claim supporting the relevance of the
20 discovery.  In that pre-2015 ruling (i.e. prior to the proportionality amendment to
21 FRCP 26), the Court's decision actually the request "premature not only because
22 Huawei presently does not have a counterclaim pending against Han, but because
23 Huawei has not demonstrated that obtaining mirror images of Han's computing
24 devices is necessary or justified." Id. at *4.  Huawei had "not established that Han is
25 in the wrongful possession of any company documents, or that" her arguably
26 suspicious use "of her work laptop was improper or malicious."  Id.  And the Court
27 also found Huawei's plan for its expert to inspect Han's device lacking as it "would
28 lead to the inspection by Huawei's expert of non-responsive, irrelevant, and

1  privileged information."  The Court instructed that although "Huawei is presumably

2  seeking the return of any of its confidential and proprietary information, as well as

3  information about what Han may have done with the information she copied or

4  transferred," there was "a more convenient, less burdensome, and less expensive way

5  for Huawei to obtain what it wants—to serve discovery requests, including

6  interrogatories and document requests, asking for this information."  *Id.*

7       Plaintiff's citation to *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No.

8  10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012) further

9  demonstrates why it has not met its burden to compel a forensic copying of

10 Defendant's devices.  In that case, defendant "A10 admitted that 196 of Brocade's

11 source code files were on Mr. Szeto's hard drive from the laptop he used at Foundry

12 and later took with him to A10… even though Mr. Szeto represented upon leaving

13 Foundry that he had not retained any information that related in any way to Foundry

14 or its business."  *Id.*  A10 further admitted "Mr. Szeto's hard drive was imaged in

15 late 2010… and later "recycled" during the pendency of this litigation," although

16 " that the source code files were later transferred from the imaged hard drive to Mr.

17 Szeto's current computer hard drive at A10."  *Id.*  Moreover, Brocade demonstrated

18 that it the forensic image would have information to allow it to test "the veracity of

19 A10's claims as to whether any of Brocade's source code files on Mr. Szeto's hard

20 drives were accessed while A10 was developing the source code for the AX Series

21 devices, or whether any of Brocade's source code files on Mr. Szeto's hard drives

22 were ever deleted" as it was not "able to obtain this relevant information" from other

23 sources "given A10's 30(b)(6) witness's apparent inability and/or unwillingness to

24 provide this information."  *Id.*  In short, the party seeking forensic imaging in

25 Brocade had evidence that a specific device contained specific source code files that

26 it owned, that it needed information about the use and access to those files that could

27 be obtained through forensic imaging, and that it was unable to obtain that

28 information despite seeking it through a 30(b)(6) deposition on the topic because the

2056838.2

1   witness was apparently unwilling or unable to provide that information. *Id*. Even

2   then, the Court found Brocade was "not entitled to set the conditions of the

3   inspection unilaterally nor to select the person who will perform it." *Id*. at *3.

4        Legacy's counter-claim is irrelevant to Plaintiff's desire to make forensic

5   images of Defendant's devices; Plaintiff has its own claims and has not identified

6   any evidence that files it owns and that pertain to its claims have been sought via

7   discovery from Defendant's devices and Defendant failed to comply with discovery

8   orders requiring them to be turned over. Indeed, Plaintiff does not point to evidence

9   of a single discovery request for any specific files it owns, that it has litigated that

10  request against Defendant, that Defendant has the file on any specific device, or that

11  Defendant has refused to turn over.

12       Concerning Defendant Escamilla additional factors weigh heavily against

13  compelled forensic imaging of his devices. First, Escamilla was never an employee

14  of Plaintiff IFS, and there is no evidence that he ever had access to its alleged trade

15  secret information stored on its password and two factor authentication protected

16  computers, let alone that any device of his contains a specific trade secret file

17  belonging to Plaintiff. Second, Mr. Escamilla is a practicing attorney and has

18  testified that the devices he has used to conduct Legacy's business are also the

19  devices he uses to conduct his legal practice. Gebelin Decl. Ex. 7 (Sergio Depo

20  22:19-23:10, 25:23-26:3). As such, large additional privacy rights and concerns

21  relating to confidential documents and communications for Mr. Escamilla's law

22  practice tilt the scales against compelled forensic imaging.

