CDF LABOR LAW LLP
  Dan M. Forman, State Bar No. 155811
  dforman@cdflaborlaw.com
  Amy S. Williams, State Bar No. 228853
  awilliams@cdflaborlaw.com
707 Wilshire Boulevard, Suite 5150
Los Angeles, CA 90017
Telephone: (213) 612-6300

Attorneys for Plaintiff/Counter-Defendant
PERRIN BERNARD SUPOWITZ, LLC, a
California LLC dba INDIVIDUAL
FOODSERVICE

LESOWITZ GEBELIN
  Steven T. Gebelin, State Bar No. 261507
  steven@lawbylg.com
  Scott M. Lesowitz, State Bar No. 261579
  scott@lawbylg.com
8383 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90211
Telephone: (310) 341-3072

JOHNSON & RAWI, PCP
  Jeffery W. Johnson, State Bar No. 133467
  jjohnson@johnsonrawi.com
  David A. Rawi, State Bar No. 269559
  drawi@johnsonrawi.com
  Cyrus J.. Johnson, State Bar No. 334953
  cjohnson@johnsonrawi.com
99 South Lake Avenue, Suite 208
Pasadena, CA 91101
Telephone: (626) 585-5663

Attorneys for Defendants/Counter-Complainant
PABLO MORALES, LEGACY WHOLESALE
GROUP, LLC, SAVINO MORALES, AND
SERGIO ESCAMILLA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, a California LLC dba INDIVIDUAL FOODSERVICE,<br><br>        Plaintiff,<br><br>    v.<br><br>PABLO MORALES, an individual; LEGACY WHOLESALE GROUP. LLC. | Case No. 2:22-cv-02120-ODW-JEM<br><br>Mag. Judge: John E. McDermott<br>Ctrm: 640<br><br>**JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022, DKT. 172** |

1

1 | an Arizona Limited Liability Corporation;
2 | SAVINO MORALES, an individual; and
   | SERGIO ESCAMILLA, an individual;
   | and DOES 1 through 20, inclusive,
3 |
4 |                    Defendants.
5 | LEGACY WHOLESALE GROUP, LLC,
6 |                    Counter-Complainant,
   |        v.
7 | PERRIN BERNARD SUPOWITZ, LLC,
8 | a California LLC dba INDIVIDUAL
   | FOODSERVICE,
9 |
   |                    Counter-Defendant.
10 |

12  TO THE HONORABLE JOHN E. MCDERMOTT, MAGISTRATE JUDGE:

        The Parties submit this Joint Status Report following the Court's Order Re
Plaintiff's Motions to Compel Production of Documents and Interrogatory Responses
from Defendants Sergio Escamilla, Savino Morales, Pablo Morales, and Legacy
Wholesale Group, LLC dated October 31, 2022, Dkt. 172 (the "Order") arising from
five Motions to Compel (Dkt. 121, 123, 125, 127, and 129).

**A.   ADDITIONAL MEET AND CONFER EFFORTS ON DISPUTED
       ISSUES and DEFENDANTS FURTHER PRODUCTION OF
       DOCUMENTS, and SUPPLEMENTAL RESPONSES.**

        On October 31, 2022, the Court ordered "the parties to meet and confer
immediately, continuously and intensely on all disputed issues in the above
Motions."

        **Plaintiff's Position:**

        On November 1, 2022, counsel to Plaintiff asked counsel to Defendants to
meet and confer immediately. Counsel to Defendants did not respond.

        On the evening of November 15, 2022, Defendants served documents labeled

Legacy3025-4234.  In addition, Defendants served four documents that verified each of the Defendants Supplemental Responses to the Plaintiff's Requests for Production.

On November 16, 2022, counsel to Defendant asked counsel to Plaintiff to schedule a meeting on November 17, 2022 to meet and confer about the supplemental responses that were available.

On November 17, 2022, each Defendant served Responses to the Plaintiff's Requests for Production dated November 14, 2022, which had not been previously served.

Counsel scheduled a follow up meeting for November 18, 2022.  On November 18, 2022, Defendants served some Supplemental Interrogatories responses.  Counsel to both parties further met and conferred on November 18, 2022.

**Defendants' Position:**

In accordance with the Court's order and their prior positions in the Joint Stipulations, Defendants have served: (1) supplemental responses to the first set of document requests amending their responses as agreed to within the Joint Stipulation; (2) more than a thousand pages of documents; (3) verifications by all defendants indicating that all documents have been produced in accordance with their agreements in the responses and supplemental responses to the document requests; and (4) supplemental responses to three of the five interrogatories at issue, as agreed in the Joint Stipulation.

Defendants have met and conferred as requested by Plaintiff on November 17 regarding all topics raised by Plaintiff and confirmed that its supplemental responses were in line with its agreements in the Joint Stipulation.  Defendants followed up on the topics as requested by Defendants and continued live meet and confer efforts on November 18.

During the course of the meet and confer efforts the parties' discussion (as directed by Plaintiff) was regarding the supplemental responses and production agreed to by Defendants, except for Plaintiff (incorrectly) asserting that Defendants

JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022 DKT. 172

have waived their privilege objections to all of the document requests at issue based on the Court's prior order indicating that boilerplate objections were generally improper, and a brief discussion regarding documents Defendants had produced relating to Mr. Arroyo.

