**DEFENDANTS' DISPUTED INSTRUCTIONS**

### 4403 Secrecy Requirement

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in IFS's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

## PLAINTIFF'S POSITION:

This instruction is not necessary and will only serve to confuse the jurors following the Court's Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment, Doc. 247, ordering that Plaintiff has actionable trade secrets and that trial should proceed on the balance of CUTSA/DTSA issues which is consistent with the doctrine of "law of the case". Without qualification, the Court held that pricing and order information constitutes a trade secret: "In summary, **IFS's pricing and order information for each of Pablo's and Savino's customers constitutes a trade secret**, and whether Pablo and Savino used this information in diverting IFS's sales to Legacy remains in genuine dispute."  Court's Order, Doc. 247, 20:13-17 (emphasis added).

The Court also concluded that credit information "would constitute a trade secret for the same reason that pricing information would constitute a trade secret."  *Id.* 21:25-26.  And, the Court then identified both forms of trade secret information for the definition of "order history". *Id.* 22:15-18.   However, that definition does not take away from the Court's conclusions and determinations.  Likewise, the Court concluded that "IFS's trade secret claims withstand summary judgment, but only to the extent the claims are based on misappropriation of order history, defined as IFS's historical data reflecting customer pricing and order information and customer credit terms."  Again, the Court's conclusion does not remove or alter its decision that order history is IFS's trade secret.

While IFS did not bring a motion for summary adjudication, the Court's order adjudicated those points as to both parties based on the undisputed facts that were presented. Indeed, Defendants attempted to obtain a dispositive ruling that the order history was not a trade secret and failed. Plaintiff is optimistic that the Court will move forward to trial with efficiency and consistent with the doctrine of the law of the case.  "[L]aw of the case is an amorphous

concept," which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), decision supplemented, 466 U.S. 144 (1984).  The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v.City of Los Angeles,* 697 F.3d 1059, 1067(9th Cir. 2012).

**DEFENDANT'S RESPONSE:**

IFS oddly believes that the Court in its ruling on Defendants' Motion for Summary Judgment ruled conclusively that the customer information and credit information at issue constitute trade secrets. That does not make sense as IFS did not make a cross-motion for summary judgment. It would be a due process violation for the Court to conclusively establish any facts against Defendants. The Court did not indicate any intention to sua sponte grant partial summary judgment in favor of Plaintiff on any issue nor provide Defendants an opportunity to respond.

The "denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of a claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1163 (E.D. Cal. 2010) (citing *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, (1966)). "Similarly, there is 'no merit' to Plaintiffs' claims that this Court's MSJ Order to deny [defendant's] summary judgment was a ruling that established the merits of Plaintiffs' claims, 'or that such a ruling was the law of the case'." *Id.* "Such a denial merely postpones decision of any question*; it decides none." Id. (*citing *Dessar v. Bank of America Nat. Trust. and Sav. Ass'n*, 353 F.2d 468, 470, emphasis in original). *See also Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed.Cir.1986) ("An order denying a motion for partial summary judgment is merely a judge's determination that genuine issues of material fact exist.")

A denial of a summary judgment motion does not constitute a final disposition of any issue in the case and does not become the "law of the case." *Andrews Farms*, 693 F. Supp. 2d at 1164.

Neither case cited by IFS for its assertion of "the law of the case" addressed summary judgment motions, let alone the denial of a summary judgment motion constituting "law of the case" for a later trial.  C.f. *Arizona v. California*, 460 U.S.

2153550.1

605, 636 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984) (final judgments concerning property were "law of the case" concerning water rights dispute); Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012) (finding that the applicability of legal issue had not been previously decided in appellate decision granting habeas relief did not preclude legal claim).

Furthermore, the language of the order on the Motion for Summary Judgment does not support Plaintiff's reading. .  Instead, in its order on Defendant's motion for partial summary judgment the Court found there were only a few "triable trade secret claims." [Dkt. No. 247].  The first category that survived Defendant's summary judgment challenge was the category based on IFS' "Pricing and Order Information"[1] because "[a]t the very least, whether this information constitutes a trade secret in this case is in genuine dispute." [Dkt. No 247 at 17:6-12] The second category, regarding " 'credit information' [which] refers to the credit terms that IFS offered its customers" the Court found to also "qualify as a trade secret for purposes of summary judgment.  [Dkt. No. 247 at 22:15-16].  In short, the Court ordered that "IFS's trade secret claims withstand summary judgment, but only to the extent the claims are based on misappropriation of order history, defined as IFS's historical data reflecting customer pricing and order information and customer credit terms."  [Dkt. No. 247 26:10-13]

Because IFS' contention that its purported trade secrets have been established as a matter of law is completely wrong, there is no reason not to provide the form instructions relating to IFS' burden to establish them as trade secrets.

