**LESOWITZ GEBELIN LLP**
Scott M. Lesowitz (SBN 261759)
    scott@lawbylg.com
Steven T. Gebelin (SBN 261507)
    steven@lawbylg.com
8383 Wilshire Boulevard, Suite 800, Beverly Hills, CA 90211
Telephone: (310) 341-3072; Facsimile: (310) 341-3070

*Attorneys for Defendants* Pablo Morales,
Savino Morales, Sergio Escamilla, and
Legacy Wholesale Group, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, dba INDIVIDUAL FOODSERVICE,<br><br>Plaintiff,<br><br>V.<br><br>PABLO MORALES, LEGACY WHOLESALE GROUP, LLC, SAVINO MORALES, SERGIO ESCAMILLA, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:22-cv-02120 ODW(JEMx) [Assigned to the *Honorable Otis D. Wright, II*]<br><br>**DEFENDANTS' MOTION IN LIMINE #3 TO EXCLUDE PLAINTIFF FROM HAVING NIGEL KERSHAW OFFER OPINION TESTIMONY REGARDING PLAINTIFF'S DAMAGES FROM LEGACY'S SALES**<br><br>Hearing Date: July 10, 2023<br>Hearing Time: 1:30 p.m.<br>Hearing Courtroom: 5D |

## MOTION AND NOTICE OF MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on July 10, 2023, at 1:30 p.m., or as soon thereafter as may be heard by the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA. 90012 - Courtroom 5D, 5th Floor, Defendants Pablo Morales, Legacy Wholesale Group, LLC ("Legacy"), Savino Morales, and Sergio Escamilla will and hereby do move *in limine* for the Court to exclude at trial opinion testimony from Nigel Kershaw regarding Plaintiff's damages from Defendant Legacy Wholesale Group's sales (with the exception of testimony regarding the profits that Legacy earned from actual sales through March 31, 2022). (See Deposition Exh. 717, tabs "c," "d," and "e.")

This Motion *in Limine* is brought under Federal Rules of Evidence 104(a), 701, and 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 US 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 US 137 (1999); Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and any other applicable authority. Nigel Kershaw (Plaintiff's Chief Financial Officer) used flawed methodology. The opinions that Plaintiff wishes to elicit from Nigel Kershaw are unreliable, not properly grounded or well-reasoned, and are unduly speculative. Mr. Kershaw lacks the proper qualifications as to certain aspects underlying the opinions (especially anything requiring experience related to the food services industry specifically). The opinions and work of Nigel Kershaw fail the standards laid out in *Daubert* and *Kumho Tire* and other applicable authorities.

The Motions *in Limine* seeking exclusion of certain categories of expert opinions are not a de facto summary judgment motion because Defendants are not moving to exclude evidence regarding Legacy's profits from sales completed prior to March 31, 2022.

In the alternative, Defendants request the Court conduct a hearing pursuant to *Daubert* and *Kumho Tire*.

*IFS  v. Morales, et al.*
USDC, Case No. 2:22-cv-02120 ODW(JEMx)                    1                    **Defendants' MIL #3 re Lost Market Share
Profits**

1       This motion is made following the conference of counsel pursuant to L.R. 7-3

2   which took place on March 16, 2023 (when all motions *in limine* planned to be

3   brought by both sides were discussed). Counsel for Defendants discussed the subject

4   of this motion *in limine* with opposing counsel and met and conferred with opposing

5   counsel. Opposing counsel indicated that Plaintiff opposed the motion and would

6   not stipulate. Lesowitz Decl. ¶¶ 3-4 & Exh. 2.

7       This motion is based upon this Notice of Motion and Motion, the

8   accompanying Memorandum of Points and Authorities, the declaration of Scott

9   Lesowitz, all pleadings and papers on file in this action, upon all matters upon which

10  the Court may take judicial notice, and any evidence and argument provided at the

11  hearing.

12

13  Dated: May 17, 2023       /s/ *Scott Lesowitz*

14                                  Attorney and Partner

                                For Lesowitz Gebelin LLP, Counsel for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*IFS  v. Morales, et al.*
USDC, Case No. 2:22-cv-02120 ODW(JEMx)
    2    **Defendants' MIL #3 re Lost Market Share Profits**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This particular Motion *in Limine* challenges the admissibility of Mr. Kershaw's opinions regarding Plaintiff's damages (whether measured as Plaintiff's direct losses or disgorgement of Legacy's profits) with the exception of providing testimony of the profits Legacy earned from sales completed through March 31, 2022.

