1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4 PERRIN BERNARD SUPOWITZ, LLC, ) Case No. LA CV 22-02120-ODW
  LLC,                          )                         (JEM)
5                               )
             Plaintiff,         ) Los Angeles, California
6                               )
  vs.                           ) Wednesday, July 5, 2023
7                               )
  PABLO MORALES, et al.,        ) (1:27 p.m. to 2:22 p.m.)
8                               )
             Defendants.        )
9 _____)

10

11              TRANSCRIPT OF MOTIONS IN LIMINE
         BEFORE THE HONORABLE OTIS D. WRIGHT II
12              UNITED STATES DISTRICT JUDGE

13

14 Appearances:                    See next page.

15 Court Reporter:                 Recorded; CourtSmart

16 Courtroom Deputy:               Sheila English

17 Transcribed by:                 Jordan Keilty
                                   Echo Reporting, Inc.
18                                 9711 Cactus Street, Suite B
                                   Lakeside, California 92040
19                                 (858) 453-7590

20

21

22

23

24

25 Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.

2

```
 1  APPEARANCES:

 2  For the Plaintiff:          DAN FORMAN, ESQ.
                                AMY S. WILLIAMS, ESQ.
 3                              CDF Labor Law, LLP
                                707 Wilshire Boulevard
 4                              Suite 5150
                                Los Angeles, California 90017
 5                              (213) 612-6300

 6  For the Defendants:         SCOTT MICHAEL LESOWITZ, ESQ.
                                STEVEN GEBELIN, ESQ.
 7                              Lesowitz Gebelin, LLP
                                8383 Wilshire Boulevard
 8                              Beverly Hills, California
                                 90211
 9                              (323) 452-9909

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1  Los Angeles, California; Wednesday, July 5, 2023 1:27 p.m.

2                            --o0o--

3                        (Call to Order)

4          THE CLERK:  Calling item two, CV 22-2120, Perrin

5  Bernard Supowitz, LLC versus Pablo Morales, et al.

6          Counsel, may I have your appearances, please,

7  starting with the Plaintiffs?

8          MR. FORMAN (telephonic):  Good morning, your

9  Honor.  This is Dan Forman.  I'm here with my partner, Amy

10 Williams, with CDF Labor Law on behalf of the Plaintiff.

11         THE COURT:  Mr. Forman, Ms. Williams, afternoon.

12         MS. WILLIAMS (telephonic):  Afternoon, your Honor.

13         MR. FORMAN:  Thank you, your Honor.

14         MR. LESOWITZ (telephonic):  Good afternoon, your

15 Honor.  Scott Lesowitz on behalf of the Defendants.

16         THE COURT:  Mr. Lesowitz, good afternoon to you,

17 sir.

18         MR. LESOWITZ:  Thank you.

19         THE COURT:  All right.  All right.  Motions in

20 limine.  I don't know who thought that we could do motions

21 in limine and all the pretrial stuff in the same bay, but

22 all right.  Here's what we're going to do.  I'm going to

23 tell you what my decisions are, rulings are on the -- the

24 motions in limine.  I'll also tell you this, that I have

25 little no doubt that as we get into the trial and as I have

4

1  a better feel for this case, that the motions in limine may

2  change.  The rulings on the motions in limine may change.

3  There may be some things that I just simply see no relevance

4  whatsoever here that later on it will become much clearer to

5  me why something was relevant.  But all I'm saying is is

6  that what I do here this afternoon is not in concrete.

7  Based upon [audio glitch] information, I just may change.

8  We will see.

9          But for now, I'm just simply going to tell you how

10 the Court has come out today on the -- the motions in limine

11 that have been submitted to us.

12         Tell you what, Sheila, let me give you the docket

13 number, okay.

14         All right.  274, Plaintiff's number one, to

15 exclude reference to purported spoliation.

16     [Pause.]

17         THE COURT:  Okay.  Okay.  I'm going to -- I'm

18 going to deny this.  I have no doubt that this is one that

19 we will revisit, but for now, that motion is denied.

20         Plaintiff's number two, Docket Number 275, to bar

21 Defendants from calling Steve Arroyo as an expert witness or

22 otherwise.  I think you anticipated that that is going to be

23 denied.

24         299, Plaintiff's number three, to limit evidence

25 about allocations and shortages.  This -- let me control the

5

1 flow of the case and how much evidence is too much evidence,

2 whether or not we have too many witnesses all testifying

3 about the same thing.  Let me do that.  That isn't really a

4 motion in limine.  I'm going to deny that.

