**LESOWITZ GEBELIN LLP**
Scott M. Lesowitz (SBN 261759)
        scott@lawbylg.com
Steven T. Gebelin (SBN 261507)
        steven@lawbylg.com
8383 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90211
Telephone: (310) 341-3072
Facsimile:  (310) 341-3070

*Attorneys for Defendants* Pablo Morales,
Savino Morales, Sergio Escamilla, and
Legacy Wholesale Group, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, dba INDIVIDUAL FOODSERVICE,<br><br>Plaintiff,<br><br>V.<br><br>PABLO MORALES, LEGACY WHOLESALE GROUP, LLC, SAVINO MORALES, SERGIO ESCAMILLA, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:22-cv-02120 MEMF (JEMx)<br>[Assigned to the *Honorable Maame Ewusi-Mensah Frimpong*]<br><br>**DEFENDANTS' MOTION IN FOR MONETARY SANCTIONS IN THE AMOUNT OF $149,787 AGAINST PLAINTIFF AND DAN FORMAN FOR CAUSING THE MISTRIAL**<br><br>Hearing Date: December 28, 2023<br>Hearing Time: 10:00 a.m.<br>Hearing Courtroom: 8B |

## MOTION AND NOTICE OF MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on December 28, 2023, at 10:00 a.m., or as soon thereafter as may be heard by the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA. 90012 - Courtroom 8B, 8th Floor, Defendants Pablo Morales, Legacy Wholesale Group, LLC, Savino Morales, and Sergio Escamilla will and hereby do move for the Court to order Plaintiff Perrin Bernard Supowitz, LLC, dba Individual FoodService ("IFS") and Dan Forman to pay Defendants at least $149,787 (one hundred forty nine thousand seven hundred eighty seven U.S. dollars) in sanctions, with the sanction award joint and several against IFS and Dan Forman.

As for IFS, this motion is brought under the Court's inherent authority to sanction IFS and any other applicable authority. As for Dan Forman, who was one of IFS's trial attorneys, this motion is brought under 28 U.S. Code § 1927, the Court's inherent authority to sanction Dan Forman, and any other applicable authority. IFS and Mr. Forman, by causing the mistrial in the first trial in this case through their bad faith, frivolous, vexatious, knowing, reckless, and unreasonable conduct caused the proceedings to be multiplied in this case, necessitating a second trial, and costing Defendants wasted attorney's fees and other compensable costs that they are entitled to as sanctions herein.

This motion is made without prejudice to Defendants requesting additional sanctions if additional fees or costs arise not anticipated by this motion, such as if discovery were to be re-opened or additional motions filed before the second trial. Defendants will request additional sanctions if such additional fees or costs arise. Additionally, if the Court chooses to wait to set the amount of sanctions until after the second trial occurs (presumably to know exactly how many hours of work are spent related to having to retry the case), Defendants reserve all rights to request

1 | higher sanctions than requested herein, as the numbers herein are conservative and
2 | actual attorney-time will likely be higher for preparing for a retrial.

3 |      This motion is made following the conference of counsel pursuant to L.R. 7-3
4 | which took place on August 8, 2023.

5 |      This motion is based upon this Notice of Motion and Motion, the
6 | accompanying Memorandum of Points and Authorities, the declarations of Scott
7 | Lesowitz, Steven Gebelin, and Sergio Escamilla, all pleadings and papers on file in
8 | this action, upon all matters upon which the Court may take judicial notice, and any
9 | evidence and argument provided on reply and at the hearing.

10 |

11 | Dated: October 4, 2023      /s/ *Scott Lesowitz*
12 |                Attorney and Partner
               For Lesowitz Gebelin LLP, Counsel for Defendants

**Table of Contents**

I.      INTRODUCTION ..................................................................................................6

II.     BACKGROUND FACTS.......................................................................................7

        A.    Background Allegations..............................................................................7

        B.    The Court Grants Partial Summary Judgment and Denies IFS's
              Motion for a Preliminary Injunction..........................................................8

        C.    Exhibit 1216 and Settlement Discussions between the Parties ........................8

        D.    Defendants' Motions in Limine and the Court's Exclusion of
              Most of IFS's Damages Calculations .........................................................9

        E.    The Mistrial… .........................................................................................11

III.    LEGAL BACKGROUND FOR A MOTION FOR SANCTIONS.......................13

IV.     ARGUMENT........................................................................................................14

        A.    Judge Wright's Findings are Entitled to Substantial Deference ................14

        B.    IFS and Dan Forman Violated Rule 408 ........................................................15

              1.              Judge Wright's Rule 408 Ruling Was Correct.....................15

              2.       The Question Was Also Irrelevant and Unduly
        Prejudicial          19

        C.                  IFS and Dan Forman Acted with Sufficient
        Culpability          20

        D.              The Court Should Award Defendants $149,787
        in Sanctions         24

              1.              The Appropriate Scope of Sanctions....................................24

              2.              The Appropriate Sanctions Here............................................27

V.      CONCLUSION ....................................................................................................30

1

**Table of Authorities**

2

<u>**Cases**</u>

3

*Affiliated Mfrs., Inc. v. Aluminum Co. of America*, 56 F.3d 521 (3rd Cir.

4

1995) ............................................................................................................ 18

5

*American Home Assurance Co. v. Benowitz*, 234 Cal.App.3d 192, 203 (1991) .............. 21

6

*BDG Gotham Residential, LLC v. Western Waterproofing Company, Inc.*,

7

631 F.Supp.3d 76 (S.D.N.Y. 2022) ...................................................... 17

8

*Best v. Shell Oil Company*, 107 F.3d 544, 546 (7th Cir. 1997) ........................................ 14

9

*Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626 (9th Cir. 2017) .................. 25

10

*Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637 (11th Cir. 1990) ............................... 18

11

*Castner v. First National Bank of Anchorage*, 278 F.2d 376 (9th Cir. 1960) .................. 15

12

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) .................................... 29

13

*Clemco Industries v. Commercial Union Ins. Co.*, 665 F.Supp. 816 (N.D.

