O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIN BERNARD SUPOWITZ, LLC, a California LLC dba INDIVIDUAL FOODSERVICE,<br><br>Plaintiff,<br>v.<br><br>PABLO MORALES, an individual; LEGACY WHOLESALE GROUP, LLC, an Arizona Limited Liability Corporation; SAVINO MORALES, an individual; and SERGIO ESCAMILLA, an individua; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-02120-MEMF-SK<br><br>**ORDER GRANTING IN PART MOTION FOR MONETARY SANCTIONS IN THE AMOUNT OF $149,787 AGAINST PLAINTIFF AND HIS COUNSEL FOR CAUSING THE MISTRIAL AND GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 350, 370]** |

Before the Court is the Motion for Monetary Sanctions filed by Defendants Pablo Morales, Savino Morales, Sergio Escamilla, and Legacy Wholesale Group, LLC, and the Request for Judicial Notice by Plaintiff Perrin Bernard Supowitz, LLC. ECF Nos. 350, 370. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion for Monetary Sanctions and GRANTS the Request for Judicial Notice.

/ / /

## I. Background

### A. Factual Background[1]

Plaintiff Perrin Bernard Supowitz, LLC, d/b/a Individual Food Service ("IFS") is a California corporation that imports and sells a wide variety of goods to wholesale, institutional, and retail businesses. FAC ¶¶ 1, 2. Defendants Pablo Morales and Savino Morales were former IFS employees who later formed Defendant Legacy Wholesale Group, LLC ("Legacy") with Defendant Sergio Escamilla ("Escamilla," and collectively, "Legacy Defendants"). FAC ¶¶ 6–8, 30. Legacy competes with IFS. *See* FAC ¶ 4.

Pablo and Savino Morales formed Legacy with Escamilla while they were still employed by IFS and did not inform IFS that they were involved with Legacy. FAC ¶¶ 31, 39. IFS contends that Pablo and Savino Morales built Legacy using IFS's trade secrets and abused their authority at IFS to obtain Legacy goods at a much cheaper price—giving Legacy a competitive advantage over IFS. FAC ¶¶ 32–43.

### B. Procedural History

IFS filed its Complaint on March 31, 2022. ECF No. 1. The action was assigned to Judge Otis D. Wright, II. ECF No. 14. IFS filed its operative First Amended Complaint on August 29, 2022.

The parties prepared for a jury trial set to commence on July 11, 2023. ECF No. 339. As part of the parties' preparation, the parties filed a Joint Exhibit List. ECF No. 318. On the Joint Exhibit List, IFS listed a "[t]ext exchange between Ken Sweder [IFS CEO] and Sergio Escamilla" as Exhibit 1216. *Id.* at p. 55. The Legacy Defendants objected to Exhibit 1216 under Federal Rule of Evidence ("FRE") 408. *Id.* Exhibit 1216 is a screenshot of a text message conversation between Sweder and Escamilla where Escamilla states he is "one of the parties on the IFS v. Legacy matter," and he "was "hoping to have a meaningful settlement discussion directly with you [Sweder], CEO to CEO to, if you are not opposed to it." Exhibit 1, ECF No. 350-5 ("Ex. 1"). At the final pretrial status

---

[1] The following factual background is derived from the allegations in Plaintiff's First Amended Complaint, ECF No.99 ("FAC"), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

conference, Judge Wright informed the parties that it was impractical to rule on all the objections in the Joint Exhibit List prior to trial, and that objections to the exhibits would be addressed as they arose. Declaration of Scott Lesowitz, ECF No. 350-3 ("Lesowitz Decl."), ¶ 3.

On July 11, 2023, the jury was impaneled and sworn, opening statements were made, and the plaintiffs began calling their witnesses. *Id.*

The next day, July 12, 2023, the trial continued, and IFS called Escamilla as a witness. ECF No. 345 ("July 12 Tr.") at 5:11–12. At one point, IFS's attorney Dan Forman ("Forman") informed Judge Wright that there was technical difficulty with the exhibit Mr. Forman wished to use during his examination, to which Judge Wright prompted Mr. Forman to "move on to something else." July 12 Tr. at 78:6–11. Mr. Forman then stated he would "move on to ask for publication of [Exhibit] 1216," but would "set up a couple of questions" before doing so. July 12 Tr. at 78:12–15. Mr. Forman asked Escamilla whether "there was a time . . . when you [Escamilla] approached Mr. Sweder about resolution of this litigation?" *Id.* at 78:16–17. The Legacy Defendants' counsel immediately objected to the question as concerning a settlement communication and Judge Wright sustained the objection, to which Mr. Forman countered that it was "between the parties." *Id.* at 78:18–22. The Legacy Defendants' counsel immediately moved for a mistrial, at which point the Court went off the record. *Id.* at 78:25–79:3.