23       Furthermore, the Morales defendants' use of a pseudonym in conducting

24  business for Legacy while working for IFS does nothing to establish that Legacy is

25  entitled to court ordered forensic imaging of all of the electronic devices used by its

26  competitor Legacy in conducting its business. This would go far beyond even the

27  broad scope of financial discovery it is not entitled to.

28       Plaintiff has completely failed to show that it is entitled to the invasive and

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  disproportionate imaging of all of Defendant's devices used in connection with
2  Legacy's business.  It has not specifically identified the files it seeks, the devices
3  they would be on, or even why it cannot rely on ordinary discovery processes to
4  receive the information it needs, let alone that its need for such information from a
5  forensic imaging outweighs the privacy interests and overbreadth of such a discovery
6  process.

7  **REQUEST FOR PRODUCTION NO. 42:**

8      YOUR Backup tapes containing email and other electronic data.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

10     Responding Party restates the general objections. Responding Party objects
11 that this request is overbroad and seeks documents/information that are neither
12 relevant nor proportional to the needs of the case, and unreasonably intrudes on
13 documents and information that are privileged and/or private and well beyond any
14 connection to the present case. Moreover, as Responding Party is producing relevant
15 documents, have not improperly withheld or destroyed evidence, it would be
16 inappropriate for the Court to compel the imaging of the devices. *See, e.g. A.M.*
17 *Castle & Co. v. Byrne*, 123 F.Supp.3d 895 (S.D. Tex. 2015); Advisory Committee
18 Notes to the 2006 amendment of FRCP 34(a); *Han v. Futurewei Techs., Inc.*, No.
19 2011 WL 4344301, at *6 (S.D. Cal. Sept. 15, 2011).

20     **Plaintiff's Position**

21     *See General Objections.*

22     *See Boilerplate Objections.*

23     Defendant's objection based on privacy is without merit because to the extent
24 the request seeks any private information, the stipulated protective order in place
25 alleviates any privacy protection concerns.

26     Defendant's reliance on *Han v. Futureweu Techs., Inc.*, 2011 WL 4344301, at
27 *5 (S.D.Cal. Sept.15, 2011), is misplaced. The *Han* court indicated that it would not
28 "presently" grant the requested forensic inspection because the defendant seeking the

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1    forensic inspection did not have a counterclaim pending against the plaintiff, and the

2    defendant had not yet served discovery requests seeking the relevant

3    information. *Han,* 2011 WL 4344301, at *4 (noting that the information sought

4    would "not be relevant to the claims and defenses in this case until and unless the

5    district judge grant's [defendant's] motion for leave to amend pleadings to assert a

6    counterclaim against [plaintiff].").  Here, the Complaint alleges claims for violation

7    of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets

8    Act, breach of contract, tortious inducement to breach contract, breach of duty of

9    loyalty, conversion, tortious inducement to breach duty of loyalty, tortious

10   interference with business relations/contract and unfair competition.  "[T]he

11   allegations in a complaint generally dictate what evidence is discoverable." *Coleman*

12   *v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).  Thus, in cases involving

13   both trade secrets and electronic devices, and when courts routinely grant

14   "permission to obtain mirror images of the computer equipment which may contain

15   electronic data related to the alleged violation." *See Brocade Commc'ns Sys., Inc. v.*

16   *A10 Networks, Inc.*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) citing *Balboa*

17   *Threadworks, Inc. v. Stucky,* 2006 WL 763668, at *3 (D.Kan. Mar.24, 2006).  This

18   case is a trade secret case involving electronic devices and data and where discovery

19   revealed that Defendant Legacy directed its owners and employees to operate under

20   false names and intentionally deceived IFS.   Accordingly, the requested inspection

21   is proportional and appropriate to test production of other materials and deposition

22   testimony in the case. Accordingly, the requested inspection is proportional and

23   appropriate.  As such, Defendant should be compelled to withdraw all objections and

24   produce all responsive information and data in accordance with the protocol

25   proposed by Ms. Williams on May 16,2022.  *See* Williams Decl., Ex. I.

26      **Defendant's Response**

27       Plaintiff wholly incorporated its arguments concerning "General Objections"

28   and "Boilerplate Objections", and Defendant likewise incorporates its arguments

1    concerning the same.