Rather than raise any issues with Defendants' prior agreements to supplement their responses during the meet and confer process, or discuss why any other specific requests at issue were relevant, proper, or even proportional, Plaintiff provided its portion of this Joint Statement in the afternoon of November 21, 2022.

Despite Plaintiff's generally overbroad and improper requests and its incorrect position that the Court had already granted its prior motions to compel, Defendants (and their counsel) remain willing to meet and confer to reach a compromise over which documents and information Plaintiff actually or reasonably needs for the case. Plaintiff has made no attempt whatsoever during the meet and confer process to offer to narrow its requests (or the remaining two interrogatories at issue), despite repeated exhortations in both prior meet and confer efforts and the Joint Stipulation for an explanation of what is actually needed.

**B.   DEFENDANTS' SUPPLEMENTAL RESPONSES**

**Plaintiff's Position:**

On November 16, 2022, Defendants provided supplemental responses to certain document requests as follows:

- Legacy RFP Responses, set 1: 3, 5, 29, 30, 31
- Savino RFP Responses, set 1: 2, 7, 8, 11, 12, 22, 23
- Pablo RFP Responses, set 1: 2, 6, 7, 11, 21, 22
- Sergio RFP Responses, set 1: 2, 3, 6, 9, 10, 20, 21
- Legacy Rog Responses, set 1: 6, 7, 9

Defendants did not provide supplemental response or production of additional documents with respect to any of the following:

- Legacy RFP Responses, set 1: 8, 9, 10, 14, 16, 19, 21, 22, 23, 25, 26, 27, 28, 32, 33, 34, 35, 36, 38, 39, 41, 42, 43

- Savino RFP Responses, set 1: 9, 13, 19, 20, 26, 27, 28, 29, 30, 34, 35, 36, 38, 39, 40

- Pablo RFP Responses, set 1: 8, 10, 12, 18, 19, 23, 25, 26, 27, 28, 29, 32, 33, 34, 36, 37, 38

- Sergio RFP Responses, set 1: 5, 7, 11, 17, 18, 24, 25, 26, 27, 31, 33, 35

- Legacy Rog Responses, set 1: 2, 4

Defendants, therefore, did not comply with the Court's order to verify that all responsive, non-privileged responsive documents have been produced. Defendants should be ordered to immediately provide supplemental verified responses to every request that was at issue without general objections, privilege claims that were not specifically raised, boilerplate objections or "financial privacy" objections. Moreover, to the extent that documents were withheld under the original general, boilerplate objections and financial privacy objections, such documents should be ordered produced immediately.

**Defendants' Position:**

Defendants have complied with the Court's order of October 31, 2022 [Dkt. No. 172] by producing all documents as they had previously agreed to produce. Specifically, "[a]s to any matters that Defendants claim to have produced or they have agreed to produce" within the Joint Statement on Plaintiffs' motions to compel, Defendants completed "the production of the requested documents by November 15, 2022." Defendants also served "a a verification from each Defendant (a principal, not attorney for Legacy) that all [such] responsive, non-privileged documents in their custody, control or possession have been produced."

Furthermore, as agreed in the Joint Stipulation, Defendant Legacy served verified supplemental responses to Interrogatories 6, 7, and 9 providing complete

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

1  factual responses.

2      Regarding the dozens of remaining of requests, Plaintiff has made no attempt

3  to meet and confer on Defendants' objections, despite their validity, or even attempt

4  to address Defendants' objections that the requests are clearly overbroad.

5  Frustratingly, Plaintiff's position appears to remain that anything it asked for is

6  relevant and must be produced, and it needs to make no attempt to explain the scope

7  of its requests or how they seek discoverable information that has not already been

8  provided.  For example:

9  **Legacy Request No. 8**: ("All DOCUMENTS YOU provided to any accountant or

10  accounting firm in connection with LEGACY or the enterprise in formation that

11  became LEGACY.").  Defendant's response raised financial privacy objections in

12  addition to objecting on the basis of the vast overbreadth of the request covering such

13  a wide swath of Legacy's financial records covering its entire business.  Non-

14  privileged documents referring to IFS have been produced, and Legacy produced

15  documents sufficient to identify its total sales and profit margins through March 31,

16  2022 (*i.e.* the termination date of Pablo and Savino Morales), and its sales volumes

17  and amounts for its customers shared with IFS through March 31, 2022.