---

[1] "(1) what items IFS sold to a customer, (2) when IFS sold the items, (3) the quantity of each item sold, and (4) the price at which IFS sold each item."

## 4404 Reasonable Efforts to Protect Secrecy

To establish that any given information is a trade secret, IFS must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as IFS, exercising due care to protect important information of the same kind. This requirement applies separately to each item that IFS claims to be a trade secret.

In determining whether or not IFS made reasonable efforts to keep information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether documents or computer files containing the information were marked with confidentiality warnings;
b. Whether IFS instructed its employees to treat the information as confidential;
c. Whether IFS restricted access to the information to persons who had a business reason to know the information;
d. Whether IFS kept the information in a restricted or secured area;
e. Whether IFS required employees or others with access to the information to sign confidentiality or nondisclosure agreements;
f. Whether IFS took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;
g. The extent to which any general measures taken by IFS would prevent the unauthorized disclosure of the information;
h. Whether there were other reasonable measures available to IFS that it did not take;

The presence or absence of any one or more of these factors is not necessarily determinative.

## PLAINTIFF'S POSITION:

This instruction is not necessary and will only serve to confuse the jurors following the Court's Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment, Doc. 247, ordering that Plaintiff has actionable trade secrets and that trial should proceed on the balance of CUTSA/DTSA issues which is consistent with the doctrine of "law of the case". Without qualification, the Court held that pricing and order information constitutes a trade secret: "In summary, **IFS's pricing and order information for each of Pablo's and Savino's customers constitutes a trade secret**, and whether Pablo and Savino used this information in diverting IFS's sales to Legacy remains in genuine dispute." Court's Order, Doc. 247, 20:13-17 (emphasis added).

The Court also concluded that credit information "would constitute a trade secret for the same reason that pricing information would constitute a trade secret." *Id.* 21:25-26. And, the Court then identified both forms of trade secret information for the definition of "order history". *Id.* 22:15-18. However, that definition does not take away from the Court's conclusions and determinations. Likewise, the Court concluded that "IFS's trade secret claims withstand summary judgment, but only to the extent the claims are based on misappropriation of order history, defined as IFS's historical data reflecting customer pricing and order information and customer credit terms." Again, the Court's conclusion does not remove or alter its decision that order history is IFS's trade secret.

While IFS did not bring a motion for summary adjudication, the Court's order adjudicated those points as to both parties based on the undisputed facts that were presented. Indeed, Defendants attempted to obtain a dispositive ruling that the order history was not a trade secret and failed. Plaintiff is optimistic that the Court will move forward to trial with efficiency and consistent with the doctrine of the law of the case. "[L]aw of the case is an amorphous concept," which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), decision supplemented, 466 U.S. 144 (1984). The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v.City of Los Angeles,* 697 F.3d 1059, 1067(9th Cir. 2012).

## DEFENDANT'S RESPONSE:

IFS oddly believes that the Court in its ruling on <u>Defendants'</u> Motion for Summary Judgment ruled conclusively that the customer information and credit information at issue constitute trade secrets. That does not make sense as IFS did not make a cross-motion for summary judgment. It would be a due process violation for the Court to conclusively establish any facts against Defendants. The Court did not indicate any intention to sua sponte grant partial summary judgment in favor of Plaintiff on any issue nor provide Defendants an opportunity to respond.

The "denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of a claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1163 (E.D. Cal. 2010) (citing *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, (1966)). "Similarly, there is 'no merit' to Plaintiffs' claims that this Court's MSJ Order to deny [defendant's] summary judgment was a ruling that established

the merits of Plaintiffs' claims, 'or that such a ruling was the law of the case'." *Id.* "Such a denial merely postpones decision of any question*; it decides none." Id.* (citing *Dessar v. Bank of America Nat. Trust. and Sav. Ass'n*, 353 F.2d 468, 470, emphasis in original).  *See also Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed.Cir.1986) ("An order denying a motion for partial summary judgment is merely a judge's determination that genuine issues of material fact exist.")

A denial of a summary judgment motion does not constitute a final disposition of any issue in the case and does not become the "law of the case." *Andrews Farms*, 693 F. Supp. 2d at 1164.

Neither case cited by IFS for its assertion of "the law of the case" addressed summary judgment motions, let alone the denial of a summary judgment motion constituting "law of the case" for a later trial.  C.f. *Arizona v. California*, 460 U.S. 605, 636 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984) (final judgments concerning property were "law of the case" concerning water rights dispute); Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012) (finding that the applicability of legal issue had not been previously decided in appellate decision granting habeas relief did not preclude legal claim).