Therefore, Nigel Kershaw would be precluded from opining that IFS will have suffered $641,818 in lost profits from sales that IFS failed to make due to Defendant Legacy Wholesale Group's sales, per Tab "c" of Exhibit 717. And Nigel Kershaw would be precluded from opining as to Legacy's profits from sales completed after March 31, 2022, per Tabs "d" and "e." IFS cannot prove by a preponderance of the evidence that the testimony is reliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 US 579, n. 10 (1993).

## II. BACKGROUND FACTS

### A.  Background

IFS resells items to food businesses. FAC (ECF no. 99) ¶ 2. Defendants Savino Morales ("Savino") and Pablo Morales ("Pablo") were salespeople for IFS. FAC ¶¶ 16 & 17. In March 2021, Savino and Pablo, and Defendant Sergio Escamilla, formed Legacy, a similar business as IFS. FAC ¶¶ 30-32. On March 31, 2022, IFS fired Savino and Pablo and filed this lawsuit. The core allegations are that Defendants (1) wrongfully diverted business to Legacy, (2) had IFS sell items to Legacy at too low of a margin, and (3) used trade secrets. See FAC ¶¶ 30-42.

### B.  Nigel Kershaw's Expert Exhibits

On March 7, 2023, Defendants deposed Nigel Kershaw. Roughly one hour into the deposition, counsel for IFS produced a binder of "IFS Damage Calculations" (in all caps). Lesowitz Decl. ¶¶ 5-6 & Exh. 3. The binder was marked as Exhibit 717. Id.

The first page of the binder is a summary of categories of damages labeled "a" through "k." There are then separate binder tabs labeled "a" through "i" that each

1  contain a document corresponding to the categories listed on the cover page. Lesowitz

2  Decl. ¶ 6 & Exh. 3 (Exh. 717). Presumably, there are no tabs for items "j" and "k"

3  since the amounts for those categories are listed as "TBD" on the summary page.

4       This Motion attacks the calculations in Tab "c" in full. However, this Motion

5  only attacks Tabs "d" and "e" to the extent they purport to measure post-March 2022

6  profits.

7       **C.**     **<u>Nigel Kershaw's Limited Qualifications</u>**

8       Nigel Kershaw is a CFA with limited knowledge that is specific to the food

9  services industry. Mr. Kershaw had no food industry experience prior to joining IFS

10 in May 2020. Kershaw 5/9/22 Decl., ECF 47, ¶ 2; Kershaw Tran. p. 27:19-22. He

11 testified: "I'm not familiar with the day-to-day process, in terms of what [IFS

12 salespeople] do on a daily basis, in terms of interacting with customers." Kershaw

13 Tran. p. 28:12-21. When asked about his duties related to IFS obtaining products to

14 be sold, Mr. Kershaw testified, in part, "Obviously, it doesn't get into a granular level

15 on an item-by-item basis, you know…it's more just an overall directional sense of

16 forecasting." Lesowitz Decl. Exh. 5 ("Kershaw Tran.") p. 29:18-22.

17      **D.**     **<u>How the Numbers in Tab "c" Were Calculated</u>**

18      The document in Tab "c" of Exhibit 717 is entitled, "IFS' lost profits from

19 Legacy's sales to IFS' customers." On this page Mr. Kershaw calculates that IFS will

20 lose $641,818 in profits by February 2025.

21      The process of how the $641,818 figure in Tab "c" of Exhibit 717 was

22 calculated begins with Exhibit 710, another exhibit Nigel Kershaw created. Exhibit

23 710 is a list of 24 IFS customers Legacy had sold items to. Kershaw Tran. p. 67:5-20.

24      In Tab "c" of Exhibit 717, Mr. Kershaw calculated IFS' monthly sales revenues

25 to the 24 customers listed on Exhibit 710 during two separate periods: (i) from March

26 to May 2021 (what he calls the "base period"), and (ii) from January to March 2022.