5          Docket 271, Defendants' number one, to exclude the

6 purported March 29, 2022 agreement between Plaintiffs and

7 Savino Morales.  That's granted.

8          Docket, 300, 301, Defendants' number two, to

9 exclude Nigel Kershaw's opinion testimony regarding

10 Plaintiff's lost market share profits.

11          Let me -- tell you what, let me come back to this

12 because it will probably seem to make more sense after we do

13 Defendants' number five.  So, let's -- let's bounce down to

14 Docket 304, Defendants' number five, to exclude Nigel

15 Kershaw's opinion testimony to the extent that the

16 Plaintiffs have failed to produce underlying documents and

17 data relative to the computation of damages.

18          I think I'm inclined to grant this motion.  I tend

19 to be something of a stickler with respect to Rule 26 with

20 respect to the Plaintiff's obligations to disclose to the

21 other parties what the various categories of damages are,

22 let them know what it is that  they're seeking so that

23 appropriate discovery can be done but hasn't necessarily

24 been done in this case.  And, for that, I'm going to exclude

25 Mr. Kershaw's opinions to the extent that they are based

6

1  upon documents that were -- were not produced.

2          303, to exclude Nigel Kershaw's opinion testimony

3  regarding disgorgement or restitution of commissions pay.

4  Evidence of commissions to Trujillo and Mason, we're going

5  to exclude that because Plaintiff cannot disgorge such

6  payments that were made to third parties.

7          We're not going to exclude evidence of ISP's

8  payments to Pablo and Savino.  And the Plaintiff may be able

9  to recover some or all of those payments.

10          302, to exclude Nigel Kershaw's opinion testimony

11  regarding damages from Legacy sales.  I'm going to deny

12  that.

13          Let's see, Tab C, Tab C's before and after

14  calculations are fairly rudimentary, but they are

15  sufficiently reliable.

16          Post-termination sales, Tabs D and F, should not

17  be excluded because this ruling may determine that some

18  post-termination sales are the result of breaches of duty or

19  theft of trade secrets or tortious interference.

20          All right.  Back to 300, 301, to exclude Nigel

21  Kershaw's opinion testimony regarding Plaintiff's lost

22  market share profits.  I think that's been covered in the

23  other motions in limine.  So, this is going to be denied as

24  moot.  All right.

25          MR. FORMAN:  Your Honor, may I address the Court

7

1  on Defendants' motion in limine number five specifically?

2          THE COURT:  Okay.

3          MR. FORMAN:  So, I'm -- I'm speaking against the

4  grant of this motion and just wanted to, you know, clarify

5  that the disclosures were provided when the damage

6  calculations had been -- had been rendered and when the

7  information had been gathered.  And, so, some of that

8  information -- or much of the information wasn't necessarily

9  available during discovery because it --

10          THE COURT:  Are you -- go ahead.  I'm sorry.

11          MR. FORMAN:  It had not been organized or

12  identified as -- as the appropriate materials to support

13  those -- that analysis -- those analyses.  And, you know, to

14  the extent that some of those calculations were certainly

15  disclosed during the declarations that were put forward by

16  Mr. Kershaw and so that the Defendants were on notice of the

17  variety of damages that were being sought here.  However,

18  the accuracy of those could not be calculated until shortly

19  before his deposition, and --

20          THE COURT:  Why is that?

21          MR. FORMAN:  Why?  Because there -- it was a

22  continuing evolving issue, and -- that had not been settled

23  in and --

24          THE COURT:  So, he couldn't calculate or compute

25  any damages over the entire period because it was still

8

1   evolving?

2           MR. FORMAN:  No, I would not want to argue that,

3   your Honor.

4           THE COURT:  No.  You shouldn't argue this at all.

5   This isn't like an expert you brought in from the outside

6   and you hadn't provided the expert with all the data and the

7   documents that they needed to conduct an analysis.  This is

8   your CFO, okay.

9           MR. FORMAN:  Um-hmm.

10          THE COURT:  So, anyway, I'm sorry I interrupted

11  you.  Go ahead.  Complete your statement.

12          MR. FORMAN:  And, so -- so, your Honor, in

13  addition to the issues is -- one of the issues here was that

14  the Defendants did not disclose all of the customers with

15  whom they, as we put it, diverted business.  They provided

16  discovery and identified a list of about 17 customers that

17  they had actually done business with that were IFS's

18  customers.  And, throughout discovery, we sort of had a

19  battle to find out the full list of those with whom they

20  diverted business and also those with whom they attempted to

21  divert business.  And, so, we didn't even have that

22  information until December of 2022, after the close of fact

23  discovery, when much of that information was produced.