14

Cal. 1987) ................................................................................................... 17

15

*Dietrich v. John Ascuaga's Nugget*, 3:04–CV–0468–BES (VPC), 2007 WL

16

2264544, *8 (D. Nev. Aug. 6, 2007) .......................................................... 24

17

*Eagan v. Laplace Towing Co., Inc.*, Civ. A. No. 91–4623, 1993 WL 302681

18

(E.D. La. Aug. 4, 1993) ...................................................................... 17, 22

19

*Ferguson v. Valero Energy Corp.*, 454 Fed.Appx. 109 (3d Cir. 2011) ....................... 6, 28

20

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) .............................................................. 13

21

*Garcia v. Phillips Feed Service, Inc.*, 2:21-cv-01548, 2022 WL 252668, * 4

22

(E.D. Cal. Jan. 27, 2022) ....................................................................... 24

23

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976

(6th Cir.2003) ............................................................................................ 18

24

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ................................. 14, 24

25

*Hall v. Forest River, Inc.*, Cause No. 3:04-CV-259-RM, 2008 WL 1774216

26

(N.D. Ind. April 15, 2008) ......................................................................... 26

27

*Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197 (10th Cir. 20008) ............................... 29

28

*In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985) ................................................................... 20

*Johns v. Brennan*, 761 Fed.Appx. 742 (9th Cir. 2019) ........................................ 19

*Kaass Law v. Wells Fargo Bank, N.A*, 799 F.3d 1290 (9th Cir. 2015) ........................... 14

*Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216 (9th
Cir. 2010) ........................................................................................ 13, 21

*Lasar v. Ford Motor Co.*, 239 F.Supp.2d 1022 (D. Mon. 2003) ..................................... 25

*Lasar v. Ford Motor Co.*, 399 F.3d 1101 (9th Cir. 2005) .......................................... 6, 13

*Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006) .......................................... 13

*Lyondell Chemical Co. v. Occidental Chemical Corp.*, 608 F.3d 284 (5th Cir.
2010) ........................................................................................ 18

*Mirch v. Frank*, 266 Fed.Appx. 586 (9th Cir. 2008) ........................................ 29

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112 (9th
Cir. 2000) ........................................................................................ 20

*Perez v. Viens*, 2011 WL 2443673, * 6 (D. Neb. June 14, 2011) ................................... 17

*Pyramid Controls Inc. v. Siemens Indus. Automation, Inc.*, 172 F.3d 516 (7th
Cir. 1999) ........................................................................................ 21

*Sample v. City of Sheridan*, 2012 WL 1156050 (D. Col. April 6, 2012) ........................... 14

*Shreve v. Cheesman*, 69 F. 785 (8th Cir., 1895) ........................................ 15

*Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044 (9th Cir. 1987) ....................... 21

*Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791 (6th Cir. 2007) ................ 16, 19

*U.S. v. Contra Costa County Water Dist.*, 678 F.2d 90 (9th Cir. 1982) ........................... 19

*Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018) ........................................ 25

**Rules**

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ................................................. 7

Federal Rule of Evidence 408 ........................................................................ 7

**Treatises**

23 Fed. Prac. & Proc. Evid. § 5306 (2d ed.) (Wright & Miller) ...................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is a simple motion for sanctions. Plaintiff Perrin Bernard Supowitz, LLC, dba Individual FoodService ("IFS"), and its attorney Dan Forman, caused a mistrial when Mr. Forman asked a highly inappropriate question in front of the jury and then, unprompted, defended the question in front of the jury after the Court had already sustained an objection. The Court found that Mr. Forman knew that his question was improper, and that Mr. Forman knew that his question would likely cause a mistrial. Therefore, this is a clear case where IFS and Mr. Forman must pay Defendants' costs and attorney's fees that were wasted by the mistrial. *E.g. Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005) (affirming $66,893.65 sanctions award for causing a mistrial; award included attorney's fees incurred starting from two weeks prior to the trial); *Ferguson v. Valero Energy Corp.*, 454 Fed.Appx. 109, 113 (3d Cir. 2011) (affirming $100,436.25 sanctions award for causing a mistrial; award included attorney's fees incurred preparing for trial).

On the second day off trial, Mr. Forman, out of nowhere, asked Defendant Sergio Escamilla, "Was there a time, Mr. Escamillo, when you approached Mr. Sweder [IFS's CEO] about resolution of this litigation?" After the Court sustained an objection for "Settlement communication," Mr. Forman, unprompted, said "It's between the parties, Your Honor." Defendants then moved for a mistrial, which the Court granted.

Mr. Forman provided only two justifications for why he purportedly thought that his question was proper: that the communications were between the parties themselves and that the text message that the question referenced did not indicate that it was privileged. Of course, Rule 408 can (and often does) protect settlement communications between the parties themselves, as well as communications not specifically marked as confidential or privileged. The Court expressed disbelief that Mr. Forman—an attorney with over 30 years of experience—would think otherwise.

Making matters worse, in asking the question about Mr. Escamilla contacting Mr. Sweder, Mr. Forman was referencing unadmitted Exhibit 1216, a text message exchange between Mr. Escamilla and Mr. Sweder in which Mr. Escamilla requested a conversation about settling the case. Defendants had objected pretrial to Exhibit 1216 under Federal Rule of Evidence 408. The Court had not ruled on the objection. Yet, Mr. Forman did not raise Exhibit 1216 or its admissibility with the Court outside the presence of the jury before asking about the settlement communication.

The mistrial was not the first time the Court was forced to take action because of improper conduct of IFS. The Court previously excluded most of IFS's damages computations for violating Federal Rule of Civil Procedure 26(a)(1)(A)(iii) by failing to produce the documents upon which IFS's damages computations were based. In addition to excluding most of IFS's damages computations, the Court had excluded significant portions of IFS's claims on summary judgment.

The Court can only reverse Judge Wright's various findings (for example, that IFS violated Rule 408, that Mr. Forman knowingly asked an improper question, and that the jury was irreversibly tainted) if Judge Wright's findings were clearly erroneous. As explained herein, Judge Wright's findings were not clearly erroneous; they were correct.

## II. BACKGROUND FACTS

### A.    Background Allegations

IFS is in the business of purchasing and reselling a large variety of items to food businesses, such as plastic and styrofoam products, bulk food, silverware, kitchen equipment, tinfoil, janitorial products, etc. FAC (ECF no. 99) ¶ 2. Defendants Savino Morales ("Savino") and Pablo Morales ("Pablo") were longtime salespeople for IFS. FAC ¶¶ 16 & 17.

In March 2021, Savino and Pablo, and their attorney-friend Defendant Sergio Escamilla, formed Legacy, a similar business as IFS. FAC ¶¶ 30-32. On March 31, 2022, IFS fired Savino and Pablo and filed this lawsuit. The core allegations are that

Defendants (1) wrongfully diverted business to Legacy, (2) had IFS sell items to Legacy at too low of a margin, and (3) used IFS trade secrets. See FAC ¶¶ 30-42.

## B.   The Court Grants Partial Summary Judgment and Denies IFS's Motion for a Preliminary Injunction

On January 31, 2023, the Court granted in part Defendants' motion for partial summary judgment. ECF no. 247. The Court dismissed with prejudice significant portions of Defendants' case, namely (a) IFS's cause of action for conversion, (b) IFS's cause of action for violations of the UCL, (c) IFS's prayer for injunctive relief, and (d) IFS's cause of action for trade secret misappropriation except as to customer order history. ECF no. 247, pp. 34-35.

The Court also denied IFS's motion for preliminary injunction. ECF no. 247, pp. 35-36. IFS is currently appealing the denial of the motion for preliminary injunction and the granting of partial summary judgment to the extent it implicated the denial of the motion for a preliminary injunction.

## C.   Exhibit 1216 and Settlement Discussions between the Parties

Defendant Sergio Escamilla is a licensed attorney in California and Arizona. Escamilla Decl. ¶ 1.