After a recess, Judge Wright, in the absence of the jury, heard the Legacy Defendants' oral motion for mistrial. During the hearing, the Legacy Defendants' informed Judge Wright that Mr. Forman's question was posed as precursor to the introduction of Exhibit 1216. *Id.* at 80:4–8. Mr. Forman argued that the jury could be cured, but the Legacy Defendants disagreed, and Judge Wright ultimately found in the Legacy Defendants' favor. *Id.* 79:17–81:3. Judge Wright granted the motion for mistrial, stating that the "jury ha[d] been fairly well and truly tainted" (*id.* at 79:14–83:12), and recused himself from the case, at which time the case was transferred to Judge Maame Ewusi-Mensah Frimpong. ECF No. 342.

On October 4, 2023, the Legacy Defendants filed the instant Motion for Sanctions. ECF No. 350 ("Motion" or "Mot."). Ifs filed its Opposition to the Motion and Request for Judicial Notice on October 18, 2023. ECF Nos. 353 ("Opposition" or "Opp'n"), 357 ("RJN"). The Legacy Defendants

filed their reply on October 25, 2023. ECF No. 359 ("Reply"). On February 6, 2024, the Court deemed this matter appropriate for resolution without oral argument. C.D. Cal. L.R. 7-15.[2]

## II. Applicable Law

Federal courts may impose various sanctions against parties under either their inherent power or various federal rules and statutes. *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (stating that federal courts have the inherent power to sanction conduct that abuses the judicial process); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (discussing a court's power to sanction parties under 28 U.S.C. § 1927).

In relevant part to this case, under United States Code § 1927, a court may sanction "[a]ny attorney . . . who so multiplies the proceedings in case unreasonably and vexatiously" by requiring said attorney to pay the costs incurred by the opposing party due to the attorney's conduct. U.S.C. § 1927.

## III. Discussion

In deciding whether to grant sanctions against IFS, the Court must determine whether the conduct at issue—Mr. Forman's question to Escamilla about whether he approached IFS's CEO about settlement—is sanctionable conduct. Because the parties contest Judge Wright's ruling on the Legacy Defendants' motion for mistrial, the Court must first determine the level of deference it must accord to Judge Wright's decision and whether the decision falls within the ambit of that deference. Once the Court makes that determination, it must examine Mr. Forman's conduct and determine whether the conduct was either reckless (and thus sanctionable under 28 U.S.C. § 1927) or undertaken in bad faith (and thus sanctionable pursuant to the Court's inherent sanction powers). Finally, assuming that Mr. Forman's conduct is either reckless or undertaken in bad faith, the Court must finally decide the appropriate amount of sanctions.

---

[2] The parties also filed objections to evidence. *See* ECF Nos. 354 (IFS's objections to the Declaration of Scott Lesowitz), 355 (IFS's objections to the Declaration of Sergio Escamilla), 356 (IFS's objections to the Declaration of Steven Gebelin). To the extent the Court relies upon evidence which the parties object, the objections are OVERRULED.

As the Court explains further below, the Court finds that Judge Wright's ruling on the motion for mistrial was not clearly erroneous and Mr. Forman's conduct was, at a minimum reckless. Finally the Court finds that the requested amount of sanctions is not appropriate.[3]

### A. Judge Wright's Grant of Mistrial Was Not Clearly Erroneous Nor Does It Work a Manifest Injustice

The "law of the case" doctrine refers to the notion that "'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). Although a second judge has the power to review and set aside prior orders made by a prior judge sitting on the same case, the Supreme Court has cautioned that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605 618, n.8 (1983)). To that end, the Ninth Circuit has outlined five circumstances where a court may exercise its discretion to depart from the law of the case:

> 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.

*Alexander*, 106 F.3d at 876.