2        Plaintiff's efforts to secure court ordered forensic imaging of Defendant's

3    electronic devices is woefully premature and wildly overbroad.  Plaintiff seeks to

4    image and conduct a search that would collect all of the files and data from of all of

5    Defendant's computers, cell phones, storage devices, or any other electronic media

6    used in connection with his conduct of Legacy business.  Necessarily, this would

7    entail collecting information and documents that are not at all relevant to the claims

8    at issue in the case (as not all files on any device would contain solely documents

9    responsive to Plaintiff's other discovery requests) nor proportional to the needs of the

10   case, and unreasonably intrudes on documents and information that are privileged

11   and/or private and well beyond any connection to the present case.

12       At the outset, "Federal Rule of Civil Procedure 26(b)(1) limits discovery to

13   matters that are (1) 'relevant to any party's claim or defense' and (2) 'proportional to

14   the needs of the case[.]'," and a  party's request to inspect computers "mobile

15   devices or for complete forensic images" ordinarily will "call for information that is

16   not relevant and is disproportional to the needs of the case." *Henson v. Turn, Inc.*,

17   No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018)

18   (denying request to allow opposing party to forensically copy mobile devices whose

19   operation was the central issue in the case).  Requests for "complete forensic images"

20   threaten "to sweep in documents and information that are not relevant to the issues in

21   this case," which may include a party's "private text messages, emails, contact lists,

22   and photographs," "numerous emails that are not relevant to this action," and

23   "numerous irrelevant documents as well." *Id*.  And "privacy interests can be a

24   consideration in evaluating proportionality, particularly in the context of a request to

25   inspect personal electronic devices." *Id*. (citing numerous cases denying request to

26   forensically image devices in light of privacy and confidentiality interests).

27       Indeed, while "forensic imaging is not uncommon in the course of civil

28   discovery… courts have been cautious in requiring the mirror imaging of computers

1   where the request is extremely broad in nature and the connection between the
2   computers and the claims in the lawsuit are unduly vague or unsubstantiated in
3   nature." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (granting
4   mandamus and reversing order for forensic imaging of various hard drives and
5   devices despite finding by district court "that defendants had failed to comply with
6   various discovery orders and had not properly preserved relevant ESI throughout the
7   course of this litigation."). "Although the risk of improperly exposing [confidential
8   or private personal] information, standing alone, might not preclude the employment
9   of forensic imaging in all cases, the forensic imaging must be premised on an interest
10  significant enough to override that risk." *Id*. at 460.

11      Plaintiff apparently ignores the citation in Defendant's objection to *A.M.*
12  *Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 908 (S.D. Tex. 2015), a decision in
13  which the District Court confirmed that a "party may not inspect the physical hard
14  drives of a computer merely because the party wants to search for additional
15  documents responsive to the party's document requests," and denied forensic
16  imaging where the opposing party had " responded adequately to discovery requests"
17  and used specialists to perform searches for terms requested by the moving party. *Id*.
18  As the opposing defendants had complied with previous discovery orders, the
19  moving plaintiff failed to "meet the high burden of proof to be entitled to conduct its
20  own forensic examination of Defendants' electronic devices." *Id*. at 906.

21      Instead, Plaintiff attempts to distinguish *Han v. Futurewei Techs., Inc.*, 2011
22  WL 4344301, at *5 (S.D.Cal. Sept.15, 2011) by misrepresenting that ruling as
23  turning on the lack of a pending counter claim supporting the relevance of the
24  discovery.  In that pre-2015 ruling (i.e. prior to the proportionality amendment to
25  FRCP 26), the Court's decision actually the request "premature not only because
26  Huawei presently does not have a counterclaim pending against Han, but because
27  Huawei has not demonstrated that obtaining mirror images of Han's computing
28  devices is necessary or justified."  Id. at *4.  Huawei had "not established that Han is

2056838.2

1  in the wrongful possession of any company documents, or that" her arguably

2  suspicious use "of her work laptop was improper or malicious."  Id.  And the Court

3  also found Huawei's plan for its expert to inspect Han's device lacking as it "would

4  lead to the inspection by Huawei's expert of non-responsive, irrelevant, and

5  privileged information."  The Court instructed that although "Huawei is presumably

6  seeking the return of any of its confidential and proprietary information, as well as

7  information about what Han may have done with the information she copied or

8  transferred," there was "a more convenient, less burdensome, and less expensive way

9  for Huawei to obtain what it wants—to serve discovery requests, including

10  interrogatories and document requests, asking for this information."  Id.