18  **Legacy Request No. 9**: ("All drafts, mark-ups, redlined and final versions of YOUR

19  articles of organization.")  **and 10** ("All drafts, mark-ups, redlined and final versions

20  of YOUR operating agreements.)  Defendant's responses objected to the scope of the

21  request and offered to provide its' operative articles of organization (9) and current

22  operating agreement (1).  As explained further in the Joint Statement, "Legacy

23  produced its operative (and original) one page Articles of Organization, filed March

24  17, 2021", and the "Articles of Organization are publicly filed documents indicating

25  the address and organizers of the Limited Liability Company, there is no reason for

26  anyone to expect that drafts, markups, or redlined versions would disclose any 'plans

27  to use IFS' [alleged] trade secret information'," (which was Plaintiff's explanation

28  for needing drafts and the like).  Dkt. No. 130 at 18-19.  As to the operating

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

CDF Labor Law LLP

2086725.1

1  agreements, Legacy produced its first and second amended agreements "and their

2  recitals detail their respective changes to the operating agreements from Legacy's

3  incorporation." Dk. No. 130 at 20. Moreover, as further explained in the Joint

4  Statement, the documents excluded as irrelevant included privileged communications

5  with Defendant's attorney regarding the entity formation and such privilege (as also

6  set forth in the General Objections) was reserved until the Court ruled on the

7  relevance objection. *See, e.g. United States v. Philip Morris Inc.*, 347 F.3d 951, 954

8  (D.C. Cir. 2003) (where "a broad discovery request includes an allegedly privileged

9  document, and if there is an objection to the scope of the request, the court should

10 first decide whether the objection covers the document. If the court finds that the

11 document is within the scope of the objection, and the court overrules the objection,

12 it must then give the party an opportunity to list the document on a privilege log

13 pursuant to Rule 26(b)(5)… Waiver is not automatic, particularly if the party

14 reasonably believed that its objections applied to the document. "As the federal rules,

15 case law and commentators suggest, waiver of a privilege is a serious sanction most

16 suitable for cases of unjustified delay, inexcusable conduct, and bad faith").

17 **Legacy Request No. 21:** ("All of YOUR financial statements, including but not

18 limited to pro formas, profit and loss statements, banking statements, balance sheets,

19 cash collections statements, income statements, cash flow statements, accounts

20 receivable reports, accounts payable reports, aging reports.") Defendant's response

21 noted that the request was overbroad (as it clearly is) and offered instead to provide

22 documents sufficient to identify its total sales and profit margins through March 31,

23 2022, and its sales volumes and amounts for its customers shared with IFS through

24 March 31, 2022. Even in the Joint Statement on the motion to compel, Plaintiff

25 made no attempt to narrow the scope of documents to what it wanted or to what were

26 appropriate or necessary. Again, as explained in the Joint Statement, where "the

27 plaintiff and the defendant were business competitors, disclosure of the defendant's

28 financial records to the plaintiff, even with a protective order, could cause the

CDF Labor Law LLP

2086725.1

defendant great harm." *See ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2021 WL 1923759, at *6 (D. Ariz. May 13, 2021) (citing *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D.R.I. 1994)) (denying motion to compel discovery of "documents concerning [trade secret counter-defendant's] financial statements, cash flow statements, and tax returns"). Dkt. No. 130 at 29. Despite Defendant's prior exhortation that Plaintiff clarify what additional information it actually needed (or would be sufficient) and to evaluate its claims, Plaintiff has not done so.

Throughout the meet and confer process (including in the Joint Statements on Plaintiff's various motions) Defendants have attempted to explain their objections and sought clarity on what discoverable information Plaintiff seeks. Plaintiff still has not made any efforts to compromise on the scope of any requests and has made no further attempts to meet and confer on the vast majority of the requests at issue.

## C. ISSUES RAISED BY SUPPLEMENTAL RESPONSES

### 1. GENERAL AND BOILERPLATE OBJECTIONS CONTINUE

**Plaintiff's Position:**

Despite this Court's Order that the "Court regards General Objections and boilerplate objections without specificity as required by Rule 34(b)(2)(B) as improper", Defendants have refused to withdraw such objections from most of the responses at issue and even incorporated by reference the General Objections into the Supplemental Responses to Interrogatories that Legacy served on November 18, 2022.

The General Objections should be ordered stricken as to all responses. And, as each response is provided "subject to and without waiving the foregoing objections" and, thus, is not complete and cannot have been properly verified.

Each of the Supplemental Responses to each request for production continues to include the original boilerplate objection that "this request is overbroad and seeks documents/information that are neither relevant nor proportional to the needs of the case." Each of the Supplemental Responses to each interrogatory continues to

1  include the original boilerplate objection that "The Interrogatory is unduly

2  burdensome and oppressive, as the scope greatly exceeds the scope of discovery

3  permissible under F.R.C.P 26(b)(1)."

4      Moreover, each response is provided "subject to and without waiving the

5  foregoing objections" and thus is not complete and cannot have been properly

6  verified.

7      Therefore, Defendants should be compelled to immediately provide further

8  supplemental responses (including documents and information withheld based on

9  those objections) to all responses that were not supplemented and to Legacy's

10  Supplement Interrogatory Responses having stricken all boilerplate objections.

11  **Defendants' Position:**

12      Once again, Plaintiff's position appears to be that the Court has already struck

13  all objections raised by Defendants across all of the discovery requests at issue,

14  regardless of their specificity or Defendant's further explanations during meet and

15  confer efforts or even the Joint Stipulation previously filed.