Furthermore, the language of the order on the Motion for Summary Judgment does not support Plaintiff's reading. .  Instead, in its order on Defendant's motion for partial summary judgment the Court found there were only a few "triable trade secret claims." [Dkt. No. 247].  The first category that survived Defendant's summary judgment challenge was the category based on IFS' "Pricing and Order Information"[2] because "[a]t the very least, whether this information constitutes a trade secret in this case is in genuine dispute." [Dkt. No 247 at 17:6-12] The second category, regarding " 'credit information' [which] refers to the credit terms that IFS offered its customers" the Court found to also "qualify as a trade secret for purposes of summary judgment.  [Dkt. No. 247 at 22:15-16].  In short, the Court ordered that "IFS's trade secret claims withstand summary judgment, but only to the extent the claims are based on misappropriation of order history, defined as IFS's historical data reflecting customer pricing and order information and customer credit terms."  [Dkt. No. 247 26:10-13]

Because IFS' contention that its purported trade secrets have been established as a matter of law is completely wrong, there is no reason not to provide the form instructions relating to IFS' burden to establish them as trade secrets.

---

[2] "(1) what items IFS sold to a customer, (2) when IFS sold the items, (3) the quantity of each item sold, and (4) the price at which IFS sold each item."

## 4411 Exemplary Damages for Willful and Malicious Misappropriation

If you decide that a defendant's misappropriation caused IFS harm, you must decide whether that conduct justifies an award of exemplary damages. The purposes of exemplary damages are to punish a wrongdoer for the conduct that harmed IFS and to discourage similar conduct in the future.

In order to recover exemplary damages, IFS must prove by **clear and convincing** evidence that the defendant acted willfully and maliciously. You must determine whether the defendant acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that the defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the defendant acted with an intent to cause injury, or that the defendant's conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. A defendant acted with knowing disregard if any of them were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences

## PLAINTIFF'S POSITION:

DTSA does not establish a "clear and convincing" burden of proof for exemplary damages. 18 USC 1836(b)(3)(B&C).  Absent statutory language, the appropriate burden of proof is a preponderance of the evidence as with all other civil claims.  In civil cases, the requisite degree of proof generally is a "preponderance of the evidence." *In re Exxon Valdez,* 270 F.3d 1215, 1232 (9th Cir. 2001) (noting general rule and rejecting "clear and convincing evidence" standard in admiralty cases); *Hassoun v. Searls,* 968 F.3d 190, 202 (2nd Cir. 2020) (traditional standard applies in both civil and administrative proceedings); *Ramirez v. T&H Lemont, Inc.,* 845 F3d 772, 778 (7th Cir. 2016)  (unless governing statute or rule specifies higher burden, or Constitution necessitates greater burden because of nature of interests at stake, preponderance of evidence standard will suffice); *Conley v. United States,* 5 F4th 781, 794-795 (7th Cir. 2021) (exceptions to standard are "uncommon" and generally recognized only when government seeks to take "unusual coercive action" against individual (internal quotes omitted)); *see Brackeen v. Haaland,* 994 F3d 249, 429 (5th Cir. 2021) cert. granted sub nom. *Nation v. Brackeen,* 212 L. Ed. 2d 215, 142 S. Ct. 1204 (2022), and cert. granted, 212 L. Ed. 2d 215, 142 S. Ct. 1205 (2022), and cert. granted sub nom. *Texas v. Haaland,* 212 L. Ed. 2d 215, 142 S. Ct. 1205 (2022), and

<u>cert. granted,</u> 212 L. Ed. 2d 215, 142 S. Ct. 1205 (2022) (error to apply clear and convincing standard instead of preponderance of evidence where Indian Child Welfare Act was silent on standard for departing from placement preferences).

Defendants cite a series of inapposite cases, (*Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 952 (C.D. Cal. 2011); *see also Masimo Corp. v. True Wearables, Inc.*, No. 818CV02001JVSJDE, 2022 WL 17083396, at *19 (C.D. Cal. Nov. 7, 2022) (citing Mattel, Inc.); *Citcon USA, LLC v. RiverPay, Inc.*,) all of which identified without analysis the standard that the trial court applied under California law, not DTSA.  Indeed, *Mattel* predated DTSA by approximately five years.  As such the appropriate standard for a jury to determine exemplary damages under DTSA is preponderance of the evidence.


## DEFENDANTS' POSITION:

The only dispute on this instruction is whether to require the "preponderance of evidence" or "clear and convincing evidence" standard to establish exemplary damages for the trade secret claim.

The appropriate evidentiary standard for exemplary damages on a trade secret claim is "clear and convincing evidence".  "[T]he existence of willful and malicious misappropriation is ordinarily considered a fact that a jury must find by clear and convincing evidence"  *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 952 (C.D. Cal. 2011); *see also Masimo Corp. v. True Wearables, Inc.*, No. 818CV02001JVSJDE, 2022 WL 17083396, at *19 (C.D. Cal. Nov. 7, 2022) (citing Mattel, Inc.); *Citcon USA, LLC v. RiverPay, Inc.*, No. 18-CV-2585-NC, 2020 WL 5365980, at *4 (N.D. Cal. Sept. 8, 2020), aff'd, No. 20-16929, 2022 WL 287563 (9th Cir. Jan. 31, 2022) (affirming that " 'clear and convincing' evidence standard was appropriately included in the verdict form" for punitive damages on trade secret claim).  *Cox Operating L.L.C. v. Wells Fargo Bank, N.A.*, 2020 WL 13228364, *6 (S.D. Tex. June 16, 2020) ("The Texas Uniform Trade Secrets Act and its federal counterpart allow an award of punitive damages upon proof by clear and convincing evidence that a trade secret was misappropriated willfully and maliciously.")