27 Kershaw Tran. pp.  67:5-20; 73:5-20-77:12.

28

1  Mr. Kershaw concluded that IFS's revenues from sales to 13 of the 24
2  customers listed on Exhibit 710 were lower in January to March 2022 than in March
3  to May 2021. Kershaw Tran. pp. 75:25-76:20. Mr. Kershaw concluded that IFS'
4  revenues from sales to 11 of the 24 customers were <u>higher</u> in January to March 2022
5  than in March to May 2021.  Kershaw Tran. p. 76: 21-24.

6  Mr. Kershaw then removed the 11 customers for which revenues were higher
7  in the January to March 2022 period versus the March to May 2021 base period; Mr.
8  Kershaw did not factor in the changes in revenues at all for these 11 customers in
9  making his calculations on Tab "c." Kershaw Tran. pp. 76:21- 78:2, 81:24-82:5.

10  For each of the 13 customers for whom revenues were lower in the January to
11  March 2022 period, Mr. Kershaw took the average monthly revenue in the January to
12  March 2022 period for that customer and subtracted the average monthly revenue in
13  the March to May 2021base period for that customer to come up with the average
14  monthly negative drop in revenue for the customer. He then assumes that exact
15  average monthly negative drop in revenue occurred for each month since March 2022
16  (even though he could have looked at actual revenue numbers through February 2023)
17  and will continue to occur through February 2025. Then Mr. Kershaw assumes a 10%
18  profit margin on sales to come up with lost profit damages numbers. Kershaw Tran.
19  pp. 71:15- 78:2 (detailing how the numbers in Tab "c" were calculated).

20  **E.    How the Numbers in Tabs "d" and "e" Were Calculated**

21  Tabs "d" and "e" purport to measure profits Legacy will gain through February
22  2025 from sales to IFS customers (Tab "d") and non-IFS customers (Tab "e").

23  The numbers reported for Legacy's profits through March 2022 are
24  uncontroversial and are not at issue in this Motion (or any other motion *in limine*).
25  Those numbers come directly from a document that Legacy produced. (The
26  significance of the numbers will be disputed at trial.)

27  Tabs "d" and "e" also project Legacy's profits through February 2025. These
28  calculations should be excluded because Nigel Kershaw simply assumed that Legacy

1   would earn the same profits AND that all profit Legacy earns through February 2025

2   will be wrongful and should be disgorged. Kershaw Tran. p. 126:12-24.

3   **III.   ARGUMENT**

4       **A.   Error No. 1 Applying to Tabs "c," as well as to Post-March 2022**

5           **Projected Profits for Tabs "d" and "e": There Is No Proper Basis**

6           **for Future Damages.**

7       IFS fired Savino and Pablo on March 31, 2022. It is irrational to think that all

8   post-March 2022 sales from Legacy to IFS customers cause legally compensable

9   damage to IFS. This Court has ruled that Savino and Pablo have a right to compete

10  against IFS post-termination. E.g., ECF no. 247, p. 14. Yet, Mr. Kershaw assumed

11  every Legacy sale post-March 2022 represents damages to IFS.

12      Mr. Kershaw was asked, "In making your calculations [] for this case…it's your

13  assumption that any sale Legacy makes even today to an IFS customer that Savino

14  and Pablo serviced is damages to IFS?" Mr. Kershaw answered, "[M]y assumption

15  would be that it would create a damage to IFS." Counsel then followed up, "So is the

16  answer yes?" He answered, "Yes." Kershaw Tran. p. 126:12-24.

17      IFS made no attempt to provide evidence of specific damages IFS allegedly

18  suffered post-March 2022. Instead, IFS absurdly assumes that all of Legacy's post-

19  March 2022 sales are wrongful and represent damages. This alone justifies exclusion.

20      This same logic warrants the exclusion of all post-March 2022 calculations of

21  Legacy's post-March 2022 wrongful profits (referring to Exh. 717, Tabs "d" & "e").

22  It is wholly improper and illogical for Mr. Kershaw to assume that all of Legacy's

23  post-March 2022 sales will automatically represent wrongfully gained profits that

24  must be disgorged, including for customers IFS did not share with Legacy.

25      Moreover, the arbitrarily separated categories of "IFS future lost profits" as

26  damages and "Legacy future profits" for disgorgement appear to be both based on the

27  same underlying cause- Legacy sales that IFS (wrongly) claims it would have instead

28  made.