24          And, so, again, the extent of the damages couldn't

25  be calculated until he was able to actually look at which

9

1   customers were in play.

2            THE COURT:  Okay.  Thank you.

3            MR. FORMAN:  Thank you, your Honor.

4            MR. LESOWITZ:  Your Honor, may I be heard on

5   actually just a question regarding the rulings?  This is

6   Scott Lesowitz.

7            THE COURT:  It will be about as effective as the

8   last comments were about making me change my mind.  I told

9   you when -- before we got started, you can consider these

10  tentative.  As we get closer to trial, as we start hearing

11  evidence, some of these may change but not today.

12           MR. LESOWITZ:  Your Honor, just to be clear, I'm

13  not -- I understand that.  I'm not going to argue for you to

14  change your -- your ruling.  I just want -- I just had a

15  question for clarification purposes.

16           THE COURT:  Oh, okay.

17           MR. LESOWITZ:  For -- for Defendants' motion in

18  limine number three -- so, I think that was Docket Number --

19  I'm sorry -- for number three -- for in limine -- motion

20  number two -- that is motion in limine number two, regarding

21  Tab F, the one that had like the $4 million or so damages

22  calculation, my understanding is you denied that one as moot

23  because I'm understanding that it's excluded number motion

24  in limine number five.

25           THE COURT:  And three.  Wait a minute.

10

1           MR. LESOWITZ:  Okay.

2           THE COURT:  Hang on a --

3           MR. LESOWITZ:  So, just to be clear --

4           THE COURT:  Number five has been granted.  Yeah,

5   304.  This is information that the Defendants did not

6   disclose, C, F, G, and H, until after discovery was closed.

7   So, to the extent that Defendants now move to exclude Mr.

8   Kershaw's opinions regarding the extent of some of these

9   damages that are based upon documents and data that was not

10  properly and timely disclosed, it's granted.

11          MR. LESOWITZ:  Okay.  The reason I asked that was

12  as to motion in limine number two, you said denied as moot.

13  So, I assume it's moot because --

14          THE COURT:  Five is granted.

15          MR. LESOWITZ:  -- it's being excluded for --

16  what's that?

17          THE COURT:  Because five is granted.

18          MR. LESOWITZ:  Yeah.  So -- so, F is excluded

19  under five.

20          THE COURT:  Right.

21          MR. LESOWITZ:  Thank you.

22      (Pause.)

23          THE COURT:  By the way, the -- the witness list --

24  joint witness list would have been a lot easier to work with

25  had these -- these witnesses been given a number.  And it

11

1  would have also been a lot easier if we hadn't just simply

2  used the cut and paste method to indicate the areas of --

3  that each witness was going to testify regarding.  I

4  understand that that does make certain secretaries' lives a

5  lot easier, but it isn't too helpful for our purposes in

6  trying to determine whether or not there is, in fact, unique

7  testimony.  Matter of fact, that's really all that's

8  necessary in this particular column is just what -- what is

9  the unique testimony that this particular witness is going

10 to offer.

11          What -- what I've got is all the objections and

12 stuff.  This is really difficult to read and work with,

13 really difficult.  I just -- I need just a simple

14 declaration or declaratory statement of this witness is

15 offering unique testimony on this subject.  And if there is

16 a legitimate objection, that can be stated.

17          All right.  Let's see here.  I don't know what to

18 do with some of these things.  It's almost as though I'm

19 going to need to do an evidentiary hearing on each one of

20 these to determine whether or not the objections to these

21 proposed witnesses are meritorious to the extent that they

22 should be excluded.  Lord, that has never been necessary.

23          All right.  Tell you what I'm going to do.  I'm

24 going to leave it up to counsel, number one, to come in with

25 witnesses who are not duplicative and who actually have

12

1  something -- something to say that's probative on the issues

2  of the case.  And you should only bring in one such witness

3  per subject.  You should not bring in witnesses whose

4  testimony is going to be cumulative of other witnesses.  I'm

5  going to leave that up to you.

6          Now, if after we have heard Witness A testify,

7  then you also bring in Witness B and Witness B takes the

8  stand and then it becomes obvious he's going to testify

9  regarding the same things that Witness A just testified to,

10 I'm going to excuse the witness, have them step down and

11 leave and let them be mad at the attorney who brought them

12 in here unnecessarily.  Okay.  So, you do that.  That way I

13 don't have to wade through these objections and make a

14 determination as to whether or not the objections are really

15 valid.  This is almost a nightmare.