On March 2, 2023, Mr. Escamilla sent a text message to the CEO of IFS, Ken Sweder, that stated, in part, "I was hoping to have a meaningful settlement discussion directly with you, CEO to CEO, if you are not opposed to it. Can we set a time to talk soon?" Escamilla Decl. ¶ 2.

The next day, Mr. Escamilla and Mr. Sweder engaged in settlement discussions over the telephone. Escamilla Decl. ¶ 3. Mr. Escamilla informed Mr. Sweder of an amount Defendants would be willing to pay to IFS in a settlement. Id.

IFS listed this text message in which Mr. Escamilla said that he was "hoping to have a meaningful settlement discussion" as Exhibit 1216 on the trial exhibit list filed with the Court. Lesowitz Decl. ¶ 2 & Exh. 1 (copy of Exh. 1216). On the exhibit list, Defendants lodged an objection to Exhibit 1216 "under FRE 408." ECF

no. 318, p. 55. However, at the final status conference, the Court decided it was impractical to rule on the objections to the exhibits prior to trial and that objections would be addressed to exhibits as they arose. Lesowitz Decl. ¶ 3.

### D. Defendants' Motions in Limine and the Court's Exclusion of Most of IFS's Damages Calculations

This case was originally assigned to the Honorable Otis D. Wright ("Judge Wright"). Per Judge Wright's Scheduling and Case Management Order, the parties were limited to filing five motions in limine of no longer than eight pages each. ECF no. 80, pp. 10-11.

Prior to trial, Defendants filed five motions in limine.[1]

The Court granted Defendants' Motion in Limine #1, which requested that the Court exclude a purported March 29, 2022, agreement between IFS and Savino Morales that he signed under pressure that claimed to settle the dispute between them (Exhibit 111). ECF no. 271. The text of Exhibit 111 contained purported factual admissions regarding the underlying facts in dispute. ECF no. 271-3. Defendants moved to exclude the document since it specifically stated on it, "The negotiations and terms of this Agreement are to remain confidential as mediation privileged under Evidence Code section 1119, except as may be necessary to enforce the Agreement." ECF no. 271, p. 3.

Defendants' other four motions in limine sought to prevent IFS from offering certain damages opinions from IFS's one noticed expert, Nigel Kershaw. ECF nos. 299, 302-304. Mr. Kershaw had opined in his report that IFS suffered nine enumerated categories of damages, with these nine categories totaling $7,485,433.

---

[1] Defendants initially filed their motions in limine on April 10, 2023. ECF nos. 271, 278-81. However, the Court struck the original Motions in Limine #2 - #5 for being compound and ordered that they be modified and refiled. ECF no. 298. On May 17, 2023, Defendants filed revised versions of Motions in Limine #2 - #5. ECF nos. 299, 301, 302-04.

1    The Court excluded large portions of Nigel Kershaw's proffered damages

2  opinions (categories c, f, g, and h in his report) on the grounds that IFS had failed to

3  produce the documents or other evidentiary material that IFS's damages

4  computation were based, in violation of Federal Rule of Civil Procedure

5  26(a)(1)(A)(iii). ECF nos. 304 & 334. The Court also excluded evidence of the

6  salaries and commissions paid to two IFS employees who performed services for

7  Legacy, Hugo Mesa and Jesus Trujillo, on substantive grounds (thus excluding

8  category i of the Kershaw Report). ECF no. 334.

9    In total, the Court excluded $4,910,416 in Mr. Kershaw's damages

10  calculations, roughly 2/3 of his total calculations. While there was presumably some

11  redundancy in the excluded damages categories, merely by the Court excluding the

12  $4,007,021 in category f ("IFS' damages – Lost market share profits"), the Court

13  excluded over half of Mr. Kershaw's damages calculations.

14    Defendants did not move in limine to exclude Exhibit 1216 (the text message

15  from Sergio Escamilla to Ken Sweder requesting to have a "meaningful settlement

16  discussion"). This was for various reasons, including (a) Exhibit 1216 is only one

17  page and obviously inadmissible on its face, meaning briefing was unnecessary to

18  aid the Court, and (b) Defendants, being limited to five motions in limine of eight

19  pages each, devoted their motions in limine to topics that required more lengthy

20  background discussion, briefing, and argument. Lesowitz Decl. ¶ 4.

21    For example, Exhibit 111 was also a document protected by a settlement-

22  related evidentiary exclusion. Defendants chose to move in limine to exclude

23  Exhibit 111, for among other reasons, because it was a five-page signed

24  "agreement," (not merely a one-page text message exchange); it was important to

25  inform the Court about the background facts surrounding Exhibit 111 which were

26  not apparent from the face of the document, and it was important to submit briefing

27  and legal argument to aid the Court. Lesowitz Decl. ¶ 4. The other four motions in

28  limine pertained to excluding IFS's proffered expert testimony on substantive and

procedural grounds, something that was especially important to do through pre-trial briefing and motions in limine. Id. As it was, Defendants struggled to limit their attacks on the proffered expert testimony to a total of four motions and 32 pages. Id.

### E.   The Mistrial

The jury trial in this matter commenced on July 11, 2023. ECF no. 339. Jury selection was completed in the morning. After lunch, the parties gave their opening statements, and then IFS called their first witness, Defendant Pablo Morales. ECF no. 339; Lesowitz Decl. ¶ 5.

On the second day of trial, IFS first finished examining Pablo Morales. Defendants then conducted their direct examination of Pablo Morales. ECF no. 340; Lesowitz Decl. ¶ 6.

IFS then called its second witness, Defendant Sergio Escamilla. ECF no. 340; Lesowitz Decl. ¶ 6. It was during IFS's examination of Sergio Escamilla that the mistrial occurred. Id.

Prior to the mistrial, IFS, through its attorney Dan Forman, was questioning Sergio Escamilla regarding a chart of Legacy's revenues and profits. ECF no. 345 (reporter's transcript for afternoon session of second day of trial); Lesowitz Decl. ¶ 7 & Exh. 2 ("Trial Tran."), pp. 73:11-78:5. Then IFS was having technical difficulty related to that line of questioning. Mr. Forman shifted to Exhibit 1216. Exhibit 1216 was the unadmitted text message where Mr. Escamilla texted IFS CEO Ken Sweder and said, "I was hoping to have a meaningful settlement discussion directly with you, CEO to CEO…" Trial Tran. p. 78:6-15.

Before IFS even asked the Court to admit Exhibit 1216 (there were no lodged objections for authenticity, only the one objection under FRE 408) or for permission to publish Exhibit 1216, IFS got right to the heart of the matter in its first question. IFS asked Mr. Escamilla, "Was there a time, Mr. Escamillo, when you approached Mr. Sweder about resolution of this litigation?" Trial Transcript Excerpt p. 78:12-

17. Defendants objected: "Objection, Your Honor. Settlement communication." Trial Tran. p. 78:16-17. The Court sustained the objection. Trial Tran. p. 78:20.

After the Court sustained the objection, Mr. Forman attempted to argue that the objection should not have been granted, stating, "It's between the parties, Your Honor." The Court responded indignantly, "Your Honor." Trial Tran. p. 78:21-23.