Here, IFS argues that this Court should reconsider Judge Wright's prior decision because (1) an invitation to discuss settlement is not protected by FRE 408, and thus, the prior decision is clearly erroneous; (2) even if an invitation to discuss settlement is protected under FRE 408, IFS did not intend to offer the evidence for a prohibited use; and (3) that Judge Wright abused his discretion in granting a mistrial under the circumstances. The Court addresses each argument in turn.

///

///

---

[3] As a side matter, the Court cautions the parties to mind the Court's civility guidelines. It appears that throughout this case, the parties have accused each other of various "bad acts," and while bringing such actions to the Court's attention *when relevant* is appropriate, using inflammatory language against the other party generally is not.

       i. <u>An invitation to settle can be protected under FRE 408.</u>

Federal Rule of Evidence 408 provides that:

**(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

 **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

 **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FRE 408.

  IFS argues that Judge Wright's decision was incorrect as a matter of law because it is "well settled" that an invitation to discuss settlement is not a settlement communication privileged under FRE 408. Opp'n at 15. Contrary to IFS's argument, this issue is not "well-settled." Although the Ninth Circuit has yet to consider this exact issue, there is persuasive authority supporting the notion that FRE 408 encompasses "the solicitation of an offer from the opponent, a general indication of a willingness to consider some compromise, or statements of intent to make an offer . . . ." 23 Fed. Prac. & Proc. Evid. § 5306 (2d ed.) (Wright & Miller); *see also* 2 McCormick on Evid. § 266 (8th ed.) ("What is excluded? The offer is excluded, as well as any suggestions or overtures of settlement."); *Zurich Am. Insurance Co. v. UGS Private Security, Inc.*, No.: 2:22-cv-01163-GW-E, 2023 WL 3565063, at *4–*5 (C.D. Cal. Jan. 20, 2023) (holding that FRE 408 renders inadmissible *the contents* of an email between the defendant and plaintiff wherein the defendant asks "if there is no amicable way to resolve this issue than settling the matter before a judge?").

  The cases cited by IFS are neither binding. on point, or persuasive, as they do not discuss a communication that is like the text message (Exhibit 1216) at issue here. *See* Opp'n at 15–16 (citing, among other cases, *Commonwealth Cap. Corp. v. City of Tempe*, No. 2:09-cv-00274-JWS, 2011 WL 1429624, at *1 (D. Ariz. Apr. 14, 2011) and *Sabo v. Fiskars Brands, Inc.*, No. CIV S-11-2105-KJM-

GGH, 2012 WL 12882842, at *3 (E.D. Cal. Sept. 30, 2012), in which the courts considered letters from attorneys including some statement to the effect that the opposing party was welcome to make a settlement offer).[4]

The policy behind FRE 408—to encourage compromise and the settlement of disputes— also convinces the Court that the scope of the rule may extend to invitations to settle, and therefore Judge Wright's decision was not clearly erroneous. The purpose of FRE 408 is to promote the public policy favoring compromise by excluding proof of compromise to show liability or the amount of liability of the offeror. Federal Trial Handbook: Civil § 32:5 (2023-2024 Edition). This "'supports a construction of Evid. Rule 408 that is sufficiently broad to encompass certain material *in addition to actual offers of settlement.*'" *Id.* (emphasis added). Including invitations to settle within the ambit of the rule is not clearly erroneous given that it is reasonable to conclude that a jury might infer that a defendant who approaches a plaintiff and indicates his willingness to settle must be doing so because he believes he cannot win at trial.[5]

Given the absence of binding authority, the Court cannot hold that Judge Wright's holding in this respect was clearly erroneous.

### ii. IFS failed to articulate a proper use for the reference to the invitation to settle.

IFS next argues that it did not intend to offer evidence of Mr. Escamilla's invitation to settle for a prohibited use. Opp'n at 17. Instead, it intended to offer the evidence to show that (1) Mr. Escamilla was Legacy's CEO and (2) whether Defendants ever expressed their regret concerning falsehoods they told IFS about Legacy to IFS. *Id.* at 17–18. It does not appear that IFS raised these

---

[4] IFS also states that "Defendants, now, provide the Court with Mr. Escamilla's testimony about his view of that conversation. Defendants, therefore, confirm that such information is not privileged by intentionally placing Mr. Escamilla's version before the Court." Opp'n at 16. To the extent that IFS argues that the Legacy Defendants, by submitting Exhibit 1216 to the Court, have shown that the underlying communication is not protectable, IFS is wrong. There is no "settlement privilege," and so, the information at issue is not inadmissible due to privilege, but due to a rule concerning admissibility of settlement communications or conduct.