11        Plaintiff's citation to Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., No.

12  10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012) further

13  demonstrates why it has not met its burden to compel a forensic copying of

14  Defendant's devices.  In that case, defendant "A10 admitted that 196 of Brocade's

15  source code files were on Mr. Szeto's hard drive from the laptop he used at Foundry

16  and later took with him to A10… even though Mr. Szeto represented upon leaving

17  Foundry that he had not retained any information that related in any way to Foundry

18  or its business."  Id.  A10 further admitted "Mr. Szeto's hard drive was imaged in

19  late 2010… and later "recycled" during the pendency of this litigation," although

20  " that the source code files were later transferred from the imaged hard drive to Mr.

21  Szeto's current computer hard drive at A10."  Id.  Moreover, Brocade demonstrated

22  that it the forensic image would have information to allow it to test "the veracity of

23  A10's claims as to whether any of Brocade's source code files on Mr. Szeto's hard

24  drives were accessed while A10 was developing the source code for the AX Series

25  devices, or whether any of Brocade's source code files on Mr. Szeto's hard drives

26  were ever deleted" as it was not "able to obtain this relevant information" from other

27  sources "given A10's 30(b)(6) witness's apparent inability and/or unwillingness to

28  provide this information."  Id.  In short, the party seeking forensic imaging in

75

2056838.2

1  Brocade had evidence that a specific device contained specific source code files that

2  it owned, that it needed information about the use and access to those files that could

3  be obtained through forensic imaging, and that it was unable to obtain that

4  information despite seeking it through a 30(b)(6) deposition on the topic because the

5  witness was apparently unwilling or unable to provide that information. *Id*.  Even

6  then, the Court found Brocade was "not entitled to set the conditions of the

7  inspection unilaterally nor to select the person who will perform it." *Id*. at *3.

8         Legacy's counter-claim is irrelevant to Plaintiff's desire to make forensic

9  images of Defendant's devices; Plaintiff has its own claims and has not identified

10  any evidence that files it owns and that pertain to its claims have been sought via

11  discovery from Defendant's devices and Defendant failed to comply with discovery

12  orders requiring them to be turned over.  Indeed, Plaintiff does not point to evidence

13  of a single discovery request for any specific files it owns, that it has litigated that

14  request against Defendant, that Defendant has the file on any specific device, or that

15  Defendant has refused to turn over.

16         Concerning Defendant Escamilla additional factors weigh heavily against

17  compelled forensic imaging of his devices.  First, Escamilla was never an employee

18  of Plaintiff IFS, and there is no evidence that he ever had access to its alleged trade

19  secret information stored on its password and two factor authentication protected

20  computers, let alone that any device of his contains a specific trade secret file

21  belonging to Plaintiff.  Second, Mr. Escamilla is a practicing attorney and has

22  testified that the devices he has used to conduct Legacy's business are also the

23  devices he uses to conduct his legal practice.  Gebelin Decl. Ex. 7 (Sergio Depo

24  22:19-23:10, 25:23-26:3).  As such, large additional privacy rights and concerns

25  relating to confidential documents and communications for Mr. Escamilla's law

26  practice tilt the scales against compelled forensic imaging.

27         Furthermore, the Morales defendants' use of a pseudonym in conducting

28  business for Legacy while working for IFS does nothing to establish that Legacy is

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1 entitled to court ordered forensic imaging of all of the electronic devices used by its

2 competitor Legacy in conducting its business.  This would go far beyond even the

3 broad scope of financial discovery it is not entitled to.

4      Plaintiff has completely failed to show that it is entitled to the invasive and

5 disproportionate imaging of all of Defendant's devices used in connection with

6 Legacy's business.  It has not specifically identified the files it seeks, the devices

7 they would be on, or even why it cannot rely on ordinary discovery processes to

8 receive the information it needs, let alone that its need for such information from a

9 forensic imaging outweighs the privacy interests and overbreadth of such a discovery

10 process.