16      As discussed above, despite its facially overbroad requests seeking all or

17  substantially all of its documents relating the finances of its competitor (e.g., Legacy

18  RFP Nos. 8, 14, 21, etc.) Plaintiff has made no effort to narrow or direct those

19  requests to the issues of the case or delineate the information it actually needs.

20  Defendants remain willing to reach compromises to provide the information Plaintiff

21  reasonably needs and that are discoverable.

22      Defendants' responses and positions regarding the overbreadth of the requests

23  at issue have been more fully explained within the meet and confer process,

24  especially within the Joint Stipulations on Plaintiff's motions to compel.  Those

25  specific explanations and discussions set forth the improper nature of the requests

26  and the scope of what Defendants understand should be within the scope of

27  discovery.  Plaintiffs' recent meet and confer efforts made no attempt to discuss any

28  of those objections or explanations set forth in the Joint Stipulation or to reach any

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

1  compromise on the appropriate scope of discovery.

2         During recent meet and confer efforts the Plaintiff did point to objections

3  remaining as part of the Supplemental Interrogatory responses, but Defendants noted

4  that the factual responses were complete and there appears to be no issue about

5  information missing or withheld.

6         **2.    DEFENDANTS' ADDITION OF PRIVILEGE OBJECTIONS**

7  **Plaintiff's Position:**

8         Defendants improperly asserted privilege as a General Objection.  As General

9  Objections are not proper, the original responses failed to adequately state a privilege

10  objection.  "[B]oilerplate "general objections" *fail to preserve any valid objection* at

11  all because they are not specific to a particular discovery request and they fail to

12  identify a specific privilege or to describe the information withheld pursuant to the

13  privilege." *Schultz v. Sentinel Ins. Co.*, 2016 WL 3149686, at*7 (D.S.D. Jun. 3,

14  2016) (emphasis added).

15         In each of the Supplemental Responses to each request for production

16  Defendants improperly add a privilege objection.  The Court did not grant

17  Defendants the opportunity to add new objections, such objections are not proper and

18  should be stricken.

19         While Legacy's Supplement Responses to the Interrogatories did not add new

20  privilege objections, the Supplemental Responses dated November 18, 2022 each

21  improperly "restates the general objections", which originally included an objection

22  regarding privilege.  The general objections should be ordered stricken as to all

23  interrogatory responses.

24         Moreover, each response is provided "subject to and without waiving the

25  foregoing objections" and thus is not complete and cannot have been properly

26  verified.

27         Therefore, Defendants should be compelled to immediately provide further

28  supplemental responses (including documents and information withheld based on

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

1 those objections) having stricken all general objections and privilege objections.

2 **Defendant's Position:**

3 Where "a broad discovery request includes an allegedly privileged document,

4 and if there is an objection to the scope of the request, the court should first decide

5 whether the objection covers the document. If the court finds that the document is

6 within the scope of the objection, and the court overrules the objection, it must then

7 give the party an opportunity to list the document on a privilege log pursuant to Rule

8 26(b)(5)." *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).

9 Importantly, "[w]aiver is not automatic, particularly if the party reasonably believed

10 that its objections applied to the document. As the federal rules, case law and

11 commentators suggest, waiver of a privilege is a serious sanction most suitable for

12 cases of unjustified delay, inexcusable conduct, and bad faith." *Id.*  Moreover, a

13 party does not "waive the attorney-client privilege or work product protection in

14 lodging general, as opposed to specific, objections to [] document requests."

15 *Sovereign Cape Cod Invs. LLC v. Eugene A. Bartow Ins. Agency, Inc.*, No.

16 20CV03902DGJMW, 2022 WL 624553, at *4 (E.D.N.Y. Mar. 3, 2022).

17 Defendants' privilege objections as to communications with counsel have been

18 variously raised or reserved, including via General Objections, Specific Objections,

19 refusals to produce otherwise objectionable and irrelevant documents, and/or

20 agreements to produce "non-privileged" responsive documents.  Defendants' conduct

21 is not consistent with a waiver of privileges, and such a harsh sanction should not be

22 created here.

23 As an example of the preposterous result that Plaintiff's request appears to

24 demand, Legacy Request for Production No. 31 seeks "All DOCUMENTS that refer

25 to or mention IFS."  Obviously, all of Defendants' confidential communications with

26 counsel regarding to this case are privileged, and all or nearly all such

27 communications would "refer to or mention IFS."  In order to limit the burden of the

28 request (which otherwise would encompass and require logging every privileged

JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022 DKT. 172

communication about this case), Defendants agreed to "produce its non-privileged DOCUMENTS dated prior to March 31, 2022, that mentions IFS, excluding invoices or purchase orders between Legacy and IFS which are already in the custody of Plaintiff." See Dkt. No. 130 at 50-51.

Defendants' responses have preserved their privilege objections, and there is no good reason to find that they have been broadly waived; such a result would be absurd and inequitable.

### 3.     RESPONSIVE DOCUMENTS REFERRING TO IFS DATED AFTER MARCH 31, 2022

**Plaintiff's Position:**

With respect to numerous Supplemental Responses, the Defendants limit the production of certain documents to those "that mention IFS in connection with its specifically identified trade secret or confidential information." (Legacy RFP Supp. Response Nos. 29, 30, 31, Pablo RFP Supp. Resp, Nos. 2, 6, Savino RFP Supp. Resp. Nos. 2, 7, 11, Sergio RFP Supp. Resp. Nos. 2, 3, & 9.)