Regardless of whether Plaintiff's claim is under the DTSA or the CUTSA, the same standard applies.  "In the absence of contrary authority, and given the similarity between the DTSA and CUTSA, the Court will interpret [] DTSA claims consistently with its CUTSA claims." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1228 (E.D. Cal. 2018).  The statutory language under for

2153550.1

exemplary damages under the DTSA and CUTSA are not different in any significant way, such that the two claims should be resolved under the same legal standard.  Compare 18 U.S.C. § 1836(b)(3)(C) ("if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages…") and Cal. Civ. Code § 3426.3 (c) ("If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any [damages] award made…").

2153550.1

## 302. Contract Formation—Essential Factual Elements

IFS claims that it entered into contracts with Pablo Morales and Savino Morales. To prove that a contract was created, IFS must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;

2. That the parties agreed to give each other something of value [a promise to do something or not to do something may have value]; and

3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If IFS did not prove all of the above, then a contract was not created.


**PLAINTIFF'S POSITION:**


Plaintiff has no objection to the above proposed instruction.


**DEFENDANTS' RESPONSE:**

2153550.1

## 309. Contract Formation—Acceptance

Both an offer and an acceptance are required to create a contract. Pablo Morales and Savino Morales contend that a contract was not created because IFS' offer was never accepted. To overcome this contention, IFS must prove both of the following for each defendant:

1. That the defendant agreed to be bound by the terms of the offer.; and

2. That the defendant communicated his agreement to IFS.

If IFS did not prove both of the above, then a contract was not created


**PLAINTIFF'S POSITION:**

Defendant first demanded this proposed instruction as a disputed instruction at 2:03 p.m. on March 23, 2023.  Contract formation is not at issue as Plaintiff employed Pablo Morales and Savino Morales for decades.  As such, a contract of employment was in place and while there may be triable issues as to the terms of the contracts, there can be no dispute that there were contracts between the parties. Adding such an instruction on an undisputed issue will only serve to confuse the jurors.


**DEFENDANTS' RESPONSE:**

Defendant inserted this instruction into its revisions to the Joint Instructions prior to the deadline to file the PTCO, which Plaintiff then removed from the joint instructions on March 20, 2023.

Plaintiff's claim at issue as set forth in other instructions is that IFS' 2019 Employee Handbook constitute or reflects the terms of the employment contract between IFS on the one hand and either Pablo Morales or Savino Morales on the other.  It is in dispute whether either defendant accepted the terms as presented by IFS in those employee handbooks, as both dispute signing IFS' acknowledgement of the handbooks or agreeing to its terms.

## 350 Introduction to Contract Damages

If you decide that IFS has proved its claim against Pablo Morales and Savino Morales for breach of contract, you also must decide how much money will reasonably compensate IFS for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put IFS in as good a position as it would have been if Pablo Morales and Savino Morales had performed as promised.

To recover damages for any harm, IFS must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

IFS also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

IFS claims the following damages for breach of contract:

1. The money IFS paid to Pablo Morales and Savino Morales, which they claimed was to reimbursement them for expenses they claimed to have incurred for IFS' business when, in fact, the expenses were incurred by Pablo Morales and Savino Morales in furtherance of their forming Legacy and conduct Legacy business;

2. IFS's lost profits from Legacy's sales to IFS's customers; and

3. IFS's lost profits from Pablo Morales and Savino Morales' use of confidential information for Legacy's benefit.

## PLAINTIFF'S POSITION:

With respect to damages, under California law, the measure of damages for "breach of an obligation not arising from contract ... is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code §

3333.  This includes the compensation and expenses paid to an employee and IFS is entitled to the benefit of the bargain that it struck with Pablo Morales and Savino Morales. They agreed to be employed and IFS agreed to pay them.  It was foreseeable that breaching their agreements would require recompense measured by the compensation that IFS paid to each of Pablo Morales and Savino Morales.  These are strict contract damages that IFS is entitled to collect. Defendants can argue that IFS received some benefit that might be offset from the full compensation that it paid, but that would be an affirmative defense and proof that Defendants carry.  "The rules of law governing the recovery of damages for breach of contract are very flexible. Their application in the infinite number of situations that arise is beyond question variable and uncertain. Even more than in the case of other rules of law, they must be regarded merely as guides to the court, leaving much to the individual feeling of the court created by the special circumstances of the particular case." *Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 226 Cal.App.3d 442, 455 (1990).