### B. Error No. 2 for Tab "c": Only Using Favorable Customers

In Tab "c" of Exhibit 717, Mr. Kershaw improperly calculated IFS' change in revenue by only including in his analysis customers for whom the data would be favorable to IFS. *In re Lipitor*, 892 F.3d 624, 634 (4th Cir. 2018) ("Result-driven analysis, or cherry-picking, undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion. Courts have consistently excluded expert testimony that 'cherry-picks' relevant data.") (internal citations and quotation markings omitted); *In re Incretin-Based Therapies Products Liability Litigation*, 524 F.Supp.3d 1007, 1039 (S.D. Cal. 2021) ("[T]he Court finds that Dr. Wells' analysis consists of a cherry-picked selection of favorable data. Consequently, it is unduly results-driven, not good science, and therefore inadmissible.")

Again, Mr. Kershaw claims that there were 24 IFS customers to whom Legacy sold items. Yet, for making his calculations of lost profits on Tab "c," Mr. Kershaw only included the 13 of 24 customers for whom revenues were lower in the January to March 2022 period than in the March to May 2021 period. He completely excluded the positive changes in revenues for the 11 of 24 customers for whom IFS' revenues were higher in the January to March 2022 period than in the March to May 2021 period. Obviously, there will appear to be a net reduction in revenues when the calculations only include the customers for whom revenues declined and exclude all of the customers for whom revenues went up.

Of note, Mr. Kershaw did not record, and did not recall, what the positive changes in revenue amounted to for the 11 customers for whom IFS's sales revenues were higher in January to March 2022 than in March to May 2021. Kershaw Tran. p. 109:3-12. Mr. Kershaw and IFS have not provided the data necessary to calculate the revenues for all 24 customers in any period. Lesowitz Decl. ¶ 7. It is possible that if we looked at all 24 customers that IFS' sales were higher in January to March 2022, and at the least, the numbers would be more favorable to Defendants.

Also, in considering that revenues were down for some (but not all) customers in January to March 2022 versus March to May 2021, it is important to remember how volatile this period was. It should be unexpected that for roughly half the customers revenue was higher in one period and for roughly half the customers revenue was higher in the other period. As Jeremy Shapiro testified as a 30(b)(6) deponent of IFS, for the period of June 2021 through March 2022, "It's fair to say that the entire industry – actually almost industry in the country experienced supply chain challenges," and that, "[IFS] received over 50,000 cases inbound on a daily basis and shipped out equal or more on a daily basis. So every day, availability of inventory could be different." Lesowitz Decl. Ex. 6, Shapiro Rule 30(b)(6) Tran. p. 16:5-20.

## C.    Error No. 3 for Tab "c": The Base Period Is Arbitrary

Nigel Kershaw compared March to May 2021 with January to March 2022, instead of comparing January 2021 to March 2021 with January to March 2022. Mr. Kershaw claims that he did not use January to March 2021 for the base period because there were Covid-19 lockdowns in early 2021.

Had Mr. Kershaw used January to March 2021 or January to March 2019 for the base period, the results would have been more favorable for Defendants. He testified, "[F]rom March '21 to May '21, during the height of the supply chain disruption, these three months were the largest months of case volume sales for Pablo and Savino's accounts. And they had grown significantly from January, February of 2021 to March, April, May 2021." Kershaw Tran. p. 72:2-8. And, "So I calculated March, April, and May [2021], which were the highest months that I'd seen going back all the way to 2019, pre-COVID. I used that as a base." Id., p. 73:18-21.

Additionally, Legacy was formed in March 2021, but did not engage in its first sale until the end of August 2021. Kershaw Tran. p. 110:7-20. Mr. Kershaw used a base period that mostly post-dates Legacy's formation. But he did not use the three most recent months prior Legacy selling items (i.e., May through July 2021).

1    Mr. Kershaw's decision undermines his results. *Bricklayers and Trowel Trades*
2    *Intern. Pension Fund v. Credit Suisse Securities (USA) LLC*, 752 F.3d 82, 92 (1st Cir.
3    2014) (affirming the district court's rejection of expert testimony that "cherry-picked
4    unusually volatile days and made them the focus of the study.").