16    (Pause.)

17          THE COURT:  With respect to the exhibits, I don't

18 know whether or not these -- some of these objections have

19 merits or not because I don't know what these documents are

20 actually.  And I doubt that I will know until the trial

21 starts and you come in with three or four three-ring

22 notebooks of exhibits.

23          Then I will know, and then we will have to deal

24 with these objections on the fly.  I don't see any other way

25 of dealing with it.

13

1          Okay.  I am guessing that the -- the special

2   verdict forms probably cannot be shortened.  this may be the

3   best you can do.

4          Question, is the jury going to get a heads up

5   before in terms of what the case is about, who's going to be

6   testifying and about what and what the issues are, what's

7   going to have to be proved, et cetera, before they actually

8   start hearing evidence?  So, in other words, is the jury

9   going to be preinstructed before the first witness takes the

10  stand?

11         MR. FORMAN:  For the Plaintiff, we're anticipating

12  that, your Honor.

13         MR. LESOWITZ:  Your Honor, I defer to the Court on

14  that for Defendants.

15         THE COURT:  You do what?  I'm sorry.

16         MR. LESOWITZ:  I defer to the Court, your Honor,

17  and --

18         THE COURT:  Oh.

19         MR. LESOWITZ:  -- what your practice is and what

20  you think is best.

21         THE COURT:  Okay.  All right.  Then we will

22  preinstruct.  It's -- I think we will always preinstruct.

23  Twenty years from now, this will seem really quite

24  ridiculous, not letting them know what they're to be

25  listening for until it's too late.

14

1          So, here's what we're going to need to do, though.

2    If we're going to preinstruct, then we need to -- we need to

3    settle the substantive instructions.

4          Now, the other things having to do with their

5    duties as jurors, yeah, all the stuff that you guys have

6    agreed to in the -- in the joint proposed jury instructions,

7    the boilerplate stuff, I'm going to give a few of those.

8    But the bulk of the instructions should be to let them know

9    about the causes of action and what has to be established.

10   That should be the bulk of the instruction.  So, that's what

11   we really need to -- we need to settle on those.  And I'm a

12   little troubled by some of them.  Just sort of spot checking

13   this, is -- the undivided duty of loyalty, I think we had a

14   couple catches on this subject, and I think you also found

15   some favorable language in some court opinions and threw

16   those in as well.

17          If I haven't mentioned it already, I prefer --

18   strongly prefer that we utilize instructions that have been

19   approved by the Judicial Council, either the State of

20   California or of -- of the United States, not court opinion

21   certainly.  We're not going to do that.  And think long and

22   hard about giving two different instructions on the exact

23   same subject matter that have been derived from different

24   sources.  And, like I said, that -- that  was the one that

25   really jumped out at me, the instructions on the duty of

15

1  loyalty.

2          All right.  Do we have two -- two separate

3  contracts in this case that were instructing on breach of

4  contract, et cetera?

5          MR. FORMAN:  Yes, your Honor.

6          THE COURT:  Is March 29th one of them?

7          MR. FORMAN:  No.

8          THE COURT:  No.

9          MR. FORMAN:  We're not prosecuting that -- sorry.

10         THE COURT:  She did like this, and that was

11 perfect.  Done.  Thank you.

12         Okay.  All right.  We need to make it clear up

13 front if there's two contracts and briefly identify what the

14 contracts are so they could kind of write down contract one

15 and contract two.

16    (Pause.)

17         THE COURT:  When do you think you can have

18 submitted the -- the jury instruction of the substantive

19 issues that we can read to the jury when the trial gets

20 started?

21         MR. FORMAN:  I think we should be able to do that

22 in short order.  I think there's a couple of sort of big

23 picture issues --

24         THE COURT:  Okay.

25         MR. FORMAN:  -- that -- that we should address or

16

1   would like to address with you.

2            THE COURT:  Okay.

3            MR. FORMAN:  One being the issue of whether the

4   jury needs to decide about what a trade secret is and

5   whether IFS had trade secrets.  We felt that that was

6   adequately ruled on on summary judgment.  That way the

7   Court --

8            THE COURT:  What, does anyone think that that's a

9   jury question?