Defendants then moved for a mistrial. Trial Tran. pp. 78:25-79:1. After a break, the Court granted the motion for mistrial.

The Court stated, "I didn't see anything that warranted…an outburst about settlement discussion." Trial Tran. p. 80:13-18. The Court said to Dan Forman (the IFS attorney who had examined Sergio Escamilla), "I thought you were looking through your notes, et cetera, and then as an aside or as a filler then you want to bring up settlement discussions that had been had. And it wasn't connected with the document. It also seemed to have been disconnected with your earlier line of questioning. I don't know where that came from." Trial Tran. p. 81:17-22.

The Court found that Mr. Forman's question was highly inappropriate, was made in bad faith, and rejected Mr. Forman's contentions to the other contrary.

> THE COURT: I have no idea what was to be accomplished there. But that happens often during the course of this trial. I'm going, where is this going? How is this relevant to any of the issues in this case?....And then all of a sudden we got serious and we pulled out lethal weapons. But we can't do that. We can't do that. There's things we cannot talk about. And I know you know that. So you were looking for an offramp too.
> MR. FORMAN: No, sir, Your Honor.
> THE COURT: If you did not have so much gray hair, I might believe that. But I think you knew what you were doing. You know, if you were a kid, I might believe that that was just an inadvertent screwup. But you've been around a minute.

Trial Tran. p. 81:8-25.

1    Mr. Forman argued that the jury could "be cured," but the Court responded,

2  "Oh, no." Trial Tran. p. 81:1-3. Earlier, the Court had found, "This jury has been

3  fairly well and truly tainted." Trial Tran. p. 79:14-16.

4    The Court reserved the question of whether to grant the mistrial with or

5  without prejudice until issuing an order later in the day granting the mistrial without

6  prejudice. ECF no. 340. Judge Wright also recused himself. Id.

7  **III.  <u>LEGAL BACKGROUND FOR A MOTION FOR SANCTIONS</u>**

8    An attorney "who so multiplies the proceedings in any case unreasonably and

9  vexatiously may be required by the court to satisfy personally the excess costs,

10  expenses, and attorneys' fees reasonably incurred because of such conduct." 28

11  U.S.C. § 1927.

12    "Recklessness suffices for § 1927 sanctions..." *Lahiri v. Universal Music and*

13  *Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

14    A court may sanction a party, attorney, or law firm under the court's inherent

15  authority if there is "bad faith." In turn, "bad faith" may be found if the party,

16  attorney, or law firm "acted recklessly if there is something more," such as an

17  improper purpose, recklessly raising a frivolous argument, or arguing a meritorious

18  claim for the purpose of harassing an opponent. *Fink v. Gomez*, 239 F.3d 989, 993

19  (9th Cir. 2001). As for proving the "bad faith" component of inherent authority

20  sanctions, the Ninth Circuit has not decided whether a preponderance or clear and

21  convincing evidence standard applies. *Lahiri*, 606 F.3d at 1219.

22    Sanctions may be levied under both Section 1927 and a court's inherent

23  authority even in the absence of the violation of a court order. *See also Lahiri*, 606

24  F.3d at 1220-22 (sanctioning attorney under Section 1927 and the court's inherent

25  authority for litigating a frivolous claim where no court order was violated); *Leon v.*

26  *IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming $65,000 sanctions

27  award against the plaintiff, Mauricio Leon, under the court's inherent authority for

28  spoilation of evidence where "the district court relied on its 'inherent authority' in

1  sanctioning Leon because Leon's conduct was not in violation of any discovery

2  order governed by Rule 37."); *Sample v. City of Sheridan*, 2012 WL 1156050 (D.

3  Col. April 6, 2012) (awarding monetary sanctions against a party for violating FRE

4  408 by including "a document which discussed confidential negotiations" in a

5  motion for summary judgment).

6         A court may award sanctions for "the fees the innocent party incurred solely

7  because of the misconduct—or put another way, to the fees that party would not

8  have incurred but for the bad faith. A district court has broad discretion to calculate

9  fee awards under that standard." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S.

10  101, 103 (2017).

11        While there is a circuit split, in the Ninth Circuit, Section 1927 sanctions are

12  levied directly against the attorney who unreasonably multiplied the proceedings,

13  not the firm. *Kaass Law v. Wells Fargo Bank, N.A*, 799 F.3d 1290 (9th Cir. 2015).

14  **IV.    ARGUMENT**

15        **A.    Judge Wright's Findings are Entitled to Substantial Deference**

16        Judge Wright found that (a) Dan Forman (IFS's questioning attorney)

17  and IFS violated Federal Rule of Evidence 408 when Mr. Forman asked

18  Defendant Sergio Escamilla, "Was there a time, Mr. Escamillo, when you

19  approached [IFS CEO] Mr. Sweder about resolution of this litigation?", (b)

20  that Dan Forman knew that it was improper to ask this question, (c) that Dan

21  Forman wanted "an offramp" from the trial, and (d) that the prejudice from

22  the question warranted a mistrial. Trial Tran. p. 80:13-81:25.

23        Judge Wright's findings are entitled to substantial deference and can only be

24  overturned if there are compelling reasons to do so. *Best v. Shell Oil Company*, 107

25  F.3d 544, 546 (7th Cir. 1997) ("[T]he law of the case doctrine in these

26  circumstances reflects the rightful expectation of litigants that a change of judges

27  mid-way through a case will not mean going back to square one. Although the

28  second judge may alter previous rulings if he is convinced they are incorrect, he is

1  not free to do so merely because he has a different view of the law or facts from the

2  first judge. Instead, the presumption is that earlier rulings will stand, even though it

3  can be overcome for compelling reasons (such as new controlling law or clear

4  error).") (internal citations and quotation markings omitted); *Castner v. First*

5  *National Bank of Anchorage*, 278 F.2d 376, 379-80 (9th Cir. 1960) ("[T]he various

6  judges who sit in the same court should not attempt to overrule the decisions of each

7  other, especially upon questions involving rules of property or of

8  practice….[E]xercise of the power becomes a matter of discretion limited by the

9  framework of the rule from which it emanates. Where 'cogent reasons' appear, as in

10  *Shreve v. Cheesman*, supra, or 'exceptional circumstances' exist, as in *T.C.F. Film*

11  *Corp. v. Gourley*, supra, one judge may set aside or reverse a prior order made by a

12  colleague."); *Shreve v. Cheesman*, 69 F. 785, 790-91 (8th Cir., 1895) ("It is a

13  principle of general jurisprudence that courts of concurrent or co-ordinate

14  jurisdiction will follow the deliberate decisions of each other, in order to prevent

15  unseemly conflicts, and to preserve uniformity of decision and harmony of

16  action….Nor has it been thought less vital to a wise administration of justice in the

17  federal courts that the various judges who sit in the same court should not attempt to

18  overrule the decisions of each other, especially upon questions involving rules of

19  property or of practice, except for the most cogent reasons.")