[5] The Court notes that even if FRE 408 was technically inapplicable, it would appear that the evidence at issue is unduly prejudicial (because it creates the inference of settlement) and could also have therefore have been properly excluded under FRE 403. The Court notes that there is no evidence that Judge Wright did not consider FRE 403. For this additional reason, the Court concludes that Judge Wright's decision was not clearly erroneous.

issues with Judge Wright, and Judge Wright could thus not have considered whether IFS's purported use was improper. IFS cannot now argue that Judge Wright erred in his holding when IFS did not present the relevant argument at the hearing on the motion for mistrial.[6]

        iii. Judge Wright exercised his discretion in granting a mistrial.

Although IFS argues that Judge Wright prematurely made up his mind to grant the Legacy Defendants' motion for mistrial and refused to hear any argument to the contrary, the record does not support this assertion. Judge Wright did hold a hearing with the parties and considered their arguments. July 12 Tr. at 79:6–83:12. Unlike the cases IFS cites, Judge Wright did explain his reasoning to the parties at the hearing, even if he did not do so in a written order, and he provided IFS an opportunity to oppose the Legacy Defendant's motion for mistrial. *See* July 12 Tr. at 79:14–16 (explaining that the jury has been tainted), 80:22–81:5 (Mr. Forman explains why FRE 408 does not apply and argues that the mistrial should not be with prejudice); *see also* Opp'n at 21–22 (citing *United States v. Jorn*, 400 U.S. 470, 486–87 (district court abused discretion in discharging jury where, despite reassurances by both parties, the district court judge did not believe that the witnesses were warned of their constitutional rights and did not provide the parties with an opportunity to object), *United v. Bates*, 917 F.2d 388, 390, 393 (9th Cir. 1990) (district court sua sponte declared a mistrial after witness testimony without hearing from the parties and did not answer parties' request for a hearing), *Lovinger v. Cir. Court of the 19th Jud. Cir.*, 845 F.2d 739, 744–45 (7th Cir. 1988) (trial judge declared a mistrial without allowing defense to express its view).

---

[6] Furthermore, any finding by Judge Wright that these uses were improper also does not appear to be clearly erroneous.
    The Court is unconvinced by the first reason—that Mr. Escamilla was Legacy's CEO and not President—was the really IFS's aim, as IFS provides no reason as to why this distinction is important to its case.
    As for the second reason—to impeach the Legacy Defendants' testimony concerning their regret about certain falsehoods—such use is prohibited under FRE 408. *See* FRE 408(a) (prohibiting compromise evidence where it is used to "impeach by a prior inconsistent statement or contradiction"). *Bowoto* does not compel a finding otherwise, as *Bowoto* concerned objections under FRE 401 (relevance) and 403 (unduly prejudicial). *Bowoto v. Chevron Corp.*, 621 F. 3d 1116, 1130 (9th Cir. 2010). There, the plaintiffs could not object that evidence of a tug kidnapping incident was irrelevant where they had referred to the kidnapping in their opening statement. *Id.* Here, the Legacy Defendants may have opened the door to evidence concerning their regret at lying to IFS, but that does not encompass settlement negotiations.

8

Judge Wright also informed the parties at the hearing that he would recuse himself, and IFS did not raise any concerns at that time as to a potential motion for reconsideration (nor did IFS bring a motion for reconsideration before this Court). IFS also did not argue that Mr. Forman's question to Escamilla did not prejudice the jury or was offered for a permissible purpose. Judge Wright cannot consider an argument that was not made.

***

As the trial judge, Judge Wright was in the best position to determine the effect of Mr. Forman's question upon the jury and whether a curative instruction would have sufficed. This Court does not second guess Judge Wright's determination where the determination is not clearly erroneous.