11 **REQUEST FOR PRODUCTION NO. 43:**

12      All of YOUR disks, CDs, DVDs and other removable media.

13 **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

14      Responding Party restates the general objections. Responding Party objects

15 that this request is overbroad and seeks documents/information that are neither

16 relevant nor proportional to the needs of the case, and unreasonably intrudes on

17 documents and information that are privileged and/or private and well beyond any

18 connection to the present case. Moreover, as Responding Party is producing relevant

19 documents, have not improperly withheld or destroyed evidence, it would be

20 inappropriate for the Court to compel the imaging of the devices. *See, e.g. A.M.*

21 *Castle & Co. v. Byrne*, 123 F.Supp.3d 895 (S.D. Tex. 2015); Advisory Committee

22 Notes to the 2006 amendment of FRCP 34(a); *Han v. Futurewei Techs., Inc*., No.

23 2011 WL 4344301, at *6 (S.D. Cal. Sept. 15, 2011).

24      **Plaintiff's Position**

25      *See General Objections*.

26      *See Boilerplate Objections.*

27      Defendant's objection based on privacy is without merit because to the extent

28 the request seeks any private information, the stipulated protective order in place

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1  alleviates any privacy protection concerns.

2          Defendant's reliance on *Han v. Futureweu Techs., Inc.*, 2011 WL 4344301, at

3  *5 (S.D.Cal. Sept.15, 2011), is misplaced. The *Han* court indicated that it would not

4  "presently" grant the requested forensic inspection because the defendant seeking the

5  forensic inspection did not have a counterclaim pending against the plaintiff, and the

6  defendant had not yet served discovery requests seeking the relevant

7  information. *Han,* 2011 WL 4344301, at *4 (noting that the information sought

8  would "not be relevant to the claims and defenses in this case until and unless the

9  district judge grant's [defendant's] motion for leave to amend pleadings to assert a

10  counterclaim against [plaintiff].").  Here, the Complaint alleges claims for violation

11  of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets

12  Act, breach of contract, tortious inducement to breach contract, breach of duty of

13  loyalty, conversion, tortious inducement to breach duty of loyalty, tortious

14  interference with business relations/contract and unfair competition.  "[T]he

15  allegations in a complaint generally dictate what evidence is discoverable." *Coleman*

16  *v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).  Thus, in cases involving

17  both trade secrets and electronic devices, courts routinely grant "permission to obtain

18  mirror images of the computer equipment which may contain electronic data related

19  to the alleged violation." *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,

20  2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) citing *Balboa Threadworks, Inc. v.*

21  *Stucky,* 2006 WL 763668, at *3 (D.Kan. Mar.24, 2006).  Moreover, discovery

22  revealed that Defendant Legacy directed its owners and employees to operate under

23  false names and intentionally deceived IFS.   Accordingly, the requested inspection

24  is proportional and appropriate to test production of other materials and deposition

25  testimony in the case.  As such, Defendant should be compelled to withdraw all

26  objections and produce all responsive information and media in accordance with the

27  protocol proposed by Ms. Williams on May 16,2022.  *See* Williams Decl., Ex. I.

28

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

**Defendant's Response**

Plaintiff wholly incorporated its arguments concerning "General Objections" and "Boilerplate Objections", and Defendant likewise incorporates its arguments concerning the same.

Plaintiff's efforts to secure court ordered forensic imaging of Defendant's electronic devices is woefully premature and wildly overbroad. Plaintiff seeks to image and conduct a search that would collect all of the files and data from of all of Defendant's computers, cell phones, storage devices, or any other electronic media used in connection with his conduct of Legacy business. Necessarily, this would entail collecting information and documents that are not at all relevant to the claims at issue in the case (as not all files on any device would contain solely documents responsive to Plaintiff's other discovery requests) nor proportional to the needs of the case, and unreasonably intrudes on documents and information that are privileged and/or private and well beyond any connection to the present case.