During the meet and confer process, it was explained that documents were searched using the term "IFS", privileged documents were then removed from the production pool and finally the documents were reviewed by defendants to determine which of the documents included trade secret or confidential information that IFS identified in this lawsuit. IFS should be allowed to review all responsive documents where the Defendants mention or refer to IFS.

For example, any documents that Defendants' sent to customers or prospective customers, vendors or prospective vendors, or that were sent between the principles or to employees that mention or refer to IFS should be produced without hiding the ball by Defendants' decision-making as to whether the document pertains to specifically identified trade secret or confidential information. Documents that mention IFS but do not specifically reference trade secret or confidential information are likely to support IFS' claims related to Defendants' fraudulent activities,

1  secretive operations, customer, vendor, and employee poaching and other of

2  Plaintiff's claims.  In addition, such evidence is likely to support IFS' claims for

3  punitive damages in this case by demonstrating the intent to harm IFS, malice and

4  contempt with which Defendants treated IFS.

5        Therefore, Plaintiff seeks an order compelling the production of all responsive

6  documents to these requests, regardless of whether they were dated before or after

7  March 31, 2022 and regardless of Defendants' screening such documents for

8  Defendants' interpretation of specifically identified trade secret or confidential

9  information.

10  **Defendants' Position:**

11        In response to Plaintiff's new argument (first raised in this report) about the

12  scope of Defendants' offered (and completed) production, Plaintiff's case does not

13  encompass any claims for "Defendants' fraudulent activities, secretive operations,

14  customer, vendor, and employee poaching" following the termination of Defendants

15  Pablo Morales and Savino Morales in March 2022.  *C.f.* Dkt. No 99 at, *e.g.* ¶¶ 123-

16  127 (Fraud claim against P. Morales based on acts between August 2021 and March

17  2022). The only claims that potentially reach actions by Defendants after March

18  2022 would be Defendants' trade secret claims, and as such Defendants attempted to

19  reach a reasonable compromise on the request to limit post March 2022 documents to

20  those referring to Plaintiff in the context of its identified trade secrets.

21        During meet and confer efforts, Defendants identified as an example of

22  excluded documents that might mention IFS after March 2022 but not in connection

23  with IFS' identified trade secrets situations is where customers or potential customers

24  approached Legacy / Defendants with information about their current IFS pricing and

25  seeking to know if Legacy would provide competitive offers.  As this is non-illegal

26  information about a competitor's interactions with potential overlapping customers,

27  and in light of Legacy's pending counter-claim for unfair business practices

28  concerning below-cost pricing, it does not appear such should be disclosed, nor is it

1  relevant to Plaintiff's claims.  To the extent that some other compromise position is

2  available, Plaintiff has not offered it.

3  **D.    CONTINUING ISSUES THAT DEFENDANTS DID NOT**

4  **SUPPLEMENT:**

5        **1.    Defendants' Compensation, Financial And Sales Information –**

6           ▪  Legacy RFP, set 1: 8, 21, 22, 23, 25, 26, 32

7           ▪  Savino RFP, set 1: 13, 19, 20, 29

8           ▪  Pablo RFP, set 1: 12, 18, 19, 28

9           ▪  Sergio RFP, set 1: 11, 17, 18, 27

10           ▪  Legacy Rog, set 1: 2, 4

11  **Plaintiff's Position:**

12  Defendants continue to hold the position that they have some kind of financial

13  privacy rights to the information requested as they have not withdrawn such

14  objection nor have they produced any additional financial information of Legacy,

15  any evidence of compensation, benefits and bonuses paid to any of the owners or,

16  essentially, any communications about these topics.

17  Defendants also continue to take the position that providing financial and sales

18  information after March 31, 2022 is beyond its discovery obligations.  In discovery,

19  Defendants produced a one-page document (created for litigation purposes)

20  purporting to reflect Legacy's supposed sales to all customers, sales to IFS'

21  customers, and profit margins on such sales as of March 31, 2022 in lump sum

22  figures.  However, they refuse to provide Legacy's actual documents supporting the

23  document or any information about Legacy's sales and profits after March 31, 2022.

24  Indeed, Defendants identified gross sales activity for 17 customers that they

25  conceded were IFS' customers that Defendants sold products to on behalf of Legacy.

26  Discovery revealed that Defendants sold products to at least three other of IFS'

27  clients (Luna Supply, Espinoza Brothers, Rong Cheng), that were not disclosed in

28

JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022 DKT. 172

1  initial discovery, nor were the sales to those customers or margins disclosed and

2  there are probably others that have not, yet, been revealed.  While Defendants

3  negotiated with IFS' customer, Rong Cheng, in January 2022 and March 2022, but

4  Defendants claim that because the sales to Rong Cheng did not occur until after

5  March 31, 2022 they had no obligation to disclose information that will help IFS

6  measure damages arising from sales to Rong Cheng or other of IFS' customers that

7  were not disclosed at the time of providing the summary document.