Defendants failed to identify any authority for the proposition that damages measured by the compensation paid to an employee arising from breach of a contract with an employer is not correct. Duty of loyalty cases are instructive in that they measure the wages or compensation paid to employees for violating the employer's trust. *See Purolator Products, Inc. v. Torite Industries, Inc.*, 413 F.2d 989, 990 (9th Cir. 1969) (upholding a damage award that included the salary paid to employees for a period during which they secretly competed with their employer); *LogicLink, Inc. v. Keylink Serv. Solutions, Inc.*, No. CV07-1056-DOC(MLGx), 2009 WL 764526, *9 (C.D. Cal. Mar. 19, 2009) (holding that an employer was entitled to damages in the amount of wages paid to an employee during a period he was working for his personal benefit). Thus, it is foreseeable by an employee that breaching the agreement with the employer will require damages measured by the compensation paid to the employee.

## DEFENDANTS' RESPONSE:

Plaintiff seeks the disgorgement of the entirety of Pablo and Savino Morales' entirely commission based salary for their alleged breaches of contractual duties to maintain confidentiality and/or disclose potential conflicts of interest.  Disgorgement is not a contract remedy and such recovery would run afoul of the law of contracts.

"The basic object of damages is compensation, and in the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance."1 Witkin, Summary 11th Contracts § 894 [Nature of Remedy]. (2022).  "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."  Cal. Civ. Code § 3358.

Likewise, Plaintiff's own authority recognizes the point of contract damages to approximate full performance, not punishment for an alleged breach:

"The basic object of damages is compensation, and in the law of contracts the theory is that the party injured by a breach should receive as nearly as possible the equivalent of the benefits of performance. (Civ. Code, § 3300; 1 Witkin, Summary of Cal. Law (9th ed. 1987)

2153550.1

Contracts, § 813, p. 732; 5 Corbin, Contracts (1964) Damages, § 992, p. 5.) The aim is to put the injured party in as good a position as he would have been had performance been rendered as promised." *Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 226 Cal. App. 3d 442, 454 (Ct. App. 1990).

There is no allegation or argument that the commission based salary paid to Pablo and Savino Morales was a result of the alleged breaches rather than due to their completion of sales within the scope of their employment. As such, there is proximate cause or logical connection between the detriment caused by the alleged breaches and the commissions, and had Defendants fully performed rather than committed the alleged breaches IFS would still have had to pay those commissions (in addition to commissions on any additional sales defendants may have made through IFS.)

Under Plaintiff's breach of contract claim, the correct measure of damages could only be what is necessary to provide the difference between what it proves was the value of Defendant's actual performance and Defendants' full performance under the contract (*i.e.* had Defendants fully performed their contractual duties and not disclosed confidential information or undertaken potentially conflicting positions). Defendants' full performance of obligations would return any of their commissions to Plaintiff, but only those damages suffered from the allegedly "defective performance." *E.g. Johnson v. Pac. Lighting Land Co.*, 817 F.2d 601, 608 (9th Cir. 1987) (in breach of contract action, the plaintiff "may be entitled to a refund of improper charges and the damages they may have suffered from defective performance, but not to a disgorgement of all [defendant's] profits for the entire five-year period" of alleged breaches).

Plaintiff's requested contractual damages of restitution of the salary it paid Defendants also violates the rule that a "plaintiff may not pursue or recover [restitution] on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." 1 Witkin, Summary 11th Contracts § 1051 [Practical Distinctions between Contract and Quasi-Contract] (2022); citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (2012)("plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment").

Plaintiff's position concerning disgorgement of Pablo and Savino Morales' commission pay being available on its breach of loyalty claims is both wrong and not helpful here. As an initial matter, disgorgement is an equitable remedy, not damages available under a contract. *E.g. Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (2012) (quasi-contract restitution is not available where plaintiff pleads enforceable contract).

Moreover, Plaintiff's claim for the disgorgement of defendants Pablo and Savino Morales' separately apportioned commissions, including commissions paid after IFS learned of the alleged breach of duty of loyalty, is also not tenable under the duty of loyalty claim.

If an employee earns a separately identifiable commission for a discreet sale that was not impacted by a violation of the duty of loyalty then that commission cannot be clawed back.

"It is a general rule that an agent who, without the acquiescence of the principal, acts for the agent's own benefit, or for the benefit of another antagonistic to or competitive with the principal, is entitled to no compensation. This rule applies even though the conduct of the agent does not harm the principal and even though the agent acts with a good-faith belief that the agent's conduct is beneficial to the principal. *However, if the agency contract is separable in the sense that specific portions of the consideration can be apportioned to specific tasks, the agent is*

*entitled to the compensation apportioned to those tasks which the agent performs loyally and loses only that compensation apportioned to tasks performed in violation of the agent's fiduciary duties.*" CAJUR AGENCY § 142 (emphasis added).