5    **D.    Error No. 4 for Tab "c": Mr. Kershaw Merely Assumed Causation**

6    Nigel Kershaw merely assumed that Savino and Pablo's alleged wrongdoing
7    caused any and all declines in revenues to any customer that Savino or Pablo serviced.
8    Other than considering inflation and Covid-19 (which he used to change the base
9    period to one more favorable to IFS), Mr. Kershaw did not look into or consider any
10   other possible causes. Kershaw Tran. p. 106:9-108:23.

11   Mr. Kershaw was asked, "So did you look on a customer-by-customer
12   basis…to determine what factors, other than defendants' alleged misconduct, may
13   have caused the negative change in average month sales?" He responded, "No."
14   Kershaw Tran. pp. 107:21-108:1. Also, he admitted he did not look at the types of
15   items that were sold to the customers in the two periods. Kershaw Tran. p. 108:8-23.

16   Asked for one customer, "what caused that change in revenue?," Mr. Kershaw
17   answered, "Yeah, I don't have the actual knowledge related to that." Kershaw Tran.
18   p. 80:2-6. Asked about another customer, "So what is your basis for the causal
19   mechanism for the drop [in revenue]?", he answered, "Yeah I'd be speculating on --
20   on what that is." Id., p. 81:16-22.

21   This is an even bigger problem because Nigel Kershaw is IFS's only designated
22   expert. Lesowitz Decl. ¶ 4. There is nobody else to fill the gap on causation.

23   Mr. Kershaw, at most, describes certain correlations. *Pottenger v. Potlatch*
24   *Corp*, 329 F.3d 740, 748 (9th Cir. 2003) (in finding expert opinion unpersuasive in
25   affirming granting MSJ, held, "The numbers show a statistically significant
26   relationship between these two variables, but this court and others have treated
27   skeptically statistics that fail to account for other relevant variables."); *Munoz v. Orr*,
28   200 F.3d 291, 301-02 (5th Cir. 2000) (Affirming finding of unreliability, noting "Benz

began his analysis with the assumption that Kelly's promotion system discriminated against Hispanic males, an indicator that he lacked the necessary objectivity to make his analyses credible….[H]e…fail[ed] to consider other variables such as education and experience as explanations for any observed discrepancy between promotion rates and to not performing a multiple regression analysis. Finally, Dr. Benz relied on the plaintiffs' compilations of data, which gives rise to a 'common-sense skepticism' regarding the expert's evaluation.") (internal citations and quot. omitted); *Blomkest Fertilizer, Inc. v. Potash Corp.*, 203 F.3d 1028, 1038 (8th Cir. 2000) ("[T]he expert's model is fundamentally unreliable because of his heavy (if not exclusive) reliance on evidence that is not probative of conspiracy, coupled with his failure to consider significant external forces that served to raise the price of potash."); *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605 (N.D. Cal. 2008) ("His reasoning appears to be: the Manufacturers' products incorporate Rambus's claimed inventions; those products have been successful; ergo Rambus's inventions caused the products' success. Rule 702(2) demands more…"); *Ryoo Dental, Inc. v. Thomas D. Han*, 2016 WL 6138413, *7 (C.D. Cal. April 25, 2016) ("[T]his opinion appears to be based on nothing more than his observation that the timing of drops in website traffic and search rankings correlates to the time frame of Defendant's alleged infringement.").

## E. <u>Error No. 5 for Tab "c": Nigel Kershaw Did Not Consider IFS' Company-Wide Revenues</u>

Nigel Kershaw did not look at IFS' total revenues from all salespeople for March to May 2021 or January to March 2022. Kershaw Tran. pp. 87:24-88:15. Thus, Mr. Kershaw did not investigate the possibility that March to May 2021 may have been a particularly good revenue period company-wide compared to January to March 2022. Since, per Mr. Kershaw, a number of lockdowns ended leading into March 2021, there likely was a temporary surge of pent up demand in March and April 2021.

## IV. <u>CONCLUSION</u>

The Court should exclude the challenged expert testimony of Nigel Kershaw.

1 Dated: May 17, 2023

2 /s/ *Scott Lesowitz*
Attorney and Partner
For Lesowitz Gebelin LLP, Counsel for Defendants

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28