10           MR. FORMAN:  That's one of the disputes that we

11  have with defense counsel about whether we can rely on what

12  the Court limited the trade secrets to or whether we need to

13  go through all of the underlying elements on trade secret

14  instructions.

15           THE COURT:  Okay.  I'm going to decide the trade

16  -- what's trade secrets, okay.  Does that pretty much solve

17  this issue?

18           MR. FORMAN:  Scott?

19           MR. LESOWITZ:  Well, your Honor, I'm confused.  I

20  think what he's saying is that the -- he believes the Court

21  -- so, the Court granted partial summary judgment as to

22  certain categories of trade secrets and threw them out of

23  the case.

24           THE COURT:  Okay.

25           MR. LESOWITZ:  And the only thing that remains now

17

1 is certain customer order information and credit

2 information.  Mr. Forman is under the impression that the

3 Court, in ruling on our summary judgment motion in which

4 there was no cross-motion for summary judgment, that the

5 Court ruled that the trade secrets that are still left are

6 already established to be trade secrets conclusively.  And

7 that's just -- that's just not correct.  They still have to

8 prove and the jury has to decide whether or not they -- they

9 were kept sufficiently confidential, whether they were --

10 had sufficient value, were not generally known, et cetera.

11 I mean, we don't dispute that customer information can at

12 times legally be a trade secret depending on the facts, but

13 the jury still has to decide the facts.  They didn't move

14 for summary judgment.

15         THE COURT:  You're still going to have to put on

16 the information, right, put on the evidence regarding how

17 the -- the secrets -- or how the information was maintained,

18 et cetera, and what steps were taken to assure that those

19 things remained within the custody of the holder of these

20 secrets.

21         I'd like to -- I need -- I need to hear -- I need

22 to hear the testimony and the evidence on this issue, and at

23 the end of the day, I think the decision is going to be mine

24 as to whether or not such and such can be considered in this

25 case a trade secret.

18

1          MR. FORMAN:  Another big picture issue, your

2    Honor, is -- deals with the -- the claim that was pled in

3    the complaint as a tortious inducement to breach the duty of

4    undivided loyalty and for which the elements are the same as

5    aiding and abetting a breach of the duty of undivided

6    loyalty.  And there are CASI instructions on the aiding and

7    abetting.  There are no CASI instructions on the --

8          THE COURT:  Tortious --

9          MR. FORMAN:  -- tortious inducement.  And, so, as

10   indicated in our -- in our brief --

11         THE COURT:  Almost tells you something, doesn't

12   it?

13         MR. FORMAN:  It does.  But the actual allegations,

14   the factual allegations the Defendants were on notice of and

15   needed to defend against are the same.  So, they were on

16   notice of those elements, had the opportunity to defend

17   them, and there being a CASI instruction under aiding and

18   abetting, seems like the instruction that should be given

19   and followed.

20         THE COURT:  Yeah, it goes against -- just seems

21   counterintuitive.  But to me it doesn't even seem like it

22   belongs in CASI.  But, however, there it is.

23         MR. LESOWITZ:  Well, your Honor, just to be clear

24   -- just to be clear, your Honor, for the record, Defendants

25   disagree and object, and we contend that they did not plead

19

1   the facts and elements of the thing that there actually is

2   the CASI for.  And, so, now they're trying to shift and

3   interpret it differently as fitting something that there is

4   a CASI for.

5           And also, just for the record -- I don't mean to

6   engage argument.  But, just for the record, we object to any

7   conclusion that it's not for the jury to decide whether

8   something is a trade secret.

9           THE COURT:  Okay.  We do have -- we do have some

10  time on that because, even if -- let me see.  Because we can

11  actually strike it from the verdict form if we conclude that

12  there is nothing there for the jury to decide.  So, that

13  isn't going to be a big problem.  But it is a problem.

14          MR. FORMAN:  Well, and the tortious conduct, your

15  Honor, is what was pled, a tortious inducement to breach

16  contract.  And -- and we will need to instruct and have

17  verdict -- relevant verdict form decisions on that claim.

18          THE COURT:  Um-hmm.  I agree.  And whether we

19  actually submit it to the jury for decision or not is

20  another question, but in terms of -- in terms of whether or

21  not the facts have been adequately established, I think it

22  might be important to submit that kind of a question to the

23  jury.  But the decision as to whether or not something is or

24  is not a trade secret, I think that's up to the Court.  But

25  we can argue about that later.