20       **B.    IFS and Dan Forman Violated Rule 408**

21            1.    Judge Wright's Rule 408 Ruling Was Correct

22                 (a)    Rule 408 Protects the Fact that Settlement Discussions

23                         Occurred or Were Entertained

24       Judge Wright found that IFS and Dan Forman violated Federal Rule of

25  Evidence 408[2] when Mr. Forman asked Defendant Sergio Escamilla, "Was there a

26

27  _____

   [2] Federal Rule of Evidence 408 states, in pertinent part, **"**(a) Prohibited Uses.

28  Evidence of the following is not admissible--on behalf of any party--either to prove
   or disprove the validity or amount of a disputed claim or to impeach by a prior

time, Mr. Escamillo, when you approached Mr. Sweder about resolution of this litigation?" Trial Tran. pp. 78:16-17, 82:8-83:2. Judge Wright's ruling that this question violated Rule 408 was correct. At the very least, Judge Wright's finding was not clearly wrong.

Rule 408 protects the fact negotiations occurred or were entertained. The Advisory Committee Notes to the 2006 Amendment of Federal Rule of Evidence 408 state, in part, "If a party were to reveal its own statement or offer, this could itself reveal the fact that the adversary entered into settlement negotiations. The protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury."

Case law and secondary sources also indicate that Rule 408 protects the fact that settlement negotiations occurred or were entertained. *E.g., Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 798 (6th Cir. 2007) (The "exceptions [to Rule 408] have been used only to admit the occurrence of settlement talks or the settlement agreement itself for 'another purpose.'")[3]; *BDG Gotham Residential,*

---

inconsistent statement or a contradiction: (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim…(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

[3] This language from the Sixth Circuit from *Stockman* is a quote from the Sixth Circuit's earlier case of *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir.2003). *Stockman* found that the trial court erred in admitting evidence at trial that was protected by Rule 408. In *Goodyear*, the Sixth Circuit found both that Rule 408 applied to protect the settlement communications at issue and that the protections of Rule 408 in that case constituted a privilege applicable in third-party discovery. *Id.* at 977. The latter point, that Rule 408 may act as a privilege to protect materials in discovery, not just to protect from admission of evidence at trial, has proven controversial. However, the question of whether, and to what extent, Rule 408 applies in the discovery context is irrelevant to our case.

*LLC v. Western Waterproofing Company, Inc*., 631 F.Supp.3d 76, 81 (S.D.N.Y. 2022) ("The rule by its plain terms is designed to facilitate the settlement of lawsuits by shielding the fact of settlement negotiations from the trier of fact, who might draw the wrong conclusion from the fact that negotiations were entertained."); *Clemco Industries v. Commercial Union Ins. Co*., 665 F.Supp. 816, 829 (N.D. Cal. 1987) ("Under Federal Rule of Evidence 408, any evidence concerning settlement negotiations or offers from one party to another are inadmissible."); *Perez v. Viens*, 2011 WL 2443673, * 6 (D. Neb. June 14, 2011) ("Perez argues Rule 408 is inapplicable because the liability is not at issue in this case and because the statements by Covenant were not offers or negotiations, but are better characterized as 'invitations to enter settlement negotiations'....The types of discussions at issue in this case are expressly covered by Rule 408 and are, therefore, prohibited. Accordingly, Perez cannot introduce any evidence about Covenant Transport's initial overtures to Perez to settle the case."); *Eagan v. Laplace Towing Co., Inc*., Civ. A. No. 91–4623, 1993 WL 302681 (E.D. La. Aug. 4, 1993) (granting mistrial because of a Rule 408 violation due to this single question that the plaintiff's attorney asked the plaintiff: "after you were injured, did the company ever come to you and try to make any kind of settlement with you?"); 23 Fed. Prac. & Proc. Evid. § 5306 (2d ed.) (Wright & Miller) ("[T]he solicitation of an offer from the opponent, a general indication of a willingness to consider some compromise, or statements of intent to make an offer are all parts of the ritual of settlement that must be excluded from evidence if parties are not to be deterred from initiating compromise discussions.")

(b)    <u>IFS Had No Permissible Purpose under Rule 408</u>

Rule 408 bars admission of evidence regarding settlement-related communications "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, a "court may admit this evidence for another purpose, such

1  as proving a witness's bias or prejudice, negating a contention of undue delay, or

2  proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid.

3  408(b).

4         IFS had no permissible purpose under Rule 408 to reference Defendants'

5  request to discuss settlement with IFS. In front of Judge Wright, IFS did not even

6  attempt to articulate "another purpose" that would have permitted Mr. Forman's

7  question. Instead, IFS inexplicably, and incorrectly, argued that Rule 408 did not

8  apply because the communications were between the parties themselves and because

9  Exhibit 1216 did not explicitly state that it was "under any privilege." Trial Tran.

10  pp. 78:21-23, 80:22-81:2.

11         From the plain language of Rule 408 and from the case law, Rule 408 protects

12  settlement communications between the parties themselves, and Rule 408 does not

13  require that communications state explicitly that they are confidential or privileged.

14  *Lyondell Chemical Co. v. Occidental Chemical Corp*., 608 F.3d 284, 295, n. 37 (5th

15  Cir. 2010) (ruling that Rule 408 barred admission of certain reports, and stating, "El

16  Paso points out that the reports were not the work product of an attorney and

17  nowhere indicated that they were settlement-related. El Paso, however, provides no

18  caselaw support for this implicit assertion that Rule 408 protects only

19  communications that are made in formal legal proceedings or that come from an

20  attorney."); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d

21  976, 980 (6th Cir.2003) ("There exists a strong public interest in favor of secrecy of

22  matters discussed by parties during settlement negotiations. This is true whether

23  settlement negotiations are done under the auspices of the court or informally

24  between the parties."); *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 641-42

25  (11th Cir. 1990) (excluding an accounting firm's report under Rule 408); *Affiliated

26  Mfrs., Inc. v. Aluminum Co. of America*, 56 F.3d 521, 526-30 (3rd Cir. 1995)

27  (excluding a letter and a memoranda from employees/officers); *Johns v. Brennan*,

28

1   761 Fed.Appx. 742 (9th Cir. 2019) (excluding statements by administrative agency

2   employee under Rule 408 following informal complaint).

3                        2.    The Question Was Also Irrelevant and Unduly Prejudicial

4        IFS's question about Defendants reaching out to IFS about resolving the case

5   was also irrelevant and unduly prejudicial. *U.S. v. Contra Costa County Water Dist*.,

6   678 F.2d 90, 92 (9th Cir. 1982) ("The Advisory Committee's Note following Rule

7   408 provides two principles underlying the rule. The first is that the evidence is

8   irrelevant as being motivated by a desire for peace rather than from a concession of

9   the merits of the claim. Second, is in promotion of the public policy favoring the

10  compromise and settlement of disputes."); *Stockman v. Oakcrest Dental Center,*

11  *P.C*., 480 F.3d 791, 799 (9th Cir. 2007) ("Here, the probative value was nearly non-

12  existent. The offer was made just before trial, two years after termination, and was

13  contingent on settling the case….On the other hand, the Letters were inherently

14  prejudicial because a jury could easily have misunderstood that the offer, made on

15  the eve of trial, was an implicit admission of liability or a sign that Defendants

16  thought they might lose at trial….[T]he district court's admission of the Letters

17  under Rule 403 was an abuse of discretion.") (internal citations and quotation

18  markings omitted).