### B. The Court Can Impose Sanctions Under Section 1927

i. <u>Mr. Forman's conduct was at a minimum reckless.</u>

To impose sanctions under section 1927, a court must find that, at a minimum, the conduct at issue was reckless; however, "sanctions imposed under [a] district court's inherent authority require a bad faith finding." *Lahiri*, 606 F.3d at 1219. "[B]ad faith . . . incudes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). For the purposes of imposing sanctions, "a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Id.* (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C.Cir. 1980) (internal quotations omitted)).

Here, Mr. Forman knew that the Legacy Defendants had objected to Exhibit 1216 under Rule 408, ECF No. 318 at 55, and that Judge Wright intended to rule on objections to evidence as they came up. Despite this knowledge, Mr. Forman began laying the groundwork for the publication of Exhibit 1216 and specifically made reference to settlement (the heart of Rule 408) *before* seeking guidance from the Court as to the Legacy Defendants' objection.

> MR. FORMAN: ***Yeah, let me move on to ask for publication of 1216. Well, before I ask for that, let me just set up a couple of questions.*** Was there a time, Mr. Escamillo [*sic*], when you approached Mr. Sweder about resolution of this litigation?

July 12 Tr. at 78:12–17 (emphasis added).

At a minimum, Mr. Forman's conduct was reckless. As an experienced attorney, Mr. Forman should have known better than to make reference to settlement when the opposing party had objected on the basis of Rule 408 prior to the Court's ruling on admissibility. That Mr. Forman believed FRE 408 was inapplicable is no defense, as he should have resolved the objection prior to asking such a question.

Moreover, it is far from clear that the Legacy Defendants' counsel's objection contributed to the alleged misconduct. While counsel could have said "objection, FRE 408," stating the grounds for the objection itself (i.e., settlement communication) does not render counsel's objection an improper speaking objection.

        ii.   <u>The Legacy Defendants' requested sanctions are not reasonable.</u>

The Court must now decide the appropriate amount for sanctions. Under Section 1927, a court may award a party any "excess costs, expenses, and attorneys' fees reasonably incurred because of" an attorneys unreasonable and vexatious behavior that "*multiplies the proceedings in any case.*" 28 U.S.C. § 1927 (emphasis added). The language clearly captures losses sustained due to the behavior.

In light of the Legacy Defendants' attempt to preserve the right to seek additional fees later, Mot. at 1-2, the Court exercises its discretion to defer determination of the amount of fees to be awarded. The Court notes, however, that it is not inclined to award sanctions for the entire 197.8 hours requested as some of it appears unjustified – for instance "assessing applicable facts and relevant law on potential damages issues" and the work associated with preparing the joint trial documents that were merely refiled. *See* Exhibit 7 (ECF No. 350). The Court is inclined to award fees and costs for the time spent preparing the sanctions motion and the necessarily duplicated trial preparation work.

With respect to the rate to be utilized, The Court finds the rates asserted, $750 per hour for both Mr. Lesowitz and Mr. Gebelin, to be reasonable. Both Mr. Gebelin and Mr. Lesowitz are the

founding partners of their firm and have over a decade of experience.[7] *See* Declaration of Steven Gebelin, ECF No. 350-2 ("Gebelin Decl."), ¶ 3; Declaration of Scott Lesowitz, ECF No. 350-3 ("Lesowitz Decl."), ¶15. These rates are also reasonable considering the Los Angeles market.[8] IFS does not cite to any authority at the Court need to consider the actual fees changed. *See* Opp'n at 27–28 (discussing the Legacy Defendants flat fee).

## IV. Conclusion

For the foregoing reasons, the Legacy Defendants' Motion for Sanctions is GRANTED in part and the Request for Judicial Notice is GRANTED. The Court will order further briefing at the close of trial on the amount of fees and costs to be awarded.

IT IS SO ORDERED.

Dated: February 6, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[7] IFS asks the Court to take judicial notice of an order on a hearing in a different case in which the Court awarded Mr. Gebelin attorney's fees at the requested rate of $750 per hour. *See* ECF No. 357 ("RJN"). A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). The Ninth Circuit has recognized public records, including documents on file in federal court, as appropriate for judicial notice. *See, e.g.*, *Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). The Court finds that the order is a public record, and as such, takes judicial notice of the existence of the order and any undisputed facts therein. However, the Court does not find that the order militates against granting the same rate in this case.

[8] The rates charged by Mr. Forman's firm may differ, but that alone does not make the rates requested unreasonable.