At the outset, "Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters that are (1) 'relevant to any party's claim or defense' and (2) 'proportional to the needs of the case[.]'," and a party's request to inspect computers "mobile devices or for complete forensic images" ordinarily will "call for information that is not relevant and is disproportional to the needs of the case." *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (denying request to allow opposing party to forensically copy mobile devices whose operation was the central issue in the case). Requests for "complete forensic images" threaten "to sweep in documents and information that are not relevant to the issues in this case," which may include a party's "private text messages, emails, contact lists, and photographs," "numerous emails that are not relevant to this action," and "numerous irrelevant documents as well." *Id*. And "privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Id*. (citing numerous cases denying request to

79

1  forensically image devices in light of privacy and confidentiality interests).

2        Indeed, while "forensic imaging is not uncommon in the course of civil

3  discovery… courts have been cautious in requiring the mirror imaging of computers

4  where the request is extremely broad in nature and the connection between the

5  computers and the claims in the lawsuit are unduly vague or unsubstantiated in

6  nature." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (granting

7  mandamus and reversing order for forensic imaging of various hard drives and

8  devices despite finding by district court "that defendants had failed to comply with

9  various discovery orders and had not properly preserved relevant ESI throughout the

10  course of this litigation."). "Although the risk of improperly exposing [confidential

11  or private personal] information, standing alone, might not preclude the employment

12  of forensic imaging in all cases, the forensic imaging must be premised on an interest

13  significant enough to override that risk." *Id*. at 460.

14        Plaintiff apparently ignores the citation in Defendant's objection to *A.M.*

15  *Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 908 (S.D. Tex. 2015), a decision in

16  which the District Court confirmed that a "party may not inspect the physical hard

17  drives of a computer merely because the party wants to search for additional

18  documents responsive to the party's document requests," and denied forensic

19  imaging where the opposing party had " responded adequately to discovery requests"

20  and used specialists to perform searches for terms requested by the moving party. *Id*.

21  As the opposing defendants had complied with previous discovery orders, the

22  moving plaintiff failed to "meet the high burden of proof to be entitled to conduct its

23  own forensic examination of Defendants' electronic devices." *Id*. at 906.

24        Instead, Plaintiff attempts to distinguish *Han v. Futurewei Techs., Inc.*, 2011

25  WL 4344301, at *5 (S.D.Cal. Sept.15, 2011) by misrepresenting that ruling as

26  turning on the lack of a pending counter claim supporting the relevance of the

27  discovery.  In that pre-2015 ruling (i.e. prior to the proportionality amendment to

28  FRCP 26), the Court's decision actually the request "premature not only because

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

2056838.2

1   Huawei presently does not have a counterclaim pending against Han, but because
2   Huawei has not demonstrated that obtaining mirror images of Han's computing
3   devices is necessary or justified."  Id. at *4.  Huawei had "not established that Han is
4   in the wrongful possession of any company documents, or that" her arguably
5   suspicious use "of her work laptop was improper or malicious."  Id.  And the Court
6   also found Huawei's plan for its expert to inspect Han's device lacking as it "would
7   lead to the inspection by Huawei's expert of non-responsive, irrelevant, and
8   privileged information."  The Court instructed that although "Huawei is presumably
9   seeking the return of any of its confidential and proprietary information, as well as
10  information about what Han may have done with the information she copied or
11  transferred," there was "a more convenient, less burdensome, and less expensive way
12  for Huawei to obtain what it wants—to serve discovery requests, including
13  interrogatories and document requests, asking for this information."  Id.

14       Plaintiff's citation to Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., No.
15  10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012) further
16  demonstrates why it has not met its burden to compel a forensic copying of
17  Defendant's devices.  In that case, defendant "A10 admitted that 196 of Brocade's
18  source code files were on Mr. Szeto's hard drive from the laptop he used at Foundry
19  and later took with him to A10… even though Mr. Szeto represented upon leaving
20  Foundry that he had not retained any information that related in any way to Foundry
21  or its business."  Id.  A10 further admitted "Mr. Szeto's hard drive was imaged in
22  late 2010… and later "recycled" during the pendency of this litigation," although
23  " that the source code files were later transferred from the imaged hard drive to Mr.
24  Szeto's current computer hard drive at A10."  Id.  Moreover, Brocade demonstrated
25  that it the forensic image would have information to allow it to test "the veracity of
26  A10's claims as to whether any of Brocade's source code files on Mr. Szeto's hard
27  drives were accessed while A10 was developing the source code for the AX Series
28  devices, or whether any of Brocade's source code files on Mr. Szeto's hard drives