8      IFS needs, and should be provided, ALL such information to a current date

9  Defendants do not have the right to unilaterally cut off the date for responsive

10 information on a date of their choosing and, in fact, owe a continuing obligation to

11 supplement their original responses.  FRCP 26(e)(1).

12     Further, Defendants claim that while employed at IFS that they only sold

13 goods to IFS customers when IFS could not supply the product or meet the price the

14 IFS customer desired.  The only way to evaluate this claim is to review the actual

15 quotes, estimates, purchase orders, invoices and similar sales information and all

16 communications between Defendants and IFS' customers and former customers so

17 that IFS can test the veracity of this testimony.

18     Additionally, IFS' damages continue to grow and, are measured, in part, by

19 Legacy's wrongfully gained profits from sales arising from stolen trade secrets, all of

20 Defendants' fraud and other wrongful actions (ie., B&P Code 17200), breach of

21 contract, breach of duty of loyalty, none of which ended on March 31, 2022, Pablo

22 and Savino's last day of employment.  Moreover, Plaintiff should be entitled to test

23 any summary information that Defendants provided through an examination of the

24 Legacy's actual financial records, communications with its accountants and

25 communications among the owners pertaining to financial reports, customer growth,

26 profitability, customer acquisition plans and more.

27     A protective order is in place to protect Legacy's financial information from

28 being made public. Dkt. 37.  This Court recently observed that "privacy interests are

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

1  not absolute and generally yield to discovery needs when mitigated by protective

2  order." Dkt. 177, 2.

3       Therefore, Defendants should be ordered to produce supplemental responses

4  without boilerplate, general, privilege or "financial privacy" objections and all

5  responsive documents created or dated prior to November 15, 2022 immediately and

6  IFS should be permitted to take an additional 2 hours of deposition of each of Sergio,

7  Pablo and Savino one week after the responsive documents are produced.

8       **Defendants' Position:**

9       Although Plaintiff made no attempt to meet and confer on this topic and the

10  many Requests it believes are covered herein since the Court's order, Plaintiff

11  appears to continue arguing that it is entitled to anything it asks for, regardless of the

12  relevance or overbreadth of its requests, or the validity of objections raised by

13  Plaintiffs.

14       For the first time in relation to these Requests[1], Plaintiff advances several new

15  ideas about financial information that it seeks from Legacy that should have been

16  raised in meet and confer efforts.  Plaintiff now argues that information relating to

17  sales relating to former IFS customers Rong Cheng, Luna Supply, and Espinoza

18  Brothers that conducted business with Legacy after IFS' termination of Pablo and

19  Savino Morales are needed despite no apparent link to any trade secret information

20  of IFS or any cognizable claim that Legacy or Defendants were otherwise legally

21  prohibited from competing with IFS after that termination.  Post termination

22  damages and claims are limited to trade secret misappropriation, and discovery of

23  _____

24  [1] Plaintiff has separately served Requests for Production seeking Legacy's
communications with Luna Supply (Request No 68, of Set 3, served 9/12/2022),

25  Rong Cheng (Request No. 79, of Set 4 served 9/19/2022), and purchases orders,
invoices and records of payment to or from Rong Cheng (Request No. 144, of Set 5,

26  served October 17, 2022) and Espinoza Brothers (Request No. 145, also of Set 5) or
documents relating to providing credit to Rong Cheng (Request No. 120, also of Set

27  5) or Espinoza Brothers (Request 122, also of Set 5).  None of those requests were
previously referenced by Plaintiff in relation to this motion.

28

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

2086725.1

1  IFS' competitor's sales to customers without trade secrets remain beyond the scope
2  of discovery.

3      Finally, Plaintiff's request to re-open the depositions of Defendants are
4  improper, especially at this late stage of this motion on completely separate written
5  discovery.

6      **2.    <u>Defendants' Communications with Steven Arroyo</u>**

7          ▪ Legacy RFP, set 1: 36

8      **Plaintiff's Position:**

9      Steven Arroyo is a former IFS employee who provided two declarations to
10 support Defendants in this case.  IFS sought all communications between Legacy and
11 its principals and Mr. Arroyo.  Recently, pursuant to a separate set of document
12 requests, Defendants produced communications between Mr. Arroyo and
13 Defendants' counsel.  However, Plaintiff has not located a single communication
14 between Mr. Arroyo and the Defendants in the Defendants' production.
15 Communications with Mr. Arroyo are likely to lead to information to impeach the
16 credibility of Mr. Arroyo, and to assist with preparation for his deposition.  Plaintiff
17 requests that all responsive communications (after January 1, 2020) be produced
18 immediately.

19     **Defendants' Position:**

20     As acknowledged by Plaintiff's statement position, Defendant Legacy already
21 produced its counsel's communications with Mr. Arroyo.  This is the sum total of
22 Legacy's communications with Mr. Arroyo, as previously mentioned in the Joint
23 Statement [Dkt. No 130 at page 60] and as discussed in recent meet and confer
24 efforts.  There does not appear to be an ongoing controversy here.