In *J. C. Peacock, Inc. v. Hasko*, 196 Cal.App.2d 353, 360 (1961), the court, citing the Restatement of Agency, stated, "a disloyal agent is not entitled to compensation even for properly performed services *for which no compensation is apportioned*" (emphasis in original, internal quotation marking omitted). The court continued, "Generally speaking, the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, the contract may be regarded as severable." *Id.* at 360-61.

Separately, since IFS paid Savino and Pablo multiple times after they found out about Legacy, IFS cannot credibly claim that they would not have paid Savino and Pablo any commissions if they knew about Legacy.

The *J. C. Peacock, Inc.* court also discussed the limitations on clawing back payments already made to an employee as opposed to refusing to make payments in the future: "it is said that If a principal has paid commissions in ignorance of fraud on the part of the agent forfeiting his right to compensation such payments can be recovered back by the principal. Again, where an employer has voluntarily made a payment of wages, he cannot recover it back, even though the employee by his subsequent conduct would have forfeited the right thereto if it had not been made. However, he may recover back any overpayments secured through fraud or mistake." 196 Cal.App.2d at 359.

The Restatement still endorses the distinction between an employee who is paid a single salary for all work performed and an employee who is paid per transaction. See Rest. (3d) of Agency § 8.01 Comment d(2) & Illustration 9 ("Although forfeiture is generally available as a remedy for breach of fiduciary duty, cases are divided on how absolute a measure to apply. Some cases require forfeiture of all compensation paid or payable over the period of disloyalty, while others permit apportionment over a series of tasks or specified items of work when only some are tainted by the agent's disloyal conduct. The better rule permits the court to consider the specifics of the agent's work and the nature of the agent's breach of duty and to evaluate whether the agent's breach of fiduciary duty tainted all of the agent's work or was confined to discrete transactions for which the agent was entitled to apportioned compensation.").

California Courts recognize that *J.C. Peacock, Inc.* prohibits employers from recovering back payments unless the defendants breached their duty of loyalty in performance of the services for which the payments were made. *United States Auto Sec. v. Morrison*, No. B155279, 2004 WL 363384, at *8 (Cal. Ct. App. Feb. 27, 2004) ("plaintiffs were not entitled to disgorgement of payments they made to defendants for services that the defendants already had performed. Had defendants breached their duty of loyalty in the performance of those services, plaintiffs might have been able to recover those payments.")

Plaintiff's citations to *Purolator Products, Inc. v. Torite Industries, Inc.*, 413 F.2d 989, 990 (9th Cir. 1969) and *LogicLink, Inc. v. Keylink Serv. Solutions, Inc.*, No. CV07-1056-DOC(MLGx), 2009 WL 764526, *9 (C.D. Cal. Mar. 19, 2009) are inapposite as neither discuss whether or not the salaries were apportioned, and neither indicate that the salaries were based on commissions for work unaffected by the alleged breach of loyalty or other fiduciary duties.

**2201 Intentional Interference With Contractual Relations—Essential Factual
Elements**

IFS claims that the defendants intentionally interfered with the contract between IFS
and each of Hugo Mesa, and Jesus Trujillo. To establish this claim against a
defendant, IFS must prove all of the following for that defendant:

1. That there was a contract between IFS and Hugo Mesa or Jesus Trujillo;
2. That the defendant knew of the contract(s);
3. That the defendant's conduct prevented performance or made performance
more expensive or difficult;
4. That the defendant intended to disrupt the performance of these contracts or
knew that disruption of performance was certain or substantially certain to occur;
5. That IFS was harmed; and
6. That the defendant's conduct was a substantial factor in causing IFS's harm.

.

**PLAINTIFF'S POSITION:**

Plaintiff's primary objection is that Defendants are attempting to escape liability
from tortiously interfering with the contracts between IFS and each of Savino
Morales and Pablo Morales.  Plaintiff has properly alleged such claims against the
defendants and by way of objection to jury instructions to obtain summary
adjudication of that Count.


The thrust of Defendants' argument interprets the operative complaint unduly
narrowly to absolve liability against the defendants from tortiously interfering with
the contractual relations between IFS and its employees, Pablo Morales and Savino
Morales.  Paragraph 74 incorporates by reference the contracts between IFS and
Savino Morales and Pablo Morales and their obligations to both maintain
confidences and to disclose conflicts of interest. FAC, Doc. 99, ¶ 74 ("IFS re-
alleges and incorporates paragraphs, 29, 21-33").

Paragraphs 75 and 76 confirm that Pablo, Savino and Escamilla knew of the
"contracts, employment agreements and/or relationships between IFS and its
employees" (including Pablo Morales and Savino Morales).