20

1          MR. FORMAN:  The fact of the jury instructions on

2  -- on aiding and abetting, your Honor, may I just -- I

3  didn't exactly understand the -- the Court's direction

4  there, if -- if there is one.

5          THE COURT:  There isn't one other than the fact

6  that I'm sort of taking a hint from the California Judicial

7  Council that aiding and abetting is apparently something

8  that's in play.  But tortious interference is not.  I mean,

9  the only time I've seen a situation where there wasn't a

10 jury instruction on some cause of action was because

11 apparently that was not a -- a cause of action that was

12 legally and validly enforceable, and that explained why

13 there was no jury instruction on it.  So --

14         MR. FORMAN:  Well, the -- --

15         THE COURT:  -- to me it's counterintuitive.  It

16 seems it should be the other way around, but --

17         MR. FORMAN:  Well, and the allegations did plead

18 the underlying facts that support the aiding and abetting,

19 what's titled the aiding and abetting claim here.  There

20 could be, you know, torts of all kinds which aren't

21 necessarily definitively within what's in CASI, which

22 doesn't mean that that conduct is -- is not actionable.  You

23 know, with -- with noticed pleading, your Honor, the title

24 that's put onto the complaint is not determinative of an

25 action that ultimately can come to trial.  And there was no

21

1  summary judgment of that count.

2        THE COURT:  Um-hmm.  So, it's still alive?

3        MR. FORMAN:  Yes, your Honor.

4        THE COURT:  Hang on a sec.  I'm trying to see if

5  it's included in the verdict forms.

6        MR. FORMAN:  It's -- it's in the Plaintiff's

7  disputed, your Honor.  Oh, excuse me.

8      (Pause.)

9        THE COURT:  Misappropriation of trade secrets.

10     (Pause.)

11        MR. FORMAN:  I'm looking at Defendants' proposed

12  special verdict form, your Honor, on page four, section two,

13  aiding and abetting breach of duty of undivided loyalty.

14        THE COURT:  Um-hmm.  Another way of saying aiding

15  and abetting, yes.  Okay.

16     (Pause.)

17        THE COURT:  I thought I saw tortious interference

18  in the special verdict form, but I was apparently imagining

19  things.

20        All right.  That's okay because we're going to

21  examine all of these things much more closely next week.  If

22  there's an issue, we will ferret it out and fix it.  All

23  right.  But, for now, CASI on aiding and abetting, right?

24        MR. FORMAN:  Yes, your Honor.

25        THE COURT:  Doesn't mean we're not -- we're going

22

1  to stop looking because we still don't have the tortious

2  interference with the existing contractual relationships.

3  Nothing?

4          MR. FORMAN:  I'm sorry?

5          THE COURT:  No CASI instructions on tortious

6  interference?  We'll continue to look.  You don't have to

7  find it now.  It's just strange.

8          I -- intentional interference with --

9      (Pause.)

10          THE COURT:  Well, unfortunately, this doesn't give

11  the CASI instruction from which it is derived, which would

12  be helpful.  I can understand why we don't want to do that

13  on a special verdict form that we're sending back to the

14  jury.  All right.  I'll worry about this later.  Okay.

15      (Pause.)

16          THE COURT:  All right.  Back to my question, when

17  do you think that we can have available the instructions

18  that are going to be given to the jury right -- I don't know

19  if it's going to be after the opening statements or before,

20  your choice.  But, before we begin taking evidence, when we

21  preinstruct them, when do you think we can have those

22  instructions ready to go?

23          MR. FORMAN:  So, in terms of the elements of each

24  claim, I'm not sure that we will be able to agree on

25  instructions on damages yet by -- by next week.  We would

23

1  likely --

2          THE COURT:  I'm pretty sure you won't be able to.

3          MR. FORMAN:  But I'd hope that we could -- Scott,

4  do you think we can do it by Friday?