19       Judge Wright's finding that a mistrial was necessary was correct, and

20  certainly not clearly erroneous. The court in *Eagan*, 1993 WL 302681 at *2, granted

21  a mistrial after a single question revealing that the moving party had come to the

22  plaintiff and tried to make an unspecified settlement; the court found that the "jury

23  was so tainted by this improper question, and response thereto, that no curative

24  instruction could have removed the taint." From the fact that IFS asked such a

25  specific question about Defendants reaching out to IFS about settlement (he asked

26  about Sergio Escamilla, specifically, making a request to Ken Sweder, specifically,

27  about "resolution of this litigation"), to Sergio Escamilla's response to Dan

28  Forman's question (he looked surprised at the question being asked, nervously

mumbled something inaudible, kept his mouth open, and looked quickly to the judge
and counsel table to confirm that he did not need to answer, see Lesowitz Decl. ¶ 8),
to Dan Forman's unsolicited colloquy after the objection was sustained to the
question ("It's between the parties, Your Honor"), it was obvious that Sergio
Escamilla had indeed contacted Ken Sweder about settling the case. The phrasing of
the question emphasized that it was Defendants who reached out to IFS regarding
settlement, suggesting to a jury that Defendants felt they needed to settle the case
because a trial would go badly for them.

### C.    IFS and Dan Forman Acted with Sufficient Culpability

Judge Wright found that IFS's attorney, Dan Forman, knowingly asked an
improper question. Trial Tran. p. 81:8-25 ("There's things we cannot talk about. And
I know you know that.  So you were looking for an offramp too…. But I think you
knew what you were doing. You know, if you were a kid, I might believe that that
was just an inadvertent screwup. But you've been around a minute.") Judge Wright's
findings of bad faith can only be overruled if clearly erroneous. *Pacific Harbor
Capital, Inc. v. Carnival Air Lines, Inc*., 210 F.3d 1112, 1117 (9th Cir. 2000) ("We
will reverse a district court's factual findings as to whether an attorney acted
recklessly or in bad faith only if they are clearly erroneous.")

The Court should not disturb Judge Wright's findings. At the least, the Court
should find that Dan Forman acted recklessly (justifying sanctions under Section
1927 where recklessness is sufficient) and frivolously (justifying sanctions under the
Court's inherent authority where recklessness plus frivolousness is sufficient). *See
Fink*, 239 F.3d at 993 (laying out standards); *In re TCI Ltd*., 769 F.2d 441, 445 (7th
Cir. 1985) ("If a lawyer pursues a path that a reasonably careful attorney would have
known, after appropriate inquiry, to be unsound, the conduct is objectively
unreasonable and vexatious.…A lawyer's reckless indifference to the law may
impose substantial costs on the adverse party. Section 1927 permits a court to insist
that the attorney bear the costs of his own lack of care.")

Judge Wright presided over this case from its inception through the end of the trial. Judge Wright viewed the entire trial live, in-person. And there are more than sufficient grounds to find that Judge Wright's finding that Dan Forman acted knowingly was not clearly erroneous.

For example, there was no conceivable permissible purpose for directly asking Mr. Escamilla about contacting the plaintiff's CEO "about resolution of this litigation." IFS's attempted justifications—that Rule 408 did not apply because the communication was between the parties and that the communication was not specifically marked confidential or privileged—were clearly legally invalid. See earlier discussion. *See also Lahiri v. Universal Music and Video Distribution Corp*., 606 F.3d 1216, 1220-21 (2010) (affirming sanctions against attorney under inherent authority and Section 1927 due to the attorney's misunderstanding of the facts and law constituting bad faith, stating in part, "Had Kornarens, a self-described experienced copyright lawyer, made even a cursory investigation into the circumstances of Lahiri's 21–year old composition of Thoda, he would have known Lahiri had no copyright interest in music he composed for hire.")

A lawyer is presumed to know the law. *Pyramid Controls Inc. v. Siemens Indus. Automation, Inc*., 172 F.3d 516, 519-20 (7th Cir. 1999) ("All lawyers are presumed to know the law, and if they don't know a specific area of law well, they are obligated to consult with other lawyers who do."); *American Home Assurance Co. v. Benowitz*, 234 Cal.App.3d 192, 203 (1991) ("[A] mistake of law may be excusable when made by a layman but not when made by an attorney. Her lawyer was presumed to know the laws and rules of procedure which govern the forms of litigation, the legal remedies, which he selects and pursues.") (internal citations and quotation markings omitted); *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir. 1987) ("Stallcop admitted that she consulted three lawyers within the six-month statutory period. She therefore gained the 'means of knowledge' of her rights and can be charged with constructive knowledge of the

law's requirements."); App. for Admission to the Bar of the C.D.C.A. (G-60) ("I declare under penalty of perjury that all of the above information is true and correct, and that I am familiar with this Court's Local Civil and Criminal Rules, the Federal Rules of Civil and Criminal Procedure, and the Federal Rules of Evidence.").

Further, Dan Forman asked the question even though Defendants had lodged an objection under Rule 408 that the Court had yet to rule on. ECF no. 318, p. 55; Lesowitz Decl. ¶ 3. Mr. Forman should have addressed his planned questioning with the Court outside the presence of the jury prior to asking his last question (and his failure to do so was at least reckless), especially since Defendants had lodged a pretrial objection to Exhibit 1216 that the Court had not ruled on.

Federal Rule of Evidence 103(d) states, "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." In *Eagan v. Laplace Towing Co., Inc*., Civ. A. No. 91–4623, 1993 WL 302681 (E.D. La. Aug. 4, 1993), the court awarded sanctions under Section 1927 due to the plaintiff's attorney asking his client this single question: "after you were injured, did the company ever come to you and try to make any kind of settlement with you?" *Id*. at *1. This question did not violate a pre-trial order, yet the court ordered sanctions under Section 1927 and admonished the attorney for not addressing the admissibility of the question with the court prior to asking it:

> Counsel asserts that "there was only a good faith dispute as to the propriety of asking a single question to a single witness." Despite Mr. Falcon's attempts to characterize his conduct as a benign evidentiary dispute, the Court is satisfied that section 1927 sanctions are appropriate. While counsel's arguments regarding the admissibility of settlement evidence are not wholly frivolous, it is clear that asking about a settlement offer at trial, under these circumstances, was reckless. The proper course would have been for counsel to seek a ruling in limine on the admissibility of that evidence. Mr. Falcon should have identified this evidentiary problem in the pretrial order and briefed the Court as to his contentions regarding admissibility. The Court would have, thus, been able to rule on the admissibility of the proffered testimony without risking a tainted jury. Plaintiff's counsel instead chose to not advise the

Court of his intent to introduce evidence of questionable admissibility. The Court ruled against the plaintiff and a mistrial was the inevitable result of that ruling.