JOINT STIP RE DISCOVERY DISPUTE RE
FIRST SET OF RFPD TO DEF LEGACY
WHOLESALE GROUP, LLC

1  were ever deleted" as it was not "able to obtain this relevant information" from other

2  sources "given A10's 30(b)(6) witness's apparent inability and/or unwillingness to

3  provide this information." *Id.* In short, the party seeking forensic imaging in

4  *Brocade* had evidence that a specific device contained specific source code files that

5  it owned, that it needed information about the use and access to those files that could

6  be obtained through forensic imaging, and that it was unable to obtain that

7  information despite seeking it through a 30(b)(6) deposition on the topic because the

8  witness was apparently unwilling or unable to provide that information. *Id.* Even

9  then, the Court found Brocade was "not entitled to set the conditions of the

10  inspection unilaterally nor to select the person who will perform it." *Id.* at *3.

11      Legacy's counter-claim is irrelevant to Plaintiff's desire to make forensic

12  images of Defendant's devices; Plaintiff has its own claims and has not identified

13  any evidence that files it owns and that pertain to its claims have been sought via

14  discovery from Defendant's devices and Defendant failed to comply with discovery

15  orders requiring them to be turned over. Indeed, Plaintiff does not point to evidence

16  of a single discovery request for any specific files it owns, that it has litigated that

17  request against Defendant, that Defendant has the file on any specific device, or that

18  Defendant has refused to turn over.

19      Concerning Defendant Escamilla additional factors weigh heavily against

20  compelled forensic imaging of his devices. First, Escamilla was never an employee

21  of Plaintiff IFS, and there is no evidence that he ever had access to its alleged trade

22  secret information stored on its password and two factor authentication protected

23  computers, let alone that any device of his contains a specific trade secret file

24  belonging to Plaintiff. Second, Mr. Escamilla is a practicing attorney and has

25  testified that the devices he has used to conduct Legacy's business are also the

26  devices he uses to conduct his legal practice. Gebelin Decl. Ex. 7 (Sergio Depo

27  22:19-23:10, 25:23-26:3). As such, large additional privacy rights and concerns

28  relating to confidential documents and communications for Mr. Escamilla's law

JOINT STIP RE DISCOVERY DISPUTE RE
                                        FIRST SET OF RFPD TO DEF LEGACY
                                        WHOLESALE GROUP, LLC

2056838.2

1 | practice tilt the scales against compelled forensic imaging.

2 |         Furthermore, the Morales defendants' use of a pseudonym in conducting

3 | business for Legacy while working for IFS does nothing to establish that Legacy is

4 | entitled to court ordered forensic imaging of all of the electronic devices used by its

5 | competitor Legacy in conducting its business.  This would go far beyond even the

6 | broad scope of financial discovery it is not entitled to.

7 |         Plaintiff has completely failed to show that it is entitled to the invasive and

8 | disproportionate imaging of all of Defendant's devices used in connection with

9 | Legacy's business.  It has not specifically identified the files it seeks, the devices

10 | they would be on, or even why it cannot rely on ordinary discovery processes to

11 | receive the information it needs, let alone that its need for such information from a

12 | forensic imaging outweighs the privacy interests and overbreadth of such a discovery

13 | process.

14 |

15 | **IT IS SO STIPULATED.**

16 |

17 | Dated: October 12, 2022         CDF LABOR LAW LLP
18 |                       Dan M. Forman

19 |                       By: _____
20 |                         Amy S. Williams
21 |                       Attorneys for Plaintiff/Counter-Defendant PERRIN BERNARD SUPOWITZ, LLC, a
22 |                       California LLC dba INDIVIDUAL FOODSERVICE

23 | Dated: October 11, 2022         LESOWITZ GEBELIN

24 |

25 |                       By: _____

26 |                         Steven T. Gebelin
                          Attorneys for Defendants
27 |                       PABLO MORALES, SAVINO MORALES, SERGIO ESCAMILLA and Defendant/Counter-
28 |                       Complainant LEGACY WHOLESALE GROUP, LLC;

83

JOINT STIP RE DISCOVERY DISPUTE RE FIRST SET OF RFPD TO DEF LEGACY WHOLESALE GROUP, LLC