25     **3.    <u>Forensic Imaging and Review of Defendants' Devices</u>**

26          ▪ Legacy RFP, set 1: 41, 42, 43

27          ▪ Savino RFP, set 1: 36, 38, 40

28

JOINT STATUS REPORT PURSUANT TO
THIS COURT'S ORDER OF OCTOBER 31,
2022 DKT. 172

CDF LABOR LAW LLP

2086725.1

- ▪ Pablo RFP, set 1: 34, 36, 38
- ▪ Sergio RFP, Set 1: 31, 33, 35

- **Plaintiff's Position:**

Defendants admit that they sent emails and documents from IFS' email server and system to personal emails that were then used on their non-IFS personal computers. Savino sent a highly confidential IFS Customer Report for Amapola Marks, one of IFS' customers, to his personal email account on January 3, 2022.  The next day he bragged to the other Defendants that he had a productive meeting (for Legacy) with Amapola Markets and "bragged "***good thing about this one is that I have all their pricing since I'm the one that sells them.***" While Defendants claim that IFS' confidential and proprietary materials were not used by Legacy, IFS should be entitled to test that testimony by forensic investigation of Legacy's devices and each of the Defendants' personal devices and the email accounts to which IFS' confidential property was sent to better determine how that information was used and whether it was acquired by Legacy. On May 16, 2022, IFS proposed a protocol to utilize to protect against the disclosure of non-responsive or privileged communications whereby a forensic expert would be retained and:

1.      *The expert will collect and forensically image, as Attorneys' Eyes Only material under the Court's Order (Doc. 37), each device by a date certain;*

2.      *Your clients will provide credentials so that the expert can access all designated personal email accounts and social media accounts;*

3.      *The expert will download all email and text messages associated with each personal email accounts and social media accounts as Confidential material;*

4.      *The expert will generate and provide to both parties a USB/external device report that shows which devices have utilized USB/external devices, including memory devices within 10 days after imaging the devices;*

5.      *The expert will generate and provide to counsel to Defendants the following reports in a searchable format within a reasonable time that is needed by the expert:*

        *a.      From email and social media accounts:  A report of complete active and deleted file listings from that includes the created, modified and last accessed times of each identified file;*

18

CDF Labor Law LLP

2086725.1

b.      From email and social media accounts:  A report of all emails sent to or from IFS from September 1, 2020 to the present date (including any deleted items that can be retrieved): (a) sender name and e-mail address; (b) recipient name(s) and e-mail address(es); (c) date and time sent/received; (d) subject line; (e) attachment filename(s); (f) attachment file size(s); (g) internet message ID (if available); and (h) all metadata concerning such message(s);

c.      From the devices:  A report of complete active and deleted file listings from that includes the created, modified and last accessed times of each identified file and that includes a report of all emails (not otherwise gathered under 5.a) sent to or from IFS from September 1, 2020 to the present date (including any deleted items that can be retrieved): (a) sender name and e-mail address; (b) recipient name(s) and e-mail address(es); (c) date and time sent/received; (d) subject line; (e) attachment filename(s); (f) attachment file size(s); (g) internet message ID (if available); and (h) all metadata concerning such message(s);

d.      From the devices: A report reflecting any documents, data, emails or other information that appears to have originate[d] from IFS;

6.      Your office shall have ten days following receipt of the expert's reports from Number 5 to review the information identified in Number 5 and to (a) identify any materials as Confidential under ECF 37 and (b) prepare a log for any materials to be withheld from Counsel to IFS (CDF). The log will identify the name of the materials, the author, all persons to whom it was distributed, the date(s) of creation and distribution, the size of the material, and the basis for withholding the materials, including privacy, privilege or other reasons, including any material redacted must be listed on the reports.

7.      Other than privileged information, CDF, following the period identified in Number 6, shall have twenty business days to review non-privileged portions of the reports generated under No. 5 and have the expert provide all non-privileged documents, material, or data identified in the reports generated under No. 5 from the forensic images and to identify those materials that it considers to be relevant to this lawsuit.

8.      The forensic images of any materials shall be maintained so that counsel can meet and confer and, if necessary, seek further court orders with respect to materials that are not released under Number 5. The provisions of the Court's Protective Order (Doc. 37) shall apply to any issues or disputes as to the designation of documents, material or data inspected under that Order; and

9.      The forensic examination shall either be at IFS' expense or if a "neutral" expert is agreed to at the 50/50 expense to IFS and Defendants.

Plaintiffs ask the Court enter an order to permit IFS' inspection of the Defendants' devices and email accounts to determine whether IFS' property was placed on Defendants' devices, and to test the accuracy of testimony related to the use of IFS' property by Pablo, Savino and/or other of Defendants' employees. Further, Plaintiff requests that and IFS should be permitted to take an additional 1 hour of deposition of each of Sergio, Pablo and Savino following the inspection.