2153550.1

Additional Paragraphs 77, 79 and 80 indicate that Pablo Morales, Savino Morales and Escamilla conducted themselves in a manner to tortiously induce breach of contracts of "other IFS's employees", which includes Pablo Morales and Savino Morales.

Moreover, Paragraph 10 alleges that each "Defendant was, at all relevant times hereto, the agent, employee, servant, partner…aider and/or abettor of each other…"  As such, each Defendant is responsible for tortious inducement of breach of the contract with any IFS employee, including Pablo and Savino.

Plaintiff agrees that a defendant cannot be subject to liability for tortious interference with his own contract, however, absent summary adjudication, Pablo Morales, Escamilla and Legacy cannot escape liability for tortiously inducing Savino Morales to breach his contract with IFS.  Likewise, absent summary adjudication, Savino Morales, Escamilla and Legacy cannot escape liability for tortiously inducing Pablo Morales to breach his contract with IFS.   And, clearly, Escamilla and Legacy should be tried for tortiously inducing Savino Morales and Pablo Morales to breaching contracts with IFS.

**DEFENDANT'S RESPONSE:**

Plaintiff's Amended Complaint pled that defendants collectively interfered with IFS' contractual relationship with employees **other than the defendants**, and not that some defendants also interfered IFS' contracts with defendants Savino and Pablo Morales.

Specifically, In the Amended Complaint alleges:

"78. IFS is informed and believes and, based thereon, alleges that **LEGACY, Pablo, Savino and Escamilla** knowingly and intentionally **induced other IFS' employees to breach** their contractual obligations to IFS.

79. IFS is informed and believes and, based thereon, alleges that **LEGACY, Pablo, Savino and Escamilla** knowingly and intentionally **induced E1, E2 and/or other IFS' employees to breach contractual obligations to IFS** to disclose and seek permission from IFS before pursuit of economic opportunities in competition with IFS while employed by IFS.

80. **Pablo, Savino and Escamilla told the employees** that Pablo and Savino used fake names when conducting sales for LEGACY **and told the employees recruited from IFS to Legacy** to use false names for themselves when representing LEGACY.  IFS is informed and believes and, based thereon, alleges that such conduct was intended to hide the IFS' employees' activities from IFS.

2153550.1

81. The conduct engaged in by **LEGACY, Pablo, Savino and Escamilla** to induce the foregoing breaches of contracts is not protected by any privilege."

Plaintiff's arguments that "each Defendant is responsible for tortious inducement of breach of the contract with any IFS employee, including Pablo and Savino" and its admission that a defendant cannot be subject to liability for tortious interference with his own contract are inherently contradictory.

Had the Complaint pled that Pablo Morales, Escamilla and Legacy induced a breach of Savino Morales's contract with IFS or that Savino Morales, Escamilla and Legacy induced a breach of Pablo Morales's contract there would be some textual basis, including the acts that "prevented performance or made performance more expensive" that "were intended to interfere with the contract" with Pablo and Savino.  The only pled action of interference was "**Pablo, Savino and Escamilla told the employees** that Pablo and Savino used fake names when conducting sales for LEGACY **and told the employees recruited from IFS to Legacy** to use false names for themselves."  This action was pled as a collective action and statement by the defendants to employees other than Pablo and Savino.

### 1923 Damages—"Out of Pocket" Rule

If you decide that IFS has proved its claim for misrepresentation or concealment against Pablo Morales and/or Legacy, you also must decide how much money will reasonably compensate IFS for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that Pablo Morales and/or Legacy was a substantial factor in causing, even if the particular harm could not have been anticipated.

IFS must prove the amount of its damages. However, IFS does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To decide the amount of damages you must determine the fair market value of what IFS gave and subtract from that amount the value of what it received.

["Fair market value" is the highest price that a willing buyer would have paid on the date of the transaction to a willing seller, assuming:

1. That there is no pressure on either one to buy or sell; and

2. That the buyer and seller know all the uses and purposes for which the *items* is reasonably capable of being used.]

IFS may also recover amounts that it reasonably spent in reliance on Pablo Morales and/or Legacy's false representation if those amounts would not otherwise have been spent.

## PLAINTIFF'S POSITION:

**Plaintiff objects to Defendant's demand to incorporate this instruction at the at 8:00 p.m. on March 20, 2023.**

**DEFENDANTS' RESPONSE:**

Defendants requested insertion of CACI 1923 into the Joint working document on March 14, 2023 at 5:00 pm.  There is no reason to exclude the instruction.