5          MR. LESOWITZ:  No.  I think -- I think there's too

6  many substantive disagreements between the parties.  I think

7  we're going to need --

8          THE COURT:  On the elements?

9          MR. LESOWITZ:  The -- well, the elements of the

10 various causes of action, I would -- I think yes.  The

11 verdict form my partner --

12         THE COURT:  Seriously.

13         MR. LESOWITZ:  -- Steven Gebelin, who's on the

14 line, he -- he dealt with that more than I did.  And then

15 the -- like, for instance, on breach of contract, there's a

16 dispute as to whether or not element two in the CASI should

17 be read or not.  In the -- some of the trade secret ones,

18 there's a disagreement as to what should and shouldn't go to

19 the jury, as we discussed already, although I think the

20 Court seems to maybe have dealt with that.  But I'm not sure

21 exactly to what extent that came out to, and I think on duty

22 of loyalty also there are some -- there are some

23 disagreements.  So --

24         THE COURT:  You are not anxious to go, are you?

25         MR. LESOWITZ:  For the -- the trial?

24

1          THE COURT:  Yeah.

2          MR. LESOWITZ:  I'm --

3          THE COURT:  Tell me the truth.  Tell me the truth.

4     You can do that.  Treat this as a confessional.

5          MR. LESOWITZ:  Your Honor, I'm totally prepared,

6     but I got my whole family situation planned out for next

7     week.  I'm happy for the trial to go forward.

8          THE COURT:  But you're not going to try to make

9     that happen, though, are you?

10          MR. LESOWITZ:  Well, your Honor, I'm just trying

11     to be --

12          THE COURT:  Oh, you're saying that we can't come

13     to an agreement on the elements of these causes of action?

14          MR. LESOWITZ:  I think that there will be some

15     substantive disagreements.  I'm not -- I'm not saying that

16     the Court would be unable to rule on them in time for

17     Tuesday.  I think that's -- that's very much possible.

18          THE COURT:  Okay.

19          MR. LESOWITZ:  I'm just not sure if we're going to

20     be able to come to full agreement on everything on Friday.

21     This does not mean we're not going to be ready by Tuesday.

22          THE COURT:  Okay.

23          MR. LESOWITZ:  My understanding is we still have a

24     hearing in front of your Honor on Monday.  Maybe that's

25     incorrect.

25

1          THE COURT:  Monday's -- is Monday the 10th?

2          THE CLERK:  Um-hmm.

3          THE COURT:  Someone had, I don't know, the

4    temerity, the lack of consideration to have died on us, one

5    of our court security officers and one that I was

6    particularly fond of, and his funeral is Monday out in

7    Riverside, and --

8          MR. LESOWITZ:  I'm sorry, your Honor.

9          THE COURT:  And I intend to be there.

10         MR. FORMAN:  Condolences, your Honor.

11         THE COURT:  But I'm coming back, and we can work

12   all night because we're supposed to go to trial Tuesday,

13   right?  All right.  Yeah.  I guess we're going to have to

14   stay up all night.  I'll be back.  You guys can come in

15   around 3:00, and we'll get some work done.

16         MR. LESOWITZ:  Yes, your Honor.

17         THE COURT:  Or call in?  Okay.  We can do that.

18   Ms. English is trying to, you know, treat you like delicate

19   little things.  She says call in.  So, maybe we'll do what

20   we're doing now.  That's fine with me.

21       (Pause to confer with clerk.)

22         THE COURT:  Okay.  Yeah, with respect to whether

23   or not there will be a reporter, what we'll do, we'll get

24   the work done, and whoever is aggrieved can state that on

25   the record Tuesday morning while we're waiting on the jurors

26

1   to come up, et cetera.  So, we don't need to have a reporter
2   go over our ins and outs and ups and downs and disagreements
3   and name calling and all that sort of thing, but everyone
4   who objects to the ultimate decision will have an
5   opportunity to put that on the record.  Okay.  Okay.
6          3:00 o'clock?  3:30, 4:00?  It's a long drive.
7       (Pause to confer with clerk.)
8          THE COURT:  All right.  Ms. English says she will
9   send an email to -- to all of the attorneys to let them know
10  when to sign on.  That's fine.
11      (Pause to confer with clerk.)
12         THE COURT:  About 3:00 or 4:00.  Okay.  All right.
13         Yes, sir?
14      (Pause to confer with clerk.)
15         THE COURT:  Okay.  It has been suggested that if
16  you put together and file with us by the end of day Friday
17  what you have and what you have agreed on with respect to
18  the instructions, at least we wouldn't be starting from
19  zero.  We would have something to work with.  And the things
20  that we could not reach agreement on, like elements of a
21  particular cause of action, we will unanimously agree to
22  simply dismiss that cause of action.  See, finished, done.
23  All right.  Okay.
24         MR. FORMAN:  You made Mr. Lesowitz very happy,
25  your Honor.

*Echo Reporting, Inc.*

27

1       MR. LESOWITZ:  You made me laugh.  You made me
2  chuckle.  That's funny.
3       THE COURT:  Right.  Is there anything else that we
4  need to -- to do before Friday?  No.  All right. Well, my
5  children, go in peace.  Say no more.
6       MR. LESOWITZ:  Your Honor --
7       THE COURT:  I'm done.
8       MR. LESOWITZ:  Your Honor, one just logistical
9  question.  In terms of Defendants and witnesses, if the
10  Plaintiff calls a witness that the Defendants also would
11  call, do you prefer that we recall the witness to do our
12  direct examination if we're going to do one or do you just
13  prefer we get it done with on -- on -- you know, get the
14  witnesses done all at once --
15       THE COURT:  Isn't that --
16       MR. LESOWITZ:  -- than to recall?
17       THE COURT:  I think that's the -- isn't that the
18  preferable thing to do as opposed to inconvenience the
19  witness by recalling them on an other day?
20       MR. FORMAN:  Well --
21       THE COURT:  Let's --
22       MR. FORMAN:  Your Honor, if I may, I think there's
23  only one witness that that applies to, and that's Defendant
24  Pablo Morales.
25       THE COURT:  Okay.

28

1        MR. FORMAN:  I don't think there's any other

2   witness that is identified by the Defendants.  I could be

3   wrong.  Correct me if I'm wrong, Scott, but --

4        THE COURT:  Wait, wait, wait.  Time out.

5        MR. FORMAN:  -- maybe Mr. Shapiro.

6        THE COURT:  Does the identity matter?

7        MR. FORMAN:  Well, sure, because if it's the

8   Defendant, I mean, your Honor, putting on the Defense case

9   during Plaintiff's case will really change the flow of our

10  presentation to the jury.

11       THE COURT:  It shouldn't change your flow, but

12  here's the deal.  I really don't like making a witness come

13  back twice.  Now, if they're going to hang out anyway, it

14  doesn't matter, but to -- for the Plaintiff to call a

15  witness -- and let's say it's a Defense -- let's say it's a

16  Defendant, all right.  So, we know that that witness is

17  going to be involved in the -- the second half of the trial.

18  There's nothing wrong with it, but you can certainly

19  understand that that witness is not going to want to be

20  called back again to testify regarding the same things.

21       Now, granted, how much overlap should there be

22  when the Plaintiff is going to use you and there will

23  probably be an examination by the defense counsel while this

24  witness has been called in your case in chief.  It is not

25  unheard of that the defense counsel will use that

29

1  opportunity to get all of the testimony he needs from that

2  witness while the witness is on the stand.  The jury is

3  perfectly capable of compartmentalizing that information.  I

4  don't think there's going to be any confusion.  The witness

5  is going to be talking about his experiences, and it doesn't

6  really matter who brings that up.  It's not going to change.

7  And if it can all be done at one time, it may be -- may be

8  easier to comprehend because it will be organized to some

9  extent.  So, let's give it a shot.  But I don't want to

10 inconvenience a witness.  You can certainly --

11         Mr. Lesowitz, you can do what ever you wish to do

12 when the Plaintiff puts him on during the Plaintiff's case

13 in chief.  If you want to then take him on direct as a

14 Defense witness, you can do that.  But it's you -- it's your

15 -- yeah, it's your client.  So, how do you want to treat

16 your client?  You want to bring him back, fine.

17         MR. LESOWITZ:  Okay.  But it sounds like for third

18 -- for third party witnesses, I think there may be some --

19 at least one or two.  You'd prefer that we -- we do it all

20 at once so he's not recalled?

21         THE COURT:  I prefer that we treat these people

22 with some kind of respect, you know.

23         MR. LESOWITZ:  Oh, sure.  Your Honor, that's fine.

24 I just wanted to know if you had a -- a preference one way

25 or the other, and it sounds --

30

1        THE COURT:  Yes.

2        MR. LESOWITZ:  -- like you do.  So, I appreciate

3   it.

4        THE COURT:  Yes.  Let's -- let's not trample on

5   people.  This isn't their case.  They don't -- they don't

6   have anything at stake here.  So, you know, let's take it

7   easy on them.  That's all I care about.

8        MR. LESOWITZ:  Thank you, your Honor.

9        THE COURT:  Okay.  Would anyone like to leave now?

10  No one wants to leave.  Okay.  You stay here.  Okay.  Yeah,

11  Ms. English needs to talk to you all.  You guys are in

12  trouble.

13       MR. FORMAN:  Thank you, your Honor.

14       THE CLERK:  The court is adjourned.

15     (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

31

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Jordan Keilty                          7/8/2023
     Transcriber                               Date
6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
     /s/L.L. Francisco
9    L.L. Francisco, President
     Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25