*Id.* at *2

Judge Wright could not believe, considering Dan Forman's experience, that he simply made excusable mistakes. Dan Forman has been licensed to practice law in California since 1991. Lesowitz Decl. ¶ 9 & Exh. 3 (CA Bar printout). Dan Forman is the managing partner of CDF Labor Law's Los Angeles office and the Chair of its Unfair Competition and Trade Secret Practice Group. Lesowitz Decl. ¶ 10 & Exh. 4 (Dan Forman's CDF Labor Law website printout). CDF Labor Law employs approximately 49 attorneys. Lesowitz Decl. ¶ 10 & Exh. 5 (CDF Labor Law website printout). Mr. Forman lists 26 publications to his name on his website. Lesowitz Decl. ¶ 10 & Exh. 4.

Further, IFS went into trial already having had (a) significant portions of its claims dismissed on summary judgment, and (b) most of its damages calculations excluded due to IFS's discovery misconduct. This bolsters Judge Wright's finding regarding Mr. Forman looking for an "offramp." At the least, it is indicative of an environment where IFS and its counsel would be more willing to take risks and push the envelope since so much of their case had already been dismissed or excluded.

Additionally, the Court already had to stop IFS from introducing a purported agreement that Savino Morales signed that specifically stated it was "confidential as mediation privileged." ECF no. 271, p. 3; ECF no. 334. Therefore, IFS and Mr. Forman already had shown a disregard for settlement communication-related evidentiary protections. Furthermore, having lost an in limine motion on a settlement communication-related ground, they should have been extra sensitive regarding such privileges at trial.

Also, while Judge Wright presumably did not know this, Dan Forman was sanctioned by the Eastern District of California in January 2022 for knowingly filing

an opposition that "completely lacked a factual foundation for subject matter jurisdiction" and that contained a factual misrepresentation as to when his client was served. *Garcia v. Phillips Feed Service, Inc*., 2:21-cv-01548, 2022 WL 252668, * 4 (E.D. Cal. Jan. 27, 2022) ("Here, the court finds that a penalty of $1,000.00—paid by Mr. Forman, not Phillips—suffices to deter similar conduct.").

Considering how many factors support Judge Wright's findings of knowing or intentional behavior, his findings are not clearly erroneous. The Court should, at the least, find recklessness present. *See Dietrich v. John Ascuaga's Nugget*, 3:04–CV–0468–BES (VPC), 2007 WL 2264544, *8 (D. Nev. Aug. 6, 2007) (awarding sanctions against Attorney Crowley under the court's inherent authority and Section 1927 and stating, "Mr. Crowley's fundamental misunderstanding of the law is no excuse for his recklessness in continuing to assert meritless positions and in requiring the Nugget defendants to expend substantial time and money to defend against this frivolous claim.").

### D.    The Court Should Award Defendants $149,787 in Sanctions

#### 1.    The Appropriate Scope of Sanctions

The Court's sanction award should not be limited solely to the attorney's fees incurred in the two days of the initial trial and for bringing this motion.

A court may award sanctions for "the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith. A district court has broad discretion to calculate fee awards under that standard." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103 (2017). "A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Id*. at 108. "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were

1  incurred solely because of a litigant's bad-faith conduct." *Id*. at 110 (internal

2  citations and quotation markings omitted).

3        The court should also award the attorney's fees incurred in drafting this

4  motion for sanctions. *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626,

5  632 (9th Cir. 2017) ("§ 1927 allows an award of attorneys' fees incurred in

6  obtaining a sanctions award."); *Xyngular v. Schenkel*, 890 F.3d 868, 872 (10th Cir.

7  2018) (affirming award of costs and fees in bringing a sanctions motion under the

8  court's inherent authority).

9        In *Lasar v. Ford Motor Co*., 239 F.Supp.2d 1022 (D. Mon. 2003), during the

10  morning of the second day of trial, the court granted Lasar's motion for a mistrial

11  due to the defense attorney alluding to impermissible facts in his opening statement

12  in violation of an in limine order. *Id*. at 1025. The court ultimately awarded

13  sanctions under its inherent authority in the amount of $61,397.50 in favor of Lasar

14  against Ford and its attorney (which is roughly $101,557 adjusted for inflation)[4],

15  representing (a) attorney's fees for the three lead trial counsel beginning from two

16  weeks prior to trial, (b) the travel expenses, fees for trial preparation, and fees for

17  testimony of one expert who testified, (c) the travel expenses and reasonable fees for

18  eight hours of waiting time for two other experts who traveled to the trial but did not

19  testify, (d) charges for preparation time for the treating physicians, (e) fees for

20  preparation time and a travel cancellation fee for two other experts who did not

21  travel to the trial, and (f) the cost of a jury consultant. *Id*. 1028-30. Separately, the

22  Court ordered sanctions of $5,496.15 against Ford alone to the Clerk of Court,

23  representing the cost of empaneling the jury. *Id*. at 1028.

24        The court found that, "In preparing this case for trial on October 7, 2002,

25  Lasar incurred many expenses. The two weeks leading to trial are critical in the

26

27  [4] Source for all inflation-adjusted calculations herein: Inflation Calculator on the
   website of the Federal Reserve Bank of Minneapolis,

28  https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator

---

1   time, effort, and expense necessary to prepare. Many costs, including some expert

2   fees, attorneys' fees, travel expenses, and other expenses will be repeated by virtue

3   of Sutter's unprofessional conduct at trial." *Id.* at 1028. The court emphasized that,

4   "The purpose of the sanctions imposed is to put the parties where they were two

5   weeks before trial to the extent that is possible…. All of these expenses were

6   incurred in preparing to bring the case to trial and will be reincurred in preparing for

7   the next trial." *Id.* at 1030-31.

8        On appeal, the Ninth Circuit affirmed the sanctions awards. *Lasar v. Ford

9   Motor Co*., 399 F.3d 1101, 1118 (9th Cir. 2005). As for the $61,397.50 in sanctions

10  payable to Lasar, the Ninth Circuit found that the appeal was mooted by the parties'

11  settlement. *Id.* at 1108. However, the Ninth Circuit found that both the $61,397.50

12  in sanctions payable to Lasar and the $5,496.15 in sanctions payable to the court

13  "were compensatory in nature because they were designed to compensate Lasar for

14  unnecessary costs and attorney's fees and to reimburse the district court for the jury

15  costs incurred as a result of the mistrial." *Id.* at 1111. *See also id*. at 1112

16  ("Moreover, although the contempt citation provided an alternative basis for the

17  substantial monetary sanctions, those sanctions were compensatory in nature.").

18       In *Hall v. Forest River, Inc*., Cause No. 3:04-CV-259-RM, 2008 WL 1774216

19  (N.D. Ind. April 15, 2008), the court awarded the full request of $67,069.96 under

20  Section 1927, which is roughly $94,789 adjusted for inflation, including for the

21  attorney "making it necessary for Forest River to prepare a second time for trial-

22  preparation that would have been unnecessary but for the mistrial in the first trial."

23  *Id*. at *1. The mistrial was declared following opening statements. *Id*. The court

24  allowed recovery of "fees and expenses incurred between March 20, 2007 (the date

25  of the mistrial) and June 11, 2007 (when the retrial began)." *Id*. at *3. The court

26  rejected the argument that "having prepared once for the trial, Forest River should

27  have incurred minimal expense in preparing for the retrial since most of its previous

28  work would simply carry over." *Id*. at *4.

2.    The Appropriate Sanctions Here

(a)    The Number of Hours to Award

Both parties in the initial trial had two trial attorneys conducting the trial. Considering the scope of the case, it is wholly implausible for one attorney to try this case for Defendants. Lesowitz Decl. ¶ 11. Defendants plan to use the same two attorneys for the retrial. Id.; Escamilla Decl. ¶ 4.

Defendants request compensation for 197.8 hours of attorney-time in total. Of that request, 109.2 hours is for pretrial preparation, 43.7 hours is for billing during the two days of trial itself, and 44.9 hours related to the preparation of this motion. The total request of 197.8 hours is less than the 262.95 total hours of attorney time awarded in *Lasar* and the 237.76 hours of attorney time awarded in *Forest River*. *Lasar*, 239 F.Supp.2d at 1028; *Forest River*, 2008 WL 1774216 *3-5; Lesowitz Decl. ¶ 12 & Exh. 6 (affidavit for attorney's fees in *Forest River*).

Starting in reverse order, the request for billing on this motion is reasonable. The time required on the motion was more extensive due to IFS contesting virtually everything in the meet and confer, even contending that the Court's ruling that Dan Forman's question violated Rule 408 was clearly erroneous. Lesowitz Decl. ¶ 13.

As for billing during the two days at trial, it should go without saying that this time was wasted and will have to be re-repeated. We note that travel time was billed at a half-rate. Lesowitz Decl. ¶ 14 & Exhs. 7 & 8 (billing spreadsheets).

As for work performed before the beginning of the trial on July 11, 2023, Defendants' request for 109.2 hours of work is very reasonable. As can be seen from the billing spreadsheets submitted with this motion (Exhibits 7 and 8 to the Lesowitz Declaration), Defendants were conservative only to request sanctions for attorney billing that will have to be repeated. To be even more conservative, Defendants excluded all billing from before June 20, 2023 (three weeks before the start of trial). This is even though tasks that will have to be repeated occurred prior to June 20, 2023, such as witness interviews and deposition transcript reviews. Lesowitz Decl. ¶

16. Furthermore, Defendants have excluded certain time for legal research work that would not have to be repeated. Additionally, Defendants are not requesting reimbursement for the over 60 hours of work performed by Lesowitz Gebelin LLP's 2023 summer law student associate in assisting with the preparation of trial and on this motion. Lesowitz Decl. ¶ 17.

More to the point, there is no question that Defendants' two attorneys will each need to work at least 109.2 hours total re-preparing for a retrial; they will inevitably need more time than that. Lesowitz Decl. ¶ 16; Gebelin Decl. ¶ 5. That is only 54.6 hours for each attorney, or roughly seven full-time workdays. The actual work required will be much more than that. Id.

The relatively modest request of 109.2 hours for pretrial work is especially appropriate due to the gap of at least seven months between the first trial and a second trial. *See Ferguson v. Valero Energy Corp*., 454 Fed.Appx. 109, 113 (3d Cir. 2011) (affirming sanctions of $100,436.25, approximately $135,865 adjusted for inflation, under Section 1927 and the court's inherent authority due to mistrial declared on the second day of trial and stating, "Appellants next argue that sanctions were inappropriate under § 1927 because the proceedings were not multiplied as a result of the mistrial. This claim is factually incorrect, however, because the trial was delayed several months, which caused additional pretrial motions practice, a second jury selection process, and some duplication of trial preparation efforts.")

Furthermore, Defendants only billed a small fraction of the time spent on pretrial documents. Defendants will have to perform additional work re-reviewing the pretrial documents due to the lapse of time between the first and second trials and will also have to consider updates to the pretrial documents due to the mistral. Lesowitz Decl. ¶ 16. However, acknowledging less work will be required on pretrial documents for a re-trial, Defendants cut all time requests for pretrial document tasks by half. More importantly, Defendants only requested compensation for entries since June 20, 2023; a strong majority of billing related to pretrial documents

1  occurred prior to June 20, 2023. Lesowitz Decl. ¶ 18. And Defendants are not

2  requesting any compensation for that billing that occurred prior to June 20, 2023.

3                    (b)    The Reasonable Fee Rate

4        The Court should use the lodestar analysis in determining attorney billing

5  rates. *Mirch v. Frank*, 266 Fed.Appx. 586, 588 (9th Cir. 2008) (applying lodestar

6  analysis for Section 1927 sanctions); *Hamilton v. Boise Cascade Exp*., 519 F.3d

7  1197, 1207 (10th Cir. 20008) (district courts may choose to apply lodestar analysis

8  to Section 1927, but more flexibility may be warranted in certain circumstances to

9  justify higher awards). Under the lodestar analysis, the Court is to determine the

10  reasonable rate; the actual rates charged do not determine the reasonable rate.

11  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)

12  ("Determination of a reasonable hourly rate is not made by reference to rates

13  actually charged the prevailing party. In determining a reasonable hourly rate, the

14  district court should be guided by the rate prevailing in the community for similar

15  work performed by attorneys of comparable skill, experience, and reputation.")

16  (internal citation omitted).

17        The two trial attorneys for Defendants in this case, Scott Lesowitz and

18  Steven Gebelin, are both well-credentialed, experienced litigators with over 15 years

19  of legal experience each, justifying setting their reasonable rates at $750 per hour.

20  Lesowitz Decl. ¶ 15; Gebelin Decl. ¶ 3. A court in 2022 set Mr. Gebelin's

21  reasonable hourly rate at $750 in calculating a fee award. Gebelin Decl. ¶ 4.

22                    (c)    Other Costs

23        Defendants also request $3,237 in costs. This consists only of travel (billed at

24  the IRS mileage reimbursement rate of 65.5 cents per mile) and lodging for Scott

25  Lesowitz (who lives in San Diego), Pablo Morales (who lives in the Phoenix area),

26  and Sergio Escamilla (who also lives in the Phoenix area). Lesowitz Decl. ¶ 19;

27  Escamilla Decl. ¶ 4. Pablo Morales and Sergio Escamilla reduced their costs by

28  sharing a hotel room. Escamilla Decl. ¶ 4.

1  **V. <u>CONCLUSION</u>**

2        The Court should order IFS and Dan Forman, jointly and severely, to pay

3  Defendants at least $149,787 in sanctions.

4  Dated: October 4, 2023          <u>/s/ *Scott Lesowitz*</u>
                                    Attorney and Partner
5                                   For Lesowitz Gebelin LLP, Counsel for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28