**Defendants' Position:**

Unsurprisingly, there has been no further meet and confer on this issue. Regardless, Plaintiff still has not met its burden to receive **any** Court order requiring forensic imaging of Defendants' various devices. As the Court may recall from the Joint Stipulations, in addition to the ordinary intrusiveness and overbreadth of such imaging of Defendants' business and personal electronic devices that would require Plaintiffs to meet a heavy burden to require forensic imaging, Defendant Sergio Escamilla is a practicing attorney in Arizona and imaging of his devices would necessarily invade attorney client privilege belonging to non-parties, despite no factual basis to claim that he had access to Plaintiff's systems.

"Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters that are (1) 'relevant to any party's claim or defense' and (2) 'proportional to the needs of the case[.]'," and a party's request to inspect computers "mobile devices or for complete forensic images" ordinarily will "call for information that is not relevant and is disproportional to the needs of the case." *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (denying request to allow opposing party to forensically copy mobile devices whose operation was the central issue in the case). Requests for "complete forensic images" threaten "to sweep in documents and information that are not relevant to the issues in this case," which may include a party's "private text messages, emails, contact lists, and photographs," "numerous emails that are not relevant to this action," and "numerous irrelevant documents as well." *Id.* And "privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Id.* (citing numerous cases denying request to forensically image devices in light of privacy and confidentiality interests).

Indeed, while "forensic imaging is not uncommon in the course of civil discovery… courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the

JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022 DKT. 172

computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (granting mandamus and reversing order for forensic imaging of various hard drives and devices despite finding by district court "that defendants had failed to comply with various discovery orders and had not properly preserved relevant ESI throughout the course of this litigation."). "Although the risk of improperly exposing [confidential or private personal] information, standing alone, might not preclude the employment of forensic imaging in all cases, the forensic imaging must be premised on an interest significant enough to override that risk." *Id.* at 460.

Plaintiff still has not advanced any legitimate reason to image Defendants' devices- it continues to admit that any trade secrets it might claim to own in this case must have been transferred from its own networks and devices, which remain in its control. Plaintiff ignores that its investigation (and Defendants' discovery) on this topic is hampered by Plaintiff's loss of the company devices used by Savino and Pablo Morales. It provides no reason why its existing systems are insufficient to find the records of alleged misappropriation, nor why it cannot use such records to narrow discovery regarding specific files in Defendants' possession.

### 4. Other Issues

**Plaintiff's Position:**

Until such time as Defendants provide properly verified Supplemental Responses without improper general objections, privilege objections, financial privacy objections or other boilerplate objections and whether additional documents are provided as requested in Section B, Plaintiff reserves the right to raise additional concerns following further responses and document production, in addition to those specifically identified hereinabove by Sections B, C, and D(1)-(3).

**Defendants' Position:**

Plaintiff's misconstruing of the Court's prior order does nothing to advance the dispute or bring the parties closer to resolution. It's empty claim of reserving

JOINT STATUS REPORT PURSUANT TO THIS COURT'S ORDER OF OCTOBER 31, 2022 DKT. 172

1  rights it does not have is unhelpful.

2      Defendants remain willing and able to meet and confer regarding specific

3  disputes or issues to attempt to reach resolutions or compromises about the

4  appropriate scope of discovery.  Defendants' objections, as explained in meet and

5  confer and the Joint Stipulation, are valid and appropriate, and Plaintiff should be

6  required to specifically discuss any further discovery that it needs pursuant to any of

7  the requests at issue in the Joint Stipulation, and not seek blanket boilerplate orders

8  without adequately meeting and conferring.

9  **E.    CONCLUSION**

10     **Plaintiff's Position:**

11     Plaintiff respectfully seeks orders from this Court to compel the Defendants to

12  provide the full range of discovery that was requested and that remains in dispute on

13  the five motions to compel.  In addition, Plaintiff seeks orders permitting additional

14  deposition time to enable inquiry into the additional documents and responses.

15

16  / / /

17

18

19  / / /

20

21

22  / / /

23

24

25  / / /

26

27

28  / / /

22

CDF Labor Law LLP

2086725.1

**Defendants' Position:**

Defendants remain willing and able to meet and confer regarding specific disputes or issues to attempt to reach resolutions or compromises about the appropriate scope of discovery.  Defendants' objections, as explained in meet and confer and the Joint Stipulation, are valid and appropriate, and Plaintiff should be required to specifically discuss any further discovery that it needs pursuant to any of the requests at issue in the Joint Stipulation, and not seek blanket boilerplate orders without adequately meeting and conferring.

Dated:  November 22, 2022         CDF LABOR LAW LLP
                                  Amy S. Williams


                                  By:   /s/ Dan M. Forman
                                              Dan M. Forman
                                  Attorneys for Plaintiff/Counter-Defendant
                                  PERRIN BERNARD SUPOWITZ, LLC, a
                                  California LLC dba INDIVIDUAL FOODSERVICE


Dated:  November 22, 2022         LESOWITZ GEBELIN
                                  Scott M. Lesowitz


                                  By:  /s/ Steven T. Gebelin
                                              Steven T. Gebelin
                                  Attorneys for Defendants/Counter-Complainant
                                  PABLO MORALES, LEGACY WHOLESALE
                                  GROUP, LLC, SAVINO MORALES, AND
                                  SERGIO ESCAMILLA

CDF Labor Law LLP

2086725.1