2153550.1

## 5.1 Damages—Proof

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on any or all of the plaintiff's claims that any or every defendant violated the Defend Trade Secrets Act, violated the California Uniform Trade Secrets Act, committed breach of contract, tortiously induced breach contract, breached a duty of loyalty, tortiously induced breach of the duty of loyalty, tortiously interfered with business relations/contract, or committed fraud, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's wrongful conduct. You should consider the following:

1.  IFS's lost profits and/or future lost profits from

    a.  Legacy's sales to IFS's customers due to the misappropriation of trade secrets;

    b.  Legacy's wrongful sales to IFS's customers;

    c.  Pablo Morales and Savino Morales' use of confidential information for Legacy's benefit; or

2.  Legacy's wrongfully gained profits due to the misappropriation of trade secrets;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

## PLAINTIFF'S POSITION:

### PLAINTIFF'S REPLY

Defendants version of 5.1 does not identify the actual categories of all damages that are at issue. There are three categories of claims: (i) misappropriation of trade secrets, (ii) breach of contract, and (iii) torts. Plaintiff seeking damages associated with each of its claims. Defendants have not raised any coherent objection. Plaintiff asks to use the Ninth Circuit's language and the insertion of the types of damages at issue on all claims as approved by Instruction 5.2, the comment to which reads: "Additional

2153550.1

paragraphs may have to be drafted to fit other types of damages. Particular claims may have special rules on damages."

Plaintiff's damages arising from different claims as follows:

1.     IFS's lost profits (misappropriation of trade secrets and tort claims);

2.     IFS's future lost profits (misappropriation of trade secrets and tort claims);

3.     Legacy's wrongfully gained profits from use of IFS's trade secrets (misappropriation of trade secrets);

4.     Legacy's future wrongfully gained profits from use of IFS's trade secrets misappropriation of trade secrets);

5.     IFS's lost profits from defendants' use of IFS's confidential information for Legacy's benefit (tort claims);

6.     Profits that Legacy generated from sales to non-IFS customers, which sales should have been offered to IFS (misappropriation of trade secrets and breach of contract);

7.     Future profits that Legacy generated from sales to non-IFS customers, which sales should have been offered to IFS (misappropriation of trade secrets and tort claims);

8.     The compensation and reimbursement of expenses paid by IFS to Pablo Morales and Savino Morales for the period March 1, 2021 through the end of their employment (tort claims and breach of contract); and

9. The compensation and reimbursement of expenses paid by IFS to Hugo Mesa for the period January 2022 - April 2022 and to Jesus Trujillo for the period September 2022 – April 2022 (tort claims and breach of contract).


**DEFENDANTS' RESPONSE:**

Plaintiff's requested instruction includes categories of damages which are not available under any theory without proper support.

2153550.1

### 3933.Damages From Multiple Defendants

In this case, IFS seeks damages from more than one defendant. You must determine the liability of each defendant to IFS separately.  If you determine that more than one defendant is liable to IFS for damages, you will be asked to find IFS's total damages.

In deciding on the amount of damages, consider only IFS's claimed losses. Do not attempt to divide the damages among the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict.

**PLAINTIFF'S POSITION:**

Plaintiff has no objection other than Defendant's demand to incorporate this instruction at approximately 8:00 p.m. on March 20, 2023.

**DEFENDANTS' RESPONSE:**

CACI 3933 was included in working drafts of the joint documents on March 16, 2023.  There is no reason to not give the instruction.

2153550.1

### 3940.     Punitive Damages

If you decide that any of Pablo Morales, Savino Morales, Sergio Escamilla or Legacy Wholesale Groups' **tortious** conduct caused IFS harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages only if IFS proves by clear and convincing evidence that engaged in that **tortious** conduct with malice, oppression, or fraud.

"Malice" means that the defendant acted with intent to cause injury or that the defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that the defendant's conduct was despicable and subjected IFS to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that the defendant intentionally misrepresented or concealed a material fact and did so intending to harm IFS.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was the defendant's conduct? In deciding how reprehensible of the  defendant's conduct was, you may consider, among other factors:
>    1. Whether the conduct caused physical harm;
>    2. Whether the defendant disregarded the health or safety of others;
>    3. Whether IFS was financially weak or vulnerable and the defendant knew IFS was financially weak or vulnerable and took advantage of it;
>    4. Whether the defendant's conduct involved a pattern or practice; and
>    5. Whether of the defendant acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and IFS's harm or between the amount of punitive damages and potential harm to IFS that the defendant knew was likely to occur because of the defendant's conduct]?

(c) In view of the defendant's financial condition, what amount is necessary to punish the defendant and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because the defendant has substantial financial resources.


**PLAINTIFF'S POSITION:**


**DEFENDANT'S POSITION:**
"An award of punitive damages is not supported by a verdict based on breach of contract, even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious. Even in those cases in which a separate tort action is alleged, if there is 'but one verdict based upon contract' a punitive damage award is improper." (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960 [17 Cal.Rptr.2d 242], internal citations omitted.)

Defendant modified the CACI instruction to add the qualifier "tortious" in order to instruct the jury that it cannot award punitive damages based on a breach of contract, and instead only based on conduct comprising a tort claim.